# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| **BRADLEY J. SCHAUFENBUEL;**<br>**ROBERT N. SCHAUFENBUEL;**<br>**JOHN AND SARAH REED, IV;**<br>**JOHN AND JAN REED, III;**<br>**AMERICAN MASS MEDIA CORPORATION;**<br>**ROBERTA K. CLARK;**<br>on behalf of Themselves and All Others<br>Similarly Situated,<br><br>        **Plaintiffs,**<br><br>**V.**<br><br>**INVESTFORCLOSURES FINANCIAL, L.L.C.;**<br>**ROI DEVELOPERS;**<br>**INVESTFORCLOSURES;**<br>**INVESTFORCLOSURES.COM, LLC;**<br>**INVESTFORCLOSURES VENTURES, LLC;**<br>**SANDS OF GOLD ESCROW;**<br>**SANDS OF GOLD;**<br>**ROI FINANCIAL;**<br>**REALTY OPPORTUNITIES INTERNATIONAL**<br>**ESCROW 23;**<br>**ROI ESCROW;**<br>**REALTY OPPORTUNITIES INTERNATIONAL**<br>**S. de R.L. de C.V.;**<br>**REALTY OPPORTUNITIES INTERNATIONAL;**<br>**ROI MEXICO;**<br>**SANDS OF GOLD ESTATES;**<br>**FRANCIS X. SANCHEZ aka FRANK SANCHEZ;**<br>**JAMES D. BOURASSA aka JIM BOURASSA;**<br>**SCOTT D. WESSEL;**<br>**DEANA M. GUIDI;**<br>**DANIEL E. FITZGERALD aka DAN**<br>**FITZGERALD;**<br>**SCOTT R. SLAGLE;**<br>**DARCEY L. MARTIN;**<br>**TOM RODRIGUEZ; and**<br>**JOHN DOES 1 – 30,**<br><br>        **Defendants.** | **FILED: FEBRUARY 25, 2009**<br>**09CV1221**<br>**JUDGE LEINENWEBER**<br>**MAGISTRATE JUDGE NOLAN**<br>**BR**<br><br><br><br>Case No. _____<br><br>Judge: _____<br><br><u>**JURY DEMAND**</u> |

**Third Amended Complaint – Class Action**
**Page 1 of 34**

**EXHIBIT**

tabbies®

A

Mar 04 09 11:29a    Dan Monaco         407-351-3025        p.3
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 2 of 52 PageID #:113

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 2 of 34

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs Bradley J. Schaufenbuel ("Brad S"); Robert N.
Schaufenbuel ("Robert S"); John and Sarah Reed, IV ("Reed IV"); John and Jan
Reed, III ("Reed III"); American Mass Media Corporation ("AMMC"); and Roberta K.
Clark ("Clark"), on behalf of themselves and all others similarly situated
(collectively referred to as "Plaintiffs" or "Investors"), by and through their
attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and for
their Class Action Complaint against Defendants, InvestForClosures Financial,
L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC;
InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI
Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty
Opportunities International S. de R.L. de C.V.; Realty Opportunities International;
ROI Mexico; Sands of Gold Estates; Francis X. Sanchez aka Frank Sanchez; James
D. Bourassa aka Jim Bourassa; Scott D. Wessel; Deana M. Guidi; Daniel E.
Fitzgerald aka Dan Fitzgerald; Scott R. Slagle; Darcey L. Martin; Tom Rodriguez;
and John Does 1 - 30 (collectively referred to as "IFC" or "Defendants"), hereby
state and allege for their class action as follows:

### I.    NATURE OF THE ACTION

1.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the
Federal Rules of Civil Procedure on behalf of themselves and all persons who
invested money with IFC during the period March 14, 2000 through September 12,
2008. Excluded from the class is any member, officer or director of Defendants.

**Third Amended Complaint – Class Action**
**Page 2 of 34**

Mar 04 09 11:29a    Dan Monaco        407-351-3025        p.4
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 3 of 52 PageID #:114

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 3 of 34

2.    IFC, through nearly constantly changing and involuntarily dissolved business organizations and names, used their website and other marketing materials to solicit individuals and businesses to invest money in IFC's purported business of renovating foreclosed and distressed properties and reselling the properties for a profit.

3.    IFC failed to register the securities and investment vehicles it issued with any proper agency or authority in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 and virtually each legal entity that IFC formed was involuntarily dissolved by the Illinois Secretary of State.

4.    IFC systematically misrepresented returns and interest that would be earned on the securities and investment vehicles purchased by the Plaintiffs and, indeed, never purchased or renovated any properties, distressed or otherwise, as claimed in its marketing materials and website.

5.    In a Ponzi scheme much like that of Bernard Madoff, IFC would attract an investor and use the funds obtained from Investor B to payoff a portion of debt owed to Investor A and then continued in like manner with subsequent investors, such that most investors never received any payoff in accordance with the terms of the purchased investment vehicle.

6.    IFC continued to promise investors that their return would be forthcoming, even convincing certain investors to roll over their investments into other investment vehicles that were not backed up by any true properties or investments.

**Third Amended Complaint – Class Action**
**Page 3 of 34**

Mar 04 09 11:30a     Dan Monaco                407-351-3025        p.5
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 4 of 52 PageID #:115

Case 1:09-cv-01221    Document 1    Filed 02/25/20ᴏᴏ    Page 4 of 34

7.      Ultimately, IFC took over $8 million in investments from Plaintiffs and have not repaid any of the debts or interest owed.  Instead, IFC has formed a new company in Mexico which purchased a 27 acre property in Mexico that is not tied to any of the investment vehicles.

8.      To date, none of the investors / Plaintiffs has received their full promised return on their investment and IFC has spent their money on property that was never the purpose explained in any of the marketing materials, which was rehabbing distressed properties in the United States.

## II.    JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to 28 U.S.C. §1331 as this case arises under, *inter alia,* the Securities Act of 1933, 15 U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.*

10.     Venue is proper pursuant to 28 U.S.C. §1391 as many of the Defendants reside in the District and a substantial part of the events or omissions giving rise to the claims occurred in the District.

## III.    PARTIES

11.     Bradley J. Schaufenbuel ("Brad S") is an individual residing at 5009 Cornell Avenue, Downers Grove, Illinois 60515-4314.

12.     Robert N. Schaufenbuel ("Robert S") is an individual residing at 2340 16th Street N.W., Cedar Rapids, Iowa 52405-1172.

13.     John and Sarah Reed, IV ("Reed IV") are married individuals residing at 2304 S. 79th Ave, Yakima, WA 98903.

**Third Amended Complaint – Class Action**
**Page 4 of 34**

Mar 04 09 11:30a      Dan Monaco        407-351-3025      P.6
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 5 of 52 PageID #:116

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 5 of 34

14.     John and Jan Reed, III ("Reed III") are married individuals residing at 19311 NE 190th St, Woodinville, WA 98077.

15.     American Mass Media Corporation ("AMMC") is an Illinois corporation with its principal place of business located at 207 E. Ohio St. #218, Chicago, IL 60611.

16.     Roberta K. Clark ("Clark") is an individual residing at 14909 Oakbury Drive, La Mirada, CA 90638.

17.     At all relevant times herein, InvestForClosures Financial, L.L.C. was a limited liability company organized under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098. InvestForClosures Financial, L.L.C. was involuntarily dissolved by the Illinois Secretary of State on September 12, 2008.

18.     At all relevant times herein, ROI Developers was an assumed name of InvestForClosures Financial, L.L.C.

19.     At all relevant times herein, InvestForClosures was an assumed name of InvestForClosures Financial, L.L.C.

20.     InvestForClosures.com, LLC was a limited liability company organized under the laws of Illinois and with its principle office located at 109 Douglas Avenue, Elgin, Illinois 60120. InvestForClosures.com, LLC was involuntarily dissolved by the Illinois Secretary of State on August 28, 2001.

21.     At all relevant times herein, InvestForClosures Ventures, LLC was a limited liability company organized under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098.

**Third Amended Complaint – Class Action**
**Page 5 of 34**

InvestForClosures Ventures, LLC was involuntarily dissolved by the Illinois Secretary of State on June 13, 2008.

22.    At all relevant times herein, Sands of Gold Escrow was an assumed name of InvestForClosures Ventures, LLC.

23.    At all relevant times herein, Sands of Gold was an assumed name of InvestForClosures Ventures, LLC.

24.    At all relevant times herein, ROI Financial was an assumed name of InvestForClosures Ventures, LLC.

25.    At all relevant times herein, Realty Opportunities International Escrow 23 was an assumed name of InvestForClosures Ventures, LLC.

26.    At all relevant times herein, ROI Escrow was an assumed name of InvestForClosures Ventures, LLC.

27.    Realty Opportunities International S. de R.L. de C.V. is, upon information and belief, a corporation organized under Mexican law and has its principal place of business located at 123 S. Eastwood Drive, #117, Woodstock, IL 60098 and maintains a website at www.roimexico.com.

28.    Realty Opportunities International is an assumed name of Realty Opportunities International S. de R.L. de C.V.

29.    ROI Mexico is an assumed name of Realty Opportunities International S. de R.L. de C.V.

30.    Sands of Gold Estates is an assumed name of Realty Opportunities International S. de R.L. de C.V.

**Third Amended Complaint – Class Action**
**Page 6 of 34**

Mar 04 09 11:31a      Dan Monaco           407-351-3025           p.8
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 7 of 52 PageID #:118

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 7 of 34

31.    Francis X. Sanchez aka Frank Sanchez ("Sanchez") is an individual residing at 710 Lake Avenue, Woodstock, McHenry County, Illinois 60098-4255. At all relevant times herein, Sanchez was the Chief Executive Officer of all of the IFC entities.

32.    James D. Bourassa aka Jim Bourassa ("Bourassa") is an individual residing at 254 Gregory M. Sears Dr., Gilberts, Kane County, Illinois 60136-4024. At all relevant times herein, Bourassa was the President and Registered Agent of the IFC entities.

33.    Scott D. Wessel ("Wessel") whose last known address is 664 Helen Drive, Northbrook, IL 60062 and who has a webpage on Facebook at URL: http://www.facebook.com/people/Scott-Wessel/504252536. At all relevant times herein, Wessel was Vice President of the IFC entities.

34.    Deana M. Guidi ("Guidi") is an individual who, upon information and belief, resides at 6511 Edgeworth Drive, Orlando, FL 32819. At all relevant times herein, Guidi was General Counsel of the IFC entities and was duly licensed to practice law in Illinois from May 10, 2001 until she voluntarily retired her license in 2008. Upon information and belief, she also resides sporadically with her parents in Sun City, Huntley, IL.

35.    Daniel E. Fitzgerald aka Dan Fitzgerald ("Fitzgerald") is an individual who, upon information and belief, resides at 31770 N. Pineview Blvd., Lakemoor, IL 60051. At all relevant times herein, Fitzgerald was an employee, officer or agent of the IFC entities.

**Third Amended Complaint – Class Action**
**Page 7 of 34**

Mar 04 09 11:31a      Dan Monaco              407-351-3025        p.9
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 8 of 52 PageID #:119

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 8 of 34

36.     Scott R. Slagle ("Slagle") is an individual who, upon information and belief, resides at 38W512 McQuire Place, Geneva, IL 60134. At all relevant times herein, Slagle was an employee, officer or agent of the IFC entities.

37.     Darcey L. Martin ("Martin") is an individual who, upon information and belief, resides at 9507 Waterford Oaks Blvd., Winter Haven, FL 33884. At all relevant times herein, Martin was a member or principal of the IFC entities.

38.     Tom Rodriguez ("Rodriguez") is currently employed as a staff accountant with Consolidated School District #158 and maintains his office at 650 Academic Drive, Algonquin, IL 60102. At all relevant times herein, Rodriguez was the staff accountant for the IFC entities.

39.     John Does 1 – 30 are persons who are owners, members, principals and/or agents of the IFC entities and/or who are interested in the subject matter of this case whose identities are as yet unknown and whom are named herein pursuant to 735 ILCS 5/2-413.

## IV.   CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008 (the "Class"). Excluded from the Class is any member, officer or director of Defendants.

41.     The Class consists of more than fifty and may be in excess of one hundred persons located throughout the United States, thus, the members of the Class are so numerous and geographically separated that joinder of all Class

**Third Amended Complaint – Class Action**
**Page 8 of 34**

Mar 04 09 11:32a    Dan Monaco         407-351-3025      p.10
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 9 of 52 PageID #:120

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 9 of 34

members is impracticable. The exact number of Class members is not presently known to Plaintiffs, but can be readily determined by appropriate discovery.

42.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex securities and fraud litigation. Named Plaintiffs' damages are similar, if not identical, in nature to the members of the Class and have no interests that are adverse or antagonistic to those of the Class.

43.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by some individual Class members may be relatively small, the expense and burden of multiple individual litigations make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged herein on their own.

44.    Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class. Among the questions of law and fact common to the Class are:

a.    Whether Defendants violated the Securities Act of 1933, 15 . U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* by their acts and omissions and otherwise committed fraud upon the Plaintiffs;

b.    Whether Defendants breached their fiduciary duties owed to Plaintiffs;

c.    Whether Plaintiffs and the members of the Class have sustained injuries proximately caused by Defendants' acts and omissions; and

**Third Amended Complaint – Class Action**
**Page 9 of 34**

Mar 04 09 11:32a      Dan Monaco        407-351-3025        p.11
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 10 of 52 PageID #:121

Case 1:09-cv-01221     Document 1     Filed 02/25/2009     Page 10 of 34

    d.     Whether there are damages and adequate remedies at law for Plaintiffs.

    45.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## V.    CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE SECURITIES ACT OF 1933

    46.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

    47.    During the period March 14, 2000 through September 12, 2008, IFC issued and sold for its own benefit, with the aid and participation of Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez and John Does 1 – 30 (hereinafter referred to as the "IFC principals") acting in their capacities as officers and members of IFC, investment certificates to members of the Class representing indebtedness of IFC to the individual investors identified on the certificates.

    48.    From March 14, 2000 through September 12, 2008, IFC, by and through the IFC principals sold and offered to sell notes to the general public ("Investors") and used interstate commerce to effectuate such sales and marketing, involving the purchase, rehabilitation, and resale of foreclosed or distressed properties.

    49.    IFC used its website and other marketing materials in order to solicit Investors. IFC's website and marketing materials made representations that IFC was investing in foreclosed and distressed properties and that investments would

**Third Amended Complaint – Class Action**
**Page 10 of 34**

Mar 04 09 11:39a   Dan Monaco   407-351-3025   p.12
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 11 of 52 PageID #:122

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 11 of 34

be secured by such real estate. The representations included statements such as "Real Estate Secured Investments"; "Secure Investment – Approximately 90% of investors' funds goes toward the purchase of real estate"; "Investors that invest $10,000 or more are paid 28% interest. Investors below $10,000 receive 20% interest."

50.    In its marketing materials and "prospectus", IFC represented to Investors that "You will receive a privatized security in accordance with SEC REG D RULE 504" and "IFC' securities are highly speculative, and have not been and will not be registered with the SEC or any other securities agency of and State. Note: Under SEC Reg D, Rule 504 no regulation is necessary," thereby asserting that the investment notes and certificates being issued by IFC were exempt securities.

51.    IFC solicited Investors to purchase investment notes and certificates, some for a set term ranging from ninety (90) days to five (5) years and having a fixed Annual Percentage Rate ("APR") ranging from 2.9% to 20.0%.

52.    On September 26, 2003, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers, and members of IFC, investment certificate number IFCF092603-01, representing account number 104101, to Robert Schaufenbuel and Bradley Schaufenbuel for a total consideration of $35,000.00. (A true and correct copy of investment certificate IFCF092603-01 is attached hereto and incorporated herein by reference as Exhibit A.)

53.    On November 9, 2004, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers

**Third Amended Complaint – Class Action**
**Page 11 of 34**

and members of IFC, investment certificate number IFCF110904-01, representing account number 104149, to AMMC for a total consideration of $50,000.00. (A true and correct copy of investment certificate IFCF110904-01 is attached hereto and incorporated herein by reference as Exhibit B.)

54.    On July 18, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV071805-01, representing account number 204027, to AMMC for a total consideration of $20,000.00. (A true and correct copy of investment certificate IFCV071805-01 is attached hereto and incorporated herein by reference as Exhibit C.)

55.    On April 6, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, an investment certificate, representing account number 204017, to John and Sarah Reed, IV for a total consideration of $40,000.00. On September 12, 2005, IFC sold another investment certificate on the same account number 204017 to Reed IV for an additional consideration of $40,000.00, for a total investment by Reed IV of $80,000.00. (A true and correct copy of the IFC Statement for Reed IV dated March 3, 2008 is attached hereto and incorporated herein by reference as Exhibit D.)

56.    On March 30, 2007, John and Sarah Reed, IV invested an additional $10,000.00 in IFC's newly created Special Opportunities Plan ("SOP") and moved his accrued interest in IFC to the SOP account.

**Third Amended Complaint – Class Action**
**Page 12 of 34**

57.     On February 17, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV021705-01, representing account number 204013, to John and Jan Reed, III for a total consideration of $50,000.00. (A true and correct copy of investment certificate IFCV021705-01 is attached hereto and incorporated herein by reference as Exhibit E.)

58.     On July 13, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV071305-01, representing account number 204022, to Roberta K. Clark, for a total consideration of $70,000.00. (A true and correct copy of investment certificate IFCV071305-01 is attached hereto and incorporated herein by reference as Exhibit F.)

59.     In many cases, IFC, by and through its principals, had Investors execute a Power of Attorney in favor of Sanchez relating to their investment in IFC. (A true and correct copy of Clark's executed Power of Attorney is attached hereto as Exhibit G.)

60.     At the end of each of the Investors' investment terms, each Investor attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

61.     When the Investors attempted to collect the balance owed on their respective accounts, the IFC principals refused to return the principal or interest owed on the notes and certificates, despite the Investors' repeated requests.

**Third Amended Complaint — Class Action
Page 13 of 34**

62.    Rather, the IFC principals, speaking through Frank Sanchez, told Investors that IFC did not have sufficient cash available to pay the Investors the sums acknowledged as due.

63.    Some Investors were told to 'roll over' or reinvest their investments in other investment notes or certificates with IFC based on representations of an even larger return on their investment at a later date. Many Investors did reinvest their investments in other IFC notes or certificates on this basis.

64.    IFC was in default on the Investors' investment notes and certificates.

65.    IFC, through its principals, solicited additional investors and did not advise such additional investors that IFC was in default on prior obligations and indeed represented to the additional investors that IFC was a prospering venture.

66.    IFC failed to disclose that it had defaulted on prior notes payable to Investors.

67.    IFC never registered any of its investment notes or certificates with the Illinois Securities Department or any other government unit or agency.

68.    IFC did not use a securities broker or other intermediary, but rather, sold these investment notes and certificates direct to the public.

69.    IFC never invested any of Investors' money in foreclosed or distressed real estate properties. Rather, IFC took the accumulated investments and through its Mexico company purchased 27 acres of undeveloped property in Mexico contrary to all representations made to Investors.

70.    To date, Investors have not received the principal or interest on their investments and most have lost contact with IFC.

**Third Amended Complaint – Class Action**
**Page 14 of 34**

71.    On November 9, 2007, the Illinois Securities Department as part of the Illinois Secretary of State issued a Temporary Order of Prohibition (the "ISD Order") against IFC prohibiting any further sale or offer of these securities.  (A true and the ISD Order is attached hereto and incorporated herein by reference as Exhibit H.)

72.    Upon information and belief, IFC continued to sell and offer to sell notes and certificates to the public after issuance of and in violation of the ISD Order.

73.    The ISD Order found that the investment notes and certificates issued by IFC to Investors were not exempt from registration or the other requirements of the Act and that IFC made false and misleading statements to Investors relating to its exempt status.  (Exhibit H.)

74.    Some Investors sent letters requesting payout on their investments or completed IFC's own form entitled "Principal and Interest Withdrawal Request Form" ("IFC's Withdrawal Form") and sent them to IFC.

75.    On August 18, 2005, Robert S and Brad S wrote to IFC c/o Slagle requesting return of their principal plus accrued interest upon expiration of the term of their investment on September 26, 2005.  (A true and correct copy of the Schaufenbuel's letter is attached hereto and incorporated herein by reference as Exhibit I.)

76.    On or about November 30, 2007, John Reed III completed IFC's Withdrawal Form and sent it to IFC requesting withdrawal of his principal plus interest as of February 17, 2008.  (A true and correct copy of the Reed III's form is attached hereto and incorporated herein by reference as Exhibit J.)

Mar 04 09 11:35a          Dan Monaco          407-351-3025          p.17
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 16 of 52 PageID #:127

Case 1:09-cv-01221     Document 1     Filed 02/25/20..     Page 16 of 34

77.   The IFC entities that sold and issued the investment notes and
certificates to Investors no longer exist.

78.   At the urging of IFC and the IFC principals, some Plaintiffs rolled over
or reinvested their investments in other unregistered securities issued by IFC,
which have also passed their termination dates.

79.   Despite the demands, IFC has refused and failed to pay Plaintiffs
according to the terms of the securities.

80.   IFC never invested in foreclosed or distressed real estate and never
rehabilitated any properties as represented in the prospectus provided to Plaintiffs.

81.   The activities described above constitute the offer and sale of a
security as those terms are defined in §§77b, e and f of the Securities Act of 1933,
15 U.S.C. §77a *et seq.* (hereinafter the "1933 Act").

82.   Each of the Defendants is a "Controlling person" as that term is
defined by §77o of the 1933 Act.

83.   §77e of the 1933 Act prohibits the sale or delivery after sale of
unregistered securities.

84.   §77f of the 1933 Act requires registration of securities like those
issued by IFC with the Securities and Exchange Commission ("SEC").

85.   §77j of the 1933 Act requires certain information to be provided in any
prospectus for selling securities.

86.   §77l of the 1933 Act provides that any person who violates §77e or
provides a prospectus containing misleading or false statements shall be liable to
those to whom such person has sold the securities.

**Third Amended Complaint – Class Action
Page 16 of 34**

Mar 04 09 11:35a    Dan Monaco    407-351-3025    p.18
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 17 of 52 PageID #:128

Case 1:09-cv-01221    Document 1    Filed 02/25/200⌐    Page 17 of 34

87.    All of the IFC entities that issued the securities failed to make the required filings with the Illinois Secretary of State and as a result they have been involuntarily dissolved by the Secretary of State.

88.    §77q of the 1933 Act prohibits any person to use interstate commerce for purposes of perpetrating a fraud or deceit upon investors with the intent of selling securities.

89.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to employ any device, scheme, or artifice to defraud."

90.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

91.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

**Third Amended Complaint – Class Action**
**Page 17 of 34**

Mar 04 09 11:36a    Dan Monaco    407-351-3025    p.19
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 18 of 52 PageID #:129

Case 1:09-cv-01221    Document 1    Filed 02/25/20ᴗᴗ    Page 18 of 34

92.    By virtue of the conduct of IFC and its principals, Defendants violated §§77e, 77f, 77j, 77l, and 77q of the 1933 Act.

93.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the investment notes and certificates and such debts are now past due and owing.

94.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00 ) with IFC and have not received any of that investment back.

95.    Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1933 Act.

### COUNT II – VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

96.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

97.    The activities described above constitute the offer and sale of a security as those terms are defined in §§78c and l of the Securities Exchange Act of 1934, 15 U.S.C. §78a et seq. (hereinafter the "1934 Act").

98.    Each of the Defendants is a "Controlling person" as that term is defined by §78t of the 1934 Act.

99.    §78j of the 1934 Act states that "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . . to use or employ, in connection with the purchase or sale of . . . any security not so registered, . . . any manipulative or deceptive device

**Third Amended Complaint – Class Action**
**Page 18 of 34**

Mar 04 09 11:36a    Dan Monaco    407-351-3025    p.20
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 19 of 52 PageID #:130

Case 1:09-cv-01221    Document 1    Filed 02/25/200~    Page 19 of 34

or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

100.  §78l of the 1934 Act requires registration of securities like those issued by IFC with the Securities and Exchange Commission ("SEC").

101.  §78r of the 1934 Act prohibits misleading statements in the sale or offer of sale of securities.

102.  By virtue of the conduct of IFC and its principals, Defendants violated §§78j, 78l, and 78r of the 1934 Act.

103.  Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities.

104.  Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00 ) with IFC and have not received any of that investment back.

105.  Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1934 Act.

## COUNT III – FRAUD

106.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

107.  Defendants made numerous false statements of material facts to Plaintiffs, including *inter alia* that Defendants would invest Plaintiffs' money in rehabilitating foreclosed or distressed properties and resell them for profit; that

**Third Amended Complaint – Class Action**
**Page 19 of 34**

Mar 04 09 11:36a    Ben Monaco    407-351-3025    p.21
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 20 of 52 PageID #:131

Case 1:09-cv-01221    Document 1    Filed 02/25/20⌐⌐    Page 20 of 34

Plaintiffs could expect anywhere from 9 – 21% return on their investment; that within five (5) years of their investment Plaintiffs would receive their principal plus interest; that Plaintiffs could reinvest after the five (5) year period into another plan which would increase or boost their returns and in some cases double their returns; and that the securities offered by Defendants were exempt from state or federal securities laws and that they were not regulated by those laws.

108.    Defendants knew that each of their statements and representations to Plaintiffs were false because Defendants never invested in or rehabilitated rehabilitating foreclosed or distressed properties, never intended in returning Plaintiff's investments, and that this was all a scheme to take investors' money to purchase a plot of land in Mexico which Defendants believed to be free of Plaintiffs' claims and not secured by the securities issued by Defendants to Plaintiffs.

109.    Defendants made these statements and representations to Plaintiffs for the purpose of inducing them to invest money in IFC and the scam.

110.    Plaintiffs relied on the truth of Defendants' representations about IFC evidenced by their large investments of money in IFC.

111.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the conduct of IFC and its principals.

**Third Amended Complaint – Class Action**
**Page 20 of 34**

Mar 04 09 11:37am  BBB? MENARD  407-351-3025  p.22
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 21 of 52 PageID #:132

Case 1:09-cv-01221    Document 1    Filed 02/25/200⌣    Page 21 of 34

## COUNT IV – BREACH OF FIDUCIARY DUTY

112.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

113.  By soliciting investments for IFC, the IFC principals created a fiduciary relationship and owed a fiduciary duty to the Plaintiffs as investors in IFC.

114.  IFC and the IFC principals should have treated the money invested by Plaintiffs as if it was their own money as Plaintiffs placed trust in IFC and the IFC principals that Plaintiffs' money was going to be used for the purpose for which it was invested, namely to rehabilitate foreclosed and distressed properties.  Even those Plaintiffs who invested money for the development of the Mexico property believed their money was going to be used for such development.

115.  IFC and the IFC principals breached their fiduciary duties to Plaintiffs by failing to invest Plaintiffs' money in the rehabilitation business and by taking the money and transferring it to a Mexico company for purposes of buying the plot of land in Mexico with no intent on returning Plaintiffs' investments or paying the interest or return on such investments.

116.  Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the breach of fiduciary duties by IFC and IFC's principals.

**Third Amended Complaint – Class Action**
**Page 21 of 34**

## COUNT V – CIVIL CONSPIRACY

117. Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

118. The IFC principals include Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez and John Does 1 – 30, which is a combination of two or more persons.

119. The IFC principals sought investments from Plaintiffs by falsifying the purpose of the investments, namely to restore foreclosed and distressed properties and resell them for a profit, so that they could unlawfully purchase property in Mexico shielded from the claims of Plaintiffs for the return on their investments.

120. The IFC principals set up phony shell limited liability companies and their d/b/a's, namely InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates; so that they could appear legitimate to Plaintiffs and Plaintiffs would be enticed into investing money in these shell companies, and then the IFC principals could take the money, set up the Mexican company of Realty Opportunities International S. de R.L. de C.V. that had no ties to Plaintiffs' investments, and purchase property in the name of the Mexican company, thereby owning an asset that was shielded from the investors' interests.

**Third Amended Complaint – Class Action**
**Page 22 of 34**

Mar 04 09 11:39a   Dan Monaco      407-351-3025      p.24
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 23 of 52 PageID #:134

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 23 of 34

121.   The IFC principals all benefitted from this because they (a) have an interest in the Mexican property and (b) they have been paid money, either as a principal of IFC or as fees for services, out of the Plaintiffs' investments.

122.   Thus, essentially the IFC principals conspired to take Plaintiffs' money and steal it to buy their own asset for which the IFC principals believed could not be attached by Plaintiffs.

123.   To further this conspiracy, IFC principals made false representations to Plaintiffs regarding their investments; lied about their securities; lied about the use of the investments; lied to Plaintiffs when Plaintiffs requested the return of their money; lied to Plaintiffs about the status of the shell companies; lied to Plaintiffs about the Mexican property; and continued to advise the Plaintiffs to hold off on demanding return of their money and lied that Plaintiffs would ultimately be repaid in multiples of their original investment as long as Plaintiffs didn't make legal claims against the IFC principals.

124.   Plaintiffs have been injured by the conspiracy of the IFC principals in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the civil conspiracy by IFC and IFC's principals.

**Third Amended Complaint – Class Action**
**Page 23 of 34**

## COUNT VI – VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT
## TRANSFER ACT

125.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

126.  IFC and the IFC principals have transferred Plaintiffs' investments and all assets of the United States-based IFC companies out of their respective names and to the Mexican company of Realty Opportunities International S. de R.L. de C.V., which has used those investments and assets to purchase 27 acres of undeveloped property in Mexico.

127.  In addition, the IFC principals have transferred many of their personal assets out of their own individual names and into names of relatives or other companies.

128.  For example, upon information and belief, Bourassa has transferred ownership of the property located at 254 Gregory M Sears Drive, Gilberts, Illinois 60136-4024, from his own name to his wife's name with the purpose of avoiding creditors.

129.  By making such transfers, IFC and the IFC principals have rendered themselves insolvent or without sufficient assets to cover the claims of investors.

130.  IFC and the IFC principals have made such transfers with the actual intent to hinder, delay, or defraud Plaintiffs, all of whom as investors in IFC are creditors of IFC.

**Third Amended Complaint – Class Action**
**Page 24 of 34**

Mar 04 09 11:38a    Dan Manago    407-351-3025    p.26
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 25 of 52 PageID #:136

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 25 of 34

131. IFC and the IFC principals did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when IFC and the IFC principals were engaged in the purported business of rehabilitating foreclosed and distressed properties for which there are no remaining assets.

132. IFC and the IFC principals did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when they intended to incur, or believed or reasonably should have believed that they would incur, debts to Investors beyond their ability to pay as they became due.

133. As Plaintiffs' investments became due, IFC and the IFC principals were unable to pay the investments and interest due to Plaintiffs according to the terms of the investment certificates.

134. Plaintiffs are creditors of Defendants and Defendants are debtors of Plaintiffs as those terms are defined by §2 of the Uniform Fraudulent Transfer Act, 740 ILCS 160/ et seq. (hereinafter "UFTA").

135. The transfer of IFC's assets and money invested by Plaintiffs to the establishment of Realty Opportunities International S. de R.L. de C.V. and the purchase of 27 acres of undeveloped property in Mexico is a transfer of assets as defined by §§2 and 7 of UFTA.

136. §5 of UFTA provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the

**Third Amended Complaint – Class Action**
**Page 25 of 34**

transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor."

137. §5 of UFTA provides further that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

138. IFC and the IFC principals have violated UFTA and have made transfers that are fraudulent as to Plaintiffs.

139. The transfer of IFC's assets and money invested by Plaintiffs to the establishment of Realty Opportunities International S. de R.L. de C.V. and the purchase of 27 acres of undeveloped property in Mexico is fraudulent as to Plaintiffs, and such transfer(s) should be either avoided or the Mexican property should be attached to preserve the claims of Plaintiffs and a receiver or trustee should be appointed to take over the property.

140. Further, Defendants should be enjoined from any further action, including without limitation sale, transfer, or dissipation, related to the Mexican property or any assets of Realty Opportunities International S. de R.L. de C.V.

**Third Amended Complaint – Class Action**
**Page 26 of 34**

## COUNT VII – UNJUST ENRICHMENT

141.   Plaintiffs repeat and restate all of the allegations of the preceding
paragraphs of this Complaint and incorporates them herein by reference as if set
forth in full.

142.   IFC and the IFC principals have unjustly retained the money invested
by Plaintiffs without repaying the investments or interest as required by the
investment certificates and agreements given to Plaintiffs.

143.   IFC and the IFC principals have taken Plaintiffs' money and invested it
in the Mexican property and benefitted by enriching themselves to the detriment of
Plaintiffs.

144.   By retaining the benefit of Plaintiffs' investments without paying them
interest or repaying the principal as IFC and the IFC principals agreed to do, IFC
and the IFC principals are thereby unjustly enriched violating fundamental
principles of equity and justice.

145.   The value of IFC's unjustly retained benefit is in excess of million
dollars ($8,000,000.00).

## COUNT VIII – CONSTRUCTIVE TRUST

146.   Plaintiffs repeat and restate all of the allegations of the preceding
paragraphs of this Complaint and incorporates them herein by reference as if set
forth in full.

147.   Defendants have received money from Plaintiffs as investments into a
real estate rehabilitation business.

**Third Amended Complaint – Class Action**
**Page 27 of 34**

Mar 04 09 11:40a      Dan     Jaco      407-351-3025      p.29
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 28 of 52 PageID #:139

Case 1:09-cv-01221      Document 1      Filed 02/25/2009      Page 28 of 34

148.   Defendants have also received substantial confidential information from Plaintiffs and in some cases powers of attorney from Plaintiffs.

149.   Defendants have exerted control over the investment money and the information provided by Plaintiffs, yet refuse and have failed to return any of the investment money, interest or the assets, specifically without exclusion the Mexican property, in which Plaintiffs have ownership rights.

150.   Defendants have committed numerous wrongful acts against Plaintiffs regarding the investment money and information, including without limitation providing false and misleading information about the investments, falsifying documents and making false representations on their website and marketing materials, lying to Plaintiffs about the investments, and allowing the companies in which Plaintiffs invested to be involuntarily dissolved by the Illinois government.

151.   Defendants acts towards Plaintiffs have been intentional, willful, and in derogation of and a deprivation of Plaintiffs' lawful right and possession to their money or the assets in which their money was invested.  IFC, without legal right, withheld possession of the money and assets from Plaintiffs.

152.   It would be unjust and inequitable if Defendants were allowed to retain control or custody over this ill-gotten money and assets.

153.   Plaintiffs reasonably fear that Defendants will either transfer or otherwise interfere with Plaintiffs' rights in the Mexican property and that Plaintiffs may be further harmed by Defendants attracting new investors into their scheme.

**Third Amended Complaint – Class Action**
**Page 28 of 34**

154.  Plaintiffs are entitled to have the Court impose a constructive trust over the Mexican property to protect their rights and their investment money until such time as this matter is resolved.

### COUNT IX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

155.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

156.  Defendants have employed deceptive acts and practices, including without limitation false representations about investing in foreclosed or distressed properties to make a profit and misleading and false representations about the securities issued in exchange for money invested by Plaintiffs, in order to solicit investment of money by Plaintiffs.

157.  Defendants intended Plaintiffs to rely on these deceptive acts and practices so that Plaintiffs would invest money in Defendants' phony business of rehabilitating properties.  Rather, Defendants intended to take Plaintiffs' money to invest in the property in Mexico to be shielded from Plaintiffs' claims on their investments.

158.  Defendants' deceptions took place in the course of trade and commerce as Defendants had set up shell companies to appear legitimate to Plaintiffs and to attract investments into Defendants' phony business.

159.  Defendants' conduct constitutes an unfair or deceptive acts or practices as defined by §2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.* (hereinafter the "CFA").

**Third Amended Complaint – Class Action**
**Page 29 of 34**

160.  Defendants, by their conduct as detailed above, have violated the CFA and Plaintiffs have been harmed as a direct and proximate result of such violations.

161.  Plaintiffs are entitled to all remedies available under the CFA.

## COUNT X – PIERCING THE ORGANIZATIONAL VEIL

162.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

163.  Defendants set up various shell companies, including without limitation InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates.

164.  Defendants disregarded the separate identity and entity of these named companies and as a result each of these companies has been involuntarily dissolved by the Illinois Secretary of State.

165.  The Illinois Securities Department, a division of the Illinois Secretary of State, issued a cease and desist order for Defendants to stop issuing securities and acting in the name of these companies.

166.  Defendants have continued to operate using these entity names, despite their dissolution and the cease and desist Order issued by the Illinois Securities Department.

**Third Amended Complaint – Class Action**
**Page 30 of 34**

Mar 04 09 11:41a        Dan     naco           407-351-3025          p.32
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 31 of 52 PageID #:142

Case 1:09-cv-01221    Document 1    Filed 02/25/2009    Page 31 of 34

167.  Defendants have treated these companies as non-entities and rather as mere extensions of their own individual acts.

168.  The IFC principals, in their individual capacities and as members of the shell companies, have also committed fraud upon Plaintiffs relating to the investment of money in these companies.

169.  In every way, the IFC principals have acted on their own behalf and have disregarded the separate legal entities of the named companies.

170.  Allowing the IFC principals as individuals to avoid liabilities that they have created by acting with disregard to the formal entities of the named companies would create an inequitable result in this case.

171.  As such, this Court should pierce through those false company shells and impose any and all liabilities incurred on behalf of the IFC companies to the IFC principals in their individual and personal capacities.  Plaintiffs should have recourse against the IFC principals and their personal assets so as to enable a just and equitable result for the liabilities incurred.

## COUNT XI – CONVERSION

172.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

173.  Plaintiffs have a right in their investments and the interest earned on those investments according to the securities issued by IFC.

174.  Plaintiffs' rights in such money is immediate, as all of the securities issued have come to term, and such rights are absolute, unconditional and not

**Third Amended Complaint – Class Action**
**Page 31 of 34**

Mar 04 09 11:41a     Dan     1aco          407-351-3025          p.33
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 32 of 52 PageID #:143

Case 1:09-cv-01221     Document 1     Filed 02/25/20⌄⌄     Page 32 of 34

dependent on the performance of any act. Plaintiffs' performance was complete upon payment of the money representing their investment.

175.   Defendants have exercised wrongful dominion over Plaintiffs' money and have refused to return the investment or pay the interest as agreed to, despite numerous demands by Plaintiffs to do so.

176.   Defendants have attempted to conceal Plaintiffs' money, deprive Plaintiffs of their rights to possession of their money, and have made unauthorized transactions using Plaintiff's money, including without limitation setting up the Mexican company Realty Opportunities International S. de R.L. de C.V. and purchasing 27 acres of undeveloped property in Mexico.

177.   Defendants have effectively converted Plaintiffs' money and their rights to their principal investment and interest earned into assets owned by IFC and IFC principals, thereby attempting to permanently deprive Plaintiffs' of their rights.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.   That this Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certify the Class as all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008 and excluding any member, officer or director of Defendants;

B.   That this Court award compensatory damages in the amount of $8,000,000.00 and such other damages to be proven at trial plus interest, which amount to be shared by the Class in proportionate shares to their investments;

**Third Amended Complaint – Class Action**
**Page 32 of 34**

Mar 04 09 11:42a          Dan       naco          407-351-3025          p.34
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 33 of 52 PageID #:144

Case 1:09-cv-01221     Document 1     Filed 02/25/20⌣⌣     Page 33 of 34

C.     That this Court grant any and all relief available, alternatively, under
the Securities Act of 1933, 15 U.S.C. §77a *et seq.*, the Securities Exchange Act of
1934, 15 U.S.C. §78a *et seq.*, the Uniform Fraudulent Transfer Act, 740 ILCS 160/
*et seq.*, the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS
505/ *et seq.*, and the other causes of action stated herein so as to provide justice to
the Plaintiffs;

D.     That this Court impose a constructive trust and/or appoint a receiver
for the assets of Defendants, including without limitation the 27 acres of
undeveloped property in Mexico and all assets of Realty Opportunities International
S. de R.L. de C.V., and enjoin Defendants from sale, transfer, or dissipation of the
Mexican property or any assets of Realty Opportunities International S. de R.L. de
C.V.;

E.     That this Court should void the transfer of Plaintiffs' investment money
to the purchase of the property in Mexico and assets of Realty Opportunities
International S. de R.L. de C.V. as a fraudulent transfer as to creditors Plaintiffs and
require Defendants to restore the assets to Plaintiffs or to the companies in which
Plaintiffs invested;

F.     That this Court award exemplary damages in the amount of
$50,000,000.00 as penalty to Defendants and to assure that Defendants do not
further their current fraudulent scheme or perpetuate another fraudulent scheme in
the future;

G.     That this Court award reasonable attorneys' fees, costs and
disbursements; and

**Third Amended Complaint – Class Action**
**Page 33 of 34**

H.    That this Court award such other and further relief as this honorable

Court deems just and equitable.

## VII.  JURY DEMAND

Plaintiffs hereby demand trial by jury on all claims for damages at law.


PLAINTIFFS' CLASS


By: _____
            One of Their Attorneys


Thurston Law Offices, P.C.             Law Offices of Joel M Weiner, LLC
Robert C. Thurston                     Joel M. Weiner
A.R.D.C. No. 6209353                   579 N 1st Bank Drive Suite 150
10469 Bethel Avenue                    Palatine, IL 60067-8102
Huntley, IL 60142                      Phone: 847-654-3105
Phone: 847-659-8613                    Fax: 847-358-7165
Fax: 847-628-0930                      Email: jweiner@jweinerlaw.com
Email: tj@thurstonlawpc.com


**Third Amended Complaint – Class Action**
**Page 34 of 34**

Mar 04 09 11:46a    Dan Monaco    407-351-3025    p.2
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 35 of 52 PageID #:146

Case 1:09-cv-01221    Document 1-2    Filed 02/25/2009    Page 1 of 18    A

# EXHIBIT A

09CV1221
JUDGE LEINENWEBER
MAGISTRATE JUDGE NOLAN
BR

InvestForClosures Financial

*This certifies that*

*Robert Schaufenbuel & Bradley Schaufenbuel*

*has invested $35,000
on September 26, 2003
at a term of 2 years
earning 17.9% APR*

Note: Interest payments will be paid monthly. Upon maturity of your investment, unless a withdrawal request has been received, your principal will be reinvested in the same plan at the rate and term posted at that time. A withdrawal of principal requires a 90 day written notice by mail or electronically via email. There are no penalties for early withdrawal. Membership interests are not transferable.

Number: IFCR092603-01

Acct#: 104101

Geo Tree 9/26/03
Date

Signature



EXHIBIT B

IFC InvestForClosures Financial

This certifies that
**American Mass Media Corp.**
*Ianhong Ng*
has invested *$50,000*
On November 09, 2004
at a term of *5 years*
earning *9.0% APR*

The terms and conditions of this investment are covered under the standard Subscription Agreement and your individual account documents. Membership not transferable.

Number: IFCF110904-01
Account# 104149

Signature CEO IFCF _____  Date 11/9/04

# EXHIBIT C

**IFC Ventures**

This certifies that

*American Mass Media Corporation*

has invested $20,000.00

On July 18, 2005

for a term of 5 years

earning 20% APR

The terms and conditions of this investment are covered under the standard Subscription Agreement and your individual account documents. Membership not transferable.

Number: IFCV071805-01
Account# 204027

_____
Signature

CEO-IFCV   7/18/05
Date

# EXHIBIT D

John & Sarah Reed IV
2304 S. 79th Ave.
Yakima, WA  98403

Account #:   204017
Account type: Cash
Term Length:  5 years
(NOTE: interest is compounding)

$160,000  The CEO Bonus (200% bonus on your originally invested principal) that will be paid out to you at the close of your account, or your move to the SOP.  Note that this amount will not accrue interest nor change.  This is a reward for your patience.

Compound Period:          Annual

Nominal Annual Rate:      20.000%

AMORTIZATION SCHEDULE - Normal Amortization

|  | Date | Invest | Return | Interest | Net Change | Balance |
|---|---|---|---|---|---|---|
| Invest | 4/6/2005 | 40,000.00 | | | 40,000.00 | 40,000.00 |
| Invest | 9/12/2005 | 40,000.00 | | 3,484.93 | 43,484.93 | 83,484.93 |
| 1 | 3/29/2007 | | 31,050.97 | 27,566.04 | 3,484.93- | 80,000.00 |
| 2 | 3/31/2008 | | 0.00 | 16,105.21 | 16,105.21 | 96,105.21 |
| Grand Totals | | 80,000.00 | 31,050.97 | 47,156.18 | 96,105.21 | |

An open balance of 96,105.21 still remains.



Mar 04 09 11:48am Ben Monaco 407-351-3025 p.6
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 39 of 52 PageID #:150

Case 1:09-cv-01221 Document 1-2 Filed 02/25/2009 Page 5 of 18



EXHIBIT F

IFC Ventures

This certifies that

*Roberta K. Clark*

has invested
*$70,000*
On July 13, 2005
at a term of 5 years
earning 17% APR

The terms and conditions of this investment are covered under the standard Subscription Agreement and your individual account documents. Member-ship not transferable.

Number: IFCV071305-01
Account# 204022

7/13/05
Date

Signature

Mar 04 09 09:49a BPP MPP360 407-351-3025 p.8
Case 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 41 of 52 PageID #:152

Feb 17 09 11:22p k erle swobodzinski 71 :11376 p.19
Case 1:09-cv-01221 Document 1-2 Filed 02/25/2009 Page 7 of 18

# EXHIBIT G



84 N. Eastwood Dr.
#3015
Woodstock, IL 60098

Toll Free: (877) 610-5982
Office (815) 206-5139
Fax (815) 206-5283

## POWER OF ATTORNEY

In connection with my interest in InvestForClosures Ventures, L.L.C. (the "L.L.C."), acquired or to be acquired pursuant to my subscription for Units in the L.L.C., I hereby irrevocably constitute and appoint Francis X. Sanchez, CEO (the "Managing Member"), with full power of substitution, my true and lawful attorney-in-fact, with full power and authority in my name, place and stead, to admit additional limited partners to the L.L.C., to return capital contributions to partners through redemption, to be my agent for service of process, to file, prosecute, defend, settle or compromise any and all actions at law or suits in equity for or on behalf of the L.L.C. with respect to any claim, demand or liability asserted or threatened by or against the L.L.C., to execute, acknowledge, swear to, deliver, file and record on my behalf in the appropriate public offices and publish (i) the L.L.C.'s Operating Agreement and amendments thereto; (ii) all certificates and other instruments (including but not limited to a Certificate of Limited Liability Corporation and a certificate of doing business under an assumed name) which the Managing Member deems appropriate to qualify or continue the L.L.C. as a Limited Liability Corporation in the jurisdictions in which the L.L.C. may conduct business or which may be required to be filed by the L.L.C. or the partners under the laws of any jurisdiction; (iii) all instruments which the Managing Member deems appropriate to reflect a change or modification of the L.L.C. in accordance with the terms of the L.L.C. Operating Agreement relating to the L.L.C. or any amendment thereto; (iv) all conveyances and other instruments which the Managing Member deems appropriate to reflect the dissolution and termination of the L.L.C., and (v) certificates of assumed name, and to perform any other powers granted to him by the L.L.C. Operating Agreement.

The foregoing grant of authority is a special power of attorney coupled with an interest, is irrevocable, and shall survive my death or incapacity.

Executed this _July_ day of _Oct_, 20 _05_

L.L.C. MEMBER(S):
(If Individual or Joint Partners)

_Roberta K. Clark_
Print Name
_Cynthia Clark Spillane_
Print Name
_Roberta K. Clark_
Signature
_Cynthia Clark Spillane_
Signature

L.L.C. MEMBER(S):
(If Liability Corporation, Plan, Trust or Corporate Partner)

Name

Signature of Authorized Representative

Its

Updated:
May 16, 2005

Web: www.roifinancial.com
Email: Info@roifinancial.com

– 14 –

© 2004-2005 InvestForClosures Ventures, LLC - All Rights Reserved

# EXHIBIT H

STATE OF ILLINOIS
SECRETARY OF STATE
SECURITIES DEPARTMENT

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| James D. Bourassa, | ) |
| | ) |
| Francis X. Sanchez, | ) |
| | ) |
| InvestForClosures Financial, L.L.C. | ) |
| its partners, members, officers and | ) |
| directors, agents, employees, affiliates, | ) |
| successors and assigns | ) |
| d/b/a | ) **File Number: 07-00023** |
| ROI Developers | ) |
| InvestForClosures | ) |
| | ) |
| InvestForClosures Ventures, L.L.C. | ) |
| its partners, members, officers and | ) |
| directors, agents, employees, affiliates, | ) |
| successors and assigns | ) |
| d/b/a | ) |
| Sands of Gold Escrow, | ) |
| Sands of Gold, | ) |
| ROI Financial, | ) |
| Realty Opportunities International | ) |
| Escrow 23, and | ) |
| ROI Escrow. | ) |
| | ) |

## TEMPORARY ORDER OF PROHIBITION

TO RESPONDENT:    James D. Bourassa
254 Gregory M. Sears Drive
Gilberts, IL 60136

Francis X. Sanchez
710 Lake Avenue
Woodstock, Illinois 60098

Temporary Order of Prohibition
-2-

InvestForClosures Financial, L.L.C.
2303 Randall Rd.
PMB 120
Carpentersville, IL 60110

InvestForClosures Financial, L.L.C.
84 N. Eastwood Dr., #3015
Woodstock, IL 60098

InvestForClosures Ventures, L.L.C.
326 Railroad Street
Woodstock, IL 60093

InvestForClosures Ventures, L.L.C.
13908 IL Route 176
Woodstock, IL 60098

On information and belief, I, Jesse White, Secretary of State for the State of Illinois, through my designated representative, who has been fully advised in the premises by the staff of the Securities Department, Office of the Secretary of State, herein find:

1.  Respondent **InvestForClosures Financial, L.L.C.** ("Financial") is an entity with last known addresses of 2303 Randall Rd., PMB 120, Carpentersville, IL 60110 and 84 N. Eastwood Dr., #3015, Woodstock, IL 60098. Financial conducted business with the assumed names of ROI Developers and InvestForClosures.

2.  Respondent **InvestForClosures Ventures, L.L.C.** ("Ventures") is an entity with last known addresses of 326 Railroad Street, Woodstock, IL 60093, and 13908 IL Route 176, Woodstock, IL 60098. Ventures conducted business with the assumed names of Sands of Gold Escrow, Sands of Gold, ROI Financial, Realty Opportunities International Escrow 23, and ROI Escrow.

3.  Respondent **Francis "Frank" X. Sanchez** ("Sanchez") is the Chief Executive Officer of both Financial and Ventures and has a last known address of 710 Lake Avenue, Woodstock, IL 60098.

4.  Respondent **James "Jim" D. Bourassa** ("Bourassa") is the President of both Financial and Ventures, and has a last known address of 254 Gregory M. Sears Drive, Gilberts, IL 60136.

Case 1:09-cv-01221    Document 1-2    Filed 02/25/20u9    Page 10 of 18

Temporary Order of Prohibition

-3-

## COUNT I

### FRAUD IN THE SALE OF SECURITIES
### (Failure to Disclose Default to Subsequent Investors)

5.  From 2001 until the present, Respondent Financial, by and through its officers Sanchez and Bourassa, sold and offered to sell notes to the general public, including residents of the State of Illinois ("Investors") involving the purchase, rehabilitation, and resale of foreclosed properties.

6.  From 2004 until the present, Respondent Ventures, by and through its officers Sanchez and Bourassa, sold and offered to sell notes to the general public, including residents of the State of Illinois involving the purchase, rehabilitation, and resale of foreclosed properties.

7.  Respondents Financial and Ventures solicited Investors to purchase investment notes, some for a set term ranging from ninety (90) days to five (5) years and having a fixed APR ranging from 2.9% to 19.9%.

8.  In or around 2003, at least one Investor ("Investor A") paid to Financial the sum of $35,000 for a note which would mature in three (3) years with a 10% APR, in exchange for which Investor A received a certificate from Financial.

9.  After the end of Investor A's three year investment term, Investor A attempted to redeem his investment. Investor A's Quarterly Statement from Financial represented that at the end of the term, Investor A had accumulated $11,161.50 worth of interest, and that "[a]n open balance of $46,161.50 remains."

10. When Investor A attempted to collect the balance of the account, however, Frank Sanchez and Jim Bourassa, acting as principals of Financial, refused to return Investor A's principal or interest, despite Investor A's repeated requests.

11. Rather, on November 12, 2006 Frank Sanchez, CEO of Financial, represented to Investor A that Financial did not have enough cash available to pay Investor A the sum which Respondents Sanchez, Bourassa, and Financial had previously acknowledged Investor A was due.

12. In November of 2007, subsequent to defaulting on notes payable to Investor A, Frank Sanchez and Jim Bourassa, in connection with an offer made to Investor B, represented to Investor B that Financial and Ventures were prospering entities.

13. Respondents failed to disclose to Investor B that Financial defaulted on a note payable to Investor A.

14. To date, Investor A has still not received the principal or interest on his investment, and has lost contact with Respondents.

Mar 04 09 11:59a Ben Manaca 407 351 3025 p. 12
Case: 1:09-cv-01221 Document #: 17-2 Filed: 03/09/09 Page 45 of 52 PageID #:156

Case 1:09-cv-01221    Document 1-2    Filed 02/25/2009    Page 11 of 18

*Temporary Order of Prohibition*
-4-

15. The activities described above constitute the offer and sale of a security as those terms are defined in Sections 2.1, 2.5, and 2.5a of the Illinois Securities Law of 1953 [815 ILCS 5/1 *et. seq.*] (the "Act").

16. Section 12.F of the Act states that it shall be a violation of the provisions of this Act for any person to, "engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof."

17. Section 12.G of the Act states that it shall be a violation of the provisions of this Act for any person to, "obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

18. Section 12.I of the Act states that it shall be a violation of the provisions of this Act for any person to, "employ any device, scheme, or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

19. By virtue of this conduct, Respondents violated Sections 12.F, 12.G, and 12.I of the Act.

## COUNT II

### FRAUD IN THE SALE OF SECURITIES
#### (False and Misleading Statements Relating to Exempt Status)

20. Paragraphs 1-14 are realleged as if fully set forth herein.

21. On December 29, 2004 Respondent Frank Sanchez, acting on behalf of Ventures as Chief Executive Officer, filed a Form D Notice of Sale of Securities Pursuant to Regulation D Section 4(6), and/or Uniform Limited Offering Exemption.

22. In its "Form D" filing, Respondent Ventures claimed an exemption from registration for the Ventures offering, pursuant to Rule 506 of Regulation D.

23. Respondent Financial also claimed an exemption from registration in the offering materials it distributed to Investors.

24. Respondents generally solicited at least one Illinois resident to invest in Financial and Ventures by advertising the securities in mediums available to the general public, such as magazines and the Internet.

25. Investor A learned of the investment opportunities in Financial and Ventures through an advertisement in a magazine of general circulation.

Temporary Order of Prohibition
-5-

26.    Investor A was not an "accredited" investor under Section 501 of Regulation D, nor did
Investor A have sufficient knowledge and experience in financial and business matters to
be capable of evaluating the merits and risks of the investment.

27.    Investor A had no substantive, pre-existing relationship with Respondents.

28.    Respondents led Investor A to believe that Financial and Ventures were exempt
offerings, when Respondents knew or should have known that Respondents' actions of
generally soliciting investments in Financial and Ventures violated the exemption
requirements of Rule 506 of Regulation D.

29.    The activities described above constitute the offer and sale of a security as those terms
are defined in Sections 2.1, 2.5, and 2.5a of the Illinois Securities Law of 1953 [815 ILCS
5/1 et. seq.] (the "Act").

30.    Section 12.E of the Act provides, inter alia, that it shall be a violation for any person "to
make or cause to be made, in any application, report or document filed under this Act or
any rule or regulation made by the Secretary of State pursuant to this Act, any statement
which was false or misleading with respect to any material fact."

31.    Section 12.F of the Act states that it shall be a violation of the provisions of this Act for
any person to, "engage in any transaction, practice or course of business in connection
with the sale or purchase of securities which works or tends to work a fraud or deceit
upon the purchaser or seller thereof."

32.    Section 12.G of the Act states that it shall be a violation of the provisions of this Act for
any person to, "obtain money or property through the sale of securities by means of any
untrue statement of a material fact or any omission to state a material fact necessary in
order to make the statements made, in light of the circumstances under which they were
made, not misleading."

33.    Section 12.H of the Act states that it shall be a violation of the provisions of this Act for
any person to, "sign or circulate any statement, prospectus, or other paper or document
required by any provision of this Act or pertaining to any security knowing or having
reasonable grounds to know any material representation therein contained to be false or
true."

34.    Section 12.I of the Act states that it shall be a violation of the provisions of this Act for
any person to, "employ any device, scheme, or artifice to defraud in connection with the
sale or purchase of any security, directly or indirectly.

35.    By virtue of this conduct, Respondents violated Sections 12.E, 12.F, 12.G, 12.H, and
12.I of the Act.

Case 1:09-cv-01221     Document 1-2     Filed 02/25/2009     Page 13 of 18

Temporary Order of Prohibition
-6-

## COUNT III

### FAILURE TO REGISTER SECURITIES

36. Paragraphs 1-14 are realleged as if fully set forth herein.

37. The activities described above constitute the offer and sale of a transferable share and therefore a security as those terms are defined in Sections 2.1, 2.5, and 2.5a of the Illinois Securities Law of 1953 [815 ILCS 5/1 *et. seq.*] (the "Act").

38. Section 5 of the Act provides, *inter alia*, that all securities except those exempt under Section 3 or those offered or sold in transactions exempt under Section 4 "shall be registered either by coordination or by qualification prior . . . to their offer or sale" in the State of Illinois.

39. Respondents failed to file with the Secretary of State an application for registration of the securities described above as required by the Act and, as a result, the securities were not registered pursuant to Section 5 of the Act prior to its offer in the State of Illinois.

40. Section 12.A of the Act provides, *inter alia*, that it shall be a violation for any person "to offer or sell any security except in accordance with the provisions of the Act."

41. Section 12.D of the Act provides, *inter alia*, that it shall be a violation for any person "to fail to file with the Secretary of State any application, report or document required to be filed under the provisions of the Act or any rule or regulation made by the Secretary of State pursuant to the Act."

42. By virtue of the foregoing, Respondent violated Sections 12.A and 12.D of the Act.

## COUNT IV

### FAILURE TO FILE WITH THE SECRETARY OF STATE
### (Respondents Frank Sanchez, Jim Bourassa, and Financial)

43. Paragraphs 1-14 are realleged as if fully set forth herein.

44. The activities described above constitute the offer and sale of a transferable share and therefore a security as those terms are defined in Sections 2.1, 2.5, and 2.5a of the Illinois Securities Law of 1953 [815 ILCS 5/1 *et. seq.*] (the "Act").

45. In its offering materials, Financial represented that the investments it offered were exempt from registration.

46. Respondents failed to file a Form D Notice of Sale of Securities Pursuant to Regulation D Section 4(6), and/or Uniform Limited Offering Exemption for the offerings of Financial.

Temporary Order of Prohibition

-7-

47. Section 12.A of the Act provides, *inter alia*, that it shall be a violation for any person "to offer or sell any security except in accordance with the provisions of the Act."

48. Section 12.D of the Act provides, *inter alia*, that it shall be a violation for any person "to fail to file with the Secretary of State any application, report or document required to be filed under the provisions of the Act or any rule or regulation made by the Secretary of State pursuant to the Act."

49. By virtue of the foregoing, Respondent violated Sections 12.A and 12.D of the Act.

50. The aforementioned findings are based upon credible evidence.

## PROHIBITION

51. Section 11.F(2) of the Act provides, *inter alia*, that the Secretary of State may temporarily prohibit the offer or sale of securities by any person, without notice and prior hearing, if the Secretary of State shall deem it necessary to prevent an imminent violation of the Act or to prevent losses to investors that will occur as a result of prior violations of the Act.

52. The entry of this **Temporary Order of Prohibition** prohibiting Respondent, or their agents, affiliates, successors and employees, from offering or selling securities in the State of Illinois is in the public interest and for the protection of the investing public and is consistent with the purposes intended by the provisions of the Act.

NOW THEREFORE IT IS HEREBY ORDERED THAT: pursuant to the authority granted by Section 11.F of the Act, Respondents **James D. Bourassa, Francis X. Sanchez, InvestForClosures Financial, L.L.C.** d/b/a ROI Developers and InvestForClosures, InvestForClosures Ventures, L.L.C., d/b/a Sands of Gold Escrow, Sands of Gold, ROI Financial, Realty Opportunities International Escrow 23, ROI Escrow, and each Respondent's partners, members, officers and directors, agents, employees, affiliates, successors and assigns, are **Temporarily Prohibited** from offering or selling securities in or from this State until the further Order of the Secretary of State.

NOTICE is hereby given that Respondent may request a hearing on this matter by transmitting such request in writing to the Director, Illinois Securities Department, 69 West Washington Street, Suite 1220, Chicago, Illinois 60602. Such request must be made within thirty (30) calendar days of the date of entry of the **Temporary Order of Prohibition.** Upon receipt of a request for hearing, a hearing will be scheduled as soon as reasonably practicable. A request for hearing will not stop the effectiveness of this Temporary Order of Prohibition and will extend the effectiveness of this Temporary Order of Prohibition for sixty (60) days from the date the hearing request is received by the Department.

FAILURE BY ANY RESPONDENT TO REQUEST A HEARING WITHIN THIRTY (30) CALENDAR DAYS AFTER ENTRY OF THIS TEMPORARY ORDER OF

Temporary Order of Prohibition
-8-

PROHIBITION SHALL CONSTITUTE AN ADMISSION OF ANY FACTS ALLEGED HEREIN AND SHALL CONSTITUTE SUFFICIENT BASIS TO MAKE THIS TEMPORARY ORDER OF PROHIBITION FINAL.

Dated: This 9th day of November 2007.

JESSE WHITE
Secretary of State
State of Illinois

Attorney for the Secretary of State:

Angela P. Angelakos
Illinois Securities Department
69 West Washington Street
Chicago, Illinois 60602
312-793-3595

# EXHIBIT I

Bradley J. Schaufenbuel
5009 Cornell Avenue
Downers Grove, Illinois  60515-4314

Robert N. Schaufenbuel
2340 16th Street N.W.
Cedar Rapids, Iowa  52405-1172

Investforclosures Financial, L.L.C.

c/o James D. Bourassa
254 Gregory M. Sears Drive
Gilberts, Illinois  60136-4024

c/o Francis X. Sanchez
710 Lake Avenue
Woodstock, Illinois  60098-4255

Thursday, April 17th, 2008

### Notice of Election to Void Securities Purchase

Per Section 13 of the Illinois Securities Law of 1953 (815 ILCS 5/13), we hereby exercise our
election and right to rescind and void our purchase of the security issued to us on September 26th,
2003 (certificate number IFCF-092603-01, account number 104101). The sale was made in
violation of the provisions of the Act (see Temporary Order of Prohibition issued by the Office
of the Illinois Secretary of State dated November 9th, 2007). As provided for in 815 ILCS
5/13(A)(1), you, as officers of the organization, are jointly and severally liable to us for the full
amount that we paid for the security, plus accumulated interest from the purchase date to the
present (at the rate as stipulated), minus the payments of interest and principle made in the past.


*Bradley J Schaufenbuel*
Bradley J. Schaufenbuel

*Robert L Schaufenbuel*
Robert N. Schaufenbuel

Sender: Complete this section.

1. Complete item 2.
2. Print your name and address on the reverse so that we can return the card to you.
3. Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Number

7106 9953 3210 6500 8719

2. Article Addressed to

James D. Bourassa
2    Gregory M. Sears Dr
Gilberts, IL 60136-
        4024

3. Service Type
CERTIFIED MAIL

4. Restricted Delivery? (Extra fee).

Complete this section upon Delivery:

A. Received by (Printed name)    B. Date of Delivery
Jim Bourassa

C. Signature
☑ Agent
☐ Addressee

D. Is delivery address different from item 2? ☐ Yes
   If YES, enter delivery address below: ☐ No

PS Form 3811 V. (March 2006 (PSN 7530-07-000-0300)    Domestic Return Receipt



2303 Randall Rd
PMB 120
Carpentersville, IL 60110

**IFC** InvestForClosures Financial   Close this window

Toll Free: (877) 610-5982
Main Office: (847) 426-8701
Fax: (847) 426-8795

# EXHIBIT J

## Principal and Interest Withdrawal Request Form
## And Forfeiture of Warrants Acknowledgment

By requesting a payout of principal and earned interest, the undersigned hereby acknowledges that interest is subject to federal income tax and will be reported to the IRS. A 1099 will be supplied to the undersigned. Note that it is the responsibility of the undersigned to truthfully report all gains to both federal and state tax authorities when filing income tax returns.

Requests for principal interest withdrawals are subject to administrative review by InvestForClosures Financial (IFCF).

Pursuant to the Terms and Conditions signed and approved by me/us (the undersigned), I/we hereby request a payout of principal and earned interest from my/our account as specified below.

*NEVER RECEIVED*

Account #: _204013_

Investor Name(s): _REED_     _JOHN_     _A III_
                  Last        First       MI

                  Last        First       MI

Principal Withdrawal:   ☒ Complete principal and interest withdrawal

                        ☒ This amount: $ _80,000.00_   ON _2/17/2008_

Investment Type:   ☒ Cash   ☐ IRA   ☐ MIG

Please send my interest to me in the following manner:

☒ U.S.P.S. (No Charge)   ☐ Airborne Express (Overnight - $30 charge)      ☐ Wire Transfer ($20 charge)

Note: Airborne will not deliver to a P.O. Box.
All charges will be deducted from the interest payment

Bank: _____

Address: _JOHN REED, III_          ABA: _____

_1931 N.E. 190th STREET_           Account #: _____

_WOODINVILLE, WA 98077_            Account Title: _____

*By signing below, I warrant that I have read the terms and conditions of InvestForClosures Financial and agree to any applicable penalty of interest and forfeiture of issued warrants that may be incurred due to withdrawal of principal prior to the maturity of my term.*

Signatures:
_John Andrew Reed, III_   _11/30/2007_
Investor # 1              Date          Investor # 2       Date

**Web: www.investforclosures.com**
**Email: info@investforclosures.com**

http://www.investors.com/member/checkup/CheckUp.asp?ac=         4/2/2008