## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| BRADLEY J. SCHAUFENBUEL; | ) | |
| ROBERT N. SCHAUFENBUEL; | ) | |
| JOHN AND SARAH REED, IV; | ) | |
| JOHN AND JAN REED, III; | ) | |
| AMERICAN MASS MEDIA CORPORATION; | ) | |
| ROBERTA K. CLARK; | ) | |
| on behalf of Themselves and All Others | ) | |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; | ) | Case No. 09-CV-1221 |
| ROI DEVELOPERS; | ) | |
| INVESTFORCLOSURES; | ) | |
| INVESTFORCLOSURES.COM, LLC; | ) | Judge Leinenweber |
| INVESTFORCLOSURES VENTURES, LLC; | ) | |
| SANDS OF GOLD ESCROW; | ) | Magistrate Judge Nolan |
| SANDS OF GOLD; | ) | |
| ROI FINANCIAL; | ) | |
| REALTY OPPORTUNITIES INTERNATIONAL | ) | **JURY DEMAND** |
| ESCROW 23; | ) | |
| ROI ESCROW; | ) | |
| REALTY OPPORTUNITIES INTERNATIONAL | ) | |
| S. de R.L. de C.V.; | ) | |
| REALTY OPPORTUNITIES INTERNATIONAL; | ) | |
| ROI MEXICO; | ) | |
| SANDS OF GOLD ESTATES; | ) | |
| FRANCIS X. SANCHEZ aka FRANK SANCHEZ; | ) | |
| JAMES D. BOURASSA aka JIM BOURASSA; | ) | |
| SCOTT D. WESSEL; | ) | |
| DEANA M. GUIDI; | ) | |
| DANIEL E. FITZGERALD aka DAN | ) | |
| FITZGERALD; | ) | |
| SCOTT SLAGLE; | ) | |
| DARCEY L. MARTIN; | ) | |
| TOM RODRIGUEZ; and | ) | |
| JOHN DOES 1 – 30, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs Bradley J. Schaufenbuel ("Brad S"); Robert N. Schaufenbuel ("Robert S"); John and Sarah Reed, IV ("Reed IV"); John and Jan Reed, III ("Reed III"); American Mass Media Corporation ("AMMC"); and Roberta K. Clark ("Clark"), on behalf of themselves and all others similarly situated (collectively referred to as "Plaintiffs" or "Investors"), by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and for their Amended Class Action Complaint against Defendants, InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International S. de R.L. de C.V.; Realty Opportunities International; ROI Mexico; Sands of Gold Estates; Francis X. Sanchez aka Frank Sanchez; James D. Bourassa aka Jim Bourassa; Scott D. Wessel; Deana M. Guidi; Daniel E. Fitzgerald aka Dan Fitzgerald; Scott Slagle; Darcey L. Martin; Tom Rodriguez; and John Does 1 - 30 (collectively referred to as "IFC" or "Defendants"), hereby state and allege for their class action as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008.  Excluded from the class is any member, officer or director of Defendants.

2.      IFC, through nearly constantly changing and involuntarily dissolved business organizations and names, used their website and other marketing materials to solicit individuals and businesses to invest money in IFC's purported business of renovating foreclosed and distressed properties and reselling the properties for a profit.

3.      IFC failed to register the securities and investment vehicles it issued with any proper agency or authority in violation of the Securities Act of 1933 and the Securities Exchange Act of 1934 and virtually each legal entity that IFC formed was involuntarily dissolved by the Illinois Secretary of State.

4.      IFC systematically misrepresented returns and interest that would be earned on the securities and investment vehicles purchased by the Plaintiffs and, indeed, never purchased or renovated any properties, distressed or otherwise, as claimed in its marketing materials and website.

5.      In a Ponzi scheme much like that of Bernard Madoff, IFC would attract an investor and use the funds obtained from Investor B to payoff a portion of debt owed to Investor A and then continued in like manner with subsequent investors, such that most investors never received any payoff in accordance with the terms of the purchased investment vehicle.

6.      IFC continued to promise investors that their return would be forthcoming, even convincing certain investors to roll over their investments into other investment vehicles that were not backed up by any true properties or investments.

7.      Ultimately, IFC took over $8 million in investments from Plaintiffs and have not repaid any of the debts or interest owed.  Instead, IFC has formed a new company in Mexico which purchased a 27 acre property in Mexico that is not tied to any of the investment vehicles.

8.      To date, none of the investors / Plaintiffs has received their full promised return on their investment and IFC has spent their money on property that was never the purpose explained in any of the marketing materials, which was rehabbing distressed properties in the United States.

## II.      JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to 28 U.S.C. §1331 as this case arises under, *inter alia,* the Securities Act of 1933, 15 U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.*

10.      Venue is proper pursuant to 28 U.S.C. §1391 as many of the Defendants reside in the District and a substantial part of the events or omissions giving rise to the claims occurred in the District.

## III.      PARTIES

11.      Bradley J. Schaufenbuel ("Brad S") is an individual residing at 5009 Cornell Avenue, Downers Grove, Illinois 60515-4314.

12.      Robert N. Schaufenbuel ("Robert S") is an individual residing at 2340 16th Street N.W., Cedar Rapids, Iowa 52405-1172.

13.      John and Sarah Reed, IV ("Reed IV") are married individuals residing at 2304 S. 79th Ave, Yakima, WA 98903.

14.     John and Jan Reed, III ("Reed III") are married individuals residing at 19311 NE 190th St, Woodinville, WA 98077.

15.     American Mass Media Corporation ("AMMC") is an Illinois corporation with its principal place of business located at 207 E. Ohio St. #218, Chicago, IL 60611.

16.     Roberta K. Clark ("Clark") is an individual residing at 14909 Oakbury Drive, La Mirada, CA 90638.

17.     At all relevant times herein, InvestForClosures Financial, L.L.C. was a limited liability company organized under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098. InvestForClosures Financial, L.L.C. was involuntarily dissolved by the Illinois Secretary of State on September 12, 2008.

18.     At all relevant times herein, ROI Developers was an assumed name of InvestForClosures Financial, L.L.C.

19.     At all relevant times herein, InvestForClosures was an assumed name of InvestForClosures Financial, L.L.C.

20.     InvestForClosures.com, LLC was a limited liability company organized under the laws of Illinois and with its principle office located at 109 Douglas Avenue, Elgin, Illinois 60120.  InvestForClosures.com, LLC was involuntarily dissolved by the Illinois Secretary of State on August 28, 2001.

21.     At all relevant times herein, InvestForClosures Ventures, LLC was a limited liability company organized under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098.

InvestForClosures Ventures, LLC was involuntarily dissolved by the Illinois Secretary of State on June 13, 2008.

22. At all relevant times herein, Sands of Gold Escrow was an assumed name of InvestForClosures Ventures, LLC.

23. At all relevant times herein, Sands of Gold was an assumed name of InvestForClosures Ventures, LLC.

24. At all relevant times herein, ROI Financial was an assumed name of InvestForClosures Ventures, LLC.

25. At all relevant times herein, Realty Opportunities International Escrow 23 was an assumed name of InvestForClosures Ventures, LLC.

26. At all relevant times herein, ROI Escrow was an assumed name of InvestForClosures Ventures, LLC.

27. Realty Opportunities International S. de R.L. de C.V. is, upon information and belief, a corporation organized under Mexican law and has its principal place of business located at 123 S. Eastwood Drive, #117, Woodstock, IL 60098 and maintains a website at www.roimexico.com.

28. Realty Opportunities International is an assumed name of Realty Opportunities International S. de R.L. de C.V.

29. ROI Mexico is an assumed name of Realty Opportunities International S. de R.L. de C.V.

30. Sands of Gold Estates is an assumed name of Realty Opportunities International S. de R.L. de C.V.

31.     Francis X. Sanchez aka Frank Sanchez ("Sanchez") is an individual residing at 710 Lake Avenue, Woodstock, McHenry County, Illinois 60098-4255.  At all relevant times herein, Sanchez was the Chief Executive Officer of all of the IFC entities.

32.     James D. Bourassa aka Jim Bourassa ("Bourassa") is an individual residing at 254 Gregory M. Sears Dr., Gilberts, Kane County, Illinois 60136-4024. At all relevant times herein, Bourassa was the President and Registered Agent of the IFC entities.

33.     Scott D. Wessel ("Wessel") whose last known address is 1700 Wicker St., Woodstock, IL 60098-2456 and who has a webpage on Facebook at URL: http://www.facebook.com/people/Scott-Wessel/504252536.  At all relevant times herein, Wessel was Vice President of the IFC entities.

34.     Deana M. Guidi ("Guidi") is an individual who, upon information and belief, resides at 6511 Edgeworth Drive, Orlando, FL 32819.  At all relevant times herein, Guidi was General Counsel and/or a principal and agent of the IFC entities and was duly licensed to practice law in Illinois from May 10, 2001 until she voluntarily retired her license in 2008.  Upon information and belief, she also resides sporadically with her parents in Sun City, Huntley, IL.

35.     Daniel E. Fitzgerald aka Dan Fitzgerald ("Fitzgerald") is an individual who, upon information and belief, resides at 606 Hapsfield Lane, Buffalo Grove, IL 60089-3364.  At all relevant times herein, Fitzgerald was an employee, principal, officer or agent of the IFC entities.

36.     Scott Slagle ("Slagle") is an individual who, upon information and belief, resides at 626 Gardner Rd., Westchester, IL 60154-2832.  At all relevant times herein, Slagle was an employee, principal, officer or agent of the IFC entities.

37.     Darcey L. Martin ("Martin") is an individual who, upon information and belief, resides at 9507 Waterford Oaks Blvd., Winter Haven, FL 33884.  At all relevant times herein, Martin was a member or principal of the IFC entities.

38.     Tom Rodriguez ("Rodriguez") is currently employed as a staff accountant with Consolidated School District #158 and maintains his office at 650 Academic Drive, Algonquin, IL 60102.  At all relevant times herein, Rodriguez was the staff accountant for the IFC entities.

39.     John Does 1 – 30 are persons who are owners, members, principals and/or agents of the IFC entities and/or who are interested in the subject matter of this case whose identities are as yet unknown and whom are named herein pursuant to 735 ILCS 5/2-413.

## IV.     CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008 (the "Class").  Excluded from the Class is any member, officer or director of Defendants.

41.     The Class consists of more than fifty and may be in excess of one hundred persons located throughout the United States, thus, the members of the Class are so numerous and geographically separated that joinder of all Class

members is impracticable.  The exact number of Class members is not presently known to Plaintiffs, but can be readily determined by appropriate discovery.

42.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex securities and fraud litigation.  Named Plaintiffs' damages are similar, if not identical, in nature to the members of the Class and have no interests that are adverse or antagonistic to those of the Class.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by some individual Class members may be relatively small, the expense and burden of multiple individual litigations make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged herein on their own.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class. Among the questions of law and fact common to the Class are:

a.      Whether Defendants violated the Securities Act of 1933, 15 U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* by their acts and omissions and otherwise committed fraud upon the Plaintiffs;

b.      Whether Defendants breached their fiduciary duties owed to Plaintiffs;

c.      Whether Plaintiffs and the members of the Class have sustained injuries proximately caused by Defendants' acts and omissions; and

       d.      Whether there are damages and adequate remedies at law for Plaintiffs.

      45.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## V.    CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE SECURITIES ACT OF 1933

      46.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

      47.    During the period March 14, 2000 through September 12, 2008, IFC issued and sold for its own benefit, with the aid and participation of Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez and John Does 1 – 30 (hereinafter referred to as the "IFC principals") acting in their capacities as officers and members of IFC, investment certificates to members of the Class representing indebtedness of IFC to the individual investors identified on the certificates.

      48.    From March 14, 2000 through September 12, 2008, IFC, by and through the IFC principals sold and offered to sell notes to the general public ("Investors") and used interstate commerce to effectuate such sales and marketing, involving the purchase, rehabilitation, and resale of foreclosed or distressed properties.

      49.    IFC used its website and other marketing materials in order to solicit Investors. IFC's website and marketing materials made representations that IFC was investing in foreclosed and distressed properties and that investments would

be secured by such real estate. The representations included statements such as "Real Estate Secured Investments"; "Secure Investment – Approximately 90% of investors' funds goes toward the purchase of real estate"; "Investors that invest $10,000 or more are paid 28% interest. Investors below $10,000 receive 20% interest."

50.     In its marketing materials and "prospectus", IFC represented to Investors that "You will receive a privatized security in accordance with SEC REG D RULE 504" and "IFC' securities are highly speculative, and have not been and will not be registered with the SEC or any other securities agency of and State. Note: Under SEC Reg D, Rule 504 no regulation is necessary," thereby asserting that the investment notes and certificates being issued by IFC were exempt securities.

51.     IFC solicited Investors to purchase investment notes and certificates, some for a set term ranging from ninety (90) days to five (5) years and having a fixed Annual Percentage Rate ("APR") ranging from 2.9% to 20.0%.

52.     On September 26, 2003, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCF092603-01, representing account number 104101, to Robert Schaufenbuel and Bradley Schaufenbuel for a total consideration of $35,000.00. (A true and correct copy of investment certificate IFCF092603-01 is attached hereto and incorporated herein by reference as Exhibit A.)

53.     On November 9, 2004, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers

and members of IFC, investment certificate number IFCF110904-01, representing account number 104149, to AMMC for a total consideration of $50,000.00. (A true and correct copy of investment certificate IFCF110904-01 is attached hereto and incorporated herein by reference as Exhibit B.)

54.     On July 18, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV071805-01, representing account number 204027, to AMMC for a total consideration of $20,000.00. (A true and correct copy of investment certificate IFCV071805-01 is attached hereto and incorporated herein by reference as Exhibit C.)

55.     On April 6, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, an investment certificate, representing account number 204017, to John and Sarah Reed, IV for a total consideration of $40,000.00. On September 12, 2005, IFC sold another investment certificate on the same account number 204017 to Reed IV for an additional consideration of $40,000.00, for a total investment by Reed IV of $80,000.00. (A true and correct copy of the IFC Statement for Reed IV dated March 3, 2008 is attached hereto and incorporated herein by reference as Exhibit D.)

56.     On March 30, 2007, John and Sarah Reed, IV invested an additional $10,000.00 in IFC's newly created Special Opportunities Plan ("SOP") and moved his accrued interest in IFC to the SOP account.

57.     On February 17, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV021705-01, representing account number 204013, to John and Jan Reed, III for a total consideration of $50,000.00.  (A true and correct copy of investment certificate IFCV021705-01 is attached hereto and incorporated herein by reference as Exhibit E.)

58.     On July 13, 2005, IFC issued and sold for its own benefit, with the aid and participation of the IFC principals acting in their capacities as officers and members of IFC, investment certificate number IFCV071305-01, representing account number 204022, to Roberta K. Clark, for a total consideration of $70,000.00.  (A true and correct copy of investment certificate IFCV071305-01 is attached hereto and incorporated herein by reference as Exhibit F.)

59.     In many cases, IFC, by and through its principals, had Investors execute a Power of Attorney in favor of Sanchez relating to their investment in IFC. (A true and correct copy of Clark's executed Power of Attorney is attached hereto as Exhibit G.)

60.     At the end of each of the Investors' investment terms, each Investor attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

61.     When the Investors attempted to collect the balance owed on their respective accounts, the IFC principals refused to return the principal or interest owed on the notes and certificates, despite the Investors' repeated requests.

62.    Rather, the IFC principals, speaking through Frank Sanchez, told Investors that IFC did not have sufficient cash available to pay the Investors the sums acknowledged as due.

63.    Some Investors were told to 'roll over' or reinvest their investments in other investment notes or certificates with IFC based on representations of an even larger return on their investment at a later date.  Many Investors did reinvest their investments in other IFC notes or certificates on this basis.

64.    IFC was in default on the Investors' investment notes and certificates.

65.    IFC, through its principals, solicited additional investors and did not advise such additional investors that IFC was in default on prior obligations and indeed represented to the additional investors that IFC was a prospering venture.

66.    IFC failed to disclose that it had defaulted on prior notes payable to Investors.

67.    IFC never registered any of its investment notes or certificates with the Illinois Securities Department or any other government unit or agency.

68.    IFC did not use a securities broker or other intermediary, but rather sold these investment notes and certificates direct to the public.

69.    IFC never invested any of Investors' money in foreclosed or distressed real estate properties.  Rather, IFC took the accumulated investments and through its Mexico company purchased 27 acres of undeveloped property in Mexico contrary to all representations made to Investors.

70.    To date, Investors have not received the principal or interest on their investments and most have lost contact with IFC.

71.     On November 9, 2007, the Illinois Securities Department as part of the Illinois Secretary of State issued a Temporary Order of Prohibition (the "ISD Order") against IFC prohibiting any further sale or offer of these securities.  (A true and the ISD Order is attached hereto and incorporated herein by reference as Exhibit H.)

72.     Upon information and belief, IFC continued to sell and offer to sell notes and certificates to the public after issuance of and in violation of the ISD Order.

73.     The ISD Order found that the investment notes and certificates issued by IFC to Investors were not exempt from registration or the other requirements of the Act and that IFC made false and misleading statements to Investors relating to its exempt status.  (Exhibit H.)

74.     Some Investors sent letters requesting payout on their investments or completed IFC's own form entitled "Principal and Interest Withdrawal Request Form" ("IFC's Withdrawal Form") and sent them to IFC.

75.     On August 18, 2005, Robert S and Brad S wrote to IFC c/o Slagle requesting return of their principal plus accrued interest upon expiration of the term of their investment on September 26, 2005.  (A true and correct copy of the Schaufenbuel's letter is attached hereto and incorporated herein by reference as Exhibit I.)

76.     On or about November 30, 2007, John Reed III completed IFC's Withdrawal Form and sent it to IFC requesting withdrawal of his principal plus interest as of February 17, 2008.  (A true and correct copy of the Reed III's form is attached hereto and incorporated herein by reference as Exhibit J.)

77.     The IFC entities that sold and issued the investment notes and certificates to Investors no longer exist.

78.     At the urging of IFC and the IFC principals, some Plaintiffs rolled over or reinvested their investments in other unregistered securities issued by IFC, which have also passed their termination dates.

79.     Despite the demands, IFC has refused and failed to pay Plaintiffs according to the terms of the securities.

80.     IFC never invested in foreclosed or distressed real estate and never rehabilitated any properties as represented in the prospectus provided to Plaintiffs.

81.     The activities described above constitute the offer and sale of a security as those terms are defined in §§77b, e and f of the Securities Act of 1933, 15 U.S.C. §77a *et seq.* (hereinafter the "1933 Act").

82.     Each of the Defendants is a "Controlling person" as that term is defined by §77o of the 1933 Act.

83.     §77e of the 1933 Act prohibits the sale or delivery after sale of unregistered securities.

84.     §77f of the 1933 Act requires registration of securities like those issued by IFC with the Securities and Exchange Commission ("SEC").

85.     §77j of the 1933 Act requires certain information to be provided in any prospectus for selling securities.

86.     §77l of the 1933 Act provides that any person who violates §77e or provides a prospectus containing misleading or false statements shall be liable to those to whom such person has sold the securities.

87.    All of the IFC entities that issued the securities failed to make the required filings with the Illinois Secretary of State and as a result they have been involuntarily dissolved by the Secretary of State.

88.    §77q of the 1933 Act prohibits any person to use interstate commerce for purposes of perpetrating a fraud or deceit upon investors with the intent of selling securities.

89.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to employ any device, scheme, or artifice to defraud."

90.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

91.    §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

92.     By virtue of the conduct of IFC and its principals, Defendants violated §§77e, 77f, 77j, 77l, and 77q of the 1933 Act.

93.     Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the investment notes and certificates and such debts are now past due and owing.

94.     Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with IFC and have not received any of that investment back.

95.     Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1933 Act.

## COUNT II — VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

96.     Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

97.     The activities described above constitute the offer and sale of a security as those terms are defined in §§78c and l of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* (hereinafter the "1934 Act").

98.     Each of the Defendants is a "Controlling person" as that term is defined by §78t of the 1934 Act.

99.     §78j of the 1934 Act states that "it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . . to use or employ, in connection with the purchase or sale of . . . any security not so registered, . . . any manipulative or deceptive device

or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

100.    §78l of the 1934 Act requires registration of securities like those issued by IFC with the Securities and Exchange Commission ("SEC").

101.    §78r of the 1934 Act prohibits misleading statements in the sale or offer of sale of securities.

102.    By virtue of the conduct of IFC and its principals, Defendants violated §§78j, 78l, and 78r of the 1934 Act.

103.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities.

104.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with IFC and have not received any of that investment back.

105.    Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1934 Act.

## COUNT III – FRAUD

106.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

107.    Defendants made numerous false statements of material facts to Plaintiffs, including *inter alia* that Defendants would invest Plaintiffs' money in rehabilitating foreclosed or distressed properties and resell them for profit; that

Plaintiffs could expect anywhere from 9 – 21% return on their investment; that within five (5) years of their investment Plaintiffs would receive their principal plus interest; that Plaintiffs could reinvest after the five (5) year period into another plan which would increase or boost their returns and in some cases double their returns; and that the securities offered by Defendants were exempt from state or federal securities laws and that they were not regulated by those laws.

108.    Defendants knew that each of their statements and representations to Plaintiffs were false because Defendants never invested in or rehabilitated rehabilitating foreclosed or distressed properties, never intended in returning Plaintiff's investments, and that this was all a scheme to take investors' money to purchase a plot of land in Mexico which Defendants believed to be free of Plaintiffs' claims and not secured by the securities issued by Defendants to Plaintiffs.

109.    Defendants made these statements and representations to Plaintiffs for the purpose of inducing them to invest money in IFC and the scam.

110.    Plaintiffs relied on the truth of Defendants' representations about IFC evidenced by their large investments of money in IFC.

111.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the conduct of IFC and its principals.

## COUNT IV – BREACH OF FIDUCIARY DUTY

112.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

113.    By soliciting investments for IFC, the IFC principals created a fiduciary relationship and owed a fiduciary duty to the Plaintiffs as investors in IFC.

114.    IFC and the IFC principals should have treated the money invested by Plaintiffs as if it was their own money as Plaintiffs placed trust in IFC and the IFC principals that Plaintiffs' money was going to be used for the purpose for which it was invested, namely to rehabilitate foreclosed and distressed properties.  Even those Plaintiffs who invested money for the development of the Mexico property believed their money was going to be used for such development.

115.    IFC and the IFC principals breached their fiduciary duties to Plaintiffs by failing to invest Plaintiffs' money in the rehabilitation business and by taking the money and transferring it to a Mexico company for purposes of buying the plot of land in Mexico with no intent on returning Plaintiffs' investments or paying the interest or return on such investments.

116.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the breach of fiduciary duties by IFC and IFC's principals.

## COUNT V – CIVIL CONSPIRACY

117.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

118.   The IFC principals include Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez and John Does 1 – 30, which is a combination of two or more persons.

119.   The IFC principals sought investments from Plaintiffs by falsifying the purpose of the investments, namely to restore foreclosed and distressed properties and resell them for a profit, so that they could unlawfully purchase property in Mexico shielded from the claims of Plaintiffs for the return on their investments.

120.   The IFC principals set up phony shell limited liability companies and their d/b/a's, namely InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates; so that they could appear legitimate to Plaintiffs and Plaintiffs would be enticed into investing money in these shell companies, and then the IFC principals could take the money, set up the Mexican company of Realty Opportunities International S. de R.L. de C.V. that had no ties to Plaintiffs' investments, and purchase property in the name of the Mexican company, thereby owning an asset that was shielded from the investors' interests.

121.    The IFC principals all benefitted from this because they (a) have an interest in the Mexican property and (b) they have been paid money, either as a principal of IFC or as fees for services, out of the Plaintiffs' investments.

122.    Thus, essentially the IFC principals conspired to take Plaintiffs' money and steal it to buy their own asset for which the IFC principals believed could not be attached by Plaintiffs.

123.    To further this conspiracy, IFC principals made false representations to Plaintiffs regarding their investments; lied about their securities; lied about the use of the investments; lied to Plaintiffs when Plaintiffs requested the return of their money; lied to Plaintiffs about the status of the shell companies; lied to Plaintiffs about the Mexican property; and continued to advise the Plaintiffs to hold off on demanding return of their money and lied that Plaintiffs would ultimately be repaid in multiples of their original investment as long as Plaintiffs didn't make legal claims against the IFC principals.

124.    Plaintiffs have been injured by the conspiracy of the IFC principals in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the civil conspiracy by IFC and IFC's principals.

## COUNT VI – VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT

125.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

126.    IFC and the IFC principals have transferred Plaintiffs' investments and all assets of the United States-based IFC companies out of their respective names and to the Mexican company of Realty Opportunities International S. de R.L. de C.V., which has used those investments and assets to purchase 27 acres of undeveloped property in Mexico.

127.    In addition, the IFC principals have transferred many of their personal assets out of their own individual names and into names of relatives or other companies.

128.    For example, upon information and belief, Bourassa has transferred ownership of the property located at 254 Gregory M Sears Drive, Gilberts, Illinois 60136-4024, from his own name to his wife's name with the purpose of avoiding creditors.

129.    By making such transfers, IFC and the IFC principals have rendered themselves insolvent or without sufficient assets to cover the claims of investors.

130.    IFC and the IFC principals have made such transfers with the actual intent to hinder, delay, or defraud Plaintiffs, all of whom as investors in IFC are creditors of IFC.

131.    IFC and the IFC principals did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when IFC and the IFC principals were engaged in the purported business of rehabilitating foreclosed and distressed properties for which there are no remaining assets.

132.    IFC and the IFC principals did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when they intended to incur, or believed or reasonably should have believed that they would incur, debts to Investors beyond their ability to pay as they became due.

133.    As Plaintiffs' investments became due, IFC and the IFC principals were unable to pay the investments and interest due to Plaintiffs according to the terms of the investment certificates.

134.    Plaintiffs are creditors of Defendants and Defendants are debtors of Plaintiffs as those terms are defined by §2 of the Uniform Fraudulent Transfer Act, 740 ILCS 160/ *et seq.* (hereinafter "UFTA").

135.    The transfer of IFC's assets and money invested by Plaintiffs to the establishment of Realty Opportunities International S. de R.L. de C.V. and the purchase of 27 acres of undeveloped property in Mexico is a transfer of assets as defined by §§2 and 7 of UFTA.

136.    §5 of UFTA provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the

transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor."

137.   §5 of UFTA provides further that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

138.   IFC and the IFC principals have violated UFTA and have made transfers that are fraudulent as to Plaintiffs.

139.   The transfer of IFC's assets and money invested by Plaintiffs to the establishment of Realty Opportunities International S. de R.L. de C.V. and the purchase of 27 acres of undeveloped property in Mexico is fraudulent as to Plaintiffs and such transfer(s) should be either avoided or the Mexican property should be attached to preserve the claims of Plaintiffs and a receiver or trustee should be appointed to take over the property.

140.   Further, Defendants should be enjoined from any further action, including without limitation sale, transfer, or dissipation, related to the Mexican property or any assets of Realty Opportunities International S. de R.L. de C.V.

## COUNT VII – UNJUST ENRICHMENT

141.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

142.    IFC and the IFC principals have unjustly retained the money invested by Plaintiffs without repaying the investments or interest as required by the investment certificates and agreements given to Plaintiffs.

143.    IFC and the IFC principals have taken Plaintiffs' money and invested it in the Mexican property and benefitted by enriching themselves to the detriment of Plaintiffs.

144.    By retaining the benefit of Plaintiffs' investments without paying them interest or repaying the principal as IFC and the IFC principals agreed to do, IFC and the IFC principals are thereby unjustly enriched violating fundamental principles of equity and justice.

145.    The value of IFC's unjustly retained benefit is in excess of million dollars ($8,000,000.00).

## COUNT VIII – CONSTRUCTIVE TRUST

146.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

147.    Defendants have received money from Plaintiffs as investments into a real estate rehabilitation business.

148.    Defendants have also received substantial confidential information from Plaintiffs and in some cases powers of attorney from Plaintiffs.

149.    Defendants have exerted control over the investment money and the information provided by Plaintiffs, yet refuse and have failed to return any of the investment money, interest or the assets, specifically without exclusion the Mexican property, in which Plaintiffs have ownership rights.

150.    Defendants have committed numerous wrongful acts against Plaintiffs regarding the investment money and information, including without limitation providing false and misleading information about the investments, falsifying documents and making false representations on their website and marketing materials, lying to Plaintiffs about the investments, and allowing the companies in which Plaintiffs invested to be involuntarily dissolved by the Illinois government.

151.    Defendants acts towards Plaintiffs have been intentional, willful, and in derogation of and a deprivation of Plaintiffs' lawful right and possession to their money or the assets in which their money was invested.  IFC, without legal right, withheld possession of the money and assets from Plaintiffs.

152.    It would be unjust and inequitable if Defendants were allowed to retain control or custody over this ill-gotten money and assets.

153.    Plaintiffs reasonably fear that Defendants will either transfer or otherwise interfere with Plaintiffs' rights in the Mexican property and that Plaintiffs may be further harmed by Defendants attracting new investors into their scheme.

154.   Plaintiffs are entitled to have the Court impose a constructive trust over the Mexican property to protect their rights and their investment money until such time as this matter is resolved.

## COUNT IX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

155.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

156.   Defendants have employed deceptive acts and practices, including without limitation false representations about investing in foreclosed or distressed properties to make a profit and misleading and false representations about the securities issued in exchange for money invested by Plaintiffs, in order to solicit investment of money by Plaintiffs.

157.   Defendants intended Plaintiffs to rely on these deceptive acts and practices so that Plaintiffs would invest money in Defendants' phony business of rehabilitating properties.  Rather, Defendants intended to take Plaintiffs' money to invest in the property in Mexico to be shielded from Plaintiffs' claims on their investments.

158.   Defendants' deceptions took place in the course of trade and commerce as Defendants had set up shell companies to appear legitimate to Plaintiffs and to attract investments into Defendants' phony business.

159.   Defendants' conduct constitutes an unfair or deceptive acts or practices as defined by §2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.* (hereinafter the "CFA").

160.    Defendants, by their conduct as detailed above, have violated the CFA and Plaintiffs have been harmed as a direct and proximate result of such violations.

161.    Plaintiffs are entitled to all remedies available under the CFA.

## COUNT X – PIERCING THE ORGANIZATIONAL VEIL

162.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

163.    Defendants set up various shell companies, including without limitation InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates.

164.    Defendants disregarded the separate identity and entity of these named companies and as a result each of these companies has been involuntarily dissolved by the Illinois Secretary of State.

165.    The Illinois Securities Department, a division of the Illinois Secretary of State, issued a cease and desist order for Defendants to stop issuing securities and acting in the name of these companies.

166.    Defendants have continued to operate using these entity names, despite their dissolution and the cease and desist Order issued by the Illinois Securities Department.

167.    Defendants have treated these companies as non-entities and rather as mere extensions of their own individual acts.

168.    The IFC principals, in their individual capacities and as members of the shell companies, have also committed fraud upon Plaintiffs relating to the investment of money in these companies.

169.    In every way, the IFC principals have acted on their own behalf and have disregarded the separate legal entities of the named companies.

170.    Allowing the IFC principals as individuals to avoid liabilities that they have created by acting with disregard to the formal entities of the named companies would create an inequitable result in this case.

171.    As such, this Court should pierce through those false company shells and impose any and all liabilities incurred on behalf of the IFC companies to the IFC principals in their individual and personal capacities.  Plaintiffs should have recourse against the IFC principals and their personal assets so as to enable a just and equitable result for the liabilities incurred.

## **COUNT XI – CONVERSION**

172.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

173.    Plaintiffs have a right in their investments and the interest earned on those investments according to the securities issued by IFC.

174.    Plaintiffs' rights in such money is immediate, as all of the securities issued have come to term, and such rights are absolute, unconditional and not

dependent on the performance of any act. Plaintiffs' performance was complete upon payment of the money representing their investment.

175.    Defendants have exercised wrongful dominion over Plaintiffs' money and have refused to return the investment or pay the interest as agreed to, despite numerous demands by Plaintiffs to do so.

176.    Defendants have attempted to conceal Plaintiffs' money, deprive Plaintiffs of their rights to possession of their money, and have made unauthorized transactions using Plaintiff's money, including without limitation setting up the Mexican company Realty Opportunities International S. de R.L. de C.V. and purchasing 27 acres of undeveloped property in Mexico.

177.    Defendants have effectively converted Plaintiffs' money and their rights to their principal investment and interest earned into assets owned by IFC and IFC principals, thereby attempting to permanently deprive Plaintiffs' of their rights.

## COUNT XII – VIOLATION OF THE ILLINOIS SECURITIES LAW

178.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

179.    The activities described above constitute the offer and sale of a security as those terms are defined in Sections 2.1, 2.2, 2.5 and 2.5a of the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.* (hereinafter the "IL Securities Act").

180.    Each of the Defendants is a "Controlling person" as that term is defined by Section 2.4 of the IL Securities Act.

181.   Section 12.A of the Act states that it shall be a violation of the IL Securities Act for any person to "offer or sell any security except in accordance with the provisions of this Act."

182.   Section 5 of the IL Securities Act requires registration of securities like those issued by IFC with the Illinois Securities Department.

183.   Section 12.D of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act or any rule or regulation made by the Secretary of State pursuant to this Act or to fail to comply with the terms of any order of the Secretary of State issued pursuant to Section 11 hereof."

184.   All of the IFC entities that issued the investment notes and certificates failed to make the required filings with the Illinois Secretary of State and as a result they have been involuntarily dissolved by the Secretary of State and found by the Illinois Securities Department to be violation of Section 12.D of the IL Securities Act.  (Exhibit H.)

185.   Section 12.F of the IL Securities Act prohibits any person to "engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof."

186.   Section 12.G of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "obtain money or property through the sale of securities by means of any untrue statement of a material fact or any

omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."

187.   Section 12.H of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "sign or circulate any statement, prospectus, or other paper or document required by any provision of this Act or pertaining to any security knowing or having reasonable grounds to know any material representation therein contained to be false or untrue."

188.   Section 12.I of the IL Securities Act prohibits any person to "employ any device, scheme, or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly."

189.   Section 12.E of the IL Securities Act provides, inter alia, that it shall be a violation for any person to "make or cause to be made, in any application, report or document filed under this Act or any rule or regulation made by the Secretary of State pursuant to this Act, any statement which was false or misleading with respect to any material fact."

190.   By virtue of the conduct of IFC and its principals, Defendants violated Sections 12.A, 12.D, 12.E, 12.F, 12.G, 12.H, and 12.I of the IL Securities Act.

191.   Section 13 of the IL Securities Act provides for private remedies for violations of the IL Securities Act.

192.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the investment notes and certificates and such debts are now past due and owing.

193.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with IFC and have not received any of that investment back.

194.   Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the IL Securities Act.

## COUNT XIII – BREACH OF CONTRACT

195.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

196.   IFC offered each of the Plaintiffs investment in either its purported real estate rehabilitation business or its real estate development business in exchange for money invested and Plaintiffs accepted by investing money, in differing amounts, with IFC.

197.   IFC issued investment notes and certificates to Plaintiffs as documentation of the agreement between the parties.  (See e.g. Exhibits A – F.)

198.   The terms of each agreement were definite and certain, providing a date of maturation of the note or certificate and an amount to be repaid representing return of principal plus interest.  (See e.g. Exhibits A – F.)

199.   At the end of each of the Investors' investment terms, each Investor attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

200.   When the Investors attempted to collect the balance owed on their respective accounts, the IFC principals refused to return the principal or interest owed on the notes and certificates, despite the Investors' repeated requests.

201.   Plaintiffs have performed their portion of the agreement by paying over the amounts of money agreed to be invested and leaving it invested with IFC until the end of their respective terms.

202.   Some Plaintiffs have performed additional acts by rolling over or reinvesting their investments in other investment notes and certificates issued by IFC, which have also passed their termination dates.

203.   Despite the demands, IFC has refused and failed to pay Plaintiffs according to the agreements of the investment notes and certificates.

204.   IFC never invested in foreclosed or distressed real estate and never rehabilitated any properties as represented in the agreements with Plaintiffs.

205.   IFC is in breach of its agreements with Plaintiffs.

206.   As a direct and proximate result of IFC's breach, Plaintiffs have been injured in an amount in excess of excess of eight million dollars ($8,000,000.00), the exact amount shall be determined at trial of this matter.

## COUNT XIV – VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940

207.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

208.   At all relevant times, Defendants acted as Investment Advisers to Plaintiffs as that term is defined in the Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.* (hereinafter the "IAA").

209.   §3(a) of the IAA states "it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser."

210.   Defendants failed to register as Investment Advisers as required by §3(a) of the IAA.

211.   §6 of the IAA makes it "unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; and (4) to engage

in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."

212.    §8(d) of the IAA makes it "unlawful for any person indirectly, or through or by any other person, to do any act or thing which it would be unlawful for such person to do directly under the provisions of this subchapter or any rule or regulation thereunder."

213.    By virtue of the conduct of IFC and its principals, Defendants violated §§3(a), 6 and 8(d) of the IAA.

214.    §9 of the IAA provides various civil remedies for violations of the IAA.

215.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) on the investment advice of IFC and its principals and have not received any of that investment back despite demand for same.

216.    Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the IAA.

## COUNT XV – VIOLATION OF THE TRUST INDENTURE ACT OF 1939

217.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

218.    Defendants offered to sell, sold, and issued securities and/or indentures to Plaintiffs as those terms are defined in the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.* (hereinafter the "TIA").

219.    In connection with Defendants offer to sell securities and/or indentures, Defendants issued and made available to the public at large prospecti

for purposes of soliciting investments and purchase of such securities and/or indentures within the meaning of the TIA.

220.  §77eee of the TIA requires that if securities or indentures are required to be registered under the Securities Act of 1933, they must also be registered under the TIA and such additional information must be provided in such registration and in any prospectus for such indentures relating to the TIA requirements.

221.  Defendants did not register the securities and/or indentures issued to Plaintiffs under the Securities Act of 1933.

222.  §77fff(a) of the TIA states that for any security not registered under the Securities Act of 1933 "it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

223.  §77fff(b) of the TIA provides that for any security not registered under the Securities Act of 1933 ""it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any such security, unless such prospectus, to the extent the Commission may prescribe by rules and regulations as necessary and appropriate in the public interest or for the protection of investors, includes or is accompanied by a written statement that contains the information specified in subsection (c) of section 77eee

of this title; or (2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless, to the extent the Commission may prescribe by rules and regulations as necessary or appropriate in the public interest or for the protection of investors, accompanied or preceded by a written statement that contains the information specified in subsection (c) of section 77eee of this title."

224.    §77fff(c) of the TIA makes it unlawful to offer to sell a security not registered under the Securities Act of 1933 through a prospectus or otherwise unless the security has been issued under an indenture for which an application for qualification has been filed or during any period when the application "is the subject of a refusal order or stop order or (prior to qualification) any public proceeding or examination."

225.    §77lll of the TIA requires filing of certain information with the trustee and upon request the trustee must share certain information with other security holders, including the identity of such other security holders.

226.    The IFC principals refused to share information with other security holders, refused to identify other security holders despite requests to do so from Plaintiffs and discouraged security holders from trying to discover other security holders.

227.    The IFC principals and, specifically, Sanchez threatened security holders that they would lose their investments if they contacted any of the authorities.

228.  §77mmm of the TIA requires the trustee to provide periodic reports to the security holders of various information.

229.  The IFC principals never provided periodic reports to Plaintiffs or any security holders with the information required in §77mmm of the TIA.

230.  §77nnn of the TIA requires the obligor(s) to provide reports and evidence of compliance with the indenture(s) provisions.

231.  Defendants did not provide any obligor reports or evidence of compliance with the indenture provisions.

232.  §77ooo of the TIA imposes certain duties and responsibilities on the trustee, including without limitation proper notice of default.

233.  The IFC principals did not comply with the duties and responsibilities imposed by §77ooo of the TIA and never provided notice of default to the Plaintiffs.

234.  §77ppp(b) of the TIA prohibits the impairment of any security holder's rights to payment of principal and interest on or after the due dates of such security, including without limitation interfering with the institution of suit for enforcement of such rights.

235.  §77xxx of the TIA makes it "unlawful for any person in offering, selling or issuing any security to represent or imply in any manner whatsoever that any action or failure to act by the Commission in the administration of this subchapter means that the Commission has in any way passed upon the merits of, or given approval to, any trustee, indenture or security, or any transaction or transactions therein, or that any such action or failure to act with regard to any statement or report filed with or examined by the Commission pursuant to this subchapter or any

rule, regulation, or order thereunder, has the effect of a finding by the Commission that such statement or report is true and accurate on its face or that it is not false or misleading."

236.   By virtue of the conduct of IFC and its principals, Defendants violated §§§77eee, 77fff(a), 77fff(b), 77fff(c), 77lll, 77mmm, 77nnn, 77ooo, 77ppp(b), and 77xxx of the TIA.

237.   The TIA incorporates the civil remedies of the Securities Act of 1933 by reference.

238.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) by purchasing securities and/or indentures issued by IFC and its principals and have not received any of that investment back despite demand for same.

239.   Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the TIA.

## COUNT XVI – CIVIL RICO

240.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

241.   Defendants have engaged in activity that is unlawful under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.* (hereinafter "RICO").

242.   The IFC principals are all "principals" as that term is defined in §1962(a) of RICO and in 18 U.S.C. §2.

243.    Defendants have committed mail and wire fraud in order to obtain investments of money from Plaintiffs and Defendants have used interstate and foreign commerce in order to take such money from its original and intended purpose and used the money to purchase property in Mexico with the intent of secreting the assets from investor Plaintiffs.

244.    Defendants have, through a pattern of fraud and threats to Plaintiffs, deterred Plaintiffs from enforcing their rights as investors for the return of their investments plus agreed to interest so that Defendants could form and have control over a Mexico corporation and purchase land in Mexico, contrary to the original purpose of the invested money.

245.    Defendants were either active principals, employed by or associated with IFC which was engaged in activities affecting interstate and foreign commerce and conducting or participating, either directly or indirectly, in the conduct of IFC's affairs through a pattern of racketeering activity.

246.    Defendants were conspiring to violate the anti-racketeering provisions of §§1962(a), (b) and (c).

247.    By virtue of the conduct of IFC and its principals, Defendants violated §1962 of RICO.

248.    §1964 of RICO provides various civil remedies for violations of RICO.

249.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) as a result of the racketeering activity, mail and wire fraud of IFC and its principals and have not received any of that investment back despite demand for same.

250.    Plaintiffs' injuries have been directly and proximately caused by IFC's violations of RICO.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    That this Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certify the Class as all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008 and excluding any member, officer or director of Defendants;

B.    That this Court award compensatory damages in the amount of $8,000,000.00 and such other damages to be proven at trial plus interest, which amount to be shared by the Class in proportionate shares to their investments;

C.    That this Court grant any and all relief available, alternatively, under the Securities Act of 1933, 15 U.S.C. §77a *et seq.,* the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.,* the Uniform Fraudulent Transfer Act, 740 ILCS 160/ *et seq.,* the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.,* the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.,* Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.,* the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.,* Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.,* and the other causes of action stated herein so as to provide justice to the Plaintiffs;

D.    That this Court impose a constructive trust and/or appoint a receiver for the assets of Defendants, including without limitation the 27 acres of undeveloped property in Mexico and all assets of Realty Opportunities International

S. de R.L. de C.V., and enjoin Defendants from sale, transfer, or dissipation of the Mexican property or any assets of Realty Opportunities International S. de R.L. de C.V.;

E.      That this Court should void the transfer of Plaintiffs' investment money to the purchase of the property in Mexico and assets of Realty Opportunities International S. de R.L. de C.V. as a fraudulent transfer as to creditors Plaintiffs and require Defendants to restore the assets to Plaintiffs or to the companies in which Plaintiffs invested;

F.      That this Court award treble damages as provided for under §1964 of RICO;

G.      That this Court award exemplary damages in the amount of $50,000,000.00 as penalty to Defendants and to assure that Defendants do not further their current fraudulent scheme or perpetuate another fraudulent scheme in the future;

H.      That this Court award reasonable attorneys' fees, costs and disbursements; and

I.      That this Court award such other and further relief as this honorable Court deems just and equitable.

## <u>VII.</u>   <u>JURY DEMAND</u>

Plaintiffs hereby demand trial by jury on all claims for damages at law.


PLAINTIFFS' CLASS



By:   /s/ Robert C. Thurston
         One of Their Attorneys


Thurston Law Offices, P.C.                    Law Offices of Joel M Weiner, LLC
Robert C. Thurston                            Joel M. Weiner
A.R.D.C. No. 6209353                          579 N 1st Bank Drive Suite 150
10469 Bethel Avenue                           Palatine, IL 60067-8102
Huntley, IL 60142                             Phone: 847-654-3105
Phone: 847-659-8613                           Fax: 847-358-7165
Fax: 847-628-0930                             Email: jweiner@jweinerlaw.com
Email: tj@thurstonlawpc.com