EXHIBIT A TO MEMORANDUM IN SUPPORT

PART 1

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL;<br>ROBERT N. SCHAUFENBUEL;<br>JOHN AND SARAH REED, IV;<br>JOHN AND JAN REED, III;<br>AMERICAN MASS MEDIA CORPORATION;<br>ROBERTA K. CLARK; MARIA A. VALENTIN;<br>LIAM A. ANGELINI;<br>KEITH A. AND BONNIE C. RAINES;<br>RAVIKUMAR AND SUMATHI<br>JAMMALAMADAKA; PAUL J. HERINK;<br>G. MATTHEW KNOWLTON;<br>WILHELM HALL; KATHLEEN F. MARKUS;<br>JONATHAN PATTON; KATHLEEN TAJAK;<br>RUTH HALVERSON, AS TRUSTEE OF THE<br>HALVERSON FAMILY TRUST; DAVE HALE;<br>JOSEPH CAVALUZZI; JOSEPH S. PEARSE;<br>ANDREW KAUFMAN; FRANK M. CUPP;<br>THOMAS AND MARY O'SULLIVAN-SNYDER;<br>MARY O'SULLIVAN-SNYDER AS<br>ADMINISTRATOR OF THE ESTATE OF<br>SARAH PEARSE; PATRICK O'SULLIVAN;<br>DANIEL SULLIVAN; KAILASH AND KANTA<br>GUPTA; NISHANT GUPTA; NATASHA<br>GUPTA; WILLIAM R. RICHOZ;<br>on behalf of Themselves and All Others<br>Similarly Situated, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|         Plaintiffs, | )<br>) |
| V. | )<br>) |
| INVESTFORCLOSURES FINANCIAL, L.L.C.;<br>ROI DEVELOPERS;<br>INVESTFORCLOSURES;<br>INVESTFORCLOSURES.COM, LLC;<br>INVESTFORCLOSURES VENTURES, LLC;<br>SANDS OF GOLD ESCROW;<br>SANDS OF GOLD; ROI FINANCIAL;<br>REALTY OPPORTUNITIES INTERNATIONAL<br>ESCROW 23; ROI ESCROW;<br>REALTY OPPORTUNITIES INTERNATIONAL<br>S. de R.L. de C.V.;<br>REALTY OPPORTUNITIES INTERNATIONAL;<br>ROI MEXICO; SANDS OF GOLD ESTATES;<br>FRANCIS X. SANCHEZ aka FRANK SANCHEZ;<br>JAMES D. BOURASSA aka JIM BOURASSA;<br>SCOTT D. WESSEL; DEANA M. GUIDI;<br>DANIEL E. FITZGERALD aka DAN | )    **Case No. 09-CV-1221**<br>)<br>)<br>)<br>)    **Judge Leinenweber**<br>)<br>)    **Magistrate Judge Nolan**<br>)<br>)<br>)<br>)    <u>**JURY DEMAND**</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Amended Class Action Complaint
Page 1 of 59



EXHIBIT
to Memorandum in
Support of Motion
to Dismiss

A

FITZGERALD; SCOTT SLAGLE;                          )
DARCEY L. MARTIN; TOM RODRIGUEZ;                   )
AMO REALTY INTERNATIONAL, LTD.;                    )
WAYNE M. O'DAY; RICHARD SANCHEZ;                   )
SALOMON SANCHEZ JR.;                               )
SANCHEZ & RIVERA EXCHANGE CORP.;                   )
SANCHEZ & RIVERA GROUP, LLC;                       )
SANCHEZ & RIVERA TITLE CO.;                        )
SANCHEZ & RIVERA TITLE, LLC;                       )
MAURICIO SANCHEZ;                                  )
INVESTFORCLOSURES NATIONAL, LLC; and               )
JOHN DOES 1 – 30,                                  )
                                                   )
                     **Defendants.**

## SECOND AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs Bradley J. Schaufenbuel; Robert N. Schaufenbuel; John

and Sarah Reed, IV; John and Jan Reed, III; American Mass Media Corporation;

Roberta K. Clark; Maria A. Valentin; Liam A. Angelini; Keith and Bonnie Raines;

Ravikumar and Sumathi Jammalamadaka; Paul J. Herink; G. Matthew Knowlton;

Wilhelm Hall; Kathleen F. Markus; Jonathan Patton; Kathleen Tajak; Ruth Halverson

as Trustee of The Halverson Family Trust; Dave Hale; Joseph Cavaluzzi; Joseph S.

Pearse; Andrew Kaufman; Frank M. Cupp; Thomas and Mary O'Sullivan-Snyder;

Mary O'Sullivan-Snyder as Administrator of the Estate of Sarah Pearse; Patrick

O'Sullivan; Daniel O'Sullivan; Kailash and Kanta Gupta; Nishant Gupta; Natasha

Gupta; and William R. Richoz; on behalf of themselves and all others similarly

situated (collectively referred to as "Plaintiffs" or "Investors"), by and through their

attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and for

their Second Amended Class Action Complaint against Defendants,

InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures;

InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold

Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow

23; ROI Escrow; Realty Opportunities International S. de R.L. de C.V.; Realty

Opportunities International; ROI Mexico; Sands of Gold Estates; Francis X. Sanchez

aka Frank Sanchez; James D. Bourassa aka Jim Bourassa; Scott D. Wessel; Deana

M. Guidi; Daniel E. Fitzgerald aka Dan Fitzgerald; Scott Slagle; Darcey L. Martin;

Tom Rodriguez; AMO Realty International, Ltd.; Wayne M. O'Day; Richard Sanchez;

Salomon Sanchez Jr.; Sanchez & Rivera Exchange Corp.; Sanchez & Rivera Group,

LLC; Sanchez & Rivera Title Company; Sanchez & Rivera Title, LLC; Mauricio

Sanchez; InvestForClosures National, LLC ("IFC National"); and John Does 1 - 30

(collectively referred to as "IFC" or "Defendants"), hereby state and allege for their

class action as follows:

## I.     NATURE OF THE ACTION

1.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure on behalf of themselves and all persons who

invested money with IFC during the period July 1, 1999 through December 31,

2008.  Excluded from the class is any member, officer or director of Defendants.

2.     IFC, through nearly constantly changing and involuntarily dissolved

business organizations and names, used websites, print and radio advertisements,

conventions and investment conferences, direct contact, and other marketing

materials and methods to solicit individuals and businesses to invest money in IFC's

purported businesses of "flipping properties" and later developing a fictitious resort

in Mexico.

3.      Initially, IFC offered and sold securities and/or debt instruments to investors with promises of extraordinary returns and interest on their investment, sometimes as high as 28%.

4.      Subsequently, IFC expanded the fraud to sell lots of property in Playa Ventura, Mexico aka Sands of Gold Estates to investors when IFC had no ownership rights in the property.

5.      IFC failed to register the securities and investment vehicles it issued with any proper agency or authority in violation of various State and Federal securities laws and virtually each legal entity that IFC formed was involuntarily dissolved by the Illinois Secretary of State.

6.      IFC systematically misrepresented returns and interest that would be earned on the securities and investment vehicles purchased by the Plaintiffs and, indeed, nearly every word communicated to investors by IFC was false and the investments were never returned, despite numerous requests by investors to IFC to do so.

7.      In a Ponzi scheme much like that of Bernard Madoff, IFC would attract an investor and use the funds obtained from Investor B to payoff a portion of debt owed to Investor A and then continued in like manner with subsequent investors, such that most investors never received any payoff in accordance with the terms of the purchased investment vehicle.

8.      IFC continued to promise investors that their return would be forthcoming, even convincing certain investors to roll over their investments into

other investment vehicles that were not backed up by any true properties or investments.

9.     Ultimately, IFC took over $8 million in investments from Plaintiffs and have not repaid any of the debts or interest owed.  Instead, IFC has formed a new corporation in Mexico - not tied to any of the investment vehicles - to promote the development of Sands of Gold Estates in Playa Ventura, Mexico and to conceal the money from investors by transferring it to Mexico.

## II.    JURISDICTION AND VENUE

10.    Jurisdiction is proper pursuant to 28 U.S.C. §1331 as this case arises under, *inter alia,* the Securities Act of 1933, 15 U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.*

11.    Venue is proper pursuant to 28 U.S.C. §1391 as many of the Defendants reside in the District and a substantial part of the events or omissions giving rise to the claims occurred in the District.

## III.    PARTIES

12.    Bradley J. Schaufenbuel ("Brad S") is an individual residing at 5009 Cornell Avenue, Downers Grove, Illinois 60515-4314.

13.    Robert N. Schaufenbuel ("Robert S") is an individual residing at 2340 16th Street N.W., Cedar Rapids, Iowa 52405-1172.

14.    John and Sarah Reed, IV ("Reed IV") are married individuals residing at 2304 S. 79th Ave, Yakima, WA 98903.

15.    John and Jan Reed, III ("Reed III") are married individuals residing at 19311 NE 190th St, Woodinville, WA 98077.

16.    American Mass Media Corporation ("AMMC") is an Illinois corporation with its principal place of business located at 207 E. Ohio St. #218, Chicago, IL 60611.

17.    Roberta K. Clark ("Clark") is an individual residing at 14909 Oakbury Drive, La Mirada, CA 90638.

18.    Maria A. Valentin ("Valentin") is an individual residing at 32W121 Bode Road, Elgin, IL 60120.

19.    Liam A. Angelini ("Angelini") is an individual residing at 452 SW 158 Terrace #204, Pembroke Pines, FL 33027.

20.    Keith and Bonnie Raines ("Raines") are married individuals residing at 1118 Dilton Ave., River Ridge, LA 70123.

21.    Ravikumar and Sumathi Jammalamadaka ("Jammlamadaka") are married individuals residing at 5 Amy Drive, North Brunswick, NJ 08902.

22.    Paul J. Herink ("Herink") is an individual residing at 291 Frank Applegate Road, Jackson, NJ 08527-4215.

23.    G. Matthew Knowlton ("Knowlton") is an individual residing at 6A Clover Ct., Raymond, NH 03077.

24.    Wilhelm Hall ("Hall") is an individual residing at 237 Rock Ave., Park Ridge, NJ 07656.

25.    Kathleen F. Markus ("Markus") is an individual residing at 75A Chatham Drive, Monroe Twp, NJ 08831.

26.    Jonathan Patton ("Patton") is an individual residing at 4021-C Camellia Dr., Valdosta, GA 31605.

27.    Kathleen Tajak ("Tajak") is an individual residing at 566 Wilshire Ave., Glen Ellyn, IL 60137.

28.    Ruth Halverson as Trustee of The Halverson Family Trust ("Halverson") is an individual residing at 19 Pier Pointe, New Bern, NC 28562.

29.    Dave Hale ("Hale") is an individual residing at 708 Glendale Ave., Rockford, IL 61108.

30.    Joseph Cavaluzzi ("Cavaluzzi") is an individual residing at 1602 SW Cefalu Cir., Port St. Lucie, FL 34953.

31.    Joseph S. Pearse ("Pearse") is an individual residing at 629 Vine St., Davenport, IA 52802.

32.    Andrew Kaufman ("Kaufman") is an individual residing at 4680 Green Bridge Lane, Hanover Park, IL 60133.

33.    Frank M. Cupp ("Cupp") is an individual residing at 60 S. Outer Drive, Vienna, OH 44473.

34.    Thomas and Mary O'Sullivan-Snyder ("Snyders") are married individuals residing at 4655 Landau Place, Rockford, IL 61114.

35.    Mary O'Sullivan-Snyder resides at 4655 Landau Place, Rockford, IL 61114 and is the Administrator of the Estate of Sarah Pearse ("Sarah Pearse").

36.    Patrick O'Sullivan ("Patrick O") is an individual residing at 4655 Landau Place, Rockford, IL 61114.

37.    Daniel O'Sullivan ("Daniel O") is an individual residing at 4655 Landau Place, Rockford, IL 61114.

38.    Kailash and Kanta Gupta ("Guptas") are married individuals residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

39.    Nishant Gupta ("Nishant") is an individual residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

40.    Natasha Gupta ("Natasha") is an individual residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

41.    William R. Richoz ("Richoz") is an individual residing at 773 Bluff City Blvd., Elgin, IL 60120.

42.    At all relevant times herein, InvestForClosures Financial, L.L.C. ("IFC Financial") was a limited liability company organized on March 19, 2002 under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098. IFC Financial was involuntarily dissolved by the Illinois Secretary of State on September 12, 2008.

43.    At all relevant times herein, ROI Developers was an assumed name of IFC Financial.

44.    At all relevant times herein, InvestForClosures was an assumed name of IFC Financial.

45.    InvestForClosures.com, LLC ("IFC.com") was a limited liability company organized on March 14, 2000 under the laws of Illinois and with its principle office located at 109 Douglas Avenue, Elgin, Illinois 60120. IFC.com was involuntarily dissolved by the Illinois Secretary of State on August 28, 2001.

46.    At all relevant times herein, InvestForClosures Ventures, LLC ("IFC Ventures") was a limited liability company organized on December 30, 2004 under

the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098. IFC Ventures was involuntarily dissolved by the Illinois Secretary of State on June 13, 2008.

47.    Sands of Gold Escrow was an assumed name of IFC Ventures.

48.    Sands of Gold was an assumed name of IFC Ventures.

49.    ROI Financial was an assumed name of IFC Ventures.

50.    Realty Opportunities International Escrow 23 was an assumed name of IFC Ventures.

51.    ROI Escrow was an assumed name of IFC Ventures.

52.    Realty Opportunities International S. de R.L. de C.V. ("ROI Mexico") is, upon information and belief, a corporation organized under Mexican law and a wholly owned subsidiary of IFC Ventures. ROI Mexico has its principal place of business in Woodstock, Illinois and maintained a website at www.roimexico.com.

53.    Realty Opportunities International is an assumed name of ROI Mexico.

54.    ROI Mexico is an assumed name of ROI Mexico.

55.    Sands of Gold Estates is an assumed name of ROI Mexico.

56.    Francis X. Sanchez aka Frank Sanchez ("Sanchez") is an individual residing at 710 Lake Avenue, Woodstock, McHenry County, Illinois 60098-4255. At all relevant times herein, Sanchez was the Chief Executive Officer of all of the IFC entities.

57.    James D. Bourassa aka Jim Bourassa ("Bourassa") is an individual residing at 254 Gregory M. Sears Dr., Gilberts, Kane County, Illinois 60136-4024.

At all relevant times herein, Bourassa was the President and Registered Agent of the IFC entities.

58.    Scott D. Wessel ("Wessel") whose last known address is 1700 Wicker St., Woodstock, IL 60098-2456 and who has a webpage on Facebook at URL: http://www.facebook.com/people/Scott-Wessel/504252536. At all relevant times herein, Wessel was Vice President of the IFC entities and solicited investors to buy securities from the IFC entities.

59.    Deana M. Guidi ("Guidi") is an individual who, upon information and belief, resides at 6511 Edgeworth Drive, Orlando, FL 32819. At all relevant times herein, Guidi was General Counsel and/or a principal and agent of the IFC entities and was duly licensed to practice law in Illinois from May 10, 2001 until she voluntarily retired her license in 2008. During Guidi's employment with IFC, she interacted with investors, acted more as an officer of the IFC entities than as legal counsel, and furthered the fraud of the IFC entities.

60.    Daniel E. Fitzgerald aka Dan Fitzgerald ("Fitzgerald") is an individual who, upon information and belief, resides at 606 Hapsfield Lane, Buffalo Grove, IL 60089-3364. At all relevant times herein, Fitzgerald was an employee, principal, officer or agent of the IFC entities and solicited investors to buy securities from the IFC entities.

61.    Scott Slagle ("Slagle") is an individual who, upon information and belief, resides at 364 Gertrude St., Elgin, IL 60123-7451. At all relevant times herein, Slagle was an employee, principal, officer or agent of the IFC entities and solicited investors to buy securities from the IFC entities.

62.    Darcey L. Martin ("Martin") is an individual who, upon information and belief, resides at 9507 Waterford Oaks Blvd., Winter Haven, FL 33884. At all relevant times herein, Martin was a member or principal of the IFC entities and continued the fraud by acting as the liaison between the IFC entities and investors.

63.    Tom Rodriguez ("Rodriguez") is currently employed as a staff accountant with Consolidated School District #158 and maintains his office at 650 Academic Drive, Algonquin, IL 60102. At all relevant times herein, Rodriguez was the staff accountant and/or principal or officer for the IFC entities and assisted in the fraud by concealing investor moneys and wire transferring the money to Sanchez in Mexico.

64.    AMO Realty International, Ltd. ("AMO Realty") is an Illinois corporation with its principal place of business located at 9654 W. 131st St., Suite 213, Palos Park, IL 60464. At all relevant times herein, AMO Realty was acting as an agent for and selling property in Mexico on behalf of the IFC entities.

65.    Wayne M. O'Day ("O'Day") is an individual who, upon information and belief, resides at 10501 Palos W. Dr., Palos Park, IL 60464. At all relevant times herein, O'Day was Chief Financial Officer of ROI Mexico and is a principal of AMO Realty selling property on behalf of the IFC entities.

66.    Richard Sanchez ("Richard") is an individual who, upon information and belief, resides at 7347 Davis St., Morton Grove, IL 60053-1704. At all relevant times herein, Richard was an employee, principal, officer or agent of the IFC entities and continued the fraud by acting as the liaison between the IFC entities and investors.

67.    Salomon Sanchez Jr. ("Salomon") is an individual who, upon information and belief, resides at 710 Lake Ave., Woodstock, IL 60098-4255. At all relevant times herein, Salomon was an employee, principal, officer or agent of the IFC entities and continued the fraud by acting as the liaison between the IFC entities and investors.

68.    At all relevant times herein, Sanchez & Rivera Exchange Corp. ("S&R Exchange") was a domestic corporation organized on December 27, 2000 under the laws of Illinois and with its principle office located at 75 W. Wacker Dr., Suite 900, Chicago, Illinois 60601. S&R Exchange was involuntarily dissolved by the Illinois Secretary of State on May 2, 2005.

69.    At all relevant times herein, Sanchez & Rivera Group, LLC ("S&R Group") was a limited liability company organized on January 29, 2004 under the laws of Illinois and with its principle office located at 75 E. Wacker Dr., Suite 700, Chicago, Illinois 60601. S&R Group was involuntarily dissolved by the Illinois Secretary of State on June 30, 2005.

70.    Sanchez & Rivera Title Company is an assumed name of S&R Group and claims to be currently operating as a division of S&R Group and maintains a website at http://www.sandrtitle.com.

71.    At all relevant times herein, Sanchez & Rivera Title, LLC ("S&R Title") is a limited liability company organized on December 30, 2004 (the same day as IFC Ventures) under the laws of Illinois and with its principle office located at 75 E. Wacker Dr., Suite 700, Chicago, Illinois 60601. S&R Title is currently not in good standing with the Illinois Secretary of State.

72.    Mauricio Sanchez ("Mauricio") is the President and CEO of Sanchez & Rivera Title Company and maintains his office at 222 N. Aberdeen St., Suite 200, Chicago, Illinois 60607.

73.    At all relevant times herein, InvestForClosures National, LLC ("IFC National") was a limited liability company organized on March 28, 2003 under the laws of Illinois and with its principle office located at 326 Railroad Street, Woodstock, McHenry County, Illinois 60098.  IFC National was involuntarily dissolved by the Illinois Secretary of State on August 28, 2006.

74.    John Does 1 – 30 are persons who are owners, members, principals and/or agents of the IFC entities and/or who are interested in the subject matter of this case whose identities are as yet unknown and whom are named herein pursuant to 735 ILCS 5/2-413.

75.    IFC Financial, IFC.com, IFC Ventures, ROI Mexico, and IFC National and each of their subsidiaries and assumed names shall hereinafter be collectively referred to as the "IFC entities" unless identified individually.

76.    Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez, O'Day, Richard, Salomon and John Does 1 – 30 shall hereinafter be collectively referred to as the "IFC principals" unless identified individually.

77.    S&R Exchange, S&R Group, Sanchez & Rivera Title Company, S&R Title, and Mauricio shall hereinafter be collectively referred to as the "S&R entities" unless identified individually.

## IV.     CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who invested money with Sanchez and any of the IFC entities during the period July 1, 1999 through December 31, 2008 (the "Class"). Excluded from the Class is any Defendant and any member, officer or director of Defendants.

79.     The Class consists of more than one hundred persons located throughout the United States and possibly some overseas, thus, the members of the Class are so numerous and geographically separated that joinder of all Class members is impracticable. Upon information and belief, the number of Class members is approximately one hundred twenty seven (127), but further discovery is necessary to determine the exact number.

80.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex securities and fraud litigation. Named Plaintiffs' damages are similar, if not identical, in nature to the members of the Class and have no interests that are adverse or antagonistic to those of the Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by some individual Class members may be relatively small, the expense and burden of multiple individual litigations make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged herein on their own.

82.    Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class. Among the questions of law and fact common to the Class are:

a.    Whether Defendants violated various federal and state securities laws and other statutes and common laws by their acts and omissions and otherwise committed fraud upon the Plaintiffs;

b.    Whether Defendants breached their fiduciary duties owed to Plaintiffs;

c.    Whether Plaintiffs and the members of the Class have sustained injuries proximately caused by Defendants' acts and omissions; and

d.    Whether there are damages and adequate remedies at law for Plaintiffs.

83.    Plaintiffs envision no difficulty in the management of this litigation as a Class Action.

## V.    COMMON FACTUAL ALLEGATIONS

84.    From late Summer 1999 through March 2000, Sanchez and Bourassa solicited and obtained investments from a few persons, including among others Leobardo Terrazas, Alvaro Terrazas, Richard Burge, Penny Chance, Carl Salas, and Neil Steffens ("original investors"), for a start up business.

85.    Sanchez and Bourassa represented to the original investors that the purpose of the start-up business was to renovate foreclosed and distressed properties and resell the properties for a profit ("property flipping"). Sanchez and

Bourassa represented that the profits from property flipping would then be used to repay the investors with interest.

86.    In exchange for their investments, Sanchez and Bourassa gave the original investors certificates (some in Spanish) for IFC.com showing the amount of their investment and the guaranteed interest to be paid on their investments; "warrants" for future stock in IFC.com; and side agreements signed by Sanchez promising a percentage of profits from IFC.com.

87.    At the time of these exchanges, there was no legal entity known as IFC.com, nor had Sanchez or Bourassa sought or obtained approval from any federal or state agency to offer, issue or sell securities.

88.    On September 26, 2003, Brad S. and Robert S. invested $35,000.00 in IFC Financial, by and through the IFC principals, and were issued investment certificate number IFCF092603-01, representing account number 104101. (True and correct copies of representative investment certificates and account statements are attached hereto and incorporated herein by reference as Group Exhibit A.)

89.    Reed IV invested $40,000.00 on April 6, 2005 and $40,000.00 on September 12, 2005 in IFC Ventures, by and through the IFC principals, for a total investment of $80,000.00 and was issued investment certificates representing account number 204017. (See Group Exhibit A.)

90.    On March 30, 2007, Reed IV invested an additional $10,000.00 in IFC Ventures' newly created Special Opportunities Plan ("SOP") and moved his accrued interest in IFC Ventures to the SOP account. (See Group Exhibit A.)

91.    On February 17, 2005, Reed III invested $50,000.00 in IFC Ventures, by and through the IFC principals, and was issued investment certificate number IFCV021705-01, representing account number 204013.  (See Group Exhibit A.)

92.    On November 9, 2004, AMMC invested $50,000.00 in IFC Financial, by and through the IFC principals, and was issued investment certificate number IFCF110904-01, representing account number 104149.  (See Group Exhibit A.)

93.    On July 18, 2005, AMMC invested $20,000.00 in IFC Ventures, by and through the IFC principals, and was issued investment certificate number IFCV071805-01, representing account number 204027.  (See Group Exhibit A.)

94.    On July 13, 2005, Clark invested $70,000.00 in IFC Ventures, by and through the IFC principals, and was issued investment certificate number IFCV071305-01, representing account number 204022.  (See Group Exhibit A.)

95.    Valentin invested $30,000.00 on September 4, 2001 and $40,000.00 on June 1, 2004 in IFC Financial, by and through the IFC principals, for a total investment of $70,000.00 and was issued investment certificates numbers IFC090401-01 and IFCF060104-01, representing account number 104137.  On October 30, 2006, Valentin invested an additional $10,000.00 in IFC Ventures SOP and moved her accrued interest to the SOP account.  (See Group Exhibit A.)

96.    On July 21, 2004, Angelini invested $35,000.00 in IFC Financial, by and through the IFC principals, and was issued investment certificate number IFCF072104-01, representing account number 104143.  (See Group Exhibit A.)

97.    The Raines invested $10,000.00 jointly on December 31, 2001; Keith Raines invested $41,655.77 individually on November 26, 2002; and Bonnie Raines

invested $43,112.29 individually on December 3, 2002, in IFC Financial, by and through the IFC principals, and received, respectively, investment certificate numbers IFC123101-03, IFC112602-01, and IFC120302-01representing account numbers 104014, 104015, and 104016. (See Group Exhibit A.)

98.   The Jammalamadakas invested $25,000.00 on November 18, 2003 in IFC Financial and invested $100,000.00 on December 28, 2004 in IFC Ventures, by and through the IFC principals, and received investment certificates, representing, respectively, account numbers 104106 and 204001. (See Group Exhibit A.)

99.   On December 22, 2003, Herink invested $30,476.60 in IFC Financial, by and through the IFC principals, and received an investment certificate, representing account number 104111. (See Group Exhibit A.)

100.   Knowlton invested a total of $17,000.01 over April 29, 2003, July 31, 2003, January 29, 2004, and March 8, 2005 in IFC Financial, by and through the IFC principals, and received investment certificates, representing account numbers 104081 and 104096. (See Group Exhibit A.)

101.   Hall invested $20,028.58 over April 22, 2003 and April 29, 2003 and $15,000.00 on December 18, 2003, in IFC Financial, by and through the IFC principals, and received investment certificates IFCF042203-01, IFCF042903-02, and IFCF0121803-01, representing account number 104079. On February 8, 2005, Hall invested $25,000.00 in IFC Ventures, by and through the IFC principals, and received an investment certificate IFCV020805-01, representing account number 204010. On June 28, 2007, Hall invested an additional $25,979.85 in the IFC

entities, by and through the IFC principals, which was added to account number 204010. (See Group Exhibit A.)

102.   On April 2 and May 13, 2003, Markus invested $135,000.00 in IFC Financial, by and through the IFC principals, and received investment certificates therefor. On December 22, 2004, January 31 and July 7, 2005, Markus invested $100,000.00 in IFC Ventures, by and through the IFC principals, and received investment certificates therefor. On March 24, 2007, Markus invested an additional $30,000.00 in the IFC entities, by and through the IFC principals.

103.   On December 11, 2006, Patton invested $40,000.00 in the IFC entities, by and through the IFC principals, representing account number 204048. (See Group Exhibit A.)

104.   Over the course of two dates, Tajak invested a total of $60,000.00 in the IFC entities, by and through the IFC principals.

105.   On April 6 and August 31, 2004, Donald & Ruth Halverson invested $55,000.00 in IFC Financial, by and through the IFC principals, and received investment certificates IFCF040604-01 and IFCF083104-01, representing account number 104127. On July 7, 2005, the Halversons invested $20,000.00 in IFC Ventures, by and through the IFC principals, and received an investment certificate IFCV070705-01, representing account number 204023. On March 19, 2007, the Halversons invested an additional $20,000.00 in the IFC entities, by and through the IFC principals, which was added to account number 204023. (See Group Exhibit A.)

106. All of the Halversons' investments were transferred to The Halverson Family Trust, for which Ruth Halverson is the present Trustee.

107. In January 2008, Hale invested $10,000.00 in the IFC entities, by and through the IFC principals.

108. On March 2, 2003 and April 25, 2007, Cavaluzzi invested a total of $47,950.97 in the IFC entities, by and through the IFC principals.

109. On February 21, 2002, Pearse invested $3,197.00 in the IFC entities, by and through the IFC principals.

110. On January 27, 2004, Kaufman invested $35,000.00 in the IFC entities, by and through the IFC principals.

111. On May 18 and June 18, 2004, Cupp invested a total of $20,000.00 in the IFC entities, by and through the IFC principals.

112. The Snyders invested $28,241.00 between June 2001 and July 2005 in the IFC entities, by and through the IFC principals.

113. Sarah Pearse invested $4,000.00 on June 14, 2001 in the IFC entities, by and through the IFC principals, and her claim is now maintained by her Estate.

114. On September 27, 2001, Patrick O invested $4,000.00 in the IFC entities, by and through the IFC principals.

115. On August 20, 2001, Daniel O invested $3,000.00 in the IFC entities, by and through the IFC principals.

116. On February 4, 2003, Guptas invested $40,000.00 in the IFC entities, by and through the IFC principals.

117.  On December 10, 2003 and December 22, 2004, Nishant invested a total of $67,000.00 in the IFC entities, by and through the IFC principals.

118.  On March 7, 2003 and July 29, 2005, Natasha invested a total of $65,000.00 in the IFC entities, by and through the IFC principals.

119.  Between February and March, 2003, Richoz invested a total of $22,966.84 in the IFC entities, by and through the IFC principals.

120.  Upon information and belief, more than 125 people invested in the IFC entities from July 1, 1999 to December 31, 2008 for a total in excess of $7.7 million.  (A summary chart of investors is attached hereto as Exhibit B.)

121.  Many of these investments were made through intermediaries and brokers, such as Sterling Trust Company in Waco, Texas and A.W. Allen & Co. in Columbus, Ohio.

122.  In many cases, the IFC entities, by and through the IFC principals, had Investors execute a Power of Attorney in favor of Sanchez relating to their investments in the IFC entities.  (A true and correct copy of Roberta Clark's executed Power of Attorney is attached hereto as Exhibit C.)

123.  At the end of each of the Investors' investment terms, each Investor attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

124.  The Investors were told by Defendants that they had to execute a Withdrawal Request Form in order to obtain repayment of their investment and in most cases the investors completed and returned the form.  (True and correct

copies of some of the Withdrawal Request Forms are attached hereto as Group Exhibit D.)

125.    When the Investors attempted to collect the balance owed on their respective accounts, the IFC principals refused to return the principal or interest owed on the notes and certificates, despite the Investors' repeated requests.

126.    Rather, the IFC principals, speaking through Frank Sanchez, told Investors that IFC did not have sufficient cash available to pay the Investors the sums acknowledged as due.

127.    Some Investors were told to 'roll over' or reinvest their investments in other investment notes or certificates with IFC based on representations of an even larger return on their investment at a later date.  Many Investors did reinvest their investments in other IFC notes or certificates on this basis.

128.    The IFC entities are in default on the Investors' investment notes and certificates.

129.    The IFC entities, through the IFC principals, solicited additional investors and did not advise such additional investors that the IFC entities were in default on prior obligations and indeed represented to the additional investors that the IFC entities were prospering ventures.

130.    The IFC entities failed to disclose that they had defaulted on prior notes payable to Investors.

131.    The IFC principals did not seek or obtain approval from any federal or state agency to offer, issue or sell securities for the IFC entities.  Indeed, the IFC

principals represented to the public that the securities were exempt from registration, which was false.

132.    On June 24, 2005, the Pennsylvania Securities Commission issued a Summary Order to Cease and Desist ("PASC Order") against ROI Financial d/b/a InvestForClosures Ventures, LLC and Frank Sanchez to halt the offer and sale of unregistered securities in the State of Pennsylvania. (A true and the PASC Order is attached hereto and incorporated herein by reference as Exhibit E.)

133.    During this period, the IFC principals would move investors money around from banking institution to banking institution and in some instances would wire the money from an Illinois bank to banks or other financial institutions in Mexico at the request of Sanchez.

134.    During this period, the IFC entities did little or no actual property flipping business.

135.    The IFC entities did develop a project called New Hope Park in Cortland, DeKalb County, Illinois, but took the profits from the sales of the homes in that development and did not repay the investors with such profits. The New Hope Park development is the subject of another pending suit called *Schieve v. InvestForClosures Financial, LLC*, 16th Judicial Circuit Court, DeKalb County, Illinois, Case No. 07-L-33, in which the original landowner claims that IFC Financial defrauded him out of the land and made other misrepresentations.

136.    From 2005 to 2009, the IFC principals began promoting and soliciting investments to develop a resort called the Sands of Gold Estates project in Playa Ventura, Mexico.

137.  The IFC principals told prior investors in the IFC entities that they had to roll over or transfer their securities to IFC Ventures or else they would lose their entire investment.  In some cases the IFC principals used false incentives, such as promises of financial bonuses, and in other cases the IFC principals used threats, such as the investors would lose all of their prior investment, in order to convince the investors to keep their investments with the IFC entities and not to seek repayment.

138.  On November 9, 2007, the Illinois Secretary of State Securities Department issued a Temporary Order of Prohibition (the "ISD Order") against Jim Bourassa, Frank Sanchez, IFC Financial, and IFC Ventures from issuing securities in the State of Illinois. The Illinois Securities Department made a finding that Bourassa, Sanchez, IFC Financial and IFC Ventures committed fraud in the sale of securities, failed to register securities as required by law, and failed to file with the Illinois Secretary of State.  (A true and the ISD Order is attached hereto and incorporated herein by reference as Exhibit F.)

139.  At some point, the IFC entities stopped providing certificates to investors even though the IFC principals represented that such certificates were being issued and sent to represent the investments.

140.  The IFC principals continued to make false and fraudulent representations about the Sands of Gold Estates project in Playa Ventura, Mexico, including without limitation that ROI Mexico owned and had the authority for the 23,000 acres being developed; that ROI Mexico had contracted with various companies for the development of the resort; and that ROI Mexico was able to