EXHIBIT A TO MEMORANDUM IN SUPPORT

PART 2

obtain financing for the project; and that ROI Mexico was able and ready to convey ownership of the properties to individual investors.

141.   All Defendants aided or abetted the fraud that the IFC entities were developing and/or selling interests and lots in the Sands of Gold Estates in Mexico. The S&R entities were represented to be the company that would transfer title to investors for the properties. AMO Realty, controlled by ROI Mexico CFO O'Day, was brokering sales of the lots at Sands of Gold Estates.

142.   Essentially, Defendants were selling property in Mexico that they didn't own or have the rights to sell.   In some cases, Defendants sold lots of land in the Sands of Gold Estates to investors for which Defendants had no interest in the property; investors received no title, deed or other documentation showing their purchased interest to the property from Defendants; and which Defendants fraudulently represented that investors had such ownership interests and could demand the return of their investment at any time.

143.   During this period, the IFC principals continued to move investors' money around from banking institution to banking institution and began to systematically wire investors' money from Illinois to Sanchez in Mexico.

144.   Investors Plaintiffs have not been repaid the principal and promised interest of their investments by Defendants, nor has any investor received any documentation to ownership interests in the Sands of Gold Estates.   Indeed, ROI Mexico was formed by the IFC principals with the intent of shielding Defendants from investors' claims against any assets in Mexico.

145.   Upon information and belief, Defendants participated in the fraud of taking money from investors Plaintiffs under false pretenses and assisting Sanchez in concealing the money in Mexico.

## VI.    CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE SECURITIES ACT OF 1933

146.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

147.   During the period July 1, 1999 through December 31, 2008, the IFC entities issued and sold for their own benefit, with the aid and participation of the IFC principals acting in their capacities as officers, directors, members and agents of the IFC entities, investment certificates to members of the Class representing indebtedness of the IFC entities to the individual investors identified on the certificates.

148.   From July 1, 1999 through December 31, 2008, the IFC entities, by and through the IFC principals sold and offered to sell notes to the general public ("Investors") and used interstate commerce to effectuate such sales and marketing, involving the purchase, rehabilitation, and resale of foreclosed or distressed properties.

149.   The IFC entities used websites, print and radio advertisements, conventions and investment conferences, direct contact, and other marketing materials and methods ("marketing methods") in order to solicit Investors.  The IFC entities' marketing methods made representations that the IFC entities were

investing in foreclosed and distressed properties and that investments would be secured by such real estate. The representations included statements such as "Real Estate Secured Investments"; "Secure Investment – Approximately 90% of investors' funds goes toward the purchase of real estate"; "Investors that invest $10,000 or more are paid 28% interest. Investors below $10,000 receive 20% interest."

150.   In their marketing materials and "prospectus", the IFC entities represented to Investors that "You will receive a privatized security in accordance with SEC REG D RULE 504" and "IFC' securities are highly speculative, and have not been and will not be registered with the SEC or any other securities agency of and State. Note: Under SEC Reg D, Rule 504 no regulation is necessary," thereby asserting that the investment notes and certificates being issued by the IFC entities were exempt securities.

151.   The IFC entities solicited Investors to purchase investment notes and certificates, some for a set term ranging from ninety (90) days to five (5) years and having a fixed Annual Percentage Rate ("APR") ranging from 2.9% to 28.0%.

152.   The IFC entities never registered any of its investment notes or certificates with any federal or state government unit or agency.

153.   The IFC entities did not use a securities broker or other intermediary, but rather sold these investment notes and certificates direct to the public; when neither they nor the IFC principals were licensed to do so.

154.   The IFC entities took the accumulated investments and concealed the money in Mexico while falsely representing to investors that the IFC entities were actively engaged in developing the Sands of Gold Estates in Playa Ventura, Mexico.

155.   To date, Investors have not received the principal or interest on their investments and most have lost contact with Defendants.

156.   Upon information and belief, the IFC entities, by and through the IFC principals, continued to sell and offer to sell notes and certificates to the public after issuance of and in violation of the PASC and ISD Orders.

157.   The securities issued by the IFC entities to Investors were not exempt from registration or the other requirements of the Act and the IFC entities made false and misleading statements to Investors relating to their exempt status. (Exhibit H.)

158.   Certain investors wrote to the IFC entities demanding return of their principal plus accrued interest upon expiration of the term of their investments. (True and correct copies of certain investors' letters are attached hereto and incorporated herein by reference as Exhibit G.)

159.   Many investors completed IFC's Withdrawal Form and sent it to IFC requesting withdrawal of their principal plus interest.  (See Exhibit D.)

160.   The IFC entities that offered, sold and issued the securities to Investors are no longer existing legal entities.

161.   At the urging of the IFC principals, some Plaintiffs rolled over or reinvested their investments in other unregistered securities issued by IFC Ventures, which have also passed their termination dates.

162.   Despite the demands, the IFC entities have refused and failed to pay Plaintiffs according to the terms of the securities.

163.   The activities described above constitute the offer and sale of a security as those terms are defined in §§77b, e and f of the Securities Act of 1933, 15 U.S.C. §77a *et seq.* (hereinafter the "1933 Act").

164.   Each of the Defendants is a "Controlling person" as that term is defined by §77o of the 1933 Act.

165.   §77e of the 1933 Act prohibits the sale or delivery after sale of unregistered securities.

166.   §77f of the 1933 Act requires registration of securities like those issued by IFC with the Securities and Exchange Commission ("SEC").

167.   §77j of the 1933 Act requires certain information to be provided in any prospectus for selling securities.

168.   §77l of the 1933 Act provides that any person who violates §77e or provides a prospectus containing misleading or false statements shall be liable to those to whom such person has sold the securities.

169.   All of the IFC entities that issued the securities failed to make the required filings with the Illinois Secretary of State and as a result they have been involuntarily dissolved by the Secretary of State.

170.   §77q of the 1933 Act prohibits any person to use interstate commerce for purposes of perpetrating a fraud or deceit upon investors with the intent of selling securities.

171.   §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to employ any device, scheme, or artifice to defraud."

172.   §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."

173.   §77q of the 1933 Act provides that "it shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly – to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

174.   By virtue of the conduct of IFC and its principals, Defendants violated §§77e, 77f, 77j, 77l, and 77q of the 1933 Act.

175.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the investment notes and certificates and such debts are now past due and owing.

176.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with IFC and have not received any of that investment back.

177.    Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1933 Act.

## COUNT II – VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

178.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

179.    The activities described above constitute the offer and sale of a security as those terms are defined in §§78c and l of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* (hereinafter the "1934 Act").

180.    Each of the Defendants is a "Controlling person" as that term is defined by §78t of the 1934 Act.

181.    §78j of the 1934 Act states that "it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails . . . to use or employ, in connection with the purchase or sale of . . . any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

182.    §78l of the 1934 Act requires registration of securities like those issued by IFC with the Securities and Exchange Commission ("SEC").

183.   §78r of the 1934 Act prohibits misleading statements in the sale or offer of sale of securities.

184.   By virtue of the conduct of IFC and its principals, Defendants violated §§78j, 78l, and 78r of the 1934 Act.

185.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by IFC to Investors on the securities.

186.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with IFC and have not received any of that investment back.

187.   Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the 1934 Act.

### COUNT III – FRAUD

188.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

189.   Defendants made numerous false statements of material facts to Plaintiffs, including *inter alia* that Defendants would invest Plaintiffs' money in rehabilitating foreclosed or distressed properties and resell them for profit; that Plaintiffs could expect anywhere from 9 – 21% return on their investment; that within five (5) years of their investment Plaintiffs would receive their principal plus interest; that Plaintiffs could reinvest after the five (5) year period into another plan which would increase or boost their returns and in some cases double their returns; that the securities offered by Defendants were exempt from state or federal

securities laws and that they were not regulated by those laws; and that Defendants had the power and authority to sell interests or lots in Playa Ventura, Mexico.

190.   Defendants knew that each of their statements and representations to Plaintiffs were false because Defendants never intended in returning Plaintiffs' investments, and that this was all a scheme to take investors' money and conceal it in Mexico.

191.   Defendants made these statements and representations to Plaintiffs for the purpose of inducing them to invest money in the IFC entities and the scam.

192.   Plaintiffs relied on the truth of Defendants' representations about IFC evidenced by their large investments of money in the IFC entities.

193.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the conduct of IFC and its principals.

## COUNT IV – BREACH OF FIDUCIARY DUTY

194.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

195.   By soliciting investments for the IFC entities, the IFC principals created a fiduciary relationship with investors and owed a fiduciary duty to the Plaintiffs as investors in the IFC entities.

196.   The IFC entities and the IFC principals should have treated the money invested by Plaintiffs as if it was their own money as Plaintiffs placed trust in the IFC entities and the IFC principals that Plaintiffs' money was going to be used for the purpose for which it was invested, namely to rehabilitate foreclosed and distressed properties or to purchase and develop property in Mexico.

197.   The IFC entities and the IFC principals breached their fiduciary duties to Plaintiffs by failing to invest Plaintiffs' money as represented but instead transferring it to and concealing it in Mexico with no intent on returning Plaintiffs' investments or paying the interest or return on such investments.

198.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the breach of fiduciary duties by the IFC entities and IFC's principals.

## COUNT V – CIVIL CONSPIRACY

199.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

200.   The Defendants include a combination of two or more persons.

201.   The IFC principals sought investments from Plaintiffs by falsifying the purpose of the investments so that they could unlawfully conceal the money in Mexico shielded from the claims of Plaintiffs for the return on their investments.

202.    The IFC principals set up phony shell limited liability companies and their d/b/a's, namely InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates; so that they could appear legitimate to Plaintiffs and Plaintiffs would be enticed into investing money in these shell companies, and then the IFC principals could take the money, set up the Mexican company of Realty Opportunities International S. de R.L. de C.V. that had no ties to Plaintiffs' investments, and conceal money in the name of the Mexican company and/or Sanchez, thereby owning an asset that was shielded from the investors' interests.

203.    The S&R entities, AMO Realty and O'Day participated in the conspiracy by offering services related to the purported sale of property in Mexico to investors, although there was no such property to sell.

204.    The Defendants all benefitted from this because they (a) have access to money or assets in Mexico and (b) they have been paid money, either as a principal of IFC or as fees for services, out of the Plaintiffs' investments.

205.    Thus, essentially the Defendants conspired to take Plaintiffs' money and steal it to buy their own asset for which the Defendants believed could not be attached by Plaintiffs.

206.    To further this conspiracy, Defendants made false representations to Plaintiffs regarding their investments; lied about their securities; lied about the use of the investments; lied to Plaintiffs when Plaintiffs requested the return of their

money; lied to Plaintiffs about the status of the shell companies; lied to Plaintiffs about the Mexican property; and continued to advise the Plaintiffs to hold off on demanding return of their money and lied that Plaintiffs would ultimately be repaid in multiples of their original investment as long as Plaintiffs didn't make legal claims against the IFC principals.

207.    Plaintiffs have been injured by the conspiracy of the Defendants in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the civil conspiracy by Defendants.

## COUNT VI – VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT

208.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

209.    Defendants have transferred Plaintiffs' investments and all assets of the United States-based IFC entities out of their respective names and to ROI Mexico and/or Sanchez, which have concealed those assets in Mexico.

210.    In addition, the IFC principals have transferred many of their personal assets out of their own individual names and into names of relatives or other companies.

211.    Upon information and belief, Bourassa has transferred ownership of the property located at 254 Gregory M Sears Drive, Gilberts, Illinois 60136-4024,

from ownership by an IFC entity to his own name to his wife's name with the purpose of avoiding creditors.

212.   By making such transfers, Defendants have rendered themselves insolvent in the United States or without sufficient assets to cover the claims of investors.

213.   Defendants have made such transfers with the actual intent to hinder, delay, or defraud Plaintiffs, all of whom as investors are creditors of the IFC entities.

214.   Defendants did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when Defendants were engaged in the purported business of rehabilitating foreclosed and distressed properties for which there are no remaining assets.

215.   Defendants did not receive a reasonably equivalent value in exchange for the transfers of assets from the United States-based IFC entities and the IFC principals' personal assets, when they intended to incur, or believed or reasonably should have believed that they would incur, debts to Investors beyond their ability to pay as they became due.

216.   As Plaintiffs' investments became due, Defendants were unable to pay the investments and interest due to Plaihtiffs according to the terms of the investment certificates.

217.   Plaintiffs are creditors of Defendants and Defendants are debtors of Plaintiffs as those terms are defined by §2 of the Uniform Fraudulent Transfer Act, 740 ILCS 160/ *et seq.* (hereinafter "UFTA").

218.   The transfer of IFC's assets and money invested by Plaintiffs to the establishment of ROI Mexico and/or to accounts in Mexico and the purported development of the Sands of Gold Estates in Playa Ventura, Mexico is a transfer of assets as defined by §§2 and 7 of UFTA.

219.   §5 of UFTA provides that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor."

220.   §5 of UFTA provides further that "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

221.   Defendants have violated UFTA and have made transfers that are fraudulent as to Plaintiffs.

222.   The transfer of IFC's assets and money invested by Plaintiffs to the establishment of ROI Mexico and/or to accounts in Mexico and the purported development of the Sands of Gold Estates in Playa Ventura, Mexico is fraudulent as to Plaintiffs and such transfer(s) should be either avoided or the Mexican property should be attached to preserve the claims of Plaintiffs and a receiver or trustee should be appointed to take over the property.

223.   Further, Defendants should be enjoined from any further action, including without limitation sale, promotion, transfer, or dissipation, related to the assets of ROI Mexico and/or accounts in Mexico and the purported development of the Sands of Gold Estates in Playa Ventura, Mexico.

## COUNT VII – UNJUST ENRICHMENT

224.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

225.   Defendants have unjustly retained the money invested by Plaintiffs without repaying the investments or interest as required by the investment certificates and agreements given to Plaintiffs.

226.   Defendants have taken Plaintiffs' money and concealed it in Mexico and benefitted by enriching themselves to the detriment of Plaintiffs.

227.   By retaining the benefit of Plaintiffs' investments without paying them interest or repaying the principal as Defendants agreed to do, Defendants are thereby unjustly enriched violating fundamental principles of equity and justice.

228.   The value of Defendants' unjustly retained benefit is in excess of million dollars ($8,000,000.00).

## COUNT VIII – CONSTRUCTIVE TRUST

229.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

230.   Defendants have received money from Plaintiffs as investments into a real estate rehabilitation business or to development of the Sands of Gold Estates in Playa Ventura, Mexico.

231.   Defendants have also received substantial confidential information from Plaintiffs and in some cases powers of attorney from Plaintiffs.

232.   Defendants have exerted control over the investment money and the information provided by Plaintiffs, yet refuse and have failed to return any of the investment money, interest or the assets, in which Plaintiffs have ownership rights.

233.   Defendants have committed numerous wrongful acts against Plaintiffs regarding the investment money and information, including without limitation providing false and misleading information about the investments, falsifying documents and making false representations on their website and marketing materials, lying to Plaintiffs about the investments, and allowing the companies in which Plaintiffs invested to be involuntarily dissolved by the Illinois government.

234.   Defendants acts towards Plaintiffs have been intentional, willful, and in derogation of and a deprivation of Plaintiffs' lawful right and possession to their

money or the assets in which their money was invested. Defendants, without legal right, withheld possession of the money and assets from Plaintiffs.

235. It would be unjust and inequitable if Defendants were allowed to retain control or custody over this ill-gotten money and assets.

236. Plaintiffs reasonably fear that Defendants will either transfer or otherwise interfere with Plaintiffs' rights to retrieve assets in Mexico and that Plaintiffs may be further harmed by Defendants attracting new investors into their scheme.

237. Plaintiffs are entitled to have the Court impose a constructive trust over all personal and business assets of Defendants to protect their rights and their investment money until such time as this matter is resolved.

## COUNT IX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

238. Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

239. Defendants have employed deceptive acts and practices, including without limitation false representations about investing in foreclosed or distressed properties to make a profit and misleading and false representations about the securities issued in exchange for money invested by Plaintiffs, in order to solicit investment of money by Plaintiffs.

240. Defendants intended Plaintiffs to rely on these deceptive acts and practices so that Plaintiffs would invest money in Defendants' phony business of

rehabilitating properties. Rather, Defendants intended to take Plaintiffs' money and conceal it in Mexico to be shielded from Plaintiffs' claims on their investments.

241. Defendants' deceptions took place in the course of trade and commerce as Defendants had set up shell companies to appear legitimate to Plaintiffs and to attract investments into Defendants' phony business.

242. Defendants' conduct constitutes an unfair or deceptive acts or practices as defined by §2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.* (hereinafter the "CFA").

243. Defendants, by their conduct as detailed above, have violated the CFA and Plaintiffs have been harmed as a direct and proximate result of such violations.

244. Plaintiffs are entitled to all remedies available under the CFA.

## COUNT X – PIERCING THE ORGANIZATIONAL VEIL

245. Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

246. Defendants set up various shell companies, including without limitation InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates.

247.  Defendants disregarded the separate identity and entity of these named companies and as a result each of these companies has been involuntarily dissolved by the Illinois Secretary of State.

248.  Defendants have continued to operate using these entity names, despite their dissolution and the cease and desist Orders issued by the Pennsylvania and Illinois governments.

249.  Defendants have treated these companies as non-entities and rather as mere extensions of their own individual acts.

250.  The IFC principals, in their individual capacities and as members of the shell companies, have also committed fraud upon Plaintiffs relating to the investment of money in these companies.

251.  In every way, the IFC principals have acted on their own behalf and have disregarded the separate legal entities of the named companies.

252.  Allowing the IFC principals as individuals to avoid liabilities that they have created by acting with disregard to the formal entities of the named companies would create an inequitable result in this case.

253.  As such, this Court should pierce through those false company shells and impose any and all liabilities incurred on behalf of the IFC entities to the IFC principals in their individual and personal capacities.  Plaintiffs should have recourse against the IFC principals and their personal assets so as to enable a just and equitable result for the liabilities incurred.

## COUNT XI – CONVERSION

254.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

255.   Plaintiffs have a right in their investments and the interest earned on those investments according to the securities issued by IFC.

256.   Plaintiffs' rights in such money is immediate, as all of the securities issued have come to term, and such rights are absolute, unconditional and not dependent on the performance of any act.  Plaintiffs' performance was complete upon payment of the money representing their investment.

257.   Defendants have exercised wrongful dominion over Plaintiffs' money and have refused to return the investment or pay the interest as agreed to, despite numerous demands by Plaintiffs to do so.

258.   Defendants have attempted to conceal Plaintiffs' money, deprive Plaintiffs of their rights to possession of their money, and have made unauthorized transactions using Plaintiff's money, including without limitation setting up the Mexican company ROI Mexico and purportedly development the Sands of Gold Estates in Playa Ventura, Mexico.

259.   Defendants have effectively converted Plaintiffs' money and their rights to their principal investment and interest earned into assets owned by the IFC entities, including without limitation ROI Mexico, and IFC principals, thereby attempting to permanently deprive Plaintiffs' of their rights.

## COUNT XII – VIOLATION OF THE ILLINOIS SECURITIES LAW

260.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

261.   The activities described above constitute the offer and sale of a security as those terms are defined in Sections 2.1, 2.2, 2.5 and 2.5a of the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.* (hereinafter the "IL Securities Act").

262.   Each of the Defendants is a "Controlling person" as that term is defined by Section 2.4 of the IL Securities Act.

263.   Section 12.A of the Act states that it shall be a violation of the IL Securities Act for any person to "offer or sell any security except in accordance with the provisions of this Act."

264.   Section 5 of the IL Securities Act requires registration of securities like those issued by IFC with the Illinois Securities Department.

265.   Section 12.D of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act or any rule or regulation made by the Secretary of State pursuant to this Act or to fail to comply with the terms of any order of the Secretary of State issued pursuant to Section 11 hereof."

266.   All of the IFC entities that issued the investment notes and certificates failed to make the required filings with the Illinois Secretary of State and as a result they have been involuntarily dissolved by the Secretary of State and found by the

Illinois Securities Department to be violation of Section 12.D of the IL Securities Act.  (Exhibit H.)

267.   Section 12.F of the IL Securities Act prohibits any person to "engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof."

268.   Section 12.G of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."

269.   Section 12.H of the IL Securities Act states that it shall be a violation of the IL Securities Act for any person to "sign or circulate any statement, prospectus, or other paper or document required by any provision of this Act or pertaining to any security knowing or having reasonable grounds to know any material representation therein contained to be false or untrue."

270.   Section 12.I of the IL Securities Act prohibits any person to "employ any device, scheme, or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly."

271.   Section 12.E of the IL Securities Act provides, inter alia, that It shall be a violation for any person to "make or cause to be made, in any application, report or document filed under this Act or any rule or regulation made by the Secretary of

State pursuant to this Act, any statement which was false or misleading with respect to any material fact."

272.    By virtue of the conduct of IFC and its principals, Defendants violated Sections 12.A, 12.D, 12.E, 12.F, 12.G, 12.H, and 12.I of the IL Securities Act.

273.    Section 13 of the IL Securities Act provides for private remedies for violations of the IL Securities Act.

274.    Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the investment notes and certificates and such debts are now past due and owing.

275.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with the IFC entities and have not received any of that investment back.

276.    Plaintiffs' injuries have been directly and proximately caused by Defendants' violations of the IL Securities Act.

## COUNT XIII – BREACH OF CONTRACT

277.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

278.    The IFC entities offered each of the Plaintiffs investment in either its purported businesses in exchange for money invested and Plaintiffs accepted by investing money, in differing amounts, with the IFC entities.

279.    The IFC entities issued investment notes and certificates to Plaintiffs as documentation of the agreement between the parties.  (See Group Exhibit A.)

280.   The terms of each agreement were definite and certain, providing a date of maturation of the note or certificate and an amount to be repaid representing return of principal plus interest.  (See Group Exhibit A.)

281.   At the end of each of the Investors' investment terms, each Investor attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

282.   When the Investors attempted to collect the balance owed on their respective accounts, the IFC principals refused to return the principal or interest owed on the notes and certificates, despite the Investors' repeated requests.

283.   Plaintiffs have performed their portion of the agreement by paying over the amounts of money agreed to be invested and leaving it invested with the IFC entities until the end of their respective terms.

284.   Some Plaintiffs have performed additional acts by rolling over or reinvesting their investments in other investment notes and certificates issued by IFC Ventures, which have also passed their termination dates.

285.   Despite the demands, the IFC entities and IFC principals have refused and failed to pay Plaintiffs according to the agreements of the investment notes and certificates.

286.   Defendants are in breach of their agreements with Plaintiffs.

287.   As a direct and proximate result of Defendants' breaches, Plaintiffs have been injured in an amount in excess of excess of eight million dollars ($8,000,000.00), the exact amount shall be determined at trial of this matter.

## COUNT XIV – VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940

288.  Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

289.  At all relevant times, Defendants acted as Investment Advisers to Plaintiffs as that term is defined in the Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.* (hereinafter the "IAA").

290.  §3(a) of the IAA states "it shall be unlawful for any investment adviser, unless registered under this section, to make use of the mails or any means or instrumentality of interstate commerce in connection with his or its business as an investment adviser."

291.  Defendants failed to register as Investment Advisers as required by §3(a) of the IAA.

292.  §6 of the IAA makes it "unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client