Exhibit to Memorandum in Support

Part 3

to such transaction. The prohibitions of this paragraph shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; and (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."

293.   §8(d) of the IAA makes it "unlawful for any person indirectly, or through or by any other person, to do any act or thing which it would be unlawful for such person to do directly under the provisions of this subchapter or any rule or regulation thereunder."

294.   By virtue of the conduct of IFC and its principals, Defendants violated §§3(a), 6 and 8(d) of the IAA.

295.   §9 of the IAA provides various civil remedies for violations of the IAA.

296.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) on the investment advice of IFC and its principals and have not received any of that investment back despite demand for same.

297.   Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the IAA.

## COUNT XV – VIOLATION OF THE TRUST INDENTURE ACT OF 1939

298.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

299.   Defendants offered to sell, sold, and issued securities and/or indentures to Plaintiffs as those terms are defined in the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.* (hereinafter the "TIA").

300.   In connection with Defendants offer to sell securities and/or indentures, Defendants issued and made available to the public at large prospecti for purposes of soliciting investments and purchase of such securities and/or indentures within the meaning of the TIA.

301.   §77eee of the TIA requires that if securities or indentures are required to be registered under the Securities Act of 1933, they must also be registered under the TIA and such additional information must be provided in such registration and in any prospectus for such indentures relating to the TIA requirements.

302.   Defendants did not register the securities and/or indentures issued to Plaintiffs under the Securities Act of 1933.

303.   §77fff(a) of the TIA states that for any security not registered under the Securities Act of 1933 "it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

304.   §77fff(b) of the TIA provides that for any security not registered under the Securities Act of 1933 ""it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in

interstate commerce or of the mails to carry or transmit any prospectus relating to any such security, unless such prospectus, to the extent the Commission may prescribe by rules and regulations as necessary and appropriate in the public interest or for the protection of investors, includes or is accompanied by a written statement that contains the information specified in subsection (c) of section 77eee of this title; or (2) to carry or to cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless, to the extent the Commission may prescribe by rules and regulations as necessary or appropriate in the public interest or for the protection of investors, accompanied or preceded by a written statement that contains the information specified in subsection (c) of section 77eee of this title."

305.   §77fff(c) of the TIA makes it unlawful to offer to sell a security not registered under the Securities Act of 1933 through a prospectus or otherwise unless the security has been issued under an indenture for which an application for qualification has been filed or during any period when the application "is the subject of a refusal order or stop order or (prior to qualification) any public proceeding or examination."

306.   §77lll of the TIA requires filing of certain information with the trustee and upon request the trustee must share certain information with other security holders, including the identity of such other security holders.

307.   The IFC principals refused to share information with other security holders, refused to identify other security holders despite requests to do so from

Plaintiffs and discouraged security holders from trying to discover other security holders.

308.   The IFC principals and, specifically, Sanchez threatened security holders that they would lose their investments if they contacted any of the authorities.

309.   §77mmm of the TIA requires the trustee to provide periodic reports to the security holders of various information.

310.   The IFC principals never provided periodic reports to Plaintiffs or any security holders with the information required in §77mmm of the TIA.

311.   §77nnn of the TIA requires the obligor(s) to provide reports and evidence of compliance with the indenture(s) provisions.

312.   Defendants did not provide any obligor reports or evidence of compliance with the indenture provisions.

313.   §77ooo of the TIA imposes certain duties and responsibilities on the trustee, including without limitation proper notice of default.

314.   The IFC principals did not comply with the duties and responsibilities imposed by §77ooo of the TIA and never provided notice of default to the Plaintiffs.

315.   §77ppp(b) of the TIA prohibits the impairment of any security holder's rights to payment of principal and interest on or after the due dates of such security, including without limitation interfering with the institution of suit for enforcement of such rights.

316.   §77xxx of the TIA makes it "unlawful for any person in offering, selling or issuing any security to represent or imply in any manner whatsoever that any

action or failure to act by the Commission in the administration of this subchapter means that the Commission has in any way passed upon the merits of, or given approval to, any trustee, indenture or security, or any transaction or transactions therein, or that any such action or failure to act with regard to any statement or report filed with or examined by the Commission pursuant to this subchapter or any rule, regulation, or order thereunder, has the effect of a finding by the Commission that such statement or report is true and accurate on its face or that it is not false or misleading."

317.    By virtue of the conduct of IFC and its principals, Defendants violated §§§77eee, 77fff(a), 77fff(b), 77fff(c), 77lll, 77mmm, 77nnn, 77ooo, 77ppp(b), and 77xxx of the TIA.

318.    The TIA incorporates the civil remedies of the Securities Act of 1933 by reference.

319.    Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) by purchasing securities and/or indentures issued by the IFC entities and IFC principals and have not received any of that investment back despite demand for same.

320.    Plaintiffs' injuries have been directly and proximately caused by Defendants' violations of the TIA.

## COUNT XVI – CIVIL RICO

321.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

322.   Defendants have engaged in activity that is unlawful under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.* (hereinafter "RICO").

323.   Defendants are all "principals" as that term is defined in §1962(a) of RICO and in 18 U.S.C. §2.

324.   Defendants have committed mail and wire fraud in order to obtain investments of money from Plaintiffs and Defendants have used interstate and foreign commerce in order to take such money from its original and intended purpose and used the money to purchase property in Mexico with the intent of secreting the assets from investor Plaintiffs.

325.   Defendants have, through a pattern of fraud and threats to Plaintiffs, deterred Plaintiffs from enforcing their rights as investors for the return of their investments plus agreed to interest so that Defendants could form and have control over a Mexico corporation and purchase land in Mexico, contrary to the original purpose of the invested money.

326.   Defendants were either active principals, employed by or associated with the IFC entities which were engaged in activities affecting interstate and foreign commerce and conducting or participating, either directly or indirectly, in the conduct of Defendants' affairs through a pattern of racketeering activity.

327.   Defendants were conspiring to violate the anti-racketeering provisions of §§1962(a), (b) and (c).

328.   By virtue of their conduct, Defendants violated §1962 of RICO.

329.   §1964 of RICO provides various civil remedies for violations of RICO.

330.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) as a result of the racketeering activity, mail and wire fraud of Defendants and have not received any of that investment back despite demand for same.

331.   Plaintiffs' injuries have been directly and proximately caused by Defendants' violations of RICO.

## COUNT XVII – MONEY LAUNDERING

332.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

333.   Sanchez and other Defendants conducted or attempted to conduct financial transactions, including without limitation transferring money, obtaining loans, and setting up accounts, which in fact involved the proceeds of Defendants' unlawful activity of stealing money from Investors in violation of 18 U.S.C. §1956(a).

334.   Sanchez and other Defendants conducted or attempted to conduct financial transactions, including without limitation transferring money, obtaining loans, and setting up accounts, knowing that such financial transactions were designed to conceal or disguise the theft of money from Investors in violation of 18 U.S.C. §1956(a).

335.   Sanchez, Rodriguez and other Defendants transported, transmitted, or transferred, or attempted to transport, transmit, or transfer funds from banks and

financial institutions in the United States to or through Mexico with the intent of depriving investors of their money in violation of 18 U.S.C. §1956(a).

336.   By the conduct described in this Complaint, Defendants are in violation of the federal Money Laundering Act, 18 U.S.C. §1956 et seq. ("Money Laundering Act").

337.   The Money Laundering Act provides numerous civil penalties and remedies.

338.   Plaintiffs are entitled to the civil penalties and remedies under the Money Laundering Act, including without limitation a federal Receiver for all accounts of Defendants, compensatory damages, punitive damages and attorneys' fees and costs.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.   That this Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certify the Class as all persons who invested money with IFC during the period March 14, 2000 through September 12, 2008 and excluding any member, officer or director of Defendants;

B.   That this Court award compensatory damages in the amount of $8,000,000.00 and such other damages to be proven at trial plus interest, which amount to be shared by the Class in proportionate shares to their investments;

C.   That this Court grant any and all relief available, alternatively, under the Securities Act of 1933, 15 U.S.C. §77a et seq., the Securities Exchange Act of 1934, 15 U.S.C. §78a et seq., the Uniform Fraudulent Transfer Act, 740 ILCS 160/

*et seq.,* the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.,* the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.,* Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.,* the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.,* Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.,* Money Laundering Act, 18 U.S.C. §1956 *et seq.,* and the other causes of action stated herein so as to provide justice to the Plaintiffs;

D.     That this Court impose a constructive trust and/or appoint a receiver for the assets of Defendants, including without limitation any and all property in Playa Ventura, Mexico in which Defendants have an interest and all personal and business accounts at any financial institution held by Defendants, and enjoin Defendants from any further activities related to the Sands of Gold Estates in Playa Ventura, Mexico;

E.     That this Court should void the transfer of Plaintiffs' investment money to any assets of Defendants as fraudulent transfers as to creditors Plaintiffs and require Defendants to restore the assets to Plaintiffs or to the companies in which Plaintiffs invested;

F.     That this Court award treble damages as provided for under §1964 of RICO;

G.     That this Court award exemplary damages in the amount of $50,000,000.00 as penalty to Defendants and to assure that Defendants do not further their current fraudulent scheme or perpetuate another fraudulent scheme in the future;

     H.    That this Court award reasonable attorneys' fees, costs and

disbursements; and

     I.    That this Court award such other and further relief as this honorable

Court deems just and equitable.

## VIII. JURY DEMAND

    Plaintiffs hereby demand trial by jury on all claims for damages at law.


PLAINTIFFS' CLASS



By:  /s/ Robert C. Thurston
           One of Their Attorneys

Thurston Law Offices, P.C.
Robert C. Thurston
A.R.D.C. No. 6209353
10469 Bethel Avenue
Huntley, IL 60142
Phone: 847-659-8613
Fax: 847-628-0930
Email: tj@thurstonlawpc.com

Law Offices of Joel M Weiner, LLC
Joel M. Weiner
579 N 1st Bank Drive Suite 150
Palatine, IL 60067-8102
Phone: 847-654-3105
Fax: 847-358-7165
Email: jweiner@jweinerlaw.com

particular allegations of wrongdoing and instead relies wholly on conclusory allegations.

Each and every Count of Plaintiffs' Complaint as they relate to Ms. Martin, Ms. Guidi, and Mr. Rodriguez is deficient. Indeed, Plaintiffs' Complaint is nothing more than a fishing expedition which has provided no notice to these defendants as to the claims against them, but which is presently soiling their reputations and threatening their financial livelihood and security. Rule 9(b)'s heightened pleading requirement was put in place in order to protect defendants, like Ms. Martin, Ms. Guidi, and Mr. Rodriguez, from the unjust financial and reputation damage that is imposed by exactly the type of improper fishing expedition filed by the Plaintiffs in this case.

### A.     Count I - II: Securities Act Claims

"Allegations of securities fraud must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) as well as the strict pleading mandates of the Private Securities Litigation Regulatory Act ("PSLRA"). Johnson v. Tellabs, Inc., et al., 303 F.Supp. 2d 941, 951-952 (N.D. Ill. 2004). The PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons the statement is misleading ... ." and "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(1)-(2).  The PSLRA further prohibits a plaintiff from relying on group pleading by "requir[ing] [p]laintiffs to allege facts to support an inference that the statement is attributable to individual defendants" and "obligat[ing] a plaintiff to allege specific facts as to each of the defendant's misrepresentations or omissions." Johnson v. Tellabs, Inc., et al., 303 F.Supp. 2d 941, 953, citing 15 U.S.C.  §78u-4(b)(1).

### 1.     *Violation of the Securities Act of 1933.*

7

Plaintiffs' claim against Ms. Martin, Ms. Guidi, and Mr. Rodriguez under Securities Act of 1933 (the "1933 Act") is based section 77 of the Act which creates liability for "controlling persons" in companies who issue unauthorized and/or fraudulent securities. The Act provides that "every person who, by or through stock ownership, agency or otherwise ... *controls* any person liable under section 11 or 12 [for issuing unregistered securities or engaging in fraudulent sale of securities] shall also be liable ... ." 15 U.S.C. §77o. (*emphasis added*).

Plaintiffs' Complaint does not identify any factual allegations that Ms. Martin, Ms. Guidi, or Mr. Rodriguez individually issued unauthorized or fraudulent securities. Instead, Plaintiffs rely on their conclusory allegation that "[e]ach of the Defendants is a "Controlling person" as that term is defined by §77o of the 1933 Act." (*See* Plaintiffs Complaint at ¶164). This allegation is Plaintiffs' sole basis for imputing liability to Ms. Martin, Ms. Guidi, and Mr. Rodriguez, and is wholly unsupported by any factual allegations. Indeed, Plaintiffs' Complaint is completely devoid of any facts, much less facts pled with particularity, which would indicate that Ms. Martin, Ms. Guidi, or Mr. Rodriguez controlled Mr. Sanchez, Mr. Bourassa, or any of the IFC entities. Therefore, Plaintiffs Count I fails to plead the essential elements of its 1933 Act claims against Movants and should be dismissed.

### 2. *Count II: Violation of the Securities Act of 1934.*

Plaintiffs' claim against Ms. Martin, Ms. Guidi, and Mr. Rodriguez under Securities Exchange Act of 1934 (the "1934 Act") is similarly based upon "controlling persons" liability. The 1934 Act provides that "every person who, directly or indirectly, *controls* any person liable under any provision of this *title* or of any rule or regulation thereunder shall also be liable ... ." 15 U.S.C. §78t. (*emphasis added*).

8

Plaintiffs' Count II similarly relies on its conclusory allegation that "[e]ach of the Defendants is a "Controlling person" as that term is defined by §78t of the 1934 Act." (*See* Plaintiffs Complaint at ¶180). Plaintiffs' Count II again fails to identify any specific misrepresentations or omissions attributable to Ms. Martin, Ms. Guidi, or Mr. Rodriguez. Nor does it contain any facts which would give rise to an inference that they acted with the required state of mind, as required by the PSLRA. Plaintiffs' Complaint also fails to plead any particular facts which would indicate that Ms. Martin, Ms. Guidi, or Mr. Rodriguez owned any stock or otherwise controlled Mr. Sanchez, Mr. Bourassa or any of the IFC entities that Plaintiffs allege issued and sold the securities. Therefore Count II of Plaintiffs Complaint should be dismissed to protect Ms. Martin, Ms. Guidi, and Mr. Rodriguez from the financial and reputation damage that Plaintiffs' unjustified and improperly pled fraud claims are imposing.

**Count III: Fraud.**

To state a claim for fraud the plaintiff must allege (1) a representation of material fact; (2) the representation was false; (3) the maker of the statement knew the representation to be untrue at the time it was made; (4) justifiable reliance by the plaintiff; (5) the statement was made by the defendant to induce the plaintiff to take some act; and (5) injury to plaintiff as a result of his/her reliance. Roth v. Roth, 45 Ill.2d 19 (1970).

Plaintiffs' fraud count improperly relies on conclusory allegations that "Defendants knew that each of their statements were false" and "that this was all a scheme to take investors money and conceal it in Mexico." (*See* Plaintiffs Complaint at ¶189-191). Plaintiffs, however, have provided no facts regarding Movants' personal involvement in the making of the "numerous false statements" allegedly made by Defendants. Nor have Plaintiffs provided any facts or particulars

9

to indicate how or why Ms. Martin, Ms. Guidi, or Mr. Rodriguez knew, or could have known, that the statements made by the "Defendants" were false. As such, Plaintiffs' Count III fails to plead the essential elements of its fraud claim with particularity and should be dismissed.

**IV.     Count IV: Breach of Fiduciary Duty.**

In order to state a claim for a breach of fiduciary duty, the plaintiff must allege (1) the existence of a duty by defendant to plaintiff; (2) a breach of that duty; and (3) injury proximately caused by defendant's breach. Beringer v. Standard Parking O'Hare Joint Venture, 2008 U.S. Dist. LEXIS 91568 (N.D. Ill. Nov. 12, 2008).

Plaintiffs' claim for breach of fiduciary duty fails to plead the essential elements with particularity because it relies on its conclusory allegation that "[b]y soliciting investments for IFC entities, the IFC principals created a fiduciary relationship with investors ... ." (*See* Plaintiffs Complaint at ¶195). Plaintiffs' conclusion is not only devoid of any facts as to the who, what, when, and where the Movants allegedly engaged in this solicitation but also contradicts Plaintiffs' earlier allegations that "Sanchez and Bourassa solicited and obtained [the] investments." (*See* Plaintiffs Complaint at ¶84). Moreover, Plaintiffs' Complaint provides no allegations or reasonable interference as to how merely soliciting investments for IFC would create a fiduciary duty between Ms. Martin, Ms. Guidi, and Mr. Rodriguez and those investors. Indeed, not every salesman owes its customer a fiduciary duty. Thus, Plaintiffs' Count IV fails to plead the essential elements of its breach of fiduciary duty claims with the requisite particularity and should be dismissed.

**V.     Count V: Civil Conspiracy.**

A complaint for civil conspiracy must allege (1) an agreement between two or more

10

persons; (2) to participate in an unlawful act; (3) an injury caused by an overt unlawful act performed by one of the parties; and (4) the over act was done pursuant and in furtherance of the common scheme. Canel & Hale, Ltd. v. Tobin, 304 Ill.App.3d 906 (1st Dist. 1999).

Instead of pleading the requisite elements of its conspiracy claim with the particularity required by Rule 9(b), Plaintiffs' Count V relies on its conclusory allegation that all the "Defendants" acted together in committing a fraud. Plaintiffs do not provide a single allegation which would create a reasonable inference that the individual Movants came to an agreement to defraud Plaintiffs. (*See* Plaintiffs Complaint at ¶199-207). In fact, Plaintiffs' Complaint does not even allege how Ms. Martin, an investor in IFC, and Ms. Guidi and Mr. Rodriguez, IFC employees, know each other. Therefore, Plaintiffs' Count V for civil conspiracy should be dismissed for failure to state a claim.

### VI.    Count VI: Violation of Illinois Uniform Fraudulent Transfer Act.

The Illinois Fraudulent Transfer Act requires, in pertinent part, that in order to sustain a cause of action a plaintiff must plead that the defendants transferred assets "with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/1, et seq.

Plaintiffs' Count VI under the Fraudulent Transfer Act summarily concludes that the group of thirty-two (32) "Defendants" transferred Plaintiffs' assets fraudulently and made themselves insolvent. (*See* Plaintiffs Complaint at ¶209 & 212). Plaintiffs, however, again fail to identify any facts as to how or why they believe Ms. Martin, Ms. Guidi, and Mr. Rodriguez were involved in any transfers of assets or had the actual intent to defraud the investors. Therefore, Count VI should properly be dismissed.

### VII.    Count VII: Unjust Enrichment.

11

A claim for unjust enrichment must set forth sufficient facts which indicate that defendants have voluntarily accepted goods, services or money from defendants under circumstances whereby the principles of justice, equity, and good conscience compel the defendant to compensate plaintiffs for the benefit received. Kenneke v. First National Bank of Chicago, 65 Ill.App.3d 10 (1st Dist. 1978).

Plaintiffs' claim for unjust enrichment, however, provides no such fact. Instead, it provides only a conclusory allegation that "Defendants have taken Plaintiffs' money and concealed it in Mexico and benefitted by enriching themselves to the detriment of Plaintiffs." (See Plaintiffs' Complaint at ¶226). Plaintiffs make no factual allegations how Ms. Martin, Ms. Guidi, and Mr. Rodriguez, as individuals, accepted Plaintiffs' money. Nor have Plaintiffs indicated how Ms. Martin, Ms. Guidi, and Mr. Rodriguez are beneficiaries of the money transfers. Therefore, because Plaintiffs claim for unjust enrichment fails to state a claim against Ms. Martin, Ms. Guidi, and Mr. Rodriguez as individuals, Count VII should be dismissed.

**VIII.    Count VIII: Constructive Trust.**

A constructive trust is a remedy which may be imposed to avoid unjust enrichment. Norton v. City of Chicago, 293 Ill.App.3d 620, 628 (1997). Thus, in order to sustain its action for a constructive trust, plaintiffs must properly plead an action for unjust enrichment. As noted above, because Plaintiffs have failed to plead a proper claim for unjust enrichment, Plaintiffs Count VIII for a constructive trust must also be dismissed.

**IX.    Count IX: Violation of the Illinois Consumer Fraud Act.**

To adequately plead a private cause of action under the Illinois Consumer Fraud and Deceptive Practices Act, a plaintiff must allege: (1) a deceptive act or practice by the defendant,

12

(2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception.

Plaintiffs' Count IX again relies on conclusory allegations and contains no particular facts as to what Ms. Martin, Ms. Guidi, and Mr. Rodriguez are alleged to have done wrong. There is no reference to any specific statements or acts made by these individuals but instead only a conclusory statement that "Defendants have employed deceptive acts and practices, including without limitation false representations about investing in foreclosed or distressed properties ... ." (*See* Plaintiffs' Complaint at ¶239). Indeed, Plaintiffs fail to identify which individuals made the wrongful statements, what the statements were, or when and where they were made. As a result, Plaintiffs' Count IX fails to satisfy the pleading requirements of Rule 9(b) and should be dismissed.

### X.     Piercing the Organizational Veil

The Illinois Appellate Court has held that the corporate veil may only be pierced where adherence to the fiction of separate existence would sanction a fraud by the company or promote injustice. *People v. V&M Indus., Inc.*, 298 Ill.App. 3d 733 (Ill.App.Ct. 1998). In such cases, the limited liability protection may be discarded and subject the shareholders or owners to individual liability for the organization's debts and liabilities. There are three circumstances which justify piercing the corporate veil: (1) a failure by the defendant to follow corporate formalities; (2) the commingling of funds or assets; and (3) treating the assets of the corporation as the defendant's own. Macaluso v. Jenkings, 95 Ill.App.3d 461 (2d Dist. 1981).

Plaintiffs' Count X to pierce the organizational veil turns on the third (3rd) circumstance.

13

Plaintiffs, however, have failed to plead any allegations which would support piercing the organizational veil and imposing personal liability on Ms. Martin, Ms. Guidi, and Mr. Rodriguez. Plaintiffs have not alleged any facts to support its conclusion that "Defendants have treated these companies as non-entities and rather as mere extensions of their own personal acts." (*See* Plaintiffs' Complaint at ¶249). Neither has it provided any particular allegations to support its conclusion that Ms. Martin, Ms. Guidi, and Mr. Rodriguez (the alleged "IFC Principals") were actually members of the limited liability companies whose veil Plaintiffs seek to pierce. (*See* Plaintiffs' Complaint at ¶250). Thus, Plaintiffs' Count X should be dismissed.

### XI. Conversion.

To plead a claim of conversion, the plaintiff must allege: (1) a right in the property; (2) an absolute right to the immediate possession of the property; (2) the plaintiff made a demand for the property; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership of the property. Fortech, L.L.C. v. R.W. Dunteman Co., Inc., 304 Ill. Dec. 201 (Ill. App. Ct. 1st Dist. 2006).

Plaintiffs' Complaint fails to make any allegations that Ms. Martin, Ms. Guidi, or Mr. Rodriguez, as individuals, are in possession or control of the money which they claim is converted. (*See* Plaintiffs' Complaint at Count XI). Instead, Plaintiffs' Complaint merely alleges that the group of thirty-two (32) "Defendants have exercised wrongful dominion over Plaintiffs' money... ." Plaintiffs have not provided any facts indicating how the Movants (two IFC employees and an IFC investor) are in control over the money allegedly taken by the IFC entities. (*See* Plaintiffs' Complaint at ¶257). Therefore, Plaintiffs have failed to state a claim for conversion against Movants and Count XI should be dismissed.

14

**XII.    Violation of the Illinois Securities Law.**

Plaintiffs' Illinois Securities Law action against Movants, like their 1933 Act and 1934

Act actions, is based on "controlling person" liability.    The Illinois Securities Law ("IL Sec.

Act") provides that "[c]ontrolling person means any person offering or selling a security or group

of persons acting in concert in the offer or sale of a security ... owning beneficially either (i) 25%

or more of the outstanding voting securities or (ii) such number of outstanding securities ...

which would enable such person, or group of persons to elect a majority of the board of directors

or other managing body ... ." 815 ILCS 5/2.4.

Plaintiffs' Complaint does not identify any factual allegations that Ms. Martin, Ms. Guidi,

or Mr. Rodriguez individually sold any IFC securities.  In fact, they are not alleged to be sales

persons but an investor, an attorney, and an accountant. (*See* Plaintiffs' Complaint at ¶s 59, 62,

and 63).  Instead, Plaintiffs again rely solely on their conclusory allegation that "[e]ach of the

Defendants is a "Controlling person." (*See* Plaintiffs Complaint at ¶262).  Plaintiffs have not pled

any facts showing that Ms. Martin, Ms. Guidi, or Mr. Rodriguez own 25% or other percentage of

the IFC entities which would allow them to control management.  (*See* Plaintiffs' Complaint at

Count XIII). Therefore, like the 1933 and 1934 Act claims, Plaintiffs Count under the IL Sec. Act

should also be dismissed.

**XIII.   Breach of Contract.**

In order to state a claim for breach of contract, the plaintiff must allege (1) the existence

of a contract between the plaintiff and defendant; (2) the terms of the contract; (3) performance

by the plaintiff; (4) a breach by the defendant; and (5) damages. Skinner v. Shirley of Hollywood,

723 F.Supp. 50, 52 (N.D. Ill 1989).  Although the breach of contract claim is not subject to the

15

heightened pleading of Rule 9(b), Plaintiffs must still allege facts to satisfy all of the essential elements its claim. *See* <u>Lucien v. Preiner</u>, 967 F.2d 1166, 1168.

Plaintiffs' Count XIII fails to set forth the existence of any contract between Plaintiffs and Ms. Martin, Ms. Guidi, and/or Mr. Rodriguez. In fact, the allegations in Plaintiffs' Complaint and the investment notes and certificates attached to Plaintiffs' Complaint make clear that the contract alleged was between the IFC entities and the Plaintiffs. (*See* Group Exhibit A to Plaintiffs' Complaint) (*see also* Plaintiffs' Complaint at ¶278-279). The Investment notes and certificates do not contain any signature of, or reference to, Ms. Martin, Ms. Guidi, or Mr. Rodriguez. Indeed, there is no allegation in Plaintiffs' Complaint that Movants were parties to the contracts referenced in its Count XIII. (*See* Plaintiffs' Complaint at Count XIII). Therefore, because Plaintiffs' Count XIII fails to plead the essential elements of its breach of contract claim, it should be dismissed for failure to state a claim.

### XIV. Violation of the Investment Advisers Act of 1940.

The Investment Advisors Act of 1940 ("IAA") prohibits the sale of unregistered investments and fraudulent practices by "Investment Advisors." The IAA defines "Investment Advisors"as "any person who for compensation, engages in the business of advising others, ... as to the value of securities or as to the advisability of investing in, purchasing or selling securities ..." 15 U.S.C. §80b-2(a)(11). Plaintiffs, however, have again failed to provide any factual allegations that Ms. Martin, Ms. Guidi, or Mr. Rodriguez performed any advising related to securities. (*See* Plaintiffs' Complaint at Count XIV). Instead, Plaintiffs once again rely on a general and unsupported conclusory allegation that "Defendants acted as Investment Advisors to Plaintiffs as that term is defined in the [IAA]." Thus, because Plaintiffs' Count XIV fails to

16

sufficiently plead a cause of action under the IAA, it should be dismissed.

### XV.    Violation of the Trust Indenture Act of 1939

The Trust Indenture Act of 1939 ("Indenture Act") prohibits the sale of unregistered securities and/or indentures and requires the indenture trustee to create and disclose certain reports. 15 U.S.C. §77aaa & mmm. Plaintiffs' Count XV should be dismissed because it contains no factual allegations to indicate that Ms. Martin, Ms. Guidi, or Mr. Rodriguez sold, individually or on behalf of the IFC entities, any securities or indentures. (*See* Plaintiffs' Complaint, at Count XV). Like Plaintiffs' other claims, Count XV only provides a conclusory statement that "Defendants offered to sell, sold, and issued securities and/or indentures." (*See* Plaintiffs' Complaint at ¶299). Plaintiffs' Complaint also fails to provide any factual allegations to support its conclusion that Ms. Martin, Ms. Guidi, and Mr. Rodriguez are, somehow, the indenture trustees for the indentures sold. (*See* Plaintiffs' Complaint, at Count XV). As such, Plaintiffs' Count XV, like their other claims, fails to plead a cause of action and should be dismissed.

### XVI.    Civil RICO.

The Racketeer Influenced and Corrupt Organizations Act ("Rico Act") imposes liability on the "principals of organizations for wire fraud and other racketeering and fraudulent conduct. 18 U.S.C. §2 *et seq.* Plaintiffs' Complaint, however, fails to provide any factual allegations, let alone particular allegations as required by Rule 9(b), of acts by Ms. Martin, Ms. Guidi, or Mr. Rodriguez which would constitute wire fraud or racketeering under the Rico Act. (*See* Plaintiffs' Complaint at Count XVI). Plaintiffs' Complaint also fails to provide any allegations to support its conclusion that "Defendants are all principals as that term is defined in

17