IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; et al., | ) |
| Plaintiffs, | ) |
| | ) Case No. 09-CV-1221 |
| v. | ) |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; et al., | ) Judge Leinenweber |
| | ) Magistrate Judge Nolan |
| Defendants. | ) |

### STATEMENT OF FACTS IN SUPPORT OF PLAINTIFFS' AMENDED SECOND MOTION FOR TEMPORARY RESTRAINING ORDER

NOW COME Plaintiffs, by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and hereby submit their Statement of Facts in Support of their Amended Second Motion for Temporary Restraining Order against Certain Defendants.

Summary

Through a number of changing entities, Defendants solicited investments from the public and Plaintiffs are representative of those investors. However, despite requests by Plaintiffs for return of their investments from Defendants, Defendants have not returned the money. Indeed, it is difficult to trace where the money went as Defendants have employed a complicated scheme of wire transferring money among banks and apparently to Mexico. Defendants have little known assets in the U.S. and may be insolvent, but Plaintiffs have information and believe that substantial assets may exist under the control of Defendants in Mexico.

Solicitation of Investments by IFC.com / Sanchez

1.  On or before January 1, 1999, Defendant Francis X. Sanchez aka Frank Sanchez ("Sanchez") began to solicit investments from the public through an organization called InvestForClosures.com ("IFC.com.")

2.  IFC.com was formally organized as an Illinois Limited Liability Company ("LLC") under the name InvestForClosures.com, LLC on March 14, 2000, with James D. Bourassa ("Bourassa") listed as its Registered Agent and its principal place of business located at 109 Douglas Ave., Elgin, Illinois 60120. (A true and correct copy of the Illinois Secretary of State file detail report for IFC.com as of January 17, 2009 is attached hereto as Exhibit A.)

3.  IFC.com established a website www.investforclosures.com (the "IFC.com website") to solicit investments. (A true and correct copy of the archived[1] investforclosures.com website as of March 3, 2000 is attached hereto as Exhibit B.)

4.  IFC.com claimed that it "specializes in buying properties via foreclosures, repossessions, bank REO's and Sheriff's sales. They use cash from investors to buy property at a deep discount, perform necessary rehabbing, and sell it below fair market value." (*See* Exhibit B, Yahoo Finance copy of press release.)

5.  On the IFC.com website, Sanchez claimed that investors could receive "up to 20% Return on Your Investment" and "can double their investment in 4 years." (*See* Exhibit B.)

6.  Sanchez is quoted in a press release issued by IFC.com on February 3, 2000: "Where else can you invest $2,500, get a 20 percent ROI, and receive Warrants for company that is definitely going public and on top of all that, watch

---

[1] Archived websites can be found for various periods of time at The Internet Archive aka Wayback Machine www.archive.org.

**Amended Second Motion for Temporary Restraining Order — Statement of Facts**
**Page 2 of 14**

your money being invested, live on the Internet." (*See* Exhibit B, Yahoo Finance copy of press release.)

7. On the April 29, 2001 version of the IFC.com website, Sanchez continued soliciting investments from the public with bolder assertions that investors could make up to 28% return on their investment, "roll-over your low-yield IRA into an IFC Fund IRA," that the investments "structured under by the Securities Exchange Commissions' [sic] Regulation D, Rule 504 in accordance with Federal SEC Regulatory Code" and that IFC made its money by buying "distressed properties at a deep discount, rehab the property as needed, and sell it below fair-market value." (A true and correct portion of the archived IFC.com website as of April 29, 2001 is attached hereto as Exhibit C.)

8. In fact, in the online prospectus, Sanchez wrote: "Our marketing is targeted to both accredited and non-accredited investors. The use of Rule 504 does not limit us to 35 non-accredited members. This being the case, and assuming that each investor contributes the minimum investment of $2,500; the maximum amount of members will be 400." (*See* Exhibit C.)

9. On nearly every page of the website, a public visitor is encouraged to fill out a form or click the "Join" button and invest with IFC.com. (*See* Exhibit C.)

10. IFC.com was involuntarily dissolved by the Illinois Secretary of State on August 28, 2001. (*See* Exhibit A.)

Investments in IFC.com

11. Several of the Plaintiffs invested in IFC.com. A representative sample follows.[2]

12. On September 4, 2001, Plaintiff Maria Valentin ("Valentin") invested $30,000.00 in InvestForClosures and was issued certificate number IFC090401-01[3]. (A true and correct copy of Certificate IFC090401-01 is attached hereto as Exhibit D.)

13. Plaintiffs Keith and Bonnie C. Raines ("Raines") invested $10,000.00 jointly on December 31, 2001 in InvestForClosures and was issued certificate number IFC123101-03. (A true and correct copy of Certificate IFC123101-03 is attached hereto as Exhibit E.)

14. There was no legal entity recognized by the Illinois Secretary of State called InvestForClosures existing at the time Valentin and Raines (and others) made their investments. (*Compare* Exhibits A with D and E.)

15. IFC.com would acknowledge the investment and set up a "MyMoney" webpage for each investor showing the identity of the investor, the investment date, the investment term, the investment amount, special notes, and the return ("compound interest plus principle [sic]") on an annual basis for the term of the

---

[2] Throughout this Motion, Plaintiffs will provide limited representative examples of the facts so as to reduce the size of the motion and exhibits and for judicial economy. However, Plaintiffs are prepared to supplement the record with the multiple examples of each fact if requested by the Court.

[3] Note that the certificates issued to Plaintiffs followed a pattern with the alpha prefix representing an abbreviation of the entity issuing the certificate, followed by six digits representing the date of the investment, followed by a hyphen and a serial number. In this example, "IFC090401-01" indicates that InvestForClosures issued the certificate on September 4, 2001. Later certificates will show use of the same system with "IFCF" representing InvestForClosures Financial and "IFCV" representing InvestForClosures Ventures.

**Amended Second Motion for Temporary Restraining Order – Statement of Facts**
**Page 4 of 14**

investment. (A true and correct copy of Raines' MyMoney page as of January 24, 2002 is attached hereto as Exhibit F.)

Solicitation of Investments by IFC Financial / Sanchez

16. Sometime between 2001 and 2002, Sanchez began operating the business under the name InvestForClosures Financial.

17. InvestForClosures Financial was formally organized as an Illinois LLC under the name InvestForClosures Financial, LLC ("IFC Financial") on March 19, 2002, with Bourassa listed as its Registered Agent and its principal place of business located at 13908 IL Rte. 176, Woodstock, Illinois 60098. (A true and correct copy of the Illinois Secretary of State file detail report for IFC Financial as of January 17, 2009 is attached hereto as Exhibit G.)

18. On the June 30, 2002 version of the IFC Financial website, Sanchez continued soliciting investments from the public claiming that "IFC Financial is a **low risk** company because . . . Approximately 90% of investors funds goes toward the purchase of real estate. . . . Typical 'flips' of foreclosure properties, when performed with a team of professionals using before and after appraisals, will yield profit margins of 50% or more when typically calculated on a cash basis." (A true and correct portion of the archived IFC Financial website as of June 30, 2002 is attached hereto as Exhibit H; emphasis in original.)

19. IFC Financial promised that "**High Rates** are possible when an investor makes a long-term commitment with our company" and encouraged investors to "Contact us today to secure your future!" (*See* Exhibit H; emphasis in original.)

20. On nearly every page of the website, a public visitor is encouraged to fill out a form if interested in investing. (*See* Exhibit H.)

21. Sanchez also solicited investments via direct contact with investors in person and via the mail and occasionally provided a prospectus to potential investors. (A true and correct copy of the IFC Financial 2003 Prospectus is attached hereto as Exhibit I.)

22. Additionally, Sanchez and IFC representatives would provide brochures to investors regarding their business to encourage investments. (A true and correct copy of the IFC Financial brochure circa 2004 is attached hereto as Exhibit J.)

Investments in IFC Financial / Sanchez

23. Several of the Plaintiffs invested in IFC Financial. A representative sample follows.[4]

24. Keith Raines invested $41,655.77 individually on November 26, 2002 in IFC Financial and was issued certificate number IFC112602-01 with a "term of 5 year [sic] earning 15.9% APY." (A true and correct copy of Certificate IFC112602-01 is attached hereto as Exhibit K.)

25. Bonnie Raines invested $43,112.29 individually on December 3, 2002 in IFC Financial and was issued certificate number IFC120302-01 with a "term of 5 year [sic] earning 15.9% APY." (A true and correct copy of Certificate IFC120302-01 is attached hereto as Exhibit L.)

26. On June 5, 2003, Joseph Cavaluzzi ("Cavaluzzi") invested $10,807.10 in IFC Financial and was issued certificate number IFCF060503-01[5] with a "term of

---

[4] See fn 2.
[5] See fn 3.

**Amended Second Motion for Temporary Restraining Order – Statement of Facts**
Page 6 of 14

5 years earning 15.9% APR." (A true and correct copy of Certificate IFCF060503-01 is attached hereto as Exhibit M.)

27.     On September 26, 2003, Bradley J. Schaufenbuel and his father Robert N. Schaufenbuel ("Schaufenbuels") invested $35,000.00 in IFC Financial and were issued certificate number IFCF092603-01. (A true and correct copy of Certificate IFCF092603-01 is attached hereto as Exhibit N.)

28.     Certificate IFCF092603-01 indicates that the Schaufenbuels' investment was for a period of 2 years at an interest rate of 17.9% APR and that, *inter alia*, "Interest payments will be paid monthly. Upon maturity of your investment, unless a withdrawal request has been received, your principal will be reinvested in the same plan as the rate and term posted at that time. A withdrawal of principal requires a 90 day written notice by mail or electronically by email." (*See* Exhibit N.)

29.     On November 9, 2004, American Mass Media Corporation ("AMMC") invested $50,000.00 in IFC Financial and was issued certificate number IFCF110904-01 with a "term of 5 years earning 9.0% APR." (A true and correct copy of Certificate IFCF110904-01 is attached hereto as Exhibit O.)

Solicitation of Investments by IFC Ventures / ROI Mexico / Sanchez

30.     InvestForClosures Ventures was formally organized as an Illinois LLC under the name InvestForClosures Ventures, LLC ("IFC Ventures") on December 30, 2004, with Bourassa listed as its Registered Agent and its principal place of business located at 13908 IL Rte. 176, Woodstock, Illinois 60098. (A true and correct copy of the Illinois Secretary of State file detail report for IFC Ventures as of January 17, 2009 is attached hereto as Exhibit P.)

31. Realty Opportunities International S. de R.L. de C.V. ("ROI Mexico") was incorporated in Mexico on April 8, 2005 and is wholly owned by IFC Ventures. (A true and correct copy of the corporate certificate in original Spanish and with English translation is attached hereto as Exhibit Q.)

32. By 2005, Sanchez was operating under a number of different business names and websites, including IFC Financial www.investforclosures.com and www.ifcfinancial.com; IFC Ventures www.ifcventures.com; Realty Opportunities International www.roimexico.com; ROI Developers www.roidevelopers.com; ROI Financial, LLC[6] www.roifinancial.com; and Sands of Gold Estates. (A representative sample of pages from these various websites circa 2005 is attached hereto as Exhibit R.)

33. According to the www.roimexico.com website, IFC Financial "has launched a new company, Realty Opportunities International. This new company will focus on buying and developing international real estate property for individuals and investors in the U.S. market. The first major acquisition for Realty Opportunities International is 23 acres of ocean front property located on the western Mexican coastline about an hour south of Acapulco called Pacific Estates. . . . Frank Sanchez, CEO of InvestForClosures Financial, was able to acquire the property due to having dual citizenship." (*See* Exhibit R, page 6.)

34. Despite the references to IFC Financial, the website is copyrighted by IFC Ventures. (*See* Exhibit R, page 6 bottom left.)

35. Sanchez, through these various vehicles, was soliciting investments into IFC Ventures and/or ROI for purposes of developing the Sands of Gold Estates

---

[6] ROI Financial, LLC was never a legal entity according to the Illinois Secretary of State.

**Amended Second Motion for Temporary Restraining Order — Statement of Facts**
Page 8 of 14

in Playa Ventura, Mexico. In fact, Sanchez was soliciting investors to purchase not only shares in IFC Ventures, but also lots of property in Mexico. (*See* Exhibit R, pages 7-16.)

Investments by Plaintiffs in IFC Ventures / ROI Mexico / Sands of Gold Estates

36. On July 18, 2005, AMMC invested $20,000.00 in IFC Ventures and was issued certificate number IFCV071805-01[7] with a "term of 5 years earning 20% APR." (A true and correct copy of Certificate IFCV071805-01 is attached hereto as Exhibit S.)

37. On July 13, 2005, Roberta K. Clark ("Clark") invested $70,000.00 in IFC Ventures and was issued certificate number IFCV071305-01 with a "term of 5 years earning 17% APR." (A true and correct copy of Certificate IFCV071305-01 is attached hereto as Exhibit T.)

38. In addition to previously investing $135,000 in IFC Financial, Kathleen Markus invested $50,000.00 on December 22, 2004, $25,000.00 on January 31, 2005 and $25,000.00 again on July 7, 2005, in IFC Ventures and was issued certificates numbers IFCV122204-01, IFCV013105-01 and IFCV070705-01 respectively each with a "term of 5 years earning 25% APR." (True and correct copies of Certificates IFCV122204-01, IFCV013105-01 and IFCV070705-01 are attached hereto as Exhibit U.)

39. On April 27, 2007, Cavaluzzi invested $56,381.18 in the "Special Opportunity Program" of Realty Opportunities International and was issued certificate number IFCV-042707-01 which allows Cavaluzzi "to earn 18% APR

---

[7] See fn. 3.

**Amended Second Motion for Temporary Restraining Order – Statement of Facts**
Page 9 of 14

annual compounding." (A true and correct copy of Certificate IFCV-042707-01 is attached hereto as Exhibit V.)

40. On January 29, 2008, David Hale ("Hale") wire transferred $10,000.00 from his eTrade account to ROI Mexico's bank account at Banco Santander Serfin S.A. in Acapulco, Mexico via JP Morgan Chase. Hale's investment with ROI Mexico was acknowledged by email from Bourassa on July 11, 2008 showing an interest rate of 18% on the investment and an open balance of $10,768.24. (A true and correct copy of the wire transfer information and July 11, 2008 account review email is attached hereto as Exhibit W.)

41. The wire transfer confirmation provided to Hale matches wire transfer instructions that Sanchez was providing for ROI Mexico's account at Banco Santander Serfin S.A., Account 65501789583. (A true and correct copy of ROI's wire transfer instructions is attached hereto as Exhibit X.)

42. According to IFC Venture's Executive Committee Meeting Minutes of October 11, 2005, investors Mark Lincoln, Helen Clark, Richard Burge and Connelley had each bought lots at Sands of Gold ("SOG"). (A true and correct copy of the 10/11/2005 meeting minutes is attached hereto as Exhibit Y.)

Requests by Investors for Return of their Investments

43. Many of the investors requested return of their investments and/or completed IFC's Principal and Interest Withdrawal Request Form as demanded by Sanchez. (True and correct copies of requests to IFC for withdrawal of investments are attached hereto as Exhibit Z.)

44. Many other investors did not request the return of their money because Sanchez continued to promise them in numerous emails that funding for

the Sands of Gold Estates project was forthcoming very shortly. (True and correct copies of emails from Sanchez are attached hereto as Exhibit AA.)

45. However, despite all of the assertions, to date the Plaintiffs have not received the return of their investments – neither interest nor principal; Sanchez does not have a Letter of Commitment or any funding for the Sands of Gold project; and he only owns 23 acres of the proposed 23,000 acre project.

Wire Transfers and Movement of Money by Sanchez

46. In 2007, Sanchez wrote a memo indicating that he and Bourassa had been underpaid as executives of IFC Ventures and the two should have received a total compensation of $5,017,664.00 for the period 2005-07. (A true and correct copy of Sanchez's Executive Compensation Report is attached hereto as Exhibit AB.)

47. It is quite daunting to determine where investors' money went. As is shown in the next several paragraphs, Sanchez and his organizations wire transferred money to so many locations, so many times, that it is nearly impossible to determine which wire is associated with which investment or where the money ultimately landed.

48. IFC Financial maintained account number 3110005802 at United Community Bank ("UCB"), now known as Park National Bank. (True and correct copies of a selection of bank statements from April 2003 – March 2005 for the IFC Financial account are attached hereto as Exhibit AC.)

49. From the UCB account there includes the following: $40,000 wire transfer to Elgin State Bank in April 2003; several wire transfers to SunTrust Bank in May 2003; a $100,000 wire transfer in from Elgin State Bank in July 2003; a

$25,000 funds transfer with no further explanation and wire transfers to SunTrust Bank, Commerce Bank and Firstar Bank in October 2003; a transfer of $480,000 to a new account in May 2004; a $100,000 transfer in and a $70,416.67 wire transfer to Bank of America in June 2004; a $8,105.91 wire transfer to Sky Bank in July 2004; and a $5,000 transfer out with no further explanation in March 2005. (*See* Exhibit AC.)

50. IFC Ventures maintained account number 1720030844 at Harris Bank in Woodstock, IL ("Harris"). (True and correct copies of a selection of bank statements from January 2005 – July 2007 for the IFC Ventures account at Harris are attached hereto as Exhibit AD.)

51. From the Harris account there includes the following:

    a. In January 2005, $80,000 wire transfer out to Elgin State Bank; $20,000 wire transfer out to UCB; and $30,000 wire transfer out to IFC Financial;

    b. In March 2005, $290,000 transferred in by two investors (Brad Bebout and Robert Levy); $100,000 wire transfer out to Elgin State Bank "Self"; $35,000 wire transfer out to Bank of Lisle "Self"; $100,000 wire transfer out to Elgin State Bank; other wire transfers out including $100,000 to IFC Financial;

    c. In April 2006, there is a beginning balance of $499,184.80 and an ending balance of $14,341.11; that decrease is primarily caused by $340,000 wire transfers out to IFC Financial; $40,000 in international wires out to Banco Santander; and a $4,500 international wire out to BBVA Bancomer;

    d.    In March 2007, there are $11,500 in international wires out; over $5,000 paid to American Express; and a $20,000 outgoing wire with no further explanation;

    e.    The following month of April 2007, there are $25,500 in international wire transfers out and $38,500 of unexplained other outgoing wire transfers; there are also a lot of large checks written this month;

    f.    Again in May 2007, there are $39,500 of international wire transfers out and $31,500 of unexplained outgoing wire transfers, and again some very large checks written against the account some $5,000 each;

    g.    In July 2007, the international wire transfers total $43,500 and the outgoing wire transfers total $11,000, with checks totaling over $25,000; and

    h.    Other monthly statements not included have similar patterns of large wire transfers out both domestically and internationally from the Harris account depleting the account to nearly zero.

(*See* Exhibit AD.)

52.    IFC Ventures d/b/a Sands of Gold maintained account number 002915838255 at Bank of America ("BoA"). (A true and correct copy of the May 2008 bank statement for the IFC Ventures account at BoA is attached hereto as Exhibit AE.)

53.    During May 2008, Sanchez wired $19,000 from ROI Mexico's account 65501789583 at Banco Santander Serfin S.A. in Mexico to the IFC Ventures

account at BoA, which was promptly taken out within days of the transfers.  (*See* Exhibit AE.)

Assets of Defendants Sanchez / IFC / ROI

54. ROI Mexico, a wholly owned subsidiary of IFC Ventures, purchased approximately 23 acres of property in Playa Ventura, Mexico from Rosa Miramontes Lemoli for the total sale price of 270,000 pesos (approx. $21,000.00), with a down payment of 120,000 pesos and a mortgage of 150,000 pesos.  (A true and correct copy the agreement to purchase in original Spanish is attached hereto as Exhibit AF.)

55. There are no other known assets of the Defendants in the United States, but upon information and belief substantial sums of money has been transferred to ROI Mexico's bank accounts or other assets in Mexico which are under the control of Sanchez.

56. Otherwise, Plaintiffs fear that Defendants are insolvent or have hidden any remaining assets, yet continue to operate and promote the Sands of Gold Estates project, which may be dissipating any remaining assets to which investors are entitled.

    Respectfully submitted,
    PLAINTIFFS' CLASS

    By: __/s/ Robert C. Thurston_____
        One of Their Attorneys

Thurston Law Offices, P.C.  
Robert C. Thurston  
A.R.D.C. No. 6209353  
10469 Bethel Avenue  
Huntley, IL 60142  
Phone: 847-659-8613  
Email: tj@thurstonlawpc.com  

Law Offices of Joel M Weiner, LLC  
Joel M. Weiner  
579 N 1st Bank Drive Suite 150  
Palatine, IL 60067-8102  
Phone: 847-654-3105  
Email: jweiner@jweinerlaw.com

**Amended Second Motion for Temporary Restraining Order – Statement of Facts**
**Page 14 of 14**