IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 09-CV-1221 |
| v. ) | |
| ) | |
| INVESTFORCLOSURES FINANCIAL, ) | Judge Leinenweber |
| L.L.C.; et al., ) | |
| ) | Magistrate Judge Nolan |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
AMENDED SECOND MOTION FOR TEMPORARY RESTRAINING ORDER**

NOW COME Plaintiffs, by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and hereby respectfully submit this Memorandum of Law in Support of their Amended Second Motion for Temporary Restraining Order against Certain Defendants.

**Basis of Preliminary Relief / TRO**

Temporary restraining orders and their companion preliminary injunctions have their basis in the equitable powers of the Court. Such has been codified in Rule 65: "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed.R.Civ.P. 65.

In this case, Plaintiffs seek "any and all relief available, alternatively, under the Securities Act of 1933, 15 U.S.C. §77a *et seq.,* the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.,* . . . Money Laundering Act, 18 U.S.C. §1956 *et seq.*, and the other causes of action stated herein so as to provide justice to the Plaintiffs." (Second Amended Complaint, pp. 57-58.) Plaintiffs seek to freeze all personal and business assets of the named Defendants and freeze all business activities of the named Defendants, including without limitation all activities relating to the "Sands of Gold Estates" project in Playa Ventura, Mexico for a short period to determine if preliminary and permanent injunctions should issue and/or a Receiver should be appointed for the assets of the named Defendants. Essentially, Plaintiffs seek to freeze the only assets of Defendants that would satisfy a judgment in this case.

Both securities laws and the Money Laundering Act provide statutory basis for equitable relief. The Securities Act of 1933 allows the purchaser of a security from a seller that has sold or provided a prospectus in violation of the Act to "sue either at law or <u>in equity</u> in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. §77l(a). Under the Securities Exchange Act of 1934, similar relief is provided. 15 U.S.C. §78r(a).

The Money Laundering Act provides that if a person or persons are using banks to transfer money with the intent of disguising an illegal act or concealing the money from other parties that have a legitimate right to the money, then "A court may issue a pretrial restraining order or take any other action necessary to ensure

that any bank account or other property held by the defendant in the United States is available to satisfy a judgment under this section." 18 U.S.C. §1956(b)(3). The statute also empowers a Court to appoint a Receiver for any assets if appropriate. 18 U.S.C. §1956(b)(4).

Several federal appeals courts have held that freezing a defendant's assets via a preliminary injunction is proper in a securities fraud case. *See e.g. Wade v. Industrial Funding Corp.*, 29 F.3d 637 (9th Cir. 1994) (held, district court's ruling that a preliminary injunction may not issue to freeze defendant's assets in securities fraud case reversed and remanded for hearings in line with ruling in *In re Estate of Ferdinand Marcos Human Rights Litig.*, 25 F.3d 1467 (9th Cir.1994) ("We join the majority of circuits in concluding that a district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment.")); and *MAI Basic Four, Inc. v. Prime Computer, Inc.*, 871 F.2d 212 (1st Cir. 1988); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3rd Cir. 1990) (holding that while the imposed injunction was fatally overbroad, more reasonably tailored injunction could be imposed by trial court).

**Preliminary Relief Standard**

Judge Posner, writing for the Seventh Circuit in *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (1984), stated the test for a preliminary injunction: "Many of our cases say that to get a preliminary injunction a plaintiff must show each of four things: that he has no adequate remedy at law or will suffer irreparable harm if the injunction is denied; that this harm will be greater than the

harm the defendant will suffer if the injunction is granted; that the plaintiff has a reasonable likelihood of success on the merits; and that the injunction will not harm the public interest." *Roland Machinery Co.,* supra, 749 F.2d at 382-83 [citations omitted]. It is clear that the power to grant preliminary relief is within the discretion of the trial court. *Id.* at 384.

1. *Inadequate Remedy at Law*

"The absence of an adequate remedy at law is a precondition to any form of equitable relief. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that he has no adequate remedy at law, he can easily wait till the end of trial to get that relief." *Id.* at 386.

Plaintiffs have no adequate remedy at law herein because it is clear that Defendants do not have sufficient assets to repay all of the investors. Indeed, it is questionable whether there are sufficient assets to even pay a small percentage of the damages at bar. What is evident is that if Defendants' assets and activities are not frozen, any remaining assets will either be dissipated by such activities or Defendants will wire transfer any remaining assets to Mexico where finding such assets may be impossible. Defendants have already shown a remarkable ability to shuffle assets to their bank accounts in Mexico. (*See* Statement of Facts.) Thus, irreparable harm to Plaintiffs will have certainly occurred and is not a remedy that can wait until the end of trial. If victorious at trial, Plaintiffs would have, at best, an uncollectible judgment. When such can be prevented by freezing assets, it seems the most logical and least harmful way to proceed.

As stated previously, freezing assets has been supported by other federal appellate jurisdictions as a valid preliminary remedy to prevent against irreparable harm. (*See supra.*) "In saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered." *Roland Machinery Co.,* supra, 749 F.2d at 386. Plaintiffs' Second Amended Complaint alleges that over $8 million was invested in Sanchez's operations. (Second Amended Complaint, ¶9 et al.) Even assuming that Defendants had $100,000 of collectible assets here in the United States, that would be seriously deficient as a remedy for the harm suffered. The property in Mexico is apparently only worth approximately $21,000 at current exchange rates. (*See* Statement of Facts, ¶54.)

"In deciding whether to grant a preliminary injunction, the court must also consider any irreparable harm that the defendant might suffer from the injunction-- harm that would not be either cured by the defendant's ultimately prevailing in the trial on the merits or fully compensated by the injunction bond." *Roland Machinery Co.,* supra, 749 F.2d at 387. Defendants herein would suffer no harm by an injunction freezing their personal and business assets and halting their activities related to Sands of Gold Estates. Despite numerous representations that funding for the project is proverbially around the corner (*see* Statement of Facts, ¶44 and Exhibit AA), no funding has come and it does not appear likely in the future. In addition, Sanchez's main partner in this matter filed for bankruptcy and is no longer active in the business. (*See* Notice of Bankruptcy, Document #50.) "If the defendant will not be irreversibly injured by the injunction because a final

judgment in his favor would make him whole, the injunction will not really harm him." *Roland Machinery Co.,* supra, 749 F.2d at 387.

    2. <u>Likelihood of Succeeding on the Merits</u>

Judge Posner opines: "Equity jurisdiction exists only to remedy legal wrongs; without some showing of a probable right there is no basis for invoking it." *Id.* Posner agrees that "the threshold is low" for showing a likelihood of plaintiff succeeding on the merits and cites *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119 (7th Cir. 1982) for the proposition that "it is enough that the plaintiff's chances are better than negligible." *Roland Machinery Co.,* supra, 749 F.2d at 387.

In the case at bar, most of the work has already been accomplished by the Illinois Securities Department and the Pennsylvania Securities Commission. Both entities have found that Defendants had violated state securities laws by failing to register the investment securities and for illegally selling those securities. (Second Amended Complaint, ¶¶132 and 138 and exhibits thereto.) Those findings included that Defendants' offered investments were "securities" as defined by the statutes and that Defendants had not complied with the requirements for registering, issuing prospecti and selling such securities. (Second Amended Complaint, ¶¶132 and 138 and exhibits thereto.)

In addition, the Statement of Facts accompanying this motion bear out that Defendants spent a good amount of time wire transferring money among U.S. bank accounts and to Mexican banks and other locations so as to try to conceal the money. (Statement of Facts, ¶¶48-53.) This is money that "represents the proceeds of some form of unlawful activity," 18 U.S.C. §1956(a)(1), namely the

illegal sale of securities, and that the wire transfers were made "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. §1956(a)(1)(B)(i).

Plaintiffs are also fearful that Defendants, particularly Sanchez, believes he is personally entitled to this money. He even issued a memo titled "Executive Compensation Report" as an attempt to justify that he and Bourassa should have received over $5 million in compensation as executives of IFC Ventures for the years 2005-2007. (Statement of Facts, ¶46 and exhibit thereto.)

"The idea underlying these equivalent approaches is that the task for the district judge in deciding whether to grant or deny a motion for preliminary injunction is to minimize errors: the error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is more costly in the circumstances." *Roland Machinery Co.,* supra, 749 F.2d at 388.

    3. *Injunction will not Harm the Public Interest*

Posner again: "Sometimes an order granting or denying a preliminary injunction will have consequences beyond the immediate parties. If so, those interests--the "public interest" if you will--must be reckoned into the weighing process just described." *Roland Machinery Co.,* supra, 749 F.2d at 388. This issue is committed to the trial court's discretion. *Id.*

There really is no potential harm to the public interest by imposing an injunction as proposed in the case at bar. The purported businesses of Sanchez and the investments by Plaintiffs therein is a strictly and wholly private enterprise.

If anything, there is potential harm to the public interest by <u>not</u> imposing an injunction because clearly Sanchez is not going to stop trying to promote Sands of Gold Estates unless the funds to do so are frozen. (*See* Certification of Robert C. Thurston, Document #34-2.) Despite the cease and desist orders by the States of Illinois and Pennsylvania in 2007 and 2005 respectively (Second Amended Complaint, ¶¶132 and 138 and exhibits thereto), Sanchez still solicited and sold securities in his companies after those dates. (*See e.g.* Statement of Facts, ¶40.)

**Conclusion**

Plaintiffs' motion for preliminary relief meets the legal standard and tests under the Federal Rules of Civil Procedure and the 7th Circuit cases that deal with injunctive relief. Plaintiffs have also established sufficient evidentiary proof to at least meet the temporary restraining order stage to freeze the assets and activities as requested and such injunction neither harms Defendants nor the public interest.

    Respectfully submitted,
    PLAINTIFFS' CLASS

    By: __/s/ Robert C. Thurston_____
        One of Their Attorneys

Thurston Law Offices, P.C.      Law Offices of Joel M Weiner, LLC
Robert C. Thurston      Joel M. Weiner
A.R.D.C. No. 6209353      579 N 1st Bank Drive Suite 150
10469 Bethel Avenue      Palatine, IL 60067-8102
Huntley, IL 60142      Phone: 847-654-3105
Phone: 847-659-8613      Fax: 847-358-7165
Fax: 847-628-0930      Email: jweiner@jweinerlaw.com
Email: tj@thurstonlawpc.com