IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; et al., | ) |
| Plaintiffs, | ) |
| | ) Case No. 09-CV-1221 |
| v. | ) |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; et al., | ) Judge Leinenweber |
| | ) Magistrate Judge Nolan |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT DARCEY MARTIN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

NOW COME Plaintiffs, by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and hereby respond and oppose to Defendant Darcey Martin's ("Martin") Motion to Dismiss for Lack of Personal Jurisdiction as follows:

**Relevant Facts**

1. Defendant InvestForClosures Financial, LLC ("IFC Financial") was an Illinois limited liability company with its principal place of business in Woodstock, McHenry County, Illinois. (A true and correct copy of the Illinois Secretary of State corporate report is attached hereto as Exhibit A.)

2. It is uncontested that Defendant Darcey Martin ("Martin") and her husband Judd Martin invested at least $35,000 on or about July 22, 2002 in IFC Financial and sent their payment to IFC Financial in Woodstock, Illinois.

3. IFC Financial maintained bank account #3110005802 at United Community Bank ("UCB" n/k/a Park National Bank) located at 1026 Ogden Ave., Lisle, Illinois 60532. (A true and correct copy of the cover letter from Park National

-1-

Bank conveying documents in response to subpoena is attached hereto as Exhibit B.)

4. Debits were made against IFC Financial's bank account at UCB in favor of Judd and Darcey Martin for interest payments on their investment, thereby showing that Martin benefitted from the services of an Illinois bank. (True and correct copies of select pages from UCB statements for account #3110005802 are attached hereto as Exhibit C; emphasis added.)

5. In 2005, IFC Financial started a spin-off company known as InvestForClosures Ventures, LLC ("IFC Ventures"), an Illinois limited liability company which also had its principal place of business in Woodstock, McHenry County, Illinois. (A true and correct copy of the Illinois Secretary of State corporate report is attached hereto as Exhibit D.)

6. IFC Ventures was set up to develop and market a project in Mexico known as Sands of Gold Estates.

7. Upon information and belief, Martin rolled her investment in IFC Financial over into IFC Ventures.

8. On April 16, 2008, Frank Sanchez, the principal of IFC Ventures, advises investors that "<u>Darcy [sic] Martin</u>, one of our most treasured investors, <u>has joined the team</u> and may have already had contact with some of you. She has been helping us with the account reviews and at this time is about half way through them. Some of you may have already gotten your review. Others will receive it soon." (A true and correct copy of the April 16, 2008 Sanchez email is attached hereto as Exhibit E; emphasis added.)

9. Martin has an email address darcey.martin@d2dsolutions.com and a signature line that indicates a designation of "CCFC," which is a Certified Credit & Finance Coach and also identifies her as a "Financial Specialist." (True and correct copies of a series of emails from Martin are attached hereto as Exhibit F; emphasis added.)

10. Beginning at least on January 26, 2009 and continuing periodically, every few days until at least until April 2, 2009, Martin was sending email updates and/or board meeting minutes on behalf of Woodstock, Illinois-based IFC Ventures. Those emails reached all investors on the email list, including several in Illinois. (*See* Exhibit F.)

11. The emails reveal that Martin was not simply a passive investor in IFC Financial and IFC Ventures, but was participating in the Illinois-based businesses and acting on behalf of the Illinois-based businesses, if not an actual employee or member of the board:

> a. "Dear Investor: I have <u>officially</u> been given approval to give updates to our investor base of those that inquire on the latest happenings of ROI, and am here to answer any questions that I can or at least formulate a list of questions to bring forward to get answers out to the investor base. As you may or may not know <u>we are now meeting twice per week</u> to find out the latest that is happening and to get an update on what is currently being worked on. I will be forwarding this onto interested parties in a bullet point format." (Exhibit F, 1/26/2009 email; emphasis added);

b. "We have moved [the conference call] to Wednesday evening same time so I will get you an update after that . . . we are getting into the grove [sic] of these meetings;" (Exhibit F, 1/27/2009 email);

c. 1/28/09, 1/31/09 and 2/7/09 updates sent by Martin on behalf of IFC Ventures; (Exhibit F, 1/28/2009, 1/31/2009 and 2/7/2009 emails);

d. "<u>We</u> have set up a meeting [with Mexican Bank] for 02.23.09 at 4pm CST. Frank, Jim, <u>Darcey</u>, and a board member will be on call." (Exhibit F, 2/19/2009 email; emphasis added);

e. "Have set up a meeting to discuss outline [for Option Contracts] sent last week, Monday 2.23.09 – 11am CST. Frank, Jim, <u>Darcey</u>, and a board member will be on call." (Exhibit F, 2/19/2009 email; emphasis added);

f. "Action item: . . . Will be contacting political connections regarding potential synergy with bank to help move funding along. We will need 5-6 letters, <u>Darcey to draft letters</u>, Frank to review, Robert to Translate. <u>Frank to send Darcey the list on Saturday</u>." (Exhibit F, 2/22/2009 email; emphasis added);

g. "Have set up a meeting to discuss outline [for Option Contracts] sent last week, Monday 2.23.09 – 1:30pm CST. Frank, Jim, <u>Darcey</u>, and Mark will be on call." (Exhibit F, 2/22/2009 email; emphasis added);

h. In response to a question by investor Roberta Clark regarding a promised repayment to her of $16,500 by the end of the month, Martin says: "We should know much more after the Monday Meetings. And since <u>I will be attending both meetings</u>, we will know what is really going on and <u>I will not leave the meetings without all our questions answered</u>....," not only responding to an investor's question on behalf of the IFC entities but also stating she is going to attend IFC meetings; (Exhibit F, 2/22/2009 email #2; emphasis added);

i. In the "02.28.09 update" on behalf of IFC Ventures, Martin writes: "Darcey drafted memo, sent to Frank" [regarding Mexican Bank]; (Exhibit F, 2/28/2009 email);

j. Martin sends another update on behalf of IFC Ventures on March 4, 2009 consistently using the term "we", e.g. "Once <u>we</u> get a date of site visit, will get a time and location for meeting to update all interested parties." (Exhibit F, 3/4/2009 email; emphasis added); and

k. After Plaintiffs filed their Motion to Hold Certain Defendants in Contempt and for Sanctions (Document #34) against Defendants IFC Financial, IFC Ventures and Frank Sanchez and Judge Nolan held initial status hearings on the motion on March 30 and April 1, 2009 (Document #40), Martin attempts to set up a conference call on behalf of IFC Ventures where "Frank is planning time this weekend to talk to investors about the Sands

-5-

of Gold project . . . Please click 'Reply All'," which would include Martin on the reply. (Exhibit F, 4/2/2009 email.)

**Argument**

12. Defendant Martin has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). (Martin's Motion to Dismiss, Document #85.)

13. "A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant." *Zurich Capital Markets, Inc. v. Coglianese*, 388 F.Supp.2d 847, 855 (N.D. Ill. 2004).

14. A plaintiff need only make a prima facie case that jurisdiction over a defendant is proper. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

15. Martin erroneously attempts to apply a diversity case personal jurisdiction analysis in her motion to dismiss. (*See* Motion to Dismiss, ¶¶11-16 et al.)

16. The 7th Circuit has held that when a District Court applies personal jurisdiction principles appropriate for a diversity case to a securities fraud case, it is reversible error. *Fitzsimmons v. Barton*, 589 F.2d 330 (7th Cir. 1979) (held, defendant, as resident citizen of United States, had sufficient contacts with United States to "support the fairness of the exercise of jurisdiction over him by a United States court" in a securities fraud action.)

17. Thus, Martin's extensive reliance upon *Jadair, Inc. v. Walt Keeler Co., Inc.*, 679 F.2d 131 (7th Cir. 1982) is misplaced for several reasons. The *Jadair* case was one based on diversity jurisdiction, not securities fraud, thus the personal jurisdiction analysis is inapplicable to the case at bar. Even if a state's long arm statute were at issue, *Jadair* involved the Wisconsin long-arm statute whereas the

present case is venued in Illinois. Finally, defendant in that case was a Kansas company that purchased a machine from a Wisconsin company. Purchasing a machine is an isolated event while Martin's investment in IFC was an ongoing venture.

18. The case at bar is premised upon federal question jurisdiction, specifically securities fraud in violation of the Securities Act of 1933, 15 U.S.C. §77a *et seq.* and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* The Complaint also contains a count for violation of the Illinois Securities Law. (Second Amended Complaint, Document #58, ¶10 and ¶¶260-76.)

19. §27 of the Securities Exchange Act of 1934 provides in pertinent part: "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any … district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, <u>and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found</u>." 15 U.S.C. § 78aa (2000) (emphasis added.)

20. "Service of process is how a court gets jurisdiction over the person." *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987).

21. Because the Securities Exchange Act of 1934 provides for nationwide service of process, it confers personal jurisdiction in federal court over defendants with minimum contacts with the United States, as long as the mandates of constitutional due process are met. *Id.*; *Fitzsimmons*, 589 F.2d at 332. *See also*

*Kundrat v. Chicago Bd. Options Exch.*, No. 01 C 9456, 2002 WL 31017808, at *3 (N.D.Ill. Sept.6, 2002).

22. U.S. citizenship has been held to satisfy the "minimum contacts" required for personal jurisdiction in a securities case. *Fitzsimmons*, 589 F.2d 330 cited with approval in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 192, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

23. Martin is a resident of Florida and a citizen of the United States. For that reason alone, she is subject to personal jurisdiction in the U.S. Court for the Northern District of Illinois, provided that it is the proper venue for the case.

24. Venue is clearly proper under 28 U.S.C. §1391 as nearly all of the Defendants reside in the District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

25. Even if this Court had to go farther into an analysis applying the "fairness" standard established in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and discussed in *Fitzsimmons*, *supra*, Martin's actions on behalf of Illinois-based Defendants IFC Ventures and Frank Sanchez (as set forth in the fact section *supra*) would certainly support that this Court's exertion of personal jurisdiction over Martin does not violate Due Process under the U.S. Constitution.

26. "The United States has a substantial interest in the enforcement of its securities laws and the protection of investors in the United States securities markets." *Zurich Capital Markets*, 388 F.Supp.2d at 859. Illinois also has an interest in enforcing its securities laws. *Id.*

**Conclusion**

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this honorable Court deny Defendant Darcey Martin's Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully submitted,
PLAINTIFFS

By: /s/ Robert C. Thurston
        One of Their Attorneys

| | |
|---|---|
| Thurston Law Offices, P.C. | Law Offices of Joel M Weiner, LLC |
| Robert C. Thurston | Joel M. Weiner |
| A.R.D.C. No. 6209353 | 579 N 1st Bank Drive Suite 150 |
| 10469 Bethel Avenue | Palatine, IL 60067-8102 |
| Huntley, IL 60142 | Phone: 847-654-3105 |
| Phone: 847-659-8613 | Fax: 847-358-7165 |
| Email: tj@thurstonlawpc.com | Email: jweiner@jweinerlaw.com |