IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; et al., | ) |
| Plaintiffs, | ) |
| | ) Case No. 09-CV-1221 |
| v. | ) |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; et al., | ) Judge Leinenweber |
| | ) Magistrate Judge Nolan |
| Defendants. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS MARTIN, GUIDI AND RODRIGUEZ MOTION TO DISMISS**

NOW COME Plaintiffs, by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and hereby respond to and oppose Defendants Darcey Martin ("Martin"), Deana Guidi ("Guidi") and Tom Rodriguez ("Rodriguez") Motion to Dismiss as follows:

**Rule 12(b)(6) Motions**

Defendants Martin, Guidi and Rodriguez have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Motion to Dismiss 01, Document #87.) The purpose of a motion to dismiss under Rule 12(b)(6) is to "test the sufficiency of the complaint, not to decide the merits" of the case. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). Dismissal of a complaint is appropriate only where it appears beyond doubt

that under no set of facts would plaintiff's allegations entitle him or her to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

**Pleading Standards in Federal Court**

The Federal Rules of Civil Procedure apply to all cases filed in federal court, no matter what the basis of subject matter jurisdiction. *Hanna v. Plumer*, 380 U.S. 460 (1965). Rule 12(b)(6) does not stand alone. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court stated: "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. This Court, however, has declined to extend such exceptions to other contexts." *Id.* at 513. The Supreme Court also underscored the fact that "[o]ther provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard." *Id. See McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005).

Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a) (2000). As the Supreme Court pointed out in *Swierkiewicz*, 534 U.S. at 511-14, and as the 7th Circuit reiterated in *McDonald*, "This is a notice pleading standard, not a fact pleading standard." 425 F.3d at 427. The point of a notice pleading standard is that the plaintiff is not required to plead either facts or legal theories. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (complaints do not need to match facts to "elements" of a legal theory).

*See also Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005) ("In this regard, the Supreme Court has cautioned that '[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" *quoting Conley v. Gibson*, 355 U.S. 41, 48 (1957)).

**State Pleading Requirements Do Not Apply**

Illinois state pleading requirements, argued by Martin, Guidi and Rodriguez, are simply inapplicable to federal court and pleading standards under the Federal Rules of Civil Procedure govern "even when the claim pleaded arises under state rather than federal law." *Muick v. Glenayre Elecs.*, 280 F.3d 741, 743 (7th Cir. 2002) (applying federal pleading requirements to an Illinois cause of action); *see also Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006) (same); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting."); *Colton v. Swain*, 527 F.2d 296, 304 (7th Cir. 1975). Consequently, a federal district court evaluates state law claims under federal pleading standards. *Windy City Metal Fabricators & Supply v. CIT Technology Financing Services*, 536 F.3d 663, 672 (7th Cir. 2008). Thus, the references by Martin, Guidi and Rodriguez to Illinois pleading standard cases, e.g. *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482 (1996) (Memorandum of Law in Support of Motion to Dismiss, p. 5); *Roth v. Roth*, 45 Ill.2d 19 (1970) (Memo of Law, p. 9); *Canel & Hale, Ltd. v. Tobin*, 304 Ill.App.3d 906 (1st Dist. 1999) (Memo of Law, p. 11); *et al.*, are markedly misplaced.

**Rule 9(b) Heightened Pleading Standards Only Apply in Limited Cases**

Only limited cases engage the heightened pleading requirements of Rule 9(b). The Supreme Court, in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), made emphatically clear that federal courts are not to supplement the list in Rule 9(b) of the Federal Rules of Civil Procedure of claims that must be pleaded with particularity. The Court repeated this rule in *Swierkiewicz*, 534 U.S. 506, 513 and n. 3; *see also Christopher v. Harbury*, 536 U.S. 403, 417-18 and n. 15, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), as the Seventh Circuit and other courts of appeals have done repeatedly since *Leatherman*. *E.g., Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004); *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir. 2004); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Payton v. Rush-Presbyterian St. Luke's Medical Center*, 184 F.3d 623, 627 (7th Cir. 1999); *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346-48 (4th Cir. 2005); *Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 836-38 (11th Cir. 2004). *See also Pratt v. Tarr*, 464 F.3d 730 (7th Cir. 2006). In *Kolupa v. Roselle Park District*, 438 F.3d 713, 715 (7th Cir. 2006), the Court said: "Any decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Rule 9(b)." This admonition was repeated in *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006).

The query is then what causes of action alleged in Plaintiffs' Complaint are subject to Rule 9(b) pleading standards. Plaintiffs' Second Amended Complaint contains 17 causes of action. (Second Amended Complaint, Document #58.) In their Memorandum of Law supporting the motion to dismiss, Martin, Guidi and

Rodriguez argue that "Plaintiffs' remaining Counts IV-V, VII-VIII, X, XIV, and XVII . . . are also subject to Rule 9(b)'s particularity requirement because they all rely and center around Plaintiffs' allegations of fraud." (Memo of Law, p. 5.[1])  Yet, this argument is completely contrary to the mandate set forth by the U.S. Supreme Court in *Leatherman* and its progeny discussed above.  Defendants cannot unilaterally declare that certain causes of action must meet the Rule 9(b) pleading requirements when such is contradicted by not only the Supreme Court, but numerous cases in other federal appellate courts.

**Rule 8(a) Applies to Most of the Counts of the Second Amended Complaint**

Contrary to the arguments of Martin, Guidi and Rodriguez, the following causes of action are not subject to the Rule 9(b) pleading standard, but must only meet the Rule 8 notice pleading requirements:

a. Count IV (Breach of fiduciary duty) - *Hefferman v. Bass*, *supra*;

b. Count V (Civil conspiracy) - *Walker v. Thompson*, *supra*;

c. Count VII (Unjust enrichment) – not within list of claims of Rule 9(b), *Leatherman*, *supra*;

d. Count VIII (Constructive trust) – *See e.g. Rollins v. Metropolitan Life Ins. Co.*, 863 F.2d 1346 (7th Cir. 1988);

e. Count IX (Violation of the Illinois Consumer Fraud Act) - *Windy City Metal Fabricators & Supply*, *supra*;

---

[1] In the Memorandum of Law, Martin, Guidi and Rodriguez cite this proposition with "*Id.*" To what this citation refers back is unclear, but presumably it is the most immediately preceding citation to "National Council on Compensation Ins., Inc. at *46-47." Yet, there is no full citation to this case anywhere else in the brief, nor is there any indication the source of this citation.

    f.    Count X (Piercing the legal entity) – *See Intl. Financial Services Corp. v. Chromas Technologies Canada*, 356 F.3d 731 (7th Cir. 2004);

    g.    Count XI (Conversion) – *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Wilkins-Lowe & Co., Inc.*, 29 F.3d 337 (7th Cir. 1994);

    h.    Count XII (Violation of the Illinois Securities Law) – *See Tomera v. Galt*, 511 F.2d 504 (7th Cir. 1975);

    i.    Count XIII (Breach of Contract) – uncontested and not within list of claims of Rule 9(b), *Leatherman*, *supra*;

    j.    Count XIV (Violation of the Investment Advisers Act of 1940) – *See Monetta Financial Services, Inc. v. S.E.C.*, 390 F.3d 952 (7th Cir. 2004);

    k.    Count XV (Violation of the Trust Indenture Act of 1939) – *See Hunssinger v. Rockford Business Credits, Inc.*, 745 F.2d 484 (7th Cir. 1984); and

    l.    Count XVII (Violation of the Money Laundering Act) - not within list of claims of Rule 9(b), *Leatherman*, *supra*.

**For Counts IV-V, VII-XV, and XVII, Plaintiffs Have Met Their Pleading Burden Under Rule 8**

As stated above, Federal Rule of Civil Procedure 8(a) only requires notice pleading. A party simply must provide the "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman*, 507 U.S. at 168, 113 S.Ct. 1160 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Accordingly, so long as the pleading contains facts sufficient to permit the district court and defendant "to understand the gravamen of the

plaintiff's complaint," *Scott*, 195 F.3d at 951, it satisfies notice pleading requirements. *Walker v. Thompson*, 288 F.3d 1005, 1011 (7th Cir. 2002).

Certainly, the Second Amended Complaint ("Complaint") with its 338 paragraphs, of which 68 (¶¶78-145) provide factual background, provides fair notice to the defendants of the nature and basis of the claims asserted. This case is by no means a fishing expedition or a 'shock' to the Defendants. Further, the allegations are cumulative and incorporated by reference in each section of the Second Amended Complaint. (*See e.g.* ¶¶146, 178, 188, 194, et al.) Both adoption by reference and documents attached to a pleading are allowed and considered "a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). All such allegations must be viewed "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

### Count IV - Breach of Fiduciary Duty

Plaintiffs have alleged that numerous private individuals were solicited by Defendants to invest in the IFC entities. (Complaint, ¶¶2-3, 84-85, 136, 147-151, et al.) Many of those private individuals, either directly or through brokers, did in fact invest in the IFC entities and were issued "certificates" or other instruments as verification. (Complaint, ¶¶86, 88-121.) This solicitation of investments and actual investments created a fiduciary relationship between the IFC principals, which include Martin, Guidi and Rodriguez, and the investors. (Complaint, ¶¶76, 195.) Martin, Guidi and Rodriguez, along with the other IFC principals, failed to treat the

investors' money as if it was their own and failed to assure it was invested as promised, thereby breaching their fiduciary duty. (Complaint, ¶¶196-97.)

### Count V – Civil Conspiracy

The Defendants, including IFC principals Martin, Guidi and Rodriguez, constitute a combination of two or more persons engaged in unlawful actions, including violating federal and state securities laws, falsifying the purpose of the investments, concealing investors' money in Mexico, making misrepresentations that they were developing and/or selling interests and lots in Mexico that they really didn't own, and setting up phony shell companies and d/b/a's in order to thwart investors/Plaintiffs ability to recover their investments. (Complaint, ¶¶131-32, 138-142, 147-187, 200-207.)

### Count VII – Unjust Enrichment

IFC entities have received over $8 million from investors and not repaid any of the debts, interest or investments, despite requests from investors. (Complaint, ¶¶9, 75, 120, 125-26.) All Defendants, including Martin, Guidi and Rodriguez, have access to money or assets in Mexico and/or they have been paid money by the IFC entities from investors' money. (Complaint, ¶204.) Defendants have unjustly retained these ill-gotten benefits without repaying investors and would be unjustly enriched if the equitable powers of the Court didn't return the money. (Complaint, ¶¶225-228.)

### Count VIII – Constructive Trust

In addition the money and assets Defendants have received as a result of wrongful misdirection of investments by Plaintiffs, Defendants have also received confidential information and powers of attorney allowing them to exert control over

the investment money. (Complaint, ¶¶229-232.) Defendants have intentionally and willfully allowed and/or conducted illegal acts such as the illegal transfer of investment assets to Mexico, lying to Plaintiffs about the investments, and allowing the Illinois entities to be involuntarily dissolved by the Illinois government, in order to further secrete the investment money. (Complaint, ¶¶233-234.) Plaintiffs would be damaged if the Court fails to impose a constructive trust on the assets in Defendants control. (Complaint, ¶¶235-237.)

### Count IX – Violation of the Illinois Consumer Fraud Act

Defendants, including Martin, Guidi and Rodriguez, have committed unfair or deceptive acts, including *inter alia* falsely representing to investors that they were investing in foreclosed or distressed properties to make a profit; that investors would receive extraordinary returns on their investment as much as 28%; that they were engaged in a property flipping business; failing to advise subsequent investors that Defendants had defaulted on prior investments; that they had the ability to issue securities to investors; that they had property in Mexico to develop and sell interests or lots of that property to investors; and that a power of attorney was required to manage their investments. (Complaint, ¶¶3-8, 85, 122, 129-131, 134, 137, 140, et al.) Such representations were made in the course of trade or commerce, but were false and made solely for the purpose of enticing investors to give their money to Defendants. (Complaint, ¶¶85, 128, 130, 132, 138, 141, 241, et al.)

*Count X – Piercing the Legal Entities*

Defendants, including Martin, Guidi and Rodriguez, ignored the legal entities set up by the Illinois Secretary of State and allowed them to be involuntarily dissolved by that governmental entity for failure to comply with legal formalities. (Complaint, ¶¶2, 42, 45, 46, 246, 248.) Indeed, most of the legal entities were d/b/a's or otherwise sham businesses used as a cover for the illegal activities of Defendants. (Complaint, ¶¶2, 43-44, 47-51, 53-55.) The only properly existing legal entity is the Mexican corporation, which was set up under Mexican law, with the intent of avoiding U.S. laws. (Complaint, ¶¶2, 52.) Defendants, through their legal entities, ignored the mandates of the Pennsylvania and Illinois governments. (Complaint, ¶¶132, 138, 248.) Defendants have treated the IFC entities as vehicles for their own personal acts, including committing fraud upon Plaintiffs. (Complaint, ¶¶247, 249-252.)

*Count XI – Conversion*

This Count borrows from other portions of the Second Amended Complaint. (Complaint, ¶254.) Plaintiffs have an immediate right in their investments and/or the money used to make those investments. (Complaint, ¶¶255-56.) For example, Brad and Robert Schaufenbuel invested $35,000.00 in IFC on September 26, 2003 that had a two year term and interest at a rate of 17.9% APR, which meant that on September 25, 2005, the Schaufenbuels should have been repaid by IFC the amount of $47,530.00. (Complaint, ¶88 and Group Exhibit A.) Despite their demands for return of that investment as promised by Defendants, the Schaufenbuels have received nothing. (Complaint, ¶¶123, 125, 128, 144.) Yet, Defendants purchased properties in Cortland, Illinois and in Mexico and have

exercised dominion over either the profits garnered from those properties, the properties themselves, or the investment money that was never invested, without paying back investors. (Complaint, ¶¶135, 143-45, 257-58.) This has resulted in a wrongful conversion of Plaintiffs/investors funds. (Complaint, ¶259.)

### *Count XII – Violation of the Illinois Securities Law*

The State of Illinois, through the Illinois Securities Department of the Secretary of State, has declared what Defendants were selling are "securities." (Complaint, ¶¶138 and Exhibit F, 261.) Defendants were issuing securities to investors during a time when the legal entities for which the investments were directed had no legal existence. (Complaint, ¶87.) Defendants never sought approval from any federal or state agency to offer, issue or sell securities and indeed were told to cease and desist selling such securities by the States of Pennsylvania and Illinois. (Complaint, ¶¶5, 131-132,138.) Indeed, Defendants represented to the public that the securities were exempt from registration, which was false. (Complaint, ¶¶131, 132 and Exhibit E, 138 and Exhibit F.) Defendants violated Sections 12 and 13 of the Illinois Securities Law by the above-stated acts. (Complaint, ¶¶263-273.)

### *Count XIII – Breach of Contract*

Not contested in the motion to dismiss.

### *Count XIV – Violation of the Investment Advisers Act of 1940*

An investment adviser is "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or

promulgates analyses or reports concerning securities." 15 U.S.C. §80b-2(a)(11). Defendants, including Martin, Guidi and Rodriguez, all engaged in the business of advising investors regarding the value of their investments in the IFC entities or encouraged them to invest or roll over their investments in the IFC entities, and are investment advisers within the meaning of the statute. (Complaint, ¶¶3, 127, 129, 136-37, 140-42, 148, 289.) Defendants, including Martin, Guidi and Rodriguez, made use of the mails and the Internet in their actions as investment advisers, yet did not register as investment advisers. (Complaint, ¶¶2, 149, 291.) Yet, as investment advisers they violated the statute by their actions already detailed above and previously in the Complaint, including without limitation moving money around so as to hide the money from investors. (Complaint, ¶¶125, 133, 143, 288 and 294.)

*Count XV – Violation of the Trust Indenture Act of 1939*

The Complaint has already alleged and established that Defendants were selling and issuing securities and provided prospecti to the general public for purposes of soliciting investments. (Complaint, ¶¶2, 149, 291, 298-300.) The securities at issue herein were required to be registered under the Securities Act of 1933 and therefore also under this statute, yet Defendants failed to do so. (Complaint, ¶¶131, 132 and Exhibit E, 138 and Exhibit F, 146-177, 301-302.) As with previous allegations, Defendants used the mail and Internet and other commercial vehicles to sell the securities, but violated the statute by doing so, making threats against investors, failing to provide periodic reports as required or evidence of compliance with the statute. (Complaint, ¶¶2, 149, 291, 302-317.)

*Count XVII – Violation of the Money Laundering Act*

Adopting allegations from other parts of the Complaint, Defendants obtained approximately $8 million from investors and constantly moved that money around among banks with the purpose of concealing the money and hiding their fraudulent activities. (Complaint, ¶¶125, 133, 143, and 332.) Defendants conducted financial transactions, including without limitation wire transferring money to Mexico, with the purpose of hiding the money from investors so that Defendants would not have to return the investments. (Complaint, ¶¶133, 143, 333-336.)

**Only Five Counts in the Second Amended Complaint Require Rule 9(b) Pleading**

It is conceded that as a result of the Private Securities Litigation Reform Act of 1995 ("PSLRA") 15 U.S.C. §§78u-4 and 78u-5, that Counts I (Violation of the Securities Act of 1933, 15 U.S.C. §77a *et seq.*) and II (Violation of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.*) fall under the Rule 9(b) pleading requirements, but Plaintiffs have met that burden. *See infra*. The following other causes of action in Plaintiffs' Second Amended Complaint must be pled using the Rule 9(b) standard:

    a.    Count III (Common law fraud) - *Windy City Metal Fabricators & Supply*, *supra*;

    b.    Count VI (Violation of the Illinois Uniform Fraudulent Transfer Act) - *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997); and

    c.    Count XVI (Civil RICO) - *Goren v. New Vision Intern., Inc.*, 156 F.3d 721 (7th Cir. 1998).

**For Counts I-III, VI and XVI, Plaintiffs Have Met Their Pleading Burden Under Rule 9**

Rule 9(b) requires that "the circumstances constituting fraud … be stated with particularity." Fed.R.Civ.P. 9(b). With respect to securities fraud cases, Rule 9(b) requires that the essential element of scienter be pled with a sufficient level of factual support: "the complaint … must afford a basis for believing that plaintiffs could prove scienter." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990), *cert denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312. The Seventh Circuit has stated that a sufficient level of factual support may be found where the circumstances are pled "in detail." *Id.* at 627. "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *Id.*

As stated previously, the Second Amended Complaint herein pleads in excruciating detail the circumstances of the securities fraud at issue. It is difficult to imagine how a pleading could be any more complete absent full discovery. Any rationale and thorough reading of this, albeit, lengthy Complaint can only lead to the conclusion that Plaintiffs herein will be able to prove scienter; namely, the Plaintiffs have certainly set forth the 'who, what, when, where, and how' as shown below.

*Counts I and II - Violation of the Securities Act of 1933 and the Securities Exchange Act of 1934*

The Complaint sets forth the who: the "IFC entities" are the purported legal entities for which the investments were sought (Complaint, ¶¶42-55, 73, 75, 86-120, et al.); the "IFC principals" were Defendants Frank Sanchez, Bourassa, Wessel, Guidi, Fitzgerald, Slagle, Martin, Rodriguez, O'Day, Richard Sanchez,

Salomon Sanchez and John Does 1-30, who were doing the solicitation and other fraudulent acts (Complaint, ¶¶56-63, 65-67, 74, 76 and e.g. 84-86, 125, 129, 131, 133, 136-37, et al.); the "S&R Entities" and AMO Realty were third party entities that aided or abetted the fraudulent activities of the IFC principals. (Complaint, ¶¶64, 68-72.) The IFC principals were either officers, members, principals and/or agents of the IFC entities. (See e.g. Complaint, ¶58 "Guidi . . . interacted with investors, acted more as an officer of the IFC entities than as legal counsel, and furthered the fraud of the IFC entities;" ¶62 "Martin . . . was a member or principal of the IFC entities and continued the fraud by acting as the liaison between the IFC entities and investors;" and ¶63 "Rodriguez . . . was the staff accountant and/or principal or officer for the IFC entities and assisted in the fraud by concealing the investor moneys and wire transferring the money to Sanchez in Mexico.")

The Complaint sets forth the what: that the IFC entities, by and through the actions of the IFC principals, solicited and took in $8 million in investments from investors (Complaint, ¶¶3-4, 7, 9, 84, 86, 88-120, 146-49, 151, 153); that they made false representations that the securities issued to investors were exempt from registration and regulation (Complaint, ¶¶5, 131-32 and Exhibit E, 138 and Exhibit F, 150, 152-53, 157); that they continued to solicit and obtain investments after they were told to cease and desist by two state governments, Pennsylvania and Illinois (Complaint, ¶¶132, 136, 138, 156); that they didn't invest in foreclosed properties or the 23,000 acres in Mexico they promised investors (Complaint, ¶¶2-4, 8-9, 85, 128, 134-36, 139-40, 142, 154); that they never paid back or returned any of the investments as they promised (Complaint, ¶¶6, 125-26, 135, 144, 155, 159, 162, 176); that they kept the investments for their own use and secreted

much, if not all, of it by multiple transfers among bank accounts and ultimately sent it to Mexico (Complaint, ¶¶9, 133, 143-45), where Plaintiffs believe it is still hidden. AMO Realty and the S&R entities aided and abetted the fraud by various actions and misrepresentations by marketing and selling lots to the Sands of Gold Estates project in Mexico. (Complaint, ¶¶141.)

The Complaint sets forth the when: July 1, 1999 to December 31, 2008. (Complaint, ¶¶1, 78, 84, 88-120 and Exhibits A and B, 132, 136, 138, 147-48.)

The Complaint sets forth the where: the IFC entities and most of the IFC principals worked out of northern Illinois (Complaint, ¶¶5, 42-61, 63, 65-67, 133, 135, 138, 146); and the investments were solicited from, paid to, and certificates issued from northern Illinois (Complaint, Group Exhibit A); the investors and brokers are located all over the country (Complaint, ¶¶12-41, 88-121); the property rehabbing business was supposed to take place in Illinois and to some extent did (Complaint, ¶¶85, 134-35); the illegal money transfers originated from Illinois banks (Complaint, ¶¶133, 143); and the fake development of undeveloped land into a resort was represented as taking place in Mexico, south of Acapulco. (Complaint, ¶¶4, 9, 136, 140-42, 144-45, 154.)

The Complaint sets forth the how: in a Ponzi scheme, Defendants would use funds obtained from later investors to partially pay interest to some of the previous investors making everyone believe the scheme was legitimate (Complaint, ¶7, 129-30); Defendants made numerous hollow promises to investors making them believe that everything was positive (Complaint, ¶¶6, 8, 86, 127, 129, 137, 140, 142, 150-51); and ultimately moved money around and then transferred it to Mexico so as to make it appear that the investments were simply an unexpected loss. (Complaint,

¶¶133, 143-45, 154.) The S&R entities made the investors believe they were able to clear title to the Mexico properties (Complaint, ¶141) and AMO Realty was brokering lots for the Sands of Gold Estates (Complaint, ¶141), and ultimately helped the other Defendants to conceal the investors money in Mexico. (Complaint, ¶145.)

The intentional misrepresentations about the purpose of the investments, what the money would be used for, and the transfer and concealment of the money in Mexico are prima facie allegations of scienter.

### Count III – Common Law Fraud

The above-stated allegations also satisfy the pleading requirements for common law fraud. (Complaint, ¶188.) Additionally, the Complaint states that Defendants made false statements about the investments, the expected returns on the investments, and that they were able to sell lots of property in Mexico. (Complaint, ¶189.) Defendants knew these representations were false because they never intended to pay the investors back their investments. (Complaint, ¶190.) The statements were made to induce investments in the IFC entities or the Sands of Gold Estates in Mexico. (Complaint, ¶191.) As with most scams, Plaintiffs/investors unfortunately relied on the false representations, not knowing they were false and trusting Defendants. (Complaint, ¶192.)

### Count VI – Violation of the Illinois Uniform Fraudulent Transfer Act

It can't be disputed that investors are creditors of Defendants. (Complaint, ¶¶208, 217 and *supra*.) The Illinois Uniform Fraudulent Transfer Act ("UFTA") makes a transfer of money or assets fraudulent as to creditors in certain circumstances, e.g. the transfer renders the debtor insolvent or the transfer is

made without receiving reasonably equivalent value. *See* 740 ILCS 160/5. In their Complaint, Plaintiffs allege that Defendants have transferred Plaintiffs' investments as well as all of the assets of the U.S.-based IFC entities to Mexico or have otherwise concealed the assets. (Complaint, ¶209, 218.) Additionally, the IFC principals have transferred many of their personal assets out of their own individual names into names of others, including e.g. Bourassa's property in Gilberts which was previously owned by an IFC entity. (Complaint, ¶¶210-211.) Such transfers have rendered Defendants insolvent, have been done with the intent to hinder and defraud Plaintiffs, and for which Defendants did not receive reasonably equivalent value, and otherwise violate UFTA. (Complaint, ¶¶212-215, 221-22.) As the investments became due, Defendants claimed they were unable to pay them to investors/creditors. (Complaint, ¶¶125-126, 216.)

*Count XVI – Civil RICO*

To assert a violation of Sec. 1962(c) a plaintiff should demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *McDonald v. Schencker*, 18 F.3d 491, 494 (7th Cir. 1994). *See Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) *citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. *See* 18 U.S.C. Sec. 1961(5).

RICO defines "racketeering activity," also referred to as "predicate acts," as acts indictable under any one of several federal or state offenses, including mail fraud under 18 U.S.C. Sec. 1341, and wire fraud under 18 U.S.C. Sec. 1343. *McDonald*, 18 F.3d at 494; *see Midwest Grinding*, 976 F.2d at 1019. Mail fraud is

the use of the U.S. mails to devise or implement "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious . . . obligation, security, or other article . . . ." 18 U.S.C. §1341. Wire fraud is essentially the same as mail fraud only using "wire, radio, or television communication in interstate or foreign commerce." 18 U.S.C. §1343. Other examples of racketeering activity include threats and violation of the Money Laundering Act. *See* 18 U.S.C. §1961(1).

The Complaint adopts all 320 preceding paragraphs into Count XVI. (Complaint, ¶321.) The Complaint alleges that Defendants have used the mails and Internet (wire) to conduct a fraud and sell spurious obligations or securities. (Complaint, ¶¶2, 149, 291, 324.) Further, Defendants have made threats against Plaintiffs in order to deter them from demanding the return of their investments or to coerce them into reinvesting their money in the further scam of the property development in Mexico. (Complaint, ¶¶137, 140, 325.) Defendants also conducted a pattern of money laundering to conceal or account for the investment money. (Complaint, ¶¶133, 143-45, 154; *see also* ¶¶333-336.) This enterprise of selling false securities to get money from investors involved more than two predicate acts within a ten year period, specifically 1999-2008. (*See supra.*)

**Conclusion**

  WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that this honorable Court deny Defendants Martin, Guidi and Rodriguez 12(b)(6) Motion to Dismiss.

              Respectfully submitted,
              PLAINTIFFS

              By: /s/ Robert C. Thurston
                One of Their Attorneys

| Thurston Law Offices, P.C. | Law Offices of Joel M Weiner, LLC |
|---|---|
| Robert C. Thurston | Joel M. Weiner |
| A.R.D.C. No. 6209353 | 579 N 1st Bank Drive Suite 150 |
| 10469 Bethel Avenue | Palatine, IL 60067-8102 |
| Huntley, IL 60142 | Phone: 847-654-3105 |
| Phone: 847-659-8613 | Fax: 847-358-7165 |
| Email: tj@thurstonlawpc.com | Email: jweiner@jweinerlaw.com |