**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BRADLEY J. SCHAUFENBUEL, et al.,** ) ) **Plaintiffs,** ) ) ) **v.** ) ) **INVESTFORCLOSURES FINANCIAL, L.L.C.,** ) **et al.** ) ) | **Case No. 09 C 1221** **Magistrate Judge Nan R. Nolan** |

## ORDER GRANTING TEMPORARY RESTRAINING ORDER

Alleged victims of a Ponzi scheme seek issuance of a temporary restraining order (TRO) freezing certain Defendants' assets. For the reasons stated below, Plaintiffs' motions for temporary restraining order [Doc. #s 61, 91] are granted to the extent described herein.

## **Background**

Plaintiffs have represented that the pending TROs and preliminary injunctions are directed to certain of the Defendants: InvestForClosures Financial, L.L.C. ("IFC Financial"), ROI Developers (assumed name of IFC Financial), InvestForClosures (assumed name of IFC Financial), InvestForClosures.com LLC ("IFC.com"), InvestForClosures Ventures, LLC ("IFC Ventures"), Sands of Gold Escrow (assumed name of IFC Ventures), Sands of Gold (assumed name of IFC Ventures), ROI Financial (assumed name of IFC Ventures), Realty Opportunities International Escrow 23 (assumed name of IFC Ventures), ROI Escrow (assumed named of IFC Ventures), Realty Opportunities International S. de R.L. de C.V. (a wholly owned subsidiary of IFC Ventures), Realty Opportunities International (Realty Opportunities International S. de R.L. de C.V.), ROI Mexico (assumed name of Realty

Opportunities International S. de R.L. de C.V.), Sands of Gold Estates (assumed name of Realty Opportunities International S. de R.L. de C.V.) (collectively, IFC entities), and Francis X. Sanchez aka Frank Sanchez (Sanchez). Sanchez was the CEO of all of the IFC entities. Plaintiffs seek an order freezing all personal and business assets of Sanchez and the IFC entities and freezing all business activities of Sanchez and the IFC entities "for a short period to determine if preliminary and permanent injunctions should issue and/or a Receiver should be appointed for the assets of the named Defendants." (Doc. #61 at 4).

On June 24, 2005, the Pennsylvania Securities Commission issued a Summary Order to Cease and Desist against Defendants ROI Financial d/b/a InvestForClosures Ventures, LLC and which prohibited ROI Financial and Sanchez and all affiliates from offering or selling interests in ROI Financial in the Commonwealth of Pennsylvania. On November 9, 2007, the Illinois Securities Department issued a Temporary Order of Prohibition, which concluded that Defendants IFC.com, IFC Ventures, Sanchez and James Bourassa (Bourassa), President of IFC.com and IFC Ventures, had violated Illinois securities laws and temporarily prohibiting them from offering or selling securities in the State of Illinois.

Plaintiff investors allege that Defendants offered and sold securities and/or debt instruments with promises of extraordinary returns and interest on their investment. Plaintiffs say Defendants represented that their funds would be invested in a business that would renovate foreclosed and distressed properties and resell the properties for a profit. According to Plaintiffs, Defendants later began promoting and soliciting investments to develop a resort in Mexico. Plaintiffs allege that the IFC entities are in default on the investors' investment notes and certificates. Plaintiffs believe that between July 1, 1999

and December 31, 2008, more than 125 people invested in excess of $7.7 million in the IFC entitles.

IFC.com was involuntarily dissolved by the Illinois Secretary of State (Secretary of State) on August 28, 2001. On June 13, 2008, the Secretary of State involuntarily dissolved IFC Ventures. IFC Financial was involuntarily dissolved by the Secretary of State on September 12, 2008. Plaintiffs allege that Defendants have continued to operate using these entity names despite their dissolution and the cease and desist orders issued by the State of Illinois and the Commonwealth of Pennsylvania. Doc. # 58 at ¶ 248.

Plaintiffs' Second Amended Class Action Complaint–which is their latest complaint–alleges seventeen counts: violation of the Securities Act of 1933 (Count I); violation of the Securities Exchange Act of 1934 (Count II); common law fraud (Count III); breach of fiduciary duty (Count IV); civil conspiracy (Count V); violation of the Illinois Uniform Fraudulent Transfer Act (Count VI); unjust enrichment (Count VII); constructive trust (Count VIII); violation of the Illinois Consumer Fraud Act (Count IX); veil piercing (Count X); conversion (Count XI); violation of the Illinois Securities Law (Count XII); breach of contract (Count XIII); violation of the Investment Advisers Act of 1940 (Count XIV); violation of the Trust Indenture Act of 1939 (Count XV); civil RICO (Count XVI); and money laundering (Count XVII). Plaintiffs seek to pierce the corporate veil of the IFC entities and hold Sanchez personally liable for the IFC entities' obligations.

On March 23, 2009, Plaintiffs and certain Defendants entered into a Standstill Agreement regarding the Mexican property referred to as the Sands of Gold Estates, which mooted Plaintiffs' Motion for Temporary Restraining Order. Doc. # 33. On April 27, 2009, Plaintiffs filed their Second Motion for Temporary Restraining Order. Doc. #61. The motion

was not accompanied by a supporting memorandum of law.

On April 29, 2009, counsel appeared before the Court on Plaintiffs' Second Motion for TRO. The record before the Court at that time was insufficient to allow the Court to grant the requested TRO. The Court informed Plaintiffs' counsel that it needed a supporting memorandum of law concerning the requested injunctive relief to determine whether the issuance of a TRO is justified. The Court then directed Plaintiffs to submit a memorandum of law containing "factual support, citations to controlling legal authority, and a thorough legal analysis." Doc. # 71. In consultation with counsel and without objection, the Court set a briefing schedule on the request for TRO. Thereafter, Sanchez and the IFC entities submitted argument, but no evidence, in opposition to the temporary restraining order motions. See Doc. # 95. By agreement of the parties, the Court now decides the temporary restraining order motions on the papers.

## Discussion

At the April 29th hearing, the Court specifically directed counsel to the United States Supreme Court's decision in Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). Grupo held that a district court may not issue a preliminary injunction freezing assets in an action for money damages where no lien or equitable interest is claimed. Grupo, 527 U.S. at 333. The Court hoped the parties' briefs would address the Court's authority to grant the relief requested by the Plaintiffs under Grupo. Unfortunately, none of the briefing from either side even mentions Grupo.

**A.      Grupo**

In light of Grupo, Plaintiffs must establish that the nature of the relief they seek is equitable. Based on the Court's own review of the issue, it appears that Plaintiffs can clear the Grupo hurdle. Plaintiffs say there are "both statutory and equitable bases for a temporary restraining order" in this case. Plaintiffs rely on the Illinois Uniform Fraudulent Transfer Act, (740 ILCS 160/1 et seq.), the Securities Act of 1933 (15 U.S.C. § 77l(a)), the Securities Exchange Act of 1934 (15 U.S.C. § 78r(a)), the Illinois Securities Act of 1953 (815 ILCS 5/1 et seq.) and the Money Laundering Act (18 U.S.C. § 1956(b)(3)). Doc. #s 61 at 4-5 and 91-19 at 2. Plaintiffs do not mention any of their other claims in support of their request for a TRO and therefore the Court focuses only on these claims in determining the TRO motions.

Plaintiffs' citation to the Illinois Uniform Fraudulent Transfer Act (IUFTA) does not seem to help their cause because "[a]ctions to recover fraudulent transfers, even when based on a modern statute, are deemed actions at law, though the ultimate classification depends on what remedies the plaintiff requests." In re Teknek, LLC v. Hamilton, 343 B.R. 850, 868-69 (Bankr. N.D. Ill. 2006). Suits to recover fraudulent conveyances are actions at law if the plaintiff is attempting to recover a cash/money judgment. Id. at 869. Because Plaintiffs do not detail the final forms of relief they request under the IUFTA, the Court declines to conclude on the current record that their fraudulent conveyance claim seeks equitable relief. As to the federal money laundering statute, 18 U.S.C. § 1956, Defendants point out in their Response that federal courts have not recognized a private right of action for violation of the money laundering statute. See Simmons v. Simmons, 2008 WL 4663157, at * 2 (D. S.C. 2008). By failing to respond to this argument, Plaintiffs effectively

concede the absence of a money laundering private cause of action.

Plaintiffs do appear, however, to seek the equitable remedy of rescission of their investments, and their federal and state securities law claims permit such equitable relief. Section 12(a) of the Securities Act, 15 U.S.C. § 77l(a), provides a rescission remedy against violators of § 5. Section 12(a)(2) allows successful plaintiffs to recover "the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77l(a)(2). Section 13(A) of the Illinois Securities Act also provides a rescissionary remedy making "[e]very sale of a security made in violation of the provisions of this Act . . . voidable at the election of the purchaser." 815 ILCS 5/13(A); Klein v. Kerasotes Corp., 500 F.3d 669, 672 (7th Cir. 2007); see also 815 ILCS 5/13(G)(1) (providing an injunctive remedy to enforce compliance with the Illinois Securities Act whenever a person has engaged in a violation of the Act). Because Plaintiffs seek the equitable remedy of rescission, Grupo does not bar the Court from entering injunctive relief freezing assets. See Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940) (upholding preliminary injunction barring asset transfer where there were allegations that defendant was insolvent and its assets in danger of dissipation or depletion and the preliminary injunctive relief would assist the ultimate equitable relief of rescission under the Securities Act of 1933).

**B.    Injunctive Relief**

Turning to the factors relevant to the grant or denial of a temporary restraining order or preliminary injunction, Plaintiffs must show: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) irreparable harm if the injunctive relief is

denied; (4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and (5) the injunctive relief will not harm the public interest. St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 625 (7th Cir. 2007). The court weighs these factors on a sliding scale. Promatek Indus. Ltd. v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002). "That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." Id.

### 1. Likelihood of Success on the Merits

Plaintiffs' discussion of their likelihood of success on the merits focuses only on their state securities law claim and money laundering claim. (Doc. # 91-19 at 6). Because no private right of action appears to exist for money laundering, the Court's analysis is limited to the state securities law claim.

Plaintiffs have a strong likelihood of prevailing on the merits of their claim arising under Illinois securities law. Plaintiffs claim that Defendants violated Sections 12(A), (D), (E), (F), (G), (H), and (I) of the Illinois Securities Act of 1953 (1953 Act or Act), 815 ILCS § 5/12. These sub-sections of Section 12 of the 1953 Act provide that it is a violation of the Act to:

> A. To offer or sell any security except in accordance with the provisions of this Act.
>
> D. To fail to file with the Secretary of State any application, report or document required to be filed under the provisions of this Act or any rule or regulation made by the Secretary of State pursuant to this Act or to fail to comply with the terms of any order of the Secretary of State issued pursuant to Section 11 hereof.
>
> E. To make, or cause to be made, (1) in any application, report or document filed under this Act or any rule or regulation made by the Secretary

>of State pursuant to this Act, any statement which was false or misleading with respect to any material fact or (2) any statement to the effect that a security (other than a security issued by the State of Illinois) has been in any way endorsed or approved by the Secretary of State or the State of Illinois.
>
>F. To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.
>
>G. To obtain money or property through the sale of securities by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
>H. To sign or circulate any statement, prospectus, or other paper or document required by any provision of this Act or pertaining to any security knowing or having reasonable grounds to know any material representation therein contained to be false or untrue.
>
>I. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

815 ILCS 5/12.

On November 9, 2007, the Illinois Securities Department found that Sanchez, Bourassa, IFC Financial, and IFC Ventures had violated Sections 12(A), (D), (E), (F), (G), (H), and (I) of the Illinois Securities Law of 1953 by failing to disclose a default to subsequent investors, making false and misleading statements relating to exempt status, failing to register securities with the State of Illinois, and failing to file a Form D Notice of Sale of Securities Pursuant to Regulation D Section 4(6) and/or Uniform Limited Offering Exemption for the offerings of IFC Financial. Doc. # 58, Exh. F. The Illinois Securities Department entered a Temporary Order of Prohibition prohibiting Sanchez, Bourassa, IFC Financial, and IFC Ventures from offering or selling securities in or from this State until further Order of the Secretary of State.

In opposition, Defendants argue that "there could be an issue" as whether the notes at issue were securities within the meaning of the Securities Act of 1933. Doc. # 95 at 8. Defendants' argument is unpersuasive. Defendants have not shown that there is in fact any serious issue as to coverage by the Illinois Securities Law. The Illinois Securities Department determined that the notes at issue were securities, and Defendants do not challenge that specific finding. See also Daleiden v. Wiggins Oil Co., 517 N.E.2d 1059, 1063 (Ill. S.Ct. 1987) (noting that the definition of the term "securities" in the Illinois Securities Law of 1953 was taken from the Federal Securities Act of 1933).

### 2. Lack of Adequate Remedy at Law/Irreparable Harm

Irreparable harm is "harm that cannot be prevented or fully rectified by the final judgment after trial." Roland Mach. Co. v. Dresser Indus. Inc., 749 F.2d 380, 386 (7th Cir. 1984). A defendant's potential or actual insolvency is a "standard ground" for demonstrating that an award of damages at the conclusion of trial is inadequate. Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd., 780 F.2d 589, 596 (7th Cir. 1985); Roland, 749 F.2d at 386 (stating that a damages remedy is inadequate if the defendant becomes insolvent before final judgment can be entered or collected). Whether Plaintiffs will suffer irreparable harm where they are unable to collect money damages depends on Defendants' resources and the potential magnitude of the damage award after a trial. Signode Corp. v. Weld-Loc Sys., Inc., 700 F.2d 1108, 1111 (7th Cir. 1983).

In this case, Plaintiffs claim they face irreparable harm if the temporary restraining order is not entered because they fear Sanchez and the IFC entities do not have sufficient assets to return Plaintiffs' entire investment. Plaintiffs seek an order freezing assets to ensure primarily that Sanchez will not secrete or dissipate any remaining assets pending

entry of a final order. The record demonstrates that Plaintiffs will suffer irreparable harm for which they lack an adequate remedy at law unless Sanchez and the IFC entities are prevented from dissipating and transferring assets sufficient to return the funds received from Plaintiffs. The threatened injury to Plaintiffs from continued dissipation of assets is substantial. Plaintiffs allege that they have invested over $8 million with the IFC entities and not been repaid any of the investments or interest owed. Defendants do not dispute Plaintiffs' concerns regarding Sanchez's and the IFC entities' shaky financial situation. In fact, Defendants state that Sanchez "has few assets" and "barely enough funds" for him and his son to carry on their ordinary affairs of life. Doc. # 95 at 7. Attorney Christie has also sought leave to withdraw from representing Sanchez and the IFC entities because of nonpayment of attorney's fees. See Doc. # 116. Furthermore, Defendant James Bourassa filed for bankruptcy on April 10, 2009. Doc. # 50.

Money damages will not be sufficient if existing assets are transferred or otherwise dissipated such that Sanchez and the IFC entities become further unable to satisfy a judgment. An asset freeze prevents dissipation of investor funds and preserves assets traceable to the alleged scheme to satisfy some portion, limited though it may be, of Plaintiffs' claim for rescission of investments. See Deckert., 311 U.S. at 290 (stating "there were allegations that [the defendant] was insolvent and its assets in danger of dissipation or depletion. This being so, the legal remedy against [the defendant], without recourse to the fund in the hands of [a third party], would be inadequate."); see also Roland Mach., 749 F.2d at 386 (noting that insolvency is one reason when preliminary equitable relief is available because a damages remedy is inadequate).

### 3. Balance of Harms

The Court next compares the harms that will be suffered by Plaintiffs if the temporary restraining order is denied to the harm that will be suffered by Sanchez and the IFC entities if the temporary restraining order is granted. The balance of relative harms weighs in favor of granting interim relief. The Court has discussed the irreparable harm Plaintiffs will suffer if they are denied injunctive relief. Sanchez and the IFC entities have not shown that they will suffer any harm if their assets are frozen.

### 4. Public Interest

The public interest favors Plaintiffs. The public has an interest in the effective enforcement of the Illinois Securities Act. Defendants have not argued that any harm to the public will result from granting an interim asset freeze.

### 5. Security

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The purpose of an injunction bond "is to compensate the defendant, in the event he prevails on the merits, for the harm that an injunction entered before the final decision caused him . . . ." Ty, Inc. v. Publications Intern. Ltd., 292 F.3d 512, 516 (7th Cir. 2002).

Neither Plaintiffs nor Sanchez and the IFC entities have addressed the issue of bond. Because Sanchez and the IFC entities have identified no potential harm that might

-11-

be caused by the temporary restraining order or suggested an appropriate bond amount, the Court finds that the circumstances of this case require a minimal bond of $1,000 to protect Defendants' interests. The amount of the bond may be increased if Defendants file an appropriate motion supporting such an increase.

                     **E N T E R :**

*[signature: Nan R. Nolan]*

                     **Nan R. Nolan**
                     **United States Magistrate Judge**

**Dated: August 5, 2009**