IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

BRADLEY J. SCHAUFENBUEL; ROBERT N. )
SCHAUFENBUEL; JOHN AND SARAH REED, )
IV; JOHN AND JAN REED, III; AMERICAN )
MASS MEDIA CORPORATION; ROBERTA K. )
CLARK; on behalf of Themselves and All Others )
Similarly Situated )
                                                                   )
                        Plaintiffs, )
                                                                   )
                  v. )                      Case No. 09-cv-1221
                                                                     )                      The Honorable Judge Leinenweber
INVESTFORCLOSURES FINANCIAL, L.L.C )
ROI DEVELOPERS; INVESTFORCLOSURES; )
INVESTFORCLOSURES.COM, LLC; )
INVESTFORCLOSURES VENTURES; LLC )
SANDS OF GOLD ESCROW; SANDS OF GOLD; )
ROI FINANCIAL; REALTY OPPORTUNITIES ) )
INTERNATIONAL ESCROW 23; ROI ESCROW; )
REALTY OPPORTUNITIES INTERNATIONAL )
S. de R.L. de C.V; REALTY OPPORTUNITIES )
INTERNATIONAL; ROI MEXICO; SANDS OF )
GOLD ESTATES; FRANCIS X. SANCHEZ )
aka FRANK SANCHEZ; JAMES D. BOURASSA )
aka JIM BOURASSA; SCOTT D. WESSEL; )
DEANA M. GUIDI; DANIEL E. FITZGERALD )
aka DAN FITZGERALD; SCOTT R. SLAGLE; )
DARCEY L. MARTIN; TOM RODRIGUEZ; and )
JOHN DOES 1-30. )
                                                                    )
                        Defendants. )

**DEFENDANT DARCEY L. MARTIN'S REPLY IN SUPPORT OF MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

NOW COMES Defendant, DARCEY L. MARTIN, ("Ms. Martin"), by and through her attorneys, CAMPION, CURRAN, DUNLOP & LAMB, P.C., and submits this Reply in Support of her Motion to Dismiss Plaintiffs' Second Amended Complaint, pursuant to Federal Rule of

1

Civil Procedure 12(b)(2), and in support thereof states:

## I. INTRODUCTION

On January 19, 2009, John Reed, an investor and one of the Plaintiffs in this action, contacted Ms. Martin and informed her that she, as an IFC investor, had possible claims against Frank Sanchez and the various IFC Entities named as Defendants in this lawsuit. (*See* e-mail dated January 19, 2009, attached hereto as Exhibit "A"). The investor then requested that Ms. Martin join the Plaintiffs in pursuing claims against the Mr. Sanchez and the IFC Entities. Ms. Martin, however, declined to pursue this action as a Plaintiff and indicated that she believed that there was no wrongdoing by Mr. Sanchez or the IFC Entities. As a result of her refusal to join the Plaintiffs, Ms. Martin was instead brought into this action as a Defendant.

On April 17, 2009, Plaintiffs filed their Second Amended Complaint ("Plaintiffs' Complaint"). Plaintiffs' Complaint alleges seventeen (17) counts against thirty-two (32) Defendants, including Ms. Martin. Despite now naming Ms. Martin as a Defendant, Plaintiffs' Complaint fails to identify any specific acts of how she, as a Florida investor, took action to damage the Plaintiffs. Nor does Plaintiffs' Complaint provide any basis for dragging Ms. Martin into this Illinois Court. Thus, on May 20, 2009, Ms. Martin filed the instant motion to dismiss for lack of personal jurisdiction.

On July 16, 2009, Plaintiffs filed their Response to Ms. Martin's Motion to Dismiss ("Plaintiffs' Response"). In an attempt to justify dragging Ms. Martin into this Court from more than a thousand miles away, Plaintiffs' Response argues that: (1) the constitutional limits on personal jurisdiction set forth in <u>International Shoe</u> do not apply to this case; and (2) that the <u>Jadair</u> case is not controlling because the subject matter jurisdiction in that case was based on

2

diversity and not federal question; and (3) Ms. Martin's use of the word "we" when discussing the IFC investors, employees, and entities somehow shows that she was an IFC agent acting on behalf of the IFC Entities and creates minimum contacts with the state of Illinois. Plaintiffs are mistaken on all points and Ms. Martin's motion to dismiss should be granted.

## II. ARGUMENT

### A. The Constitutional limitation of "sufficient minimum contacts" does apply to this case and must be shown to satisfy personal jurisdiction.

*1. Nationwide service of process only satisfies the statutory jurisdiction and does not negate the need for a due process "minimum contacts" analysis.*

In an attempt to escape the inherent unfairness of hauling Ms. Martin into this Court, Plaintiffs argue that the Securities Act of 1933 and the Securities Exchange Act of 1934 have eliminated the due process minimum contacts test for securities related lawsuits. Plaintiffs are mistaken. Plaintiffs rely on 15 U.S.C. §78aa (2000) which provides for nationwide service of process. Plaintiffs then cite Fitzsimmons v. Barton, 589 F.2d 330 for the proposition that §78aa allows for nationwide personal jurisdiction without a minimum contacts analysis.

Plaintiffs' broad interpretation of Fitzsimmons cannot be reconciled with the Supreme Court's decision in Insurance Corp. of Ireland, Ltd v. Compagnie v. Des Bauxites De Guinee, 456 U.S. 694 (1982). The Fitzsimmons court based its decision on its view that the fairness standard "relates to the fairness of the exercise of power by a particular sovereign, not the fairness of imposing the burdens of litigating in a distant forum." Fitzsimmons 589 F.2d 330, at 333. In Ireland, the Supreme Court resolved any doubt that the minimum contacts test under the Due Process Clause is based on individual liberties, not on sovereignty, and cannot be removed by an act of Congress. Ireland, 456 U.S. 694, at 702-703. The Supreme Court held:

3

> The requirements that a court have personal jurisdiction flows not from Art. III but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. **It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.** Thus, the test for personal jurisdiction requires that 'the maintenance of the suit ... not offend traditional notions of fair play and substantial justice.'

Ireland, 456 U.S. 694, at 702-703 *citing* its previous decision International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (**Emphasis added**).

As the District Court of Massachusetts has skillfully explained, "[b]ecause the personal jurisdiction requirement is a function of the individual liberty interest, the proper focus for a personal jurisdiction test should be on protecting an individual's liberty interest in avoiding the burdens of litigating in a distant or inconvenient forum. Requiring that the individual defendant in a national service of process case only reside somewhere in the United States does not protect this interest." Fleetboston Financial Corp. v. Fleetbostonfinancial.com, 138 F.2d 121 (2001); *quoting* Judge Garza's dissent in Busch v. Buchman, Buchman & O'Brien Law Firm, 11 F.3d 1255, 1259 (5th Cir. 1994).

As a result of the Ireland decision, it is clear that §78aa, and other statutes providing for nationwide service of process, operate only to satisfy the state's long arm statute but leaves the due process minimum contacts analysis untouched and still necessary to confer personal jurisdiction. Wichita Federal Savings and Loan Association v. Landmark Group, Inc., 657 F.Supp. 1182 (D. Kan. 1987); Duckworth v. Medical Electro-Theraputics, Inc., 768 F.Supp. 822 (S.D. GA 1991). "Questions of personal jurisdiction require, first, a statutory analysis focusing on defendant's conduct and activities, and second, a due process "minimum contacts" analysis. In a federal question case, where a nonresident is served pursuant to the nationwide service of process statutes, the fact of service negates any need for a jurisdictional analysis under the state's

4

long arm statute; Congress has supplied the statutory basis for jurisdiction." Wichita Federal Savings and Loan Association v. Landmark Group, Inc., 657 F.Supp. 1182, 1194.

Nationwide service of process, however, does not satisfy the individual liberties guaranteed by the Due Process Clause. "Th[e] line of cases construing and applying *Insurance Corp. of Ireland* makes clear that the issue of personal jurisdiction over a nonresident defendant (corporate jurisdiction or otherwise), which is properly served under the nationwide service of process statutes, entails a *Fifth Amendment* due process 'minimum contacts' analysis ... ." Wichita Federal Savings and Loan Association v. Landmark Group, Inc., 657 F.Supp. 1182, 1194, (citing Bamford v. Hobbs, 569, F.Supp. 160, 166 (S.D. Tex. 1983); Burstein v. State Bar of California, 693 F.2d 511 (5th Cir. 1982); GRM v. Equine Inv. and Man. Group, 596 F. Supp. 307, 314 (S.D. Texas 1984)); *see also* Duckworth v. Medical Electro-Theraputics, Inc., 768 F.Supp. 822, 827-828; Cannon v. Gardner-Martin Asphalt Corp. Ret. Trust-Profit Sharing Plan, F.Supp. 265 (M.D. Fla. 1988); Republic of Panama v. BCCI Holdings S.A., 119 F.3d 935, 945 (11th Cir. 1997); Handley v. Indiana & Michigan Electric Co. 732 F.2d 1265, 1272 (6th Cir. 1984); Horne v. Adolph Coors, Co., 684 F.2d 255, 259 (3rd Cir. 1982). Indeed, any other interpretation would violate the Ms. Martin's 5th Amendment due process rights and would be unconstitutional under both International Shoe and Ireland.

### 2. *The Fitzsimmons case is readily distinguishable from the instant case.*

Even if this Court accepts Plaintiffs' contention that the Fitzsimmons case allows for personal jurisdiction without satisfying the due process minimum contacts test, the Fitzsimmons holding should not be applied to the facts in this case. The facts and equitable concerns in Fitzsimmons are not present here. The Fitzsimmons court sought to keep one of the main

5

perpetrators - who laid the foundation for the fraud - from escaping judgment. Applying the Fitzsimmons holding in this case, however, would not serve this purpose but instead unjustly permit the Plaintiffs, *without any evidence of her involvement in the alleged fraud*, force Ms. Martin to litigate in this distant and inconvenient forum.[1] *See* Busch v. Buchman, Buchman & O'Brien Law Firm, 11 F.3d 1255. Indeed, stripping Ms. Martin of her due process individual liberties does not serve justice but only imposes undue cost and burden on Ms. Martin.

The facts in Fitzsimmons are readily distinguishable from this case. The defendant in Fitzsimmons was the principal perpetrator of the alleged fraud and had solicited funds from investors across the United States. The defendant is Fitzsimmons also traveled to Illinois nine (9) times to lay the foundation for the alleged securities violation. The facts surrounding Ms. Martin's involvement in this case are drastically different. Ms. Martin did not solicit funds from investors across the country. Nor is she alleged to have solicited any funds from investors. Instead, Ms. Martin merely made an investment in an Illinois company after being *solicited by* the IFC Entities. Her subsequent involvement was merely checking up on her investment and relaying the information she obtained *at the request of the investors*. All of her actions were done from her home in Florida. Ms. Martin did not set foot in Illinois. Indeed, unlike the defendant in Fitzsimmons, Ms. Martin did not avail herself of the laws of several United States and could not have reasonably foreseen being hauled into an Illinois Court.

### B. The Jadair court's subject matter jurisdiction is irrelevant to the issue of proper personal jurisdiction.

Plaintiffs contend that the Seventh Circuit's holding in Jadair inapplicable because "the

---

[1] Federal Rule of Civil Procedure requires that Plaintiffs plead their Complaint, including allegations supporting the Court's personal jurisdiction, with *particularity*. Fed. R. Civ. P. 9(b).

6

Jadair case was one based on diversity jurisdiction, not securities fraud [making] the personal jurisdictional analysis [] inapplicable to [this case]." Plaintiffs are mistaken in law. *See* Wichita Federal Savings and Loan Association v. Landmark Group, Inc., 657 F.Supp. 1182, 1194, (citing Bamford v. Hobbs, 569, F.Supp. 160, 166 (S.D. Tex. 1983); Burstein v. State Bar of California, 693 F.2d 511 (5th Cir. 1982); GRM v. Equine Inv. and Man. Group, 596 F. Supp. 307, 314 (S.D. Texas 1984)); *see also* Duckworth v. Medical Electro-Theraputics, Inc., 768 F.Supp. 822, 827-828; Cannon v. Gardner-Martin Asphalt Corp. Ret. Trust-Profit Sharing Plan; Republic of Panama v. BCCI Holdings S.A., 119 F.3d 935, 945 (11th Cir. 1997); Handley v. Indiana & Michigan Electric Co. 732 F.2d 1265, 1272 (6th Cir. 1984); Horne v. Adolph Coors, Co., 684 F.2d 255, 259 (3rd Cir. 1982).

Plaintiffs also assert that Jadair is inapplicable to the present case because the Jadair case involved the Wisconsin long-arm statute. Plaintiffs are again mistaken as the Jadair court's ruling did not rely upon (or even involve) the Wisconsin long-arm statute but was based solely on the United States Constitutional limits which apply equally to this Illinois venue. "The question of personal jurisdiction under the Illinois long arm statute is separate from the question of whether holding a nonresident defendant amenable to suit would violate due process." Deluxe Ice Cream Co. v. R.C.H. Tool Corp, 726 F.2d 1209 (7th Cir. 1984).

### C. Ms. Martin's use of the word "we" does not show agency to the IFC entities and does not create minimum contacts.

Plaintiffs attempt to argue that Ms. Martin has demonstrated that she was an agent of the IFC Entities by using the word "we" in e-mails when referring to certain IFC Entity actions. Plaintiffs' argument follows that this agency creates minimum contacts with Illinois to satisfy

7

personal jurisdiction. Plaintiffs are mistaken for two reasons.

First, Plaintiffs conveniently overlook that fact that Ms. Martin's use of "we" refers to the IFC employees, the IFC Entities themselves, <u>and the IFC investors</u> interchangeably and/or as a whole group. In fact, the only e-mail cited by Plaintiffs which indicates any agency is Ms. Martin's February 22, 2009 e-mail <u>to an investor</u>, Roberta Clark, which states that: "We should know much more after Monday Meetings. And since I will be attending both meetings, we will know what is really going on and I will not leave the meetings without all of <u>our</u> questions answered... ." (*See* Plaintiffs' Response at page 5(h) and Exhibit "F" attached thereto). The e-mails sent by Ms. Martin do not reveal an agency to the IFC Entities but confirm what the affidavits of Ms. Martin, Mr. Sanchez, and Mr. Bourassa have already shown, that Ms. Martin sought and relayed answers and information from the IFC Entities on behalf of the investors.

Plaintiffs' position also cannot be reconciled with the fact that Ms. Martin's involvement was done at the investors' request and for their benefit. This fact is supported by Ms. Martin's affidavit, and the affidavits of both IFC principals, Mr. Sanchez and Mr. Bourassa. The e-mails cited by Plaintiffs, and the Plaintiffs' own request that Ms. Martin join them as a plaintiff further proves that Ms. Martin's actions were done as an investor for the investors. Indeed, all of Ms. Martin's correspondence is directed to the investors for the purpose of providing information which they had requested. At no time did Ms. Martin solicit any monies from investors, make any representations to investors, verify the accuracy of the information relayed from the IFC principals, nor advise any investor on their investments.

Plaintiffs have provided nothing to dispute Ms. Martin's service on behalf of the investors. Tellingly, despite representing and communicating with the "class" of investors in this

8

action, Plaintiffs' counsel has failed to provide a single affidavit of any investor to show that Ms. Martin's actions were not on their behalf. Nor have Plaintiffs provided any other documents to show that Ms. Martin's limited activities were done as an IFC agent.

Second, Plaintiffs' argument overlooks the fact that even if an agency relationship did exist, it is not sufficient to create minimum contacts in this case. Even if Ms. Martin is found to be an agent, her conduct and contacts must be pervasive enough so that "it does not offend the traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). No such contacts exist here. Ms. Martin has never been to Illinois or visited any IFC Entity facility. All of her meetings were attended by telephone or internet. Ms. Martin has never received a paycheck from any IFC Entity. All of her work was done for her personal benefit as an investor and at the request of fellow investors. Ms. Martin never engaged in or effectuated any IFC Entity business activities. Ms. Martin's participation in the IFC Entities was limited to scheduling investor update meetings and relaying information to investors. Indeed, Ms. Martin's involvement with the IFC entities and contacts with Illinois are so limited that Ms. Martin could not reasonably foresee being hauled into this Illinois court and should properly be dismissed from this action for lack of personal jurisdiction. *Id.*

### III. CONCLUSION

Plaintiffs' attempts to keep Ms. Martin in this action should fail. Despite Plaintiffs' arguments to the contrary, Ms. Martin is entitled to all protections of the Due Process clause and cannot be hauled into this Court without sufficient minimum contacts to make doing such fair and reasonable. The question whether Ms. Martin has such contacts has been answered with a resounding "no" by the uncontroverted affidavits of Ms. Martin and IFC principals, and has been

9

further confirmed by the exhibits in Plaintiffs' own Response brief.

WHEREFORE, Defendant, DARCEY L. MARTIN, prays that this Court enter an Order dismissing Plaintiffs' Second Amended Complaint for lack of personal jurisdiction.

CAMPION, CURRAN, DUNLOP & LAMB, P.C.

/s/Russell W. Baker

CAMPION, CURRAN, DUNLOP & LAMB, P.C.
Attorneys for Defendant, Darcey Martin
8600 U.S. Highway 14, Suite 201
Crystal Lake, IL 60012
(815) 459-8440