IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; et al., | ) |
| Plaintiffs, | ) |
| | ) Case No. 09-CV-1221 |
| v. | ) |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; et al., | ) Judge Leinenweber |
| | ) Magistrate Judge Nolan |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL**

NOW COME Plaintiffs, by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and hereby submit their Reply in support of their Motion to Disqualify the law firm of Campion Curran Dunlop & Lamb, P.C. ("Campion Firm") and to the response of Defendants Darcey Martin ("Martin"), Deana Guidi ("Guidi") and Tom Rodriguez ("Rodriguez") filed herein. In support of their Motion, Plaintiffs hereby state and allege as follows:

The possibility of conflict of interest of the Campion firm's clients is sufficient to preclude multiple representation, even if an actual conflict has not developed.

Both the Illinois State Bar Association and the 7th Circuit Court of Appeals have made it clear that the possibility of a conflict is sufficient to preclude multiple representation, even if an actual conflict has not yet developed. *See ISBA Opinion 90-3* (attached hereto as Exhibit A); *LaSalle Nat. Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983) ("Any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification"; emphasis added), cited with approval in *U.S. v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978) ("Doubts as to the existence of an

asserted conflict of interest <u>should be</u> resolved in favor of disqualification," emphasis added).

Thus, the Campion firm's unsupported assertions that their clients may not have claims against each other are hollow and self-serving. If there is any wrongdoing by Guidi or Rodriguez and the legal entities are pierced to impose personal liability, then Martin as an investor may certainly have a claim against either of them. Guidi was gifted a home by Sanchez, Bourassa and the IFC defendants, which was paid for by the investors and may be subject to a clawback or fraudulent transfer liability. Additionally, Martin was paid on her investments (it is unclear if in full or not, as she won't respond to discovery) by the IFC defendants, which may also be subject to clawback or fraudulent transfer liability. Rodriguez wire transferred hundreds of thousands of investors' dollars to Mexico and at this time it is unknown whether he further transferred any of that money to his own benefit, which would be subject to clawback, fraudulent transfer or fraud liability.

One of the true dangers here lies in the "common interest rule" or "joint defense privilege." Such privilege is recognized in the 7th Circuit and by this Court. *See e.g. U.S. v. Evans*, 113 F.3d 1457 (7th Cir. 1997); *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407 (N.D.Ill. 2006) (Cole, U.S. Magistrate J.) If one or more of the Campion firm's three clients has damaging information against one or more of the others which would create liability, the defendants can claim a privilege against revealing that information under the common interest rule which would work a substantial injustice to the plaintiffs, indeed to all parties.

It is clear that a possibility of conflict exists between these three Defendants and the law is clear that such a possibility precludes concurrent multiple representation.

<u>The record is void of any evidence showing that the Campion firm's clients have waived conflicts after full disclosure.</u>

The disclosure required by RPC 1.7 must be a complete, full disclosure. *See U.S. v. Noble*, 754 F.2d 1324, 1333 (7th Cir. 1985) ("To be effective, waiver must be knowingly and intelligently made."); *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 228-29 (7th Cir. 1978).

However, the record is void of any evidence that there are waivers from Guidi, Rodriguez and Martin, let alone that such waivers were "knowingly and intelligently made." The Defendants' Response references "Informed Consent Agreements of Ms. Guidi, Mr. Rodriguez, and Ms. Martin, are attached hereto as Exhibits 'A', 'B', and 'C'" (Response, p. 5)[1], yet no such exhibits were attached to the Response or filed with the Court. *See* Document #150. Further, the Campion attorneys assert that "Plaintiffs' counsel was advised by Mr. Baker of such [consents] on April 29, 2009" (Response, p. 5), yet offer no affidavit as proof that such statement was made. Undersigned counsel was never told of such by Mr. Baker. *See* Certification of Robert C. Thurston, ¶1, submitted herewith. Then, the

---

[1] Defendants also cite to Illinois ARDC [sic] Advisory Opinions as Exhibit D attached to their Response. Two errors are contained in such citation: (1) Defendants have failed to attach an Exhibit D to their Response; and (2) the ARDC does not issue Advisory Opinions, rather the Illinois State Bar Association does and they are not conclusive on issues but rather only "advisory". The ISBA's website even states clearly that "ISBA Advisory Opinions on Professional Conduct are prepared as an educational service to members of the ISBA. While the opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law and should not be relied upon as a substitute for individual legal advice." http://www.isba.org/resources/ethics/index.html.

Campion firm puts in footnote 2 of its Response that it sent a letter dated August 7, 2009 about the pending motion (Response, p. 6, fn. 2), yet such letter was never received by undersigned counsel until August 13, 2009. *See* Certification of Robert C. Thurston, ¶2.

Thus, there has been no showing that there exist any waivers or that any such waiver was knowingly and intelligently made and therefore this Court must conclude that the conflicts have not been waived.

Defendants misstate the law of standing in this novel issue of concurrent multiple representation.

It is admitted that none of the Defendants represented by the Campion firm are former or current clients of Plaintiffs' counsel. However, therein lies the rub. Darcey Martin, as an investor in the defendant IFC entities, is a potential class member and if undersigned counsel is approved as class counsel, then Martin may technically be a client of Plaintiffs' counsel (assuming she is absolved of any liability). After exhaustive research, undersigned counsel could find no cases which address this novel issue in the 7th Circuit, any of the federal courts in Illinois, or even the Illinois state courts. Thus, Defendants have misstated the standing requirement for this novel issue of law. Specifically, the issue is whether counsel may concurrently represent multiple parties that have a potential conflict of interest with each other where one of whom may ultimately be represented by opposing class counsel.

Defendants cite two Northern District of Illinois cases using Westlaw citations but do not attach copies of the cited cases. Although a local rule could not be found on point, it has long been the practice in this District and in all of the courts in

Illinois that when citing to a case not in the official reporters,[2] a party should attach a copy of the case to the motion or at a minimum tender a copy to all counsel of record. Defendants have not done so. Further, Defendants cite to two Illinois state cases to argue that Plaintiffs have no standing, but again that is not binding precedent on a conflicts issue under federal law and the Local Rules of Professional Conduct.

A court has broad discretion in determining whether an attorney should be disqualified. *Lanigan v. LaSalle Nat. Bank*, 609 F.Supp. 1000, 1001 (N.D. Ill. 1985) (Aspen, Dist. J.) *citing Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976). "Disqualification need not be based on an attorney's improper acts, but may be premised on avoiding the appearance of impropriety and on preserving the highest ethical standards in the legal profession." *Id.* It is a fair argument that in such a situation where one of the parties represented by counsel in a conflict of interest may ultimately be a class member represented by opposing counsel, Plaintiffs and potential class counsel have standing to raise this issue.

---

[2] Plaintiffs could not even locate the two cases cited by Defendants on Fastcase, another legal search service, and do not have access to Westlaw.

<u>Conclusion</u>

WHEREFORE, Plaintiffs respectfully request that this honorable Court grant their Motion to Disqualify Counsel and enter an Order disqualifying the law firm of Campion Curran Dunlop & Lamb, P.C. from its representation of Defendants Darcey Martin, Deana Guidi and Tom Rodriguez in this matter.

Respectfully submitted,
PLAINTIFFS

By: /s/ Robert C. Thurston
One of Their Attorneys

| | |
|---|---|
| Thurston Law Offices, P.C. | Law Offices of Joel M Weiner, LLC |
| Robert C. Thurston | Joel M. Weiner |
| A.R.D.C. No. 6209353 | 579 N 1st Bank Drive Suite 150 |
| 10469 Bethel Avenue | Palatine, IL 60067-8102 |
| Huntley, IL 60142 | Phone: 847-654-3105 |
| Phone: 847-659-8613 | Fax: 847-358-7165 |
| Fax: 847-628-0930 | Email: jweiner@jweinerlaw.com |
| Email: tj@thurstonlawpc.com | |

Case: 1:09-cv-01221 Document #: 168 Filed: 09/03/09 Page 7 of 9 PageID #:1320




ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational service to members of the ISBA. While the Opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law and should not be relied upon as a substitute for individual legal advice.**

Opinion No. 90-3

November 1990

Topic: Conflict of Interest; Multiple Representation

Digest: Multiple Representation in "domino"-type transactions permitted only with full disclosure to and consent from all parties; disclosure must be continuing throughout the representation.

Ref: Rules 1.7(a) (b) and (c), 1990 Illinois Rules of Professional Conduct (effective August 1, 1990)

Rules 5-105(b) and (c), 1980 Illinois Code of Professional Responsibility

### FACTS

A lawyer is retained in a real estate transaction by Able, a buyer of real estate. The seller is Baker. Later, the same lawyer is retained by Charlie, who is selling his real estate to Baker.

### QUESTIONS

1. Is it ethical for the lawyer to represent both Able and Charlie?

2. Is the lawyer under a duty to disclose the nature of the professional relationship to Able, Charlie, or both?

3. Must an informed consent to multiple representation be obtained from Able, Charlie, or both?

### OPINION

In rendering our opinion we are asked to "consider the inter-relationships between typical residential transactions particularly where mortgage financing contingencies and/or sale of prior residence contingencies are typically present."

Accordingly, we take cognizance of the following typical and common real estate sales contract contingencies: (1) Finance contingency clause whereby the deal is contingent upon the buyer obtaining mortgage financing within a certain time period

and (2) where the deal is contingent upon the buyer first selling his real estate. Both, of course, relate directly to a buyer's financial ability to consummate the transaction. As an aside, the Committee notes that such arrangements are not merely related to real estate sales but can also encompass sales of companies, equipment, assets, etc.

Within the context of either contingency, it becomes apparent that, in all probability, Charlie will be able to sell to Baker only if Baker consummates his sale to Able. In short, we assume this to be the classic "domino" situation.

As such, the attorney is representing both ends of the spectrum with the attendant conflict-of-interest risk inherent in multiple representation.

Both the 1980 Code of Professional Responsibility and the 1990 Illinois Rules of Professional Conduct permit multiple representation provided there is full disclosure (to Able and Charlie) together with their consents.

The 1980 Code provisions applicable are as follows:

Rule 5-105(b) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Rule 5-105(c).

(c) In the situations covered by Rules 5-105(a) and (b), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

The 1990 Illinois Rules contain the same thesis:

Rule 1.7(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after disclosure.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after disclosure

The 1990 Rules, however, contain one further element, namely, that there must be "full" disclosure. The committee emphasizes that this element is far stronger than in the former 1980 Code language. The 1990 Rules state as follows (with emphasis added):

Rule 1.7(c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the <u>implications</u> of the common representation and the <u>advantages and risks involved</u>.

Additionally, the Terminology (definitions) section of the 1990 Rules recite as follows

Case: 1:09-cv-01221 Document #: 168 Filed: 09/03/09 Page 9 of 9 PageID #:1322

(emphasis added):

Disclosure denotes communication of information <u>reasonably sufficient</u> to permit the client <u>to appreciate the significance</u> of the matter in question.

Further, the Committee construes Rule 1.7(c) to mean that the disclosure of relevant facts not protected under 4-101/1.6 as to potential conflicts that arise during the course of the representation should be ongoing over the course of representation as they arise, not merely only at the beginning. For instance, under the facts of this inquiry, the sales contracts could have interlocked time periods and an interruption in the timing sequence of the first sale could well cause a ripple effect on the other sales to the detriment of the lawyer's "second client," Charlie.

In conclusion, multiple representation in a "domino" type transaction is permitted only if there has been full disclosure to and consent by all the parties and that the disclosure continues throughout the period of the dual representation.

The obligation to withdraw if a conflict arises would be such that attorney can no longer adequately represent the interest of either client.

\* \* \*