IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

BRADLEY J. SCHAUFENBUEL; ROBERT N.   )
SCHAUFENBUEL; JOHN AND SARAH REED,   )
IV; JOHN AND JAN REED, III; AMERICAN   )
MASS MEDIA CORPORATION; ROBERTA K.   )
CLARK; on behalf of Themselves and All Others   )
Similarly Situated   )
        Plaintiffs,   )
  )
  v.   )   Case No. 09-cv-1221
  )   The Honorable Judge Leinenweber
INVESTFORCLOSURES FINANCIAL, L.L.C   )
ROI DEVELOPERS; INVESTFORCLOSURES;   )
INVESTFORCLOSURES.COM, LLC;   )
INVESTFORCLOSURES VENTURES; LLC   )
SANDS OF GOLD ESCROW; SANDS OF GOLD; )
ROI FINANCIAL; REALTY OPPORTUNITIES ) )
INTERNATIONAL ESCROW 23; ROI ESCROW; )
REALTY OPPORTUNITIES INTERNATIONAL )
S. de R.L. de C.V; REALTY OPPORTUNITIES )
INTERNATIONAL; ROI MEXICO; SANDS OF   )
GOLD ESTATES; FRANCIS X. SANCHEZ   )
aka FRANK SANCHEZ; JAMES D. BOURASSA )
aka JIM BOURASSA; SCOTT D. WESSEL;   )
DEANA M. GUIDI; DANIEL E. FITZGERALD   )
aka DAN FITZGERALD; SCOTT R. SLAGLE;   )
DARCEY L. MARTIN; TOM RODRIGUEZ; and   )
JOHN DOES 1-30.   )
        Defendants.   )

## SUPPLEMENTAL EXHIBITS
## TO DEFENDANTS DARCEY MARTIN, DEANA GUIDI AND TOM RODRIGUEZ' RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY PREVIOUSLY FILED AS DOCUMENT #150 ON AUGUST 27, 2009

For Defendants:
Charles A. Dunlop ARDC #6180628
Russell W. Baker   ARDC #6287995
Genevieve Lynott   ARDC #6275407
CAMPION, CURRAN, DUNLOP & LAMB, P.C.
8600 U.S. Highway 14, Suite 201
Crystal Lake, IL 60012·2759
(815) 459-8440
Fax (815) 455-8134

**Campion, Curran,
Dunlop & Lamb**

Charles A. Dunlop

**CCD&L**

April 17, 2009

Ms. Deana Guidi
6511 Edgeworth Drive
Orlando, FL 32819

Re:    Representation - Campion, Curran, Dunlop & Lamb, P.C.
       <u>Schaufenbuel et al. v. Investforclosures Financial, L.L.C. et al.</u>
       United States District Court Northern District Case #09-cv-1221

Dear Ms. Guidi:

This letter is to follow up my letter dated March 5, 2009 and our retention agreement contained therein. This letter will confirm our previous discussions that we be representing your co-defendant Darcey Martin and that we believe there is a potential conflict of interest in our representation of you and Ms. Martin in the above referenced matter. This conflict of interest arises out of her status as an investor in the IFC entities and the possible claims she may have against another you as a former IFC employee. Because she have indicated that she do not believe that there was any wrongdoing by you and does not wish to pursue any claims against you at this time we do not believe that our representation of Ms. Martin will adversely affect your representation in this matter. Throughout our representation of you we will preserve all confidential information received from you and will not share any confidential communications from you or Ms. Guidi with the other.

If, during the course of the representation, it becomes apparent that Ms. Martin intends on pursuing any claims against you or any other real conflict arises which would adversely affect your representation or which is prohibited by our rules of ethics, we will be obligated to withdraw. If this should become necessary, we will so advise you, to allow you sufficient time to secure other representation.

By signing below on page 2, you acknowledge that this conflict of interest has been disclosed and explained to your satisfaction and that you consent to our representation of both you and Ms. Martin.

Page 1 of 2

8600 US Highway 14, Suite 201, Crystal Lake, IL 60012   815-459-8440   Fax 815-455-8134
Attorneys At Law, P.C.



**EXHIBIT**

A

Please review the foregoing and, if it meets with your approval, sign a copy of the letter and return it to me. If you have any questions, please feel free to call me. We look forward to serving you and we shall use our best efforts on your behalf.

Cordially,
CAMPION, CURRAN, DUNLOP & LAMB, P.C.

_Charles A. Dunlop_

Charles A. Dunlop

Accepted this ⟨21⟩ day of April, 2009.

By: _Deana Guidi_
Deana Guidi

H:\docs\40691\002\9Q9312.WPD

Page 2 of 2

# Campion, Curran, Dunlop & Lamb



CCD&L

June 29, 2009

Mr. Tom Rodriguez
3805 Linden Rd.
Rockford, IL 61109

Re:    Representation - Campion, Curran, Dunlop & Lamb, P.C.
       <u>Schaufenbuel et al. v. Investforclosures Financial, L.L.C. et al.</u>
       United States District Court Northern District Case #09-cv-1221

Dear Mr. Rodriguez:

This letter is to follow up my letter dated March 18, 2009 and our retention agreement contained therein. This letter will confirm our previous discussions that we represent your co-defendant Darcey Martin and that we believe there is a potential conflict of interest in our representation of you and Ms. Martin in the above referenced matter. This conflict of interest arises out of her status as an investor in the IFC entities and the possible claims she may have against another you as a former IFC employee. Because she has indicated that she does not believe that there was any wrongdoing by you and does not wish to pursue any claims against you at this time we do not believe that our representation of Ms. Martin will adversely affect your representation in this matter. Throughout our representation of you we will preserve all confidential information received from you and will not share any confidential communications from you or Ms. Martin with the other.

If, during the course of the representation, it becomes apparent that Ms. Martin intends on pursuing any claims against you or any other real conflict arises which would adversely affect your representation or which is prohibited by our rules of ethics, we will be obligated to withdraw. If this should become necessary, we will so advise you, to allow you sufficient time to secure other representation.

By signing below on page 2, you acknowledge that this conflict of interest has been disclosed and explained to your satisfaction and that you consent to our representation of both you and Ms. Martin.

Page 1 of 2

**EXHIBIT**

B

Please review the foregoing and, if it meets with your approval, sign a copy of the letter and return it to me. If you have any questions, please feel free to call me. We look forward to serving you and we shall use our best efforts on your behalf.

Cordially,

CAMPION, CURRAN, DUNLOP & LAMB, P.C.

Russell W. Baker

Accepted this ___30___ day of June, 2009.

By: _____
Tom Rodriguez
H:\docs\41215\000\9U1086.WPD

Page 2 of 2



**Campion, Curran,**
**Dunlop & Lamb**

Charles A. Dunlop

April 17, 2009

Via Facsimile: (863) 875-1143
Ms. Darcey L. Martin
9507 Waterford Oakes Blvd.
Winter Haven, FL 33884

Re:    Representation - Campion, Curran, Dunlop & Lamb, P.C.
       <u>Schaufenbuel et al. v. Investforclosures Financial, L.L.C. et al.</u>
       United States District Court Northern District Case #09-cv-1221

Dear Ms. Martin:

This letter is to follow up my letter dated April 14, 2009 and our retention agreement contained therein. This letter will confirm our previous discussions that we believe there is a potential conflict of interest in our representation of you in the above referenced matter. This conflict of interest arises out of your status as an investor in the IFC entities and the possible claims you may have against another client, Deana Guidi, a named defendant and former IFC employee. Because you have indicated that you do not believe that there was any wrongdoing by Ms. Guidi and do not wish to pursue any claims against her at this time we do not believe that our representation of Ms. Guidi will adversely affect your representation in this matter. Throughout our representation of you we will preserve all confidential information received from you and will not share any confidential communications from you or Ms. Guidi with the other.

This letter will also confirm our agreement and your understanding that our representation of you in this matter is limited to a defense against the allegations brought in Plaintiffs' complaint and does not extend to any investigation or advisement regarding any claims you may have against the defendants in that action.

If, during the course of the representation, it becomes apparent that you intend on, or should be, pursuing any claims against Ms. Guidi or any other real conflict arises which would adversely affect your representation or which is prohibited by our rules of ethics, we will be obligated to withdraw. If this should become necessary, we will so advise you, to allow you sufficient time to secure other representation.

Page 1 of 2

8600 US Highway 14, Suite 201, Crystal Lake, IL 60012   815-459-8440   Fax 815-455-8134
Attorneys At Law, P.C.



EXHIBIT

C

By signing below on page 2, you acknowledge that this conflict of interest has been disclosed and explained to your satisfaction and that you consent to our representation of both you and Ms. Guidi.

Please review the foregoing and, if it meets with your approval, sign a copy of the letter and return it to me. If you have any questions, please feel free to call me. We look forward to serving you and we shall use our best efforts on your behalf.

Cordially,

CAMPION, CURRAN, DUNLOP & LAMB, P.C.

_Charles A. Dunlop_

Charles A. Dunlop

Accepted this _21_ day of April, 2009.

By: _Darcey L Martin_

Darcey Martin

H:\docs\41246\000\909297.WPD

Page 2 of 2



**courts bulletin and opinions**
*http://www.isba.org*

ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational service to members of the ISBA. While the Opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law and should not be relied upon as a substitute for individual legal advice.**

---

**THIS OPINION WAS AFFIRMED BY THE BOARD OF GOVERNORS JANUARY 1991. PLEASE SEE THE 1990 ILLINOIS RULES OF PROFESSIONAL CONDUCT, RULE 1.6. SEE ALSO ISBA OPINION 90-15.**

Opinion Number 874

April 1984

Topic: Confidence of Multiple Clients

Digest: A lawyer representing multiple clients must preserve confidential information received from each one of the clients.

Ref: Rules 4-101(b) and (c), and 5-105;

EC 4-4 and 4-5; and

ABA Informal Opinion 1476.

<u>QUESTION</u>

A law firm represented client A in connection with the lease of some property to B. With the consent of A, B subsequently assigned the lease to C, who was also represented by the law firm. Both A and C were aware of the fact that the law firm represented both parties and there was no objection to the multiple representation.

Some years later, at the request of C, the law firm prepared a letter on C's behalf exercising an option to extend the lease for an additional five year term. The letter was sent to A. The law firm subsequently had conversations with A concerning the exercise of the option and the fact that the exercise of the option also extended C's right to purchase the property.



**EXHIBIT**

D

Recently, C decided to exercise his right to purchase the property. A now refuses to acknowledge that right to purchase claiming that there was no valid exercise of the option to extend the lease.

The law firm is not representing either party with respect to the dispute. A's new lawyer wrote to the law firm advising them that all communications the firm had with A at that time are considered confidential and implying that if litigation arises, A does not wish the firm to testify because of the confidentiality that exists between the firm and A with respect to that representation. The firm has also received a demand by C's new lawyer to turn over to him all documentary material relating to the exercise of the option and further requesting that the firm testify in this matter upon commencement of litigation.

The firm inquires whether it can testify in the matter and turn over documents to C without violating any duty of confidentiality owed to A.

OPINION

This inquiry vividly illustrates why the Code of Professional Responsibility prohibits law firms from accepting multiple employment except in limited circumstances. See Rule 5-105. The law firm has placed itself in a difficult and potentially embarrassing situation because it must preserve confidential information received from each of its clients.

Rule 4-101(b) provides that a lawyer shall not knowingly, during or after termination of the professional relationship to his client, reveal a confidence or secret of his client, use a confidence or secret of his client to the disadvantage of the client, or use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure. Under Rule 4-101(d), however, a lawyer may reveal confidences or secrets with the consent of the clients after full disclosure, when permitted under disciplinary rules or when required by law or court order.

The obligation to preserve the confidences and secrets of a client in a multiple representation situation does not appear to have been addressed by any prior ISBA ethics opinion. E.C. 4-5 provides that "care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another." EC 4-4 further provides that a lawyer owes an obligation to advise the client of the attorney-client privilege and timely to assert the privilege unless it is waived by the client. Some guidance in this situation is offered by ABA Informal Opinion 1476, which held that a lawyer retained by an insurer to represent an employer and employee who learns from the employee-client that the employee may not be entitled to coverage, may not disclose the pertinent facts to the employer or to the insurer without the employee-client's consent after full disclosure of the consequences of such revelation.

Although the question of privilege is a question of law which this Committee should not address, we are of the opinion in this situation that the duty to preserve information received in confidence from each of the clients must be respected by the law firm. Accordingly, all communications which the firm had with A which were considered confidential at the time they were made may not be revealed to C. If C calls the law firm to testify with respect to any such matters, the law firm must assert the attorney-client privilege unless it is waived by A or the court instructs otherwise. The law firm should also turn over to C all documentary material relating to the exercise of the option which is not confidential with respect to A. The

law firm may testify on behalf of C to the extent that the testimony does not reflect
confidential communications with A.

\* \* \*

 *courts bulletin and opinions*

*http://www.isba.org*

ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational
service to members of the ISBA. While the Opinions express the ISBA interpretation of
the Illinois Rules of Professional Conduct and other relevant materials in response to a
specific hypothesized fact situation, they do not have the weight of law and should not
be relied upon as a substitute for individual legal advice.**

---

Opinion No. 90-3

November 1990

Topic: Conflict of Interest; Multiple Representation

Digest: Multiple Representation in "domino"-type transactions permitted only with full
disclosure to and consent from all parties; disclosure must be continuing throughout the
representation.

Ref: Rules 1.7(a) (b) and (c), 1990 Illinois Rules of Professional Conduct (effective August
1, 1990)

Rules 5-105(b) and (c), 1980 Illinois Code of Professional Responsibility

## FACTS

A lawyer is retained in a real estate transaction by Able, a buyer of real estate. The seller is
Baker. Later, the same lawyer is retained by Charlie, who is selling his real estate to Baker.

## QUESTIONS

1. Is it ethical for the lawyer to represent both Able and Charlie?

2. Is the lawyer under a duty to disclose the nature of the professional relationship to Able,
Charlie, or both?

3. Must an informed consent to multiple representation be obtained from Able, Charlie, or
both?

## OPINION

In rendering our opinion we are asked to "consider the inter-relationships between typical residential transactions particularly where mortgage financing contingencies and/or sale of prior residence contingencies are typically present."

Accordingly, we take cognizance of the following typical and common real estate sales contract contingencies: (1) Finance contingency clause whereby the deal is contingent upon the buyer obtaining mortgage financing within a certain time period and (2) where the deal is contingent upon the buyer first selling his real estate. Both, of course, relate directly to a buyer's financial ability to consummate the transaction. As an aside, the Committee notes that such arrangements are not merely related to real estate sales but can also encompass sales of companies, equipment, assets, etc.

Within the context of either contingency, it becomes apparent that, in all probability, Charlie will be able to sell to Baker only if Baker consummates his sale to Able. In short, we assume this to be the classic "domino" situation.

As such, the attorney is representing both ends of the spectrum with the attendant conflict-of-interest risk inherent in multiple representation.

Both the 1980 Code of Professional Responsibility and the 1990 Illinois Rules of Professional Conduct permit multiple representation provided there is full disclosure (to Able and Charlie) together with their consents.

The 1980 Code provisions applicable are as follows:

Rule 5-105(b) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Rule 5-105(c).

(c) In the situations covered by Rules 5-105(a) and (b), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

The 1990 Illinois Rules contain the same thesis:

Rule 1.7(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after disclosure.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

Case: 1:09-cv-01221 Document #: 172 Filed: 09/04/09 Page 13 of 20 PageID #:1346

(2) the client consents after disclosure

The 1990 Rules, however, contain one further element, namely, that there must be "full" disclosure. The committee emphasizes that this element is far stronger than in the former 1980 Code language. The 1990 Rules state as follows (with emphasis added):

Rule 1.7(c) When representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the <u>implications</u> of the common representation and the <u>advantages and risks involved</u>.

Additionally, the Terminology (definitions) section of the 1990 Rules recite as follows (emphasis added):

Disclosure denotes communication of information <u>reasonably sufficient</u> to permit the client <u>to appreciate the significance</u> of the matter in question.

Further, the Committee construes Rule 1.7(c) to mean that the disclosure of relevant facts not protected under 4-101/1.6 as to potential conflicts that arise during the course of the representation should be ongoing over the course of representation as they arise, not merely only at the beginning. For instance, under the facts of this inquiry, the sales contracts could have interlocked time periods and an interruption in the timing sequence of the first sale could well cause a ripple effect on the other sales to the detriment of the lawyer's "second client," Charlie.

In conclusion, multiple representation in a "domino" type transaction is permitted only if there has been full disclosure to and consent by all the parties and that the disclosure continues throughout the period of the dual representation.

The obligation to withdraw if a conflict arises would be such that attorney can no longer adequately represent the interest of either client.

* * *



*courts bulletin and opinions*
*http://www.isba.org*

## ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational service to members of the ISBA. While the Opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law and should not be relied upon as a substitute for individual legal advice.**

---

Opinion No. 90-15

January 1991

Topic: Multiple Representation; Conflict of Interest; Confidences and Secrets of Client

Digest: A lawyer representing multiple clients must preserve confidential information received from each of the clients.

Ref.: Rules 1.6(a), 1.7(c)

ISBA Opinions 874, 392

## FACTS

An attorney represents two individuals who have formed an investment partnership. The partnership agreement requires each partner to offer to the partnership all investments offered to them individually.

The attorney has also represented the partners individually in various matters, including investment opportunities that a partner has not made available to the partnership.

## QUESTIONS

1. Does the attorney have a duty to inform the partner who has not been offered an opportunity to participate in the other partner's investment?

2. Can the attorney continue to represent all three parties (the two individuals and the partnership)?

## OPINION

Case: 1:09-cv-01221 Document #: 172 Filed: 09/04/09 Page 15 of 20 PageID #:1348

With regard to the attorney's first question, we concluded in ISBA advisory professional ethics opinion number 874 that a lawyer representing multiple clients must preserve confidential information received from each of the clients. Such conclusion was based on Rule 4-101(b), which provided, in part, that a lawyer shall not knowingly, during or after termination of the professional relationship to his client, reveal a confidence or secret of his client.

To the same effect, and closely on point, is ISBA Opinion No. 392, wherein we concluded that where an attorney receives information from one client indicating that he is violating the rights of another client, it is improper for the attorney to so inform the second client.

Consistent with such opinions and Rule 1.6, we are of the view that the inquiring attorney may not disclose the first partner's breach of contract to the second partner to whom participation in investment opportunities was not offered.

Our conclusion differs, however, with regard to the attorney's representation of the first partner in the transaction which the first partner failed to make available to the partnership as required by the partnership agreement. It appears from the inquiry that the attorney was aware of the first partner's failure to abide by the agreement, but nonetheless represented him with regard to the investment opportunity.

If such is true, the attorney's conduct would violate the provisions of Rule 1.7(b) and (c), which precludes a lawyer from continuing multiple employment if the exercise of his independent professional judgment on behalf of a client will or is likely to be adversely affected by his representation of another client. Thus, by way of response to the second question posed by the attorney, the attorney not only should withdraw from representation of each of the parties individually, but he should not, with knowledge that the first partner was breaching the partnership agreement, have continued to represent the partner in such transaction.

\* \* \*

 *courts bulletin and opinions*

*http://www.isba.org*

ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational service to members of the ISBA. While the Opinions express the ISBA interpretation of the Illinois Rules of Professional Conduct and other relevant materials in response to a specific hypothesized fact situation, they do not have the weight of law and should not be relied upon as a substitute for individual legal advice.**

Opinion No. 02-01

October, 2002

Topic: Conflict of Interest

> Digest: Absent disclosure and consent, a lawyer cannot represent an insurer with regard to a claim where the insurer's interests are inconsistent with those of a reinsurer on whose Board the lawyer sits.
>
> Ref.: Illinois Rules of Professional Conduct, rule 1.7(b) and 1.4(b)
>
> ISBA Advisory Opinions on Professional Conduct, Nos. 95-01, 92-04,
>
> 88-05, 870 and 483
>
> Oregon Opinion No. 91-116 (1991); Iowa Opinion No. 94-4 (1994); Vermont Opinion No. 91-8 (1991); California Opinion No. 1993-132 (1993)

FACTS

A lawyer provides property insurance coverage advice to various insurance companies who issue policies that they then reinsure with other companies. The original issuing company is the primary insurer,

and is the lawyer's client.

The lawyer has been asked by one of the reinsurers to join its Board of Directors. He is concerned as to possible conflicts that may arise from such relationship in instances where the company on whose Board he sits reinsures the policy issued by a company he is representing.

### QUESTIONS

1.Does a conflict exist in the above situation, and can it be overcome by disclosure and consent?

2.When the inquiring lawyer represents other insurers who are competitors of the company on whose Board he sits, must he disclose to them his position on the Board?

### OPINION

Several previous opinions of this Committee have discussed the issue of a lawyer's sitting on the board of a company that he represents. See Opinion Nos. 95-01, 92-04 and 483. No prior opinion has discussed a lawyer sitting on the board of a company whose interests may be inconsistent with those of his client. However, such issue is no different than others in which a lawyer's own business or personal interests, or duties to a third party, may impact on his representation of a client. Such situations are governed by Rule 1.7(b), which provides:

A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest, unless:

1.the lawyer reasonably believes the representation will not be adversely affected; and

2.the client consents after disclosure.

In the present instance, the lawyer would be representing the underlying insurance company with regard to property insurance claims under policies that it has insured. At the same time, the lawyer would be a Director of the reinsurer whose obligations under its policy of reinsurance may arise if the matter is not resolved within the retained liability of the underlying insurer.

The tension between the interests of the two insurers is apparent. On the one hand, the lawyer, in representing the underlying insurer, may have to counsel the client that the exposure on a claim is in excess of its retained liability, and that participation must be sought from the reinsurer. On the other hand, as a Director of the reinsurer, he must act in the interests of the reinsurer in seeking to have the claim resolved within the limits of the underlying company, thereby saving money for the reinsurer.

It is therefore clear that a conflict exists under Rule 1.7(b) between the lawyer's positions on behalf of the two companies with regard to claims reinsured by the company of which he is a Director. Such has similarly been the conclusion in ethics opinions from other states. Oregon Opinion No. 91-116 (1991); Iowa Opinion No. 94-4 (1994); Vermont Opinion No. 91-8 (1991); California Opinion No. 1993-132 (1993).

The question then becomes whether such conflict may be overcome by the consent of the parties following disclosure pursuant to Rule 1.7. As stated in the Rule, not only must such consent be given, but the lawyer must also reasonably believe that the representation will not be adversely affected by his being a director of the reinsurer. The majority of opinions from other states have concluded that no *per se* conflict exists that would preclude representation even upon giving of consent (Oregon Opinion No. 91-116 [1991]; Vermont Opinion No. 91-08 [1991]; California Opinion No. 1993-132 [1993]), although at least one has differed with such conclusion (Iowa Opinion No. 94-4 [1994]). However, we are in accord with the majority to the effect that, in most instances and dependent upon the circumstances (which must be continually reviewed throughout the representation), the conflict is waivable by consent following disclosure.

With regard to the inquirer's second question, we are of the view that a lawyer's presence on the board of his client's competitor is of such possible significance to the client as to require the communication of such fact under Rule 1.4(b) in order to allow the client to make informed decisions about the representation. In fact, past opinions of this Committee would dictate that the lawyer also obtain the client's consent to the representation pursuant to Rule 1.7(b). To this effect, we concluded in ISBA Opinion No. 88-05 that while the fact that two clients are in the same business does not of itself result in a conflict requiring client consent, a lawyer serving on the board of a competing company rises to a higher level and, under the predecessor to Rule 1.7, requires consent of the client after disclosure. See also ISBA Opinion No. 870, in which we concluded that consent be obtained by a lawyer seeking to represent a client when the lawyer has a financial interest in the client's competitor. Accordingly, it would appear that disclosure must be made and consent obtained from the lawyer's client in the circumstances presented.

 *courts bulletin and opinions*
http://www.isba.org

ILLINOIS STATE BAR ASSOCIATION

ISBA Advisory Opinion on Professional Conduct

**ISBA Advisory Opinions on Professional Conduct are prepared as an educational
service to members of the ISBA. While the Opinions express the ISBA interpretation of
the Illinois Rules of Professional Conduct and other relevant materials in response to a
specific hypothesized fact situation, they do not have the weight of law and should not
be relied upon as a substitute for individual legal advice.**

---

**THIS OPINION WAS <u>AFFIRMED</u> BY THE BOARD OF GOVERNORS JANUARY
1991. PLEASE SEE THE 1990 ILLINOIS RULES OF PROFESSIONAL CONDUCT,
RULE 1.7(b) and (c). SEE ALSO ISBA OPINION 90-25.**

Opinion No. 87-6

January 1988

Topic: Conflict of Interest; Multiple Representation

Digest: A law firm may, with consent, represent an insurance company in a declaratory
judgment action seeking to have other insurers provide coverage for the insurance company's
insured while defending that insured in the underlying action where the insurance company
will not contest coverage.

Ref.: Rules 5-105(a),(c)

Bergmann v. Multi-State Inter-Insurance Exchange, 39 Ill. App.2d 468, 189 N.E.2d 49
(1963)

FACTS

A law firm has been retained by Insurer B to defend its insured, S Corporation, in personal
injury litigation arising out of a construction project. S Corporation contracted with X
Corporation and Z Corporation for X and Z to perform certain tasks on the project, with S to
be named as an insured on X and Z's liability policies. X and Z's insurers now refuse to
defend S, and are contesting their coverage. Insurer B has requested that the law firm bring a
declaratory judgment action against Z, X and their insurers to provide coverage for S
Corporation. Insurer B will not contest its coverage to S Corporation.

QUESTIONS

May a law firm hired by an insurance company to defend its insured also seek to have other insurance companies provide coverage to the insured in a separate declaratory judgment action?

OPINION

Rule 5-105(a) mandates that a lawyer [law firm] decline proffered employment if the exercise of his [its] independent professional judgment on behalf of the client will likely be adversely effected by the proffered employment except to the extent permitted under Rule 5-105(c).

Rule 5-105(c) provides that a lawyer [law firm] may represent multiple clients if it is obvious that he [it] can adequately represent the interest of each and each consents to the representation after full disclosure of the possible effects of such representation on the exercise of his [its] independent professional judgment on behalf of each.

In the present situation, the law firm has been employed by an insurance company to defend its insured. The insurance company has requested a declaratory judgment action be brought by the law firm to seek to have other insurance companies provide coverage for its insured. The insurance company does not intend to limit its own liability to the insured. Thus, we have a situation in which the rights of the insured are protected regardless of the outcome of the declaratory judgment action.

We do not find any provision of the Code of Professional Responsibility which would preclude the law firm from both defending the named insured in the underlying personal injury suit while, at the same time, seeking by way of declaratory judgment to have other insurance companies provide coverage to the named insured. As long as the named insured is protected in the underlying action and consents to the declaratory judgment action, the law firm may participate in both cases. See Bergmann v. Multi-State Inter-Insurance Exchange, 39 Ill.App.2d 468, 189 N.E.2d 49 (1963).

* * *