## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| BRADLEY J. SCHAUFENBUEL; ROBERT N. SCHAUFENBUEL; JOHN REED, IV AND SARAH REED; JOHN REED, III AND JAN REED; AMERICAN MASS MEDIA CORPORATION; ROBERTA K. CLARK; MARIA A. VALENTIN; LIAM A. ANGELINI; KEITH A. AND BONNIE C. RAINES; RAVIKUMAR AND SUMATHI JAMMALAMADAKA; PAUL J. HERINK; G. MATTHEW KNOWLTON; WILHELM HALL; KATHLEEN F. MARKUS; JONATHAN PATTON; KATHLEEN TAJAK; RUTH HALVERSON, AS TRUSTEE OF THE HALVERSON FAMILY TRUST; DAVE HALE; JOSEPH A. CAVALUZZI; JOSEPH S. PEARSE; ANDREW KAUFMAN; FRANK M. CUPP; THOMAS SNYDER; MARY O'SULLIVAN-SNYDER; ESTATE OF SARAH PEARSE; PATRICK O'SULLIVAN; DANIEL O'SULLIVAN; KAILASH AND KANTA GUPTA; NISHANT GUPTA; NATASHA GUPTA; WILLIAM R. AND CAROLYN S. RICHOZ; ANDREW AND NANCY WEED; NORA SANATA; WILLIAM A. AND SARAH E. LAWSON; CHRISTINE BLUME; GRACIELA ANDRADE-LOPEZ; JORGE MOTA RAMIREZ; on behalf of Themselves and All Others Similarly Situated, ) | |
| ) | Case No. 09-CV-1221 |
| ) | |
| ) | Judge Leinenweber |
| ) | |
| ) | Magistrate Judge Nolan |
| ) | |
| ) | <u>JURY DEMAND</u> |
| ) | |
| Plaintiffs, ) | |
| ) | |
| V. ) | |
| ) | |
| INVESTFORCLOSURES FINANCIAL, L.L.C.; INVESTFORCLOSURES.COM, LLC; INVESTFORCLOSURES VENTURES, LLC; REALTY OPPORTUNITIES INTERNATIONAL S. de R.L. de C.V.; FRANCIS X. SANCHEZ; JAMES D. BOURASSA; DEANA M. GUIDI; DANIEL E. FITZGERALD; SCOTT SLAGLE; DARCEY L. MARTIN; THOMAS M. RODRIGUEZ; AMO REALTY INTERNATIONAL, LTD.; WAYNE M. O'DAY; RICHARD SANCHEZ; and SALOMON SANCHEZ JR., ) | |
| ) | |
| Defendants. ) | |

## THIRD AMENDED CLASS ACTION COMPLAINT

NOW COME Plaintiffs Bradley J. Schaufenbuel; Robert N. Schaufenbuel; John Reed, IV and Sarah Reed; John Reed, III and Jan Reed; American Mass Media Corporation; Roberta K. Clark; Maria A. Valentin; Liam A. Angelini; Keith A. and Bonnie C. Raines; Ravikumar and Sumathi Jammalamadaka; Paul J. Herink; G. Matthew Knowlton; Wilhelm Hall; Kathleen F. Markus; Jonathan Patton; Kathleen Tajak; Ruth Halverson as Trustee of The Halverson Family Trust; Dave Hale; Joseph A. Cavaluzzi; Joseph S. Pearse; Andrew Kaufman; Frank M. Cupp; Thomas Snyder and Mary O'Sullivan-Snyder; Estate of Sarah Pearse; Patrick O'Sullivan; Daniel O'Sullivan; Kailash and Kanta Gupta; Nishant Gupta; Natasha Gupta; William R. and Carolyn S. Richoz; Andrew and Nancy Weed; Nora Sanata; William A. and Sarah E. Lawson; Christine Blume; Graciela Andrade-Lopez; and Jorge Mota Ramirez; on behalf of themselves and all others similarly situated (collectively referred to as "Plaintiffs" or "Investors"), by and through their attorneys Thurston Law Offices, P.C. and Law Offices of Joel M Weiner, LLC, and for their Third Amended Class Action Complaint against Defendants, InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. de R.L. de C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle; Darcey L. Martin; Thomas M. Rodriguez; AMO Realty International, Ltd.; Wayne M. O'Day; Richard Sanchez; and Salomon Sanchez Jr. (collectively "Defendants"), hereby state and allege for their class action as follows:

## I. NATURE OF THE ACTION

1.      Defendants, through nearly constantly changing and involuntarily dissolved business organizations and names, used websites, print and radio advertisements, conventions and investment conferences, direct contact, and other marketing materials and methods to solicit individuals and businesses to invest money in Defendants' purported businesses of "flipping properties" and later developing a fictitious resort in Mexico.

2.      Initially, Defendants offered and sold securities and/or debt instruments to investors with promises of extraordinary returns and interest on their investment, sometimes as high as 28%.

3.      Subsequently, Defendants changed the fraud to sell interests in a company purporting to invest in, develop and sell lots of property in Playa Ventura, Mexico a/k/a Sands of Gold Estates when Defendants had no ownership rights in the property and no ability to develop or promote the property.

4.      Defendants failed to register the securities and investment vehicles it issued with any proper agency or authority in violation of various State and Federal securities laws and virtually each legal entity that Defendants formed was involuntarily dissolved by the Illinois Secretary of State.

5.      Defendants systematically misrepresented returns and interest that would be earned on the securities and investment vehicles purchased by the Plaintiffs and, indeed, nearly every word communicated to investors by Defendants was false and the investments were never returned, despite numerous requests by investors to Defendants to do so.

6.      In a Ponzi scheme much like that of Bernard Madoff, Defendants would attract an investor and use the funds obtained from Investor B to pay interest on the investment from Investor A and then continued in like manner with subsequent investors, such that most investors never received any payoff in accordance with the terms of the purchased investment vehicle.

7.      Defendants continued to promise investors that their return would be forthcoming, even convincing certain investors to roll over their investments into other investment vehicles that were not backed up by any true properties or investments.

8.      Ultimately, Defendants took over $8 million in investments from Plaintiffs and have not repaid any of the debts or interest owed.  Instead, Defendants formed a new corporation in Mexico to promote the development of Sands of Gold Estates in Playa Ventura, Mexico and to conceal the money from investors by transferring it to Mexico.

## II.    JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to 28 U.S.C. §1331 as this case arises under, *inter alia,* the Securities Act of 1933, 15 U.S.C. §77a *et seq.* ("1933 Act") and the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* ("1934 Act").

10.      Venue is proper pursuant to 28 U.S.C. §1391 as many of the Defendants reside in the District and a substantial part of the events or omissions giving rise to the claims occurred in the District.

### III.   PLAINTIFFS

11.    Bradley J. Schaufenbuel ("Schaufenbuel") is an individual residing at 5009 Cornell Avenue, Downers Grove, Illinois 60515-4314.

12.    Robert N. Schaufenbuel ("SchaufenbuelR") is an individual residing at 2340 16th Street N.W., Cedar Rapids, Iowa 52405-1172.

13.    John Reed, IV and Sarah Reed ("Reed IV") are married individuals residing at 2304 S. 79th Ave, Yakima, WA 98903.

14.    John Reed, III and Jan Reed ("Reed III") are married individuals residing at 19311 NE 190th St, Woodinville, WA 98077.

15.    American Mass Media Corporation ("AMMC") is an Illinois corporation with its principal place of business located at 207 E. Ohio St. #218, Chicago, IL 60611.

16.    Roberta K. Clark ("Clark") is an individual residing at 14909 Oakbury Drive, La Mirada, CA 90638.

17.    Maria A. Valentin ("Valentin") is an individual residing at 32W121 Bode Road, Elgin, IL 60120.

18.    Liam A. Angelini ("Angelini") is an individual residing at 452 SW 158 Terrace #204, Pembroke Pines, FL 33027.

19.    Keith A. and Bonnie C. Raines ("Raines") are married individuals residing at 1118 Dilton Ave., River Ridge, LA 70123.

20.    Ravikumar and Sumathi Jammalamadaka ("Jammlamadakas") are married individuals residing at 5 Amy Drive, North Brunswick, NJ 08902.

21.     Paul J. Herink ("Herink") is an individual residing at 291 Frank Applegate Road, Jackson, NJ 08527-4215.

22.     G. Matthew Knowlton ("Knowlton") is an individual residing at 6A Clover Ct., Raymond, NH 03077.

23.     Wilhelm Hall ("Hall") is an individual residing at 237 Rock Ave., Park Ridge, NJ 07656.

24.     Kathleen F. Markus ("Markus") is an individual residing at 75A Chatham Drive, Monroe Twp, NJ 08831.

25.     Jonathan Patton ("Patton") is an individual residing at 4021-C Camellia Dr., Valdosta, GA 31605.

26.     Kathleen Tajak ("Tajak") is an individual residing at 566 Wilshire Ave., Glen Ellyn, IL 60137.

27.     Ruth Halverson is Trustee of The Halverson Family Trust ("Halverson") which has its principal location at 19 Pier Pointe, New Bern, NC 28562.

28.     Dave Hale ("Hale") is an individual residing at 708 Glendale Ave., Rockford, IL 61108.

29.     Joseph A. Cavaluzzi ("Cavaluzzi") is an individual residing at 1602 SW Cefalu Cir., Port St. Lucie, FL 34953.

30.     Joseph S. Pearse ("Pearse") is an individual residing at 629 Vine St., Davenport, IA 52802.

31.     Andrew Kaufman ("Kaufman") is an individual residing at 4680 Green Bridge Lane, Hanover Park, IL 60133.

32.     Frank M. Cupp ("Cupp") is an individual residing at 60 S. Outer Drive, Vienna, OH 44473.

33.     Thomas Snyder and Mary O'Sullivan-Snyder ("Snyders") are married individuals residing at 4655 Landau Place, Rockford, IL 61114.

34.     Mary O'Sullivan-Snyder is the Administrator of the Estate of Sarah Pearse ("Pearse Estate").

35.     Patrick O'Sullivan ("Patrick O") is an individual residing at 4655 Landau Place, Rockford, IL 61114.

36.     Daniel O'Sullivan ("Daniel O") is an individual residing at 4655 Landau Place, Rockford, IL 61114.

37.     Kailash and Kanta Gupta ("Guptas") are married individuals residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

38.     Nishant Gupta ("Nishant") is an individual residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

39.     Natasha Gupta ("Natasha") is an individual residing at 9218 Sandylake Circle, Gaithersburg, MD 20879.

40.     William R. and Carolyn S. Richoz ("Richoz") are married individuals residing at 773 Bluff City Blvd., Elgin, IL 60120.

41.     Andrew and Nancy Weed ("Weeds") are married individuals residing at 3600 Marks Road, Yakima, WA 98903.

42.     Nora Sanata ("Sanata") is an individual residing at 17922 66th Ave North, Maple Grove, Minnesota 55311.

43.     William A. and Sarah E. Lawson ("Lawsons") are married individuals residing at 10407 NE 22nd Place, Vancouver, Washington 98686.

44.     Christine Blume ("Blume") is an individual residing at 120 E. Bonefish Cir., Jupiter, FL 33477.

45.     Graciela Andrade-Lopez ("Andrade-Lopez") is an individual residing at 512 N. McClurg Court, Chicago, IL 60611.

46.     Jorge Mota-Ramirez ("Mota-Ramirez") is an individual residing at 512 N. McClurg Court, Chicago, IL 60611.

## IV.     DEFENDANTS

47.     InvestForClosures Financial, L.L.C. ("IFC Financial") was a limited liability company organized on March 19, 2002 under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County, Illinois 60098.  IFC Financial was involuntarily dissolved by the Illinois Secretary of State on September 12, 2008.

48.     IFC Financial also conducted business under the assumed names of ROI Developers and InvestForClosures.

49.     InvestForClosures.com, LLC ("IFC.com") was a limited liability company organized on March 14, 2000 under the laws of Illinois and with its principle office located at 109 Douglas Avenue, Elgin, Illinois 60120.  IFC.com was involuntarily dissolved by the Illinois Secretary of State on August 28, 2001.

50.     InvestForClosures Ventures, LLC ("IFC Ventures") was a limited liability company organized on December 30, 2004 under the laws of Illinois and with its principle office located at 13908 IL Route 176, Woodstock, McHenry County,

Illinois 60098.  IFC Ventures was involuntarily dissolved by the Illinois Secretary of State on June 13, 2008.

51.     IFC Ventures also conducted business under the assumed names of Sands of Gold Escrow, Sands of Gold, ROI Financial, Realty Opportunities International Escrow 23, and ROI Escrow.

52.     Realty Opportunities International S. de R.L. de C.V. ("ROI Mexico") is a limited liability company of variable capital organized under Mexican law on or before April 18, 2005 with its principal place of business located at 123 S Eastwood Drive, #117, Woodstock, Illinois 60098.  IFC Ventures owns 100% of the capital interests in ROI Mexico.

53.     ROI Mexico also conducts business under the assumed names of Realty Opportunities International, ROI Mexico, and Sands of Gold Estates.

54.     Francis X. Sanchez a/k/a Frank Sanchez ("Sanchez") is an individual residing at 13906 IL Route 176, Woodstock, McHenry County, Illinois 60098.  At all relevant times herein, Sanchez was the Chief Executive Officer ("CEO") of IFC Financial, IFC.com, and IFC Ventures, and President of ROI Mexico.

55.     James D. Bourassa a/k/a Jim Bourassa ("Bourassa") is an individual residing at 254 Gregory M. Sears Dr., Gilberts, Kane County, Illinois 60136-4024. At all relevant times herein, Bourassa was the President and Registered Agent of IFC Financial, IFC.com, and IFC Ventures and Secretary and Treasurer of ROI Mexico.

56.     Deana M. Guidi ("Guidi") is an individual who, upon information and belief, resides at 6511 Edgeworth Drive, Orlando, FL 32819.  At all relevant times

herein, Guidi was General Counsel, officer, manager, director and agent of IFC Financial and IFC Ventures.

57.     Daniel E. Fitzgerald a/k/a Dan Fitzgerald ("Fitzgerald") is an individual who resides at 606 Hapsfield Lane, Buffalo Grove, IL 60089-3364.  At all relevant times herein, Fitzgerald was a principal, manager, officer, director and agent of IFC Financial.

58.     Scott Slagle ("Slagle") is an individual who resides at 364 Gertrude St., Elgin, IL 60123-7451.  At all relevant times herein, Slagle was a principal, manager, officer, director and agent of IFC Financial and IFC Ventures.

59.     Darcey L. Martin ("Martin") is an individual who resides at 9507 Waterford Oaks Blvd., Winter Haven, FL 33884.  At all relevant times herein, Martin was a manager, director and agent of IFC Financial and IFC Ventures.

60.     Thomas M. Rodriguez a/k/a Tom Rodriguez ("Rodriguez") is an individual who resides at 3805 Linden Road, Rockford, IL 61109.  At all relevant times herein, Rodriguez was the staff accountant and a manager, officer and agent of IFC Financial, IFC.com and IFC Ventures.

61.     AMO Realty International, Ltd. ("AMO Realty") is an Illinois corporation with its principal place of business located at 9654 W. 131st St., Suite 213, Palos Park, IL 60464.  At all relevant times herein, AMO Realty was acting as an agent for and selling property in Mexico on behalf of IFC Ventures, Sanchez and Bourassa.

62.     Wayne M. O'Day ("O'Day") is an individual who resides at 10501 Palos W. Dr., Palos Park, IL 60464.  At all relevant times herein, O'Day was Chief Financial Officer ("CFO") of IFC Ventures and ROI Mexico.

63.     Richard Sanchez ("Richard") is an individual who resides at 7347 Davis St., Morton Grove, IL 60053-1704.  At all relevant times herein, Richard was a manager, officer, director and agent of IFC Financial and IFC Ventures.

64.     Salomon Sanchez Jr. ("Salomon") is an individual who resides at 710 Lake Ave., Woodstock, IL 60098-4255.  At all relevant times herein, Salomon was a manager, officer, director and agent of IFC Financial and IFC Ventures.

65.     IFC Financial, IFC.com, IFC Ventures, and ROI Mexico, and each of their subsidiaries and assumed names shall hereinafter be collectively referred to as the "IFC entities" unless identified individually.

66.     Sanchez, Bourassa, Guidi, Fitzgerald, Slagle, Martin, Rodriguez, O'Day, Richard, and Salomon shall hereinafter be collectively referred to as the "IFC principals" unless identified individually.

## V.     CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who invested money with Sanchez, Bourassa, IFC Financial, IFC.com, IFC Ventures or ROI Mexico during the period July 1, 1999 through December 31, 2008 (the "Class").  Excluded from the class is any manager, principal, agent, affiliate, employee, officer or director of Defendants.

68.     The Class consists of more than one hundred twenty persons located throughout the United States and possibly some overseas, thus, the members of the Class are so numerous and geographically separated that joinder of all Class members is impracticable.  Upon information and belief, the number of Class

members is approximately one hundred twenty seven (127), but further discovery is necessary to determine the exact number.

69.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in complex securities and fraud litigation.  Named Plaintiffs' damages are similar, if not identical, in nature to the members of the Class and have no interests that are adverse or antagonistic to those of the Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by some individual Class members may be relatively small, the expense and burden of multiple individual litigations make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged herein on their own.

71.     Common questions of law and fact exist as to all members of the Class and predominate over any questions particular to any single member of the Class. Among the questions of law and fact common to the Class are:

> a.     Whether Defendants violated various federal and state securities laws and other statutes and common laws by their acts and omissions and otherwise committed fraud upon the Plaintiffs;
>
> b.     Whether Defendants breached their fiduciary duties owed to Plaintiffs;
>
> c.     Whether Plaintiffs and the members of the Class have sustained injuries proximately caused by Defendants' acts and omissions; and

    d.    Whether there are damages and adequate remedies at law for

Plaintiffs.

72.    Plaintiffs envision no difficulty in the management of this litigation as a

Class Action.

## VI.   THE SANCHEZ / BOURASSA / IFC FRAUDULENT SCHEME

73.    Starting in the year 2000, Sanchez and Bourassa sold and offered to

sell interests in their companies IFC Financial, IFC.com, IFC Ventures and ROI

Mexico to the general public.

74.    They used various Internet websites including

www.investforclosures.com, www.ifcfinancial.com, www.ifcventures.com,

www.ifchomes.com, www.ifcinternational.com, www.roifinancial.com,

www.roidevelopers.com, www.realtyopportunitiesinternational.com, and

www.roimexico.com among others; print and radio advertisements; conventions

and investment conferences; direct contact with investors; prospecti; mail;

brochures; newsletters; and other marketing materials and methods ("marketing

methods") to solicit the investments.

75.    Initially, Sanchez and Bourassa represented that the investments

would be used to renovate foreclosed and distressed properties and resell the

properties for a profit ("property flipping").  Sanchez and Bourassa represented that

the profits from property flipping would then be used to repay the investors with

interest.

76.    Investors contacted Sanchez or Bourassa via a form on one of their

websites, email or telephone to request more information on the investment.

77. Sanchez or Bourassa would close the deal with the investor on the telephone and then transmit forms to be signed, including a power of attorney granting Sanchez full power over the investment money, together with instructions on how to send the money by check or wire transfer to them for the investment.

78. The materials sent by Sanchez or Bourassa to the investors sometimes included a Private Placement Memorandum, a prospectus, a brochure, Subscription Agreement, and information about accessing the private portion of their website where the investor could download more information about the company and the investment.

79. The investors were not "accredited" investors as that term is used in any of the federal or state securities laws and they lacked sufficient knowledge and experience in financial, business and investing matters to be capable of evaluating the merits and risks of the investment with Sanchez and Bourassa.

80. Plaintiffs did not have substantive, pre-existing relationships with any of the Defendants.

81. In exchange for their investments, Sanchez and Bourassa gave the investors certificates (some in Spanish) showing the term of the investment, the amount of their investment and the guaranteed interest to be paid on their investments and "warrants" for future stock to issued after an initial public offering ("IPO").

82. Beginning in January 2000, the investment certificates were issued by IFC.com, some before that company was a legal entity, and signed by either Sanchez or Bourassa or both.

**Third Amended Class Action Complaint**
**Page 14 of 72**

83.     Sometime in 2001, the investment certificates were issued by "InvestForClosures," which was never a legal entity but only a d/b/a, and signed by either Sanchez or Bourassa or both.

84.     No explanation was given to prior investors as to what happened to the investments in IFC.com, but Sanchez and Bourassa continued to act like the investments were in the same company.

85.     In early 2002, Sanchez and Bourassa hired Scott Wessel to assist them in fielding investor inquiries and help sell the investments.

86.     From 2002 to 2006, the investment certificates were issued by IFC Financial and signed by either Sanchez or Bourassa or both.

87.     No explanation was given to prior investors as to what happened to the investments in IFC.com or InvestForClosures, but Sanchez and Bourassa continued to act like the investments were in the same company.

88.     On March 22, 2004, Sanchez and Bourassa hired Sanchez's cousin Rodriguez to manage the books and act as staff accountant, although Rodriguez is not a Certified Public Accountant ("CPA").

89.     In late 2004, Sanchez and Bourassa hired Fitzgerald and Slagle to assist them in fielding investor inquiries and help sell the investments.

90.     Upon information and belief, Sanchez and Bourassa hired Guidi in 2004 to act as General Counsel, manage the legal affairs of the IFC entities and otherwise act as an officer of the companies.

91.     When some of the early investments came to term and investors requested their payments, an employee of the IFC entities would tell the investors

that the company didn't have enough money to repay the investment but the investor should wait a bit longer or "reinvest" their money for a longer term and they would receive a larger return or additional stock warrants.

92.     New investors were not told that the IFC entities had defaulted on prior investment obligations.

93.     In late 2005, Sanchez and Bourassa switched the purpose of the investments from property flipping to development of a resort in Mexico.

94.     At the end of 2005, Sanchez and Bourassa formed ROI Mexico under Mexican laws purportedly as the Mexican arm of IFC Ventures to pursue the resort development business.

95.     From 2005 to 2007, the investment certificates were issued by IFC Ventures and signed by either Sanchez or Bourassa or both.

96.     Some prior investors in IFC.com, InvestForClosures and IFC Financial were told by Sanchez, Bourassa, Guidi and/or O'Day to 'roll over' or reinvest their investments into IFC Ventures based on representations of an even larger return on their investment at a later date.  Many investors did reinvest their investments in IFC Ventures on this representation.

97.     Sanchez and Bourassa solicited additional investors and did not advise such additional investors that the IFC entities were in default on prior investment certificates and indeed represented to the additional investors that the IFC entities were prospering ventures.

98.     In late 2006, Sanchez and Bourassa began to run out of money, so Sanchez, Bourassa, and Guidi began promoting a "Special Opportunities Program

(SOP)" to attract additional investments and to roll over prior investments by existing investors into IFC Ventures, promising bonuses of interest and stock warrants in the company and the opportunity to participate in the profits when the Mexican resort was completed. Some investors did roll over their prior investments in the IFC entities into the SOP based on these representations.

99.     At some point during their fraudulent scheme, Sanchez, Bourassa, Guidi and O'Day engaged the services of Sterling Trust Company ("Sterling Trust") to act as custodian of Plaintiffs' investments so that Sanchez and Bourassa could encourage investors to roll over existing Individual Retirement Accounts ("IRAs"), 401(k) plan investments, or other investment vehicles, or create new IRAs through Sterling Trust for the purpose of investing in the IFC entities.

100.    Sometime in late 2005 or early 2006, Sanchez and Bourassa ceased issuing certificates to investors despite promises to do so and investor requests for the certificates. Sanchez and Bourassa continued to promise that the certificates were forthcoming, but the certificates were never sent to the later investors.

101.    As the investments came to term, the investors attempted to redeem their investments which included accrued interest as per the terms of the investment certificate.

102.    Investors were told by an IFC employee that the investor was required to execute a Withdrawal Request Form in order to obtain repayment of their investment and that there was a 60 day waiting period. In most cases the investors completed and returned the form.

103.   After completing the form and waiting the 60 days as represented by the IFC employees, the investors attempted to contact Sanchez or Bourassa to collect the balance owed on their respective accounts.

104.   Frequently during the period 2006 to 2009, Sanchez or Bourassa was unavailable to speak to the investors regarding repayment of their investment, although they were always available to speak to anyone expressing interest in new investment.

105.   Sanchez spent most of his time in Mexico from 2006 to 2008.

106.   IFC employees told investors that the IFC entities did not have sufficient cash available to pay the investors the sums acknowledged as due.

107.   In the meantime, Rodriguez was wire transferring hundreds of thousands of dollars, if not millions, of investor funds to Mexican banks Banco Santander Serfin and BBVA Bancomer and elsewhere outside the United States.

108.   As the company accountant, Rodriguez knew that these funds should have been held in the companies' Illinois banks or invested in real estate as promised to investors, but instead allowed these funds to be transferred contrary to representations made to investors.

109.   Rodriguez falsified the company's bookkeeping records through Quickbooks and other methods so as to show that the company's finances were in good shape instead of the truth that the company had virtually no money left in the United States, but rather it had been either spent on personal items for Sanchez and Bourassa and transferred to Mexico for Sanchez's personal use.

110.   While he was doing this, Rodriguez fielded phone calls from investors asking for return of their investments or more information on the status of the company and Rodriguez lied to them by stating that Sanchez was unavailable, the company was in good financial condition, and that they would receive the repayment of their investments if they could wait longer.

111.   Realizing that they didn't have the money to repay the investors, Sanchez, Bourassa, and Guidi formed a plan in 2006 to make it appear to investors that banks and other major investors were going to put money into the resort development in Mexico and when that investment and/or loan came in, investors would be repaid, perhaps in amounts larger than the balance on their investment accounts.

112.   Guidi furthered the fraud by attempting to cover up the fact that the securities sold by the IFC entities were not registered when she knew they should have been; that misrepresentations had been made to investors regarding the nature of their investments; attempting to change the characterization of the securities on the company books so as to look like bad debt instead of securities; by indicating that the "If the SEC ever knocks on our door, they will really have a party because our accounting does not match our subscription agreement"; that "an interview with an investor would reveal that the investors do not know what they are really getting"; and that she knew about the cease and desist orders from the state governments but failed to disclose that to investors and stated "I do not think we could keep marketing the private investment as a bond. We are running into too many problems (accounting, financial burdens, cease and desist orders)."

She also encouraged the IFC entities' outside accountant Norm Wierer to follow her advice and help her cover up the fraudulent scheme.

113.    Guidi also assisted Sanchez in setting up phony intellectual property and bank accounts in Mexico to enable the transfer of investors' funds from Illinois to Mexico without investors' approval or knowledge.

114.    Additionally, Sanchez, Bourassa, Guidi, O'Day, Richard and Salomon were telling investors via email and telephone calls that they had numerous partners and leading companies working with them on the development of the resort in Mexico, when in reality none of those companies had agreed to work with the IFC entities on the project.

115.    As another piece of the fraudulent plan, Sanchez, Bourassa, Guidi, O'Day, Rodriguez, Richard and Salomon began to represent to investors that bank loans for the resort were nearly finished and that the investors could now purchase lots on the property in Mexico and that investors would eventually get all of their investments back plus substantial more returns because of the Mexican resort sales.

116.    From 2005 to 2009, O'Day marketed for sale lots on the property in Mexico through his company AMO Realty.

117.    The IFC entities did not own the property in Mexico that was being marketed for sale.

118.    Nonetheless, several investors gave money to Sanchez, Bourassa, Slagle, Guidi, O'Day, Richard and Salomon believing they were purchasing lots on the property in Mexico.

119.   In 2008, Sanchez and Bourassa formed a Board of Directors for IFC Ventures and ROI Mexico, which included O'Day and investors Mark Lincoln, Dr. Richard Zhu, and Defendant Darcey Martin ("Martin").  Sanchez and Bourassa represented to investors the banks and/or major investors that were going to fund the resort development required the formation of such Board.

120.   Martin, representing herself to the investors as a member of the Board and agent acting on behalf of Sanchez, Bourassa and the IFC entities, would send email updates about the funding of the resort project and the value of their investments to investors.

121.   Martin, intentionally or recklessly, was providing this false information to investors, because Martin knew by early 2008 the IFC entities had no money, the investments were valueless, and there was no funding that was coming from any source for the project in Mexico.

122.   Martin made these false representations to discourage investors from requesting withdrawal of their investment funds or start legal proceedings to get their money back because Martin knew that the money was either already or in the process of being transferred to Mexico.

123.   Since 2000, Sanchez, Bourassa, Guidi, Fitzgerald, Slagle, Rodriguez, O'Day, and the IFC entities, by and through their employees, falsely represented the likely return on the investments, their authority to sell such investments, and the value of such investments.

124.   Sanchez, Bourassa, Guidi, Fitzgerald, Slagle, Rodriguez, O'Day, and the IFC entities, by and through their employees, never used the investments for

which they were intended or for which they represented to investors the money would be used.

## VII.  PLAINTIFFS' INVESTMENTS

125.   On March 8, 2001, Christine Blume invested $25,000.00 in IFC.com.

126.   On June 6, 2001, Mary O'Sullivan-Snyder invested $8,190.00 in IFC.com.

127.   On June 6, 2001, Thomas Snyder invested $5,061.00 in IFC.com.

128.   On June 14, 2001, Sarah Pearse invested $4,000.00 in IFC.com.

129.   On August 20, 2001, Daniel O'Sullivan invested $3,000.00 in IFC.com.

130.   On September 4, 2001, Maria Valentin invested $30,000.00 in InvestForClosures and was issued investment certificate number IFC090401-01. (Group Exhibit A.)

131.   On September 27, 2001, Patrick O'Sullivan invested $4,000.00 in an IFC entity.

132.   On December 31, 2001, Keith and Bonnie Raines invested $10,000.00 in InvestForClosures and were issued investment certificate number IFC123101-03a.  (Group Exhibit A.)

133.   On February 21, 2002, Joseph Pearse invested $3,197.00 in an IFC entity.

134.   On February 25, 2002, Mary O'Sullivan-Snyder invested $2,000.00 in an IFC entity.

135.   On February 25, 2002, Thomas Snyder invested $3,000.00 in an IFC entity.

136.   On November 11, 2002, Keith Raines invested $41,655.77 in IFC Financial and was issued investment certificate number IFC112602-01.  (Group Exhibit A.)

137.   On December 3, 2002, Bonnie Raines invested $43,112.29 in IFC Financial and was issued investment certificate number IFC120302-01.  (Group Exhibit A.)

138.   On January 1, 2003, Brad Bebout invested $5,685.94 in IFC Financial. (Group Exhibit A.)

139.   On February 4, 2003, Kailash and Kanta Gupta invested $40,000.00 in an IFC entity with a term of two years earning interest at a rate of 17.9% APR representing account number 104068.

140.   On February 25, 2003, John Reed III invested $35,000.00 in IFC Financial.  (Group Exhibit A.)

141.   On March 7, 2003, Natasha Gupta invested $40,000.00 in an IFC entity with a term of two years earning interest at a rate of 17.9% APR representing account number 104069.

142.   On March 26, 2003, William Richoz invested $14,586.15 in IFC Financial representing account number 104075.  (Group Exhibit A.)

143.   On March 26, 2003, Carolyn Richoz invested $3,048.06 in IFC Financial representing account number 104076.  (Group Exhibit A.)

144.   On April 22, 2003, Kathleen Markus invested $35,000.00 in IFC Financial and was issued investment certificate number IFCF042203-01 representing account number 104088.  (Group Exhibit A.)

145. On April 22, 2003, Wilhelm Hall invested $10,000.00 in IFC Financial and was issued investment certificate number IFCF042203-01 representing account number 104079. (Group Exhibit A.)

146. On April 29, 2003, Wilhelm Hall invested $10,000.00 in IFC Financial and was issued investment certificate number IFCF042903-02 representing account number 104079. (Group Exhibit A.)

147. On April 29, 2003, G. Matthew Knowlton invested $7,000.00 in an IFC entity.

148. On May 13, 2003, Kathleen Markus invested $100,000.00 in IFC Financial and was issued investment certificate number IFCF051303-01 representing account number 104086. (Group Exhibit A.)

149. On May 16, 2003, Mary O'Sullivan-Snyder invested $1,990.00 in an IFC entity.

150. On June 5, 2003, Joseph Cavaluzzi invested $10,807.10 in IFC Financial and was issued investment certificate number IFCF060503-01 representing account number 104085. (Group Exhibit A.)

151. On June 6, 2003, William Lawson invested $80,598.65 in an IFC entity representing account number 104083. (Group Exhibit A.)

152. On June 6, 2003, Sarah Lawson invested $18,609.09 in an IFC entity representing account number 104084. (Group Exhibit A.)

153. On July 31, 2003, G. Matthew Knowlton invested $3,000.00 in an IFC entity and was issued an investment certificate representing account number 104081. (Group Exhibit A.)

154.   On September 26, 2003, Brad Schaufenbuel and Robert Schaufenbuel invested $35,000.00 in IFC Financial and were issued investment certificate number IFCF092603-01 representing account number 104101.  (Group Exhibit A.)

155.   On November 18, 2003, Ravikumar and Sumathi Jammalamadaka invested $25,000.00 in IFC Financial and were issued an investment certificate representing account number 104106.  (Group Exhibit A.)

156.   On December 10, 2003, Nishant Gupta invested $42,000.00 in an IFC entity with a term of two years earning interest at a rate of 17.9% APR representing account number 104116.

157.   On December 18, 2003, Wilhelm Hall invested $15,000.00 in IFC Financial and was issued investment certificate number IFCF121803-01 representing account number 104079.  (Group Exhibit A.)

158.   On December 22, 2003, Paul Herink invested $30,476.60 in an IFC entity representing account number 104111.  (Group Exhibit A.)

159.   On January 26, 2004, Brad Bebout invested $6,750.00 in IFC Financial.   (Group Exhibit A.)

160.   On January 27, 2004, Andrew Kaufman invested $35,000.00 in IFC Financial and was issued investment certificate number IFCF012704-01 representing account number 104117.  (Group Exhibit A.)

161.   On February 2, 2004, Mary O'Sullivan-Snyder invested $2,000.00 in an IFC entity.

162.   On April 6, 2004, Donald and Ruth Halverson invested $35,000.00 in IFC Financial and were issued investment certificate IFCF040604-01 representing account number 104127.  (Group Exhibit A.)

163.   On May 18, 2004, Frank Cupp invested $10,000.00 in IFC Financial and was issued investment certificate IFCF051804-01 representing account number 104134.  (Group Exhibit A.)

164.   On June 1, 2004, Maria Valentin invested $40,000.00 in IFC Financial and was issued investment certificate number IFCF060104-01, representing account number 104137.  (Group Exhibit A.)

165.   On June 18, 2004, Frank Cupp invested $10,000.00 in IFC Financial and was issued investment certificate IFCF061804-01 representing account number 104134.  (Group Exhibit A.)

166.   On July 8, 2004, Brad Bebout invested $25,563.00 in IFC Financial and was issued investment certificate number IFCF070804-01 representing account number 104009.  (Group Exhibit A.)

167.   On July 21, 2004, Liam A. Angelini invested $35,000.00 in IFC Financial and was issued investment certificate number IFCF072104-01 representing account number 104143.  (Group Exhibit A.)

168.   On August 31, 2004, Donald and Ruth Halverson invested $20,000.00 in IFC Financial and received investment certificate IFCF083104-01 representing account number 104127.  (Group Exhibit A.)

169.   On September 16, 2004, Kathleen Tajak invested $35,000.00 in an IFC entity.

170.     On November 9, 2004, American Mass Media Corp and Ianhong Ng invested $50,000.00 in IFC Financial and were issued investment certificate number IFCF110904-01 representing account number 104149.  (Group Exhibit A.)

171.     On December 22, 2004, Kathleen Markus invested $50,000.00 in IFC Ventures and was issued investment certificate number IFCV122204-01 representing account number 204003.  (Group Exhibit A.)

172.     On December 22, 2004, Nishant Gupta invested $25,000.00 in an IFC entity with a term of five years earning interest at a rate of 25.0% APR representing account number 204002.

173.     On December 28, 2004, Ravikumar and Sumathi Jammalamadaka invested $100,000.00 in IFC Ventures and were issued an investment certificate representing account number 204001.

174.     On January 27, 2005, Kathleen Tajak invested $25,000.00 in an IFC entity.

175.     On January 31, 2005, Kathleen Markus invested $25,000.00 in IFC Ventures and was issued investment certificate number IFCV013105-01 representing account number 204014.  (Group Exhibit A.)

176.     On February 3, 2005, Nora Sanata invested $46,825.18 in IFC Ventures and was issued investment certificate number IFCV020305-01 representing account number 204005.  (Group Exhibit A.)

177.     On February 8, 2005, Wilhelm Hall invested $25,000.00 in IFC Ventures and was issued investment certificate number IFCV020805-01 representing account number 204010.  (Group Exhibit A.)

178.   On February 17, 2005, John Reed III invested $50,000.00 in IFC Ventures and was issued investment certificate number IFCV021705-01 representing account number 204013.  (Group Exhibit A.)

179.   On March 2, 2005, Brad Bebout invested $40,000.00 in IFC Ventures and was issued investment certificate number IFCV030205-01 representing account number 204015.  (Group Exhibit A.)

180.   On March 8, 2005, G. Matthew Knowlton invested $4,000.01 in an IFC entity and was issued an investment certificate representing account number 104096.  (Group Exhibit A.)

181.   On April 6, 2005, John and Sarah Reed IV invested $40,000.00 in an IFC entity representing account number 204017.  (Group Exhibit A.)

182.   On April 20, 2005, Mary O'Sullivan-Snyder invested $3,000.00 in an IFC entity.

183.   On May 17, 2005, Graciela Andrade-Lopez invested $12,464.48 in IFC Ventures.

184.   On May 17, 2005, Jorge Mota Ramirez invested $11,883.06 in IFC Ventures.

185.   On July 7, 2005, Kathleen Markus invested $25,000.00 in IFC Ventures and was issued investment certificate number **IFCV070705-01** representing account number 204024.  (Group Exhibit A.)

186.   On July 7, 2005, Donald and Ruth Halverson invested $20,000.00 in IFC Ventures and received investment certificate **IFCV070705-01** representing

account number 204023, which is the same certificate number as that issued to Kathleen Markus.  (Group Exhibit A.)

187.    On July 13, 2005, Roberta Clark invested $70,000.00 in IFC Ventures and was issued investment certificate number IFCV071305-01 representing account number 204022.  (Group Exhibit A.)

188.    On July 18, 2005, American Mass Media Corp invested $20,000.00 in IFC Ventures and was issued investment certificate number IFCV071805-01 representing account number 204027.  (Group Exhibit A.)

189.    On July 21, 2005, Mary O'Sullivan-Snyder invested $3,000.00 in an IFC entity.

190.    On July 29, 2005, Natasha Gupta invested $25,000.00 in an IFC entity with a term of five years earning interest at a rate of 25.0% APR representing account number 204028.

191.    On September 12, 2005, Brad Bebout invested $12,000.00 in IFC Financial.  (Group Exhibit A.)

192.    On September 12, 2005, John and Sarah Reed IV invested $40,000.00 in an IFC entity representing account number 204017.  (Group Exhibit A.)

193.    On October 18, 2005, Andrew and Nancy Weed invested $100,000.00 in IFC Ventures and were issued investment certificate number IFCV101805-01 representing account number 204036.  (Group Exhibit A.)

194.    On June 29, 2006, Christine Blume invested $50,125.71 in an IFC entity.

195.   On June 29, 2006, Christine Blume invested $10,007.75 in an IFC entity.

196.   On June 29, 2006, Christine Blume invested $15,913.48 in an IFC entity.

197.   On October 30, 2006, Maria Valentin invested $10,000.00 in IFC Ventures "Special Opportunities Program" (SOP).  (Group Exhibit A.)

198.   On October 30, 2006, Maria Valentin transferred her prior investments and accrued interest to her IFC Ventures SOP account.  (Group Exhibit A.)

199.   On December 11, 2006, Jonathan Patton invested $40,000.00 in an IFC entity representing account number 204048.  (Group Exhibit A.)

200.   On March 19, 2007, Kathleen Markus invested $30,000.00 in IFC Ventures Special Opportunities Program ("SOP") but never received a certificate from IFC Ventures despite requests for same.

201.   On March 19, 2007, Donald and Ruth Halverson as Trustees of The Halverson Family Trust invested $20,000.00 in the IFC Ventures SOP representing account number 204023 but never received a certificate from IFC Ventures despite requests for same.

202.   On March 30, 2007, John and Sarah Reed IV invested $10,000.00 in the IFC Ventures SOP representing account number 204017-SOP but never received a certificate from IFC Ventures despite requests for same.

203.   On March 30, 2007, Andrew and Nancy Weed invested $100,000.00 in an IFC entity representing account number 204036.  (Group Exhibit A.)

204.  On April 27, 2007, Joseph Cavaluzzi invested $56,381.18 in Realty Opportunities International and was issued investment certificate number IFCV-042707-01.  (Group Exhibit A.)

205.  On June 28, 2007, Wilhelm Hall invested $25,979.85 in IFC Ventures SOP representing account number 204010 but never received a certificate from IFC Ventures despite requests for same.  (Group Exhibit A.)

206.  On August 14, 2007, Sarah Lawson invested $10,000.00 in the IFC Ventures SOP representing account number 104084.    (Group Exhibit A.)

207.  On January 29, 2008, David Hale, Jr. invested $10,000.00 in an IFC entity representing account number 204100.  (Group Exhibit A.)

208.  On April 25, 2008, Nora Sanata invested $40,000.00 in an IFC entity representing account number 204005 but never received a certificate from IFC Ventures despite requests for same.

## VIII. THE STATE SECURITIES ACTIONS

209.  On June 23, 2005, the Pennsylvania Securities Commission ("PSC") issued a Summary Order to Cease and Desist ("PSC Order") against ROI Financial d/b/a InvestForClosures Ventures, LLC and Frank Sanchez to halt the offer and sale of unregistered securities in the State of Pennsylvania.

210.  On March 9, 2006, Sanchez and Bourassa executed on behalf of ROI Financial d/b/a InvestForClosures Ventures, LLC and Sanchez personally an Offer of Settlement of the dispute with the PSC consenting to the entry of Findings of Fact, Conclusions of Law, and an Order to be entered against them by the PSC and

specifically consenting to the imposition of sanctions against ROI Financial d/b/a InvestForClosures Ventures, LLC and Sanchez personally set forth in the Order.

211.    On March 14, 2006, the PSC entered its Findings of Fact, Conclusions of Law, and Order against ROI Financial d/b/a InvestForClosures Ventures, LLC and Sanchez personally ("Respondents") finding that Respondents were selling unregistered, non-exempt and not federally covered securities in the State of Pennsylvania in violation of the Pennsylvania Securities Act of 1972 and were sanctioned by a permanent cease and desist order from selling such securities in Pennsylvania, to pay costs and penalties to the State of Pennsylvania, and that if they further violated the Order Respondents would be subject to further penalties.

212.    On December 7, 2006, the PSC filed suit against ROI Financial d/b/a InvestForClosures Ventures, LLC and Sanchez personally ("Respondents") in the Commonwealth Court of Pennsylvania, Docket No. 622 MD 2006, seeking to enforce the March 14, 2006 Order.

213.    On March 30, 2007, the Commonwealth Court of Pennsylvania entered a permanent injunction against Respondents from selling securities in the State of Pennsylvania.

214.    On November 9, 2007, the Illinois Secretary of State Securities Department issued a Temporary Order of Prohibition (the "ISD Order") against Jim Bourassa, Frank Sanchez, IFC Financial, and IFC Ventures from issuing securities in the State of Illinois. The Illinois Securities Department made a finding that Bourassa, Sanchez, IFC Financial and IFC Ventures committed fraud in the sale of

securities, failed to register securities as required by law, and failed to file with the Illinois Secretary of State.

215.    Despite and in violation of these State Orders, Sanchez, Bourassa, Guidi, Fitzgerald, Slagle, Rodriguez, O'Day, and the IFC entities, by and through their employees, continued to market, offer to sell and sell securities in Pennsylvania and Illinois.

## IX.    DEFENDANTS' FALSE AND MISLEADING STATEMENTS

216.    Sanchez and Bourassa made the following false and misleading statements to investors / Plaintiffs:

a.    That the investments were "Real Estate Secured Investments";

b.    That the investments were "guaranteed";

c.    That the investments were exempt from registration under federal and state securities laws;

d.    That investors would receive a "privatized security in accordance with SEC REG D RULE 504" and "structured under the Securities and Exchange Commissions' Reg D, Rule 504 in accordance with the Federal SEC Regulatory Code";

e.    That the investments were for a "property flipping" business in Illinois;

f.    That profits from the business would be returned to investors by means of interest on their investments;

g.    That the IFC entities were "low risk" companies;

h.      That Investors could "double your money" and would make "28% return on investment (ROI)" if they invested with one of the entities for 5 or 6 years;

i.      That the investments were a "Secure Investment – Approximately 90% of investors' funds goes toward the purchase of real estate";

j.      That the IFC entities were in great financial condition;

k.      That they were having an independent financial audit done on the company to assure potential investors in the strength of the company;

l.      That the financial statements being provided were false and falsified;

m.      That if investors would roll over their investments or not seek repayment on their investments, they would receive bonuses and extra interest once they financed the resort development project in Mexico;

n.      That investors were required to provide 60 day notice in order to reclaim their investments after the terms had expired;

o.      That the values reported to investors, either directly or through Sterling Trust, were true and accurate values of their investment accounts;

p.      That they had numerous partners that had "signed on" as either joint venture partners, investors, contractors or developers for the

resort in Mexico, such as Panorama International, Brandy Marine, Doak Golf, and Sanchez's brothers law firm of Sanchez Daniels & Hoffman as their legal counsel;

q.     That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico;

r.     That Sanchez was going to have meetings with Felipe De Jesus Calderon, the President of Mexico, and other dignitaries to obtain government approvals for development of the resort in Mexico; and

s.     That the investors would be repaid in full plus interest and also receive stock warrants.

217.   Guidi told John Reed III that he was required to fill out a form and that he had to roll over his prior investments with the IFC entities into the SOP.

218.   Guidi omitted from telling investors / Plaintiffs that she knew:

a.     That the investments were securities and offered and sold in violation of federal and state securities laws;

b.     That the IFC entities were in financial trouble and that there were insufficient assets and money to pay back investments; and

c.     That she was trying to cover up the fraudulent scheme of Sanchez and Bourassa by various means so as to prevent investors from seeking and obtaining repayment of their investments.

219.   Fitzgerald made the following false and misleading statements to investors / Plaintiffs:

a.     That the investments were secured with real estate;

      b.      That the investments were "guaranteed"; and

      c.      That the investments were exempt from federal and state securities registration.

220.   Slagle made the following false and misleading statements to investors / Plaintiffs:

      a.      That he was a Certified Financial Planner ("CFP"), which he included in his signature block on all correspondence sent by him on behalf of the IFC entities to investors / Plaintiffs;

      b.      That the investments were secured with real estate;

      c.      That the investments were "guaranteed"; and

      d.      That the investments were exempt from federal and state securities registration.

221.   Slagle omitted from telling investors / Plaintiffs that he knew:

      a.      That the investments were securities and offered and sold in violation of federal and state securities laws; and

      b.      That the IFC entities were in financial trouble and that there were insufficient assets and money to pay back investments.

222.   Martin made the following false and misleading statements to investors / Plaintiffs:

      a.      That she was on the Board of Directors of ROI Mexico;

      b.      That investors could rely on her information because she was a board member;

c.      That she was reporting back to investors accurately the minutes of the Board meetings;

d.      That the account statements she was preparing and sending to investors / Plaintiffs were true, accurate and verified;

e.      That the IFC entities had numerous partners that had "signed on" as either joint venture partners, investors, contractors or developers for the resort in Mexico, such as Panorama International, Brandy Marine, Doak Golf, and Sanchez's brother's law firm of Sanchez Daniels & Hoffman as their legal counsel;

f.      That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico;

g.      That Sanchez was going to have meetings with Felipe De Jesus Calderon, the President of Mexico, and other dignitaries to obtain government approvals for development of the resort in Mexico; and

h.      That the investors would be repaid in full plus interest and also receive stock warrants.

223.    Rodriguez made the following false and misleading statements to investors / Plaintiffs:

a.      That the finances of the IFC entities were healthy;

b.      That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico; and

c.      That the investors would be repaid in full plus interest and also receive stock warrants.

224. Rodriguez omitted from telling investors / Plaintiffs that he knew:

   a.     That hundreds of thousands, if not millions, of dollars were being illegally wire transferred to Mexico leaving insufficient money and assets to repay investors;

   b.     That he had falsified the bookkeeping and financial records of the IFC entities in order to cover up the fraud; and

   c.     That the IFC entities were in financial trouble and that there were insufficient assets and money to pay back investments.

225. O'Day made the following false and misleading statements to investors / Plaintiffs:

   a.     That he was on the Board of Directors of ROI Mexico;

   b.     That investors could rely on his information because he was a board member;

   c.     That he was negotiating for bank loans and contracts on behalf of the IFC entities for the development of the resort in Mexico;

   d.     That the IFC entities had numerous partners that had "signed on" as either joint venture partners, investors, contractors or developers for the resort in Mexico, such as Panorama International, Brandy Marine, Doak Golf, and Sanchez's brother's law firm of Sanchez Daniels & Hoffman as their legal counsel;

   e.     That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico; and

      f.     That he had the authority and ability to broker lots on the property in Mexico through his own company AMO Realty.

226.   Richard Sanchez made the following false and misleading statements to investors / Plaintiffs:

      a.     That he was a salesperson for the IFC entities, authorized and able to sell lots on the property in Mexico;

      b.     That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico; and

      c.     That the investors would be repaid in full plus interest and also receive stock warrants.

227.   Salomon Sanchez, Jr. made the following false and misleading statements to investors / Plaintiffs:

      a.     That the IFC entities were very close to obtaining financing from some undisclosed source and/or Nafinsa bank in Mexico; and

      b.     That the investors would be repaid in full plus interest and also receive stock warrants.

228.   On the private portion of the IFC entities' websites, investors were told that their investments were full value, including interest accruing, when in reality those investments were worthless.

229.   The marketing methods used by Defendants represented to investors that the investments were exempt from registration with the federal and state securities agencies when they were not exempt.

230.    The Defendants failed to disclose to investors that the IFC entities, Sanchez and Bourassa had violated state securities laws.

231.    The IFC entities, Sanchez and Bourassa failed to disclose that they never created true financial statements for the entities, provided false investment values to the Internal Revenue Service ("IRS") directly and through Sterling Trust, that they never created or sent to investors K-1 reports required by law, that they never filed company tax returns for the IFC entities from 2003 forward, and that all of the outside accountants they hired to perform financial audits refused to do so.

232.    All of these misrepresentations and material omissions were made by the Defendants for the purpose of soliciting investments by Plaintiffs and/or dissuading Plaintiffs from seeking withdrawal of their investment and/or preventing Plaintiffs from pursuing legal means, including a lawsuit and reports to the various law enforcement authorities, to obtain refunds of their investments.

## X.    USE OF INVESTOR PROCEEDS

233.    The Defendants misused investor proceeds in various ways including:

a.    Hosting lavish personal birthday parties for IFC employees and staff;

b.    Paying for new home building and infrastructure in the town of Cortland, Illinois contrary to the purpose of the investments and for which investors were never told;

c.    Setting up ROI Mexico and establishing phony Mexican intellectual property;

d.    Paying for Sanchez's wedding in Mexico;

e.       Paying for a lavish birthday party for Bourassa in Mexico;

f.       Extensive travel around the United States to solicit additional investments;

g.       Purchasing homes for Sanchez and Bourassa and claiming they were the IFC "offices" or rehab properties, when they were really personal residences;

h.       Selling properties to IFC employees either below market price or for minimal cost so as to make it appear to investors that the IFC entities were successfully selling the rehabbed properties;

i.       Purchasing a condominium in Acapulco, Mexico for Sanchez's wife for her personal use as a residence;

j.       Purchasing approximately 23 acres of undeveloped property in Playa Ventura, Mexico without investor approval;

k.       Sanchez's personal use of funds in Mexico for leisure; and

l.       Concealing it in Mexico and/or other locations overseas for future personal use.

## XI.    CLAIMS FOR RELIEF

### COUNT I – VIOLATIONS OF THE SECURITIES ACT OF 1933
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle)**

234.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

235.   This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; and Scott Slagle (collectively referred in this Count only as "these Defendants").

236.   The interests offered for sale and sold by these Defendants to Plaintiffs are "securities" as that term is defined by the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §77b(a)(1).

237.   The IFC entities are "issuers" as that term is defined by the 1933 Act, 15 U.S.C. §77b(a)(4).

238.   As CEO of IFC Financial, IFC.com, IFC Ventures, and President of ROI Mexico, Sanchez was at all relevant times herein a "controlling person" of the IFC entities as that term is defined in the 1933 Act, 15 U.S.C. §77o.

239.   As President of IFC Financial, IFC.com, IFC Ventures, and Secretary and Treasurer of ROI Mexico, Bourassa was at all relevant times herein a "controlling person" of the IFC entities as that term is defined in the 1933 Act, 15 U.S.C. §77o.

240.   As Vice President of IFC Financial, Fitzgerald was at all relevant times herein a "controlling person" of IFC Financial as that term is defined in the 1933 Act, 15 U.S.C. §77o.

241.   As Vice President of IFC Financial, Slagle was at all relevant times herein a "controlling person" of IFC Financial as that term is defined in the 1933 Act, 15 U.S.C. §77o.

242.   As General Counsel and an officer of IFC Financial, IFC.com, IFC Ventures, Guidi was at all relevant times herein a "controlling person" of the IFC entities as that term is defined in the 1933 Act, 15 U.S.C. §77o.

243.   These Defendants never registered any of the investment notes or certificates with any federal or state government unit or agency.

244.   These Defendants did not use a securities broker or other intermediary, but rather sold these investment notes and certificates direct to the public.

245.   These Defendants did not have a license or other authority to sell the investment notes and certificates direct to the public.

246.   These Defendants made knowingly false representations in the marketing materials and in direct contact with the investors to encourage them to purchase the investments in the IFC entities, including without limitation:

> a.      Each IFC entity "is a **low risk** company" (emphasis in original), when in actuality it was a high risk company;
>
> b.      Investors could "double your money" and would make "28% return on investment (ROI)" when not one of their investors ever made such a return;
>
> c.      offered investors "the potential of receiving well above stock market returns"; that the company would issue investors a "privatized security in accordance with SEC REG D RULE 504" and "structured under the Securities and Exchange Commissions' Reg D, Rule 504 in accordance with the Federal SEC Regulatory Code"; the investments

were "exempt" from registration under the federal and state securities laws; the company "qualifies as a pre-IPO company"; that the interests were "Real Estate Secured Investments"; that the interests were a "Secure Investment – Approximately 90% of investors' funds goes toward the purchase of real estate"; and that "Investors that invest $10,000 or more are paid 28% interest. Investors below $10,000 receive 20% interest."

247.    The securities issued by the IFC entities to investors were not exempt from registration or the other requirements of the 1933 Act and these Defendants made false and misleading statements to investors relating to their exempt status.

248.    Plaintiffs contacted these Defendants demanding return of their principal plus accrued interest upon expiration of the term of their investments.

249.    Despite the demands, these Defendants have refused and failed to pay Plaintiffs according to the terms of the securities.

250.    The activities described above constitute the offer and sale of a security as those terms are defined in the 1933 Act, §§77b, e and f.

251.    These Defendants used the means and instruments of interstate commerce and the mails in the offer and sale of securities.

252.    These Defendants have violated the 1933 Act in one or more of the following ways:

        a.    Offering to sell, the sale of and delivery after sale of unregistered securities;

b.      Representing to investors that the securities were exempt from registration under the 1933 Act;

c.      Transmitting prospecti to investors containing false and misleading statements and representations regarding the investments;

d.      Intentionally or recklessly omitting material information required to be in offering materials for the investments; and

e.      Otherwise engaging in the fraudulent conduct described above.

253.    Plaintiffs have been injured in that to date Plaintiffs have not received the principal or interest on their investments.

254.    The total of the investments is in excess of $8 million.

255.    Plaintiffs' injuries have been directly and proximately caused by these Defendants' violations of the 1933 Act.

### COUNT II – VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle)**

256.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

257.    This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; and Scott Slagle (collectively referred in this Count only as "these Defendants").

258.   The activities described above constitute the offer and sale of a security as those terms are defined in §§78c and l of the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.* ("1934 Act").

259.   Each of these Defendants is a "Controlling person" as that term is defined by the 1934 Act , 15 U.S.C. §78t.

260.   These Defendants, in connection with the sale of the IFC entities' securities, have violated the 1934 Act by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly to:

a.   Use and employ devices, schemes, or artifices to defraud the investors;

b.   Make false statements of material facts and omitted material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading;

c.   Sell unregistered securities directly and "off exchange" without obtaining a proper exemption; and

d.   Engage in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon investors.

261.   Plaintiffs have been injured in that to date Plaintiffs have not received the principal or interest on their investments.

262.   The total of the investments is in excess of $8 million.

263.   Plaintiffs' injuries have been directly and proximately caused by these Defendants' violations of the 1934 Act.

## COUNT III – FRAUD
### (All Defendants)

264.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

265.    Defendants made numerous false statements of material facts or omitted to state material facts to Plaintiffs when they had an obligation to do so as detailed previously in this Complaint.

266.    Defendants knew their statements were false at the time they made them and/or knew that they should have disclosed the material facts omitted from communications to investors.

267.    The false statements or material omissions by IFC Financial, IFC.com, IFC Ventures, ROI Mexico, Sanchez, Bourassa, Guidi, Fitzgerald, and Slagle were made with the intent of inducing Plaintiffs to invest in one of the IFC entities.

268.    AMO Realty maintained several websites to market, broker and sell lots on the property in Mexico when it had no authority or legal ability to do so. This worked a deceit upon investors as they were led to believe that their investments would come to fruition because a real estate broker was selling the resort development in Mexico.

269.    The false statements or material omissions by IFC Ventures, ROI Mexico, Sanchez, Bourassa, Guidi, Fitzgerald, Slagle, AMO Realty, O'Day, and Richard Sanchez were made with the intent of inducing Plaintiffs to invest in the development of the resort in Mexico, when no such resort was being developed.

270.    The false statements or material omissions by all defendants were made to deceive Plaintiffs into believing that a bank or other large investor was going to fund the development of the resort in Mexico and these statements were intended to keep Plaintiffs from seeking reimbursement or repayment of their investments or seeking other legal recourse to obtaining refund of their money.

271.    Defendants knew these statements were false because the IFC entities did not have the money to repay the investments.

272.    Plaintiffs reasonably and justifiably relied on the truth of Defendants' representations about the investments as evidenced by their large investments of money in the IFC entities.

273.    Plaintiffs have been injured in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the conduct of Defendants because they have not been repaid, the Defendants refuse to pay off the investments, and, upon information and belief, the proceeds of the investments have been concealed by Defendants.

## COUNT IV – BREACH OF FIDUCIARY DUTY
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle; Wayne O'Day; Tom Rodriguez; Darcey Martin)**

274.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

275.    This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty

Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle; Wayne O'Day; Tom Rodriguez; and Darcey Martin (collectively referred in this Count only as "these Defendants").

276.   By soliciting investments for the IFC entities and holding the money invested by Plaintiffs, these Defendants created a fiduciary relationship with investors and owed a fiduciary duty to the Plaintiffs as investors in the IFC entities.

277.   These Defendants owed a duty to treat the money invested by Plaintiffs as if it was their own money as Plaintiffs placed trust in these Defendants that Plaintiffs' money was going to be used for the purpose for which it was invested.

278.   These Defendants also owed a duty to Plaintiffs to provide full disclosure of financial and operations information that would impact their investments, the value of such investments, and any tax ramifications from those investments.

279.   These Defendants breached their fiduciary duties to Plaintiffs by failing to invest Plaintiffs' money as represented, failing to disclose material information about the financial and legal status of the IFC entities, failing to disclose other material information about the operations of the IFC entities, and failing to disclose that a substantial portion of their investments was being transferred to Mexico for the personal use of Sanchez or other IFC employees.

280.   Plaintiffs have been injured in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the securities and

Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the breach of fiduciary duties by the IFC entities and IFC's principals.

## COUNT V – CIVIL CONSPIRACY
### (All Defendants)

281.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

282.   The entire investment scheme set up by Sanchez and Bourassa was fraudulent and in a Ponzi-like way fed some earlier investors with small interest payments so as to make them believe their investments were good, but as the money dried up so did the interest payments.

283.   Each of the Defendants played their specific part to further the fraud, obtain new investments, or cover up the fraud.

284.   The IFC principals set up phony shell limited liability companies and their d/b/a's, namely InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates; so that they could appear legitimate to Plaintiffs and Plaintiffs would be enticed into investing money in these shell companies, and then Sanchez and Bourassa could take the money, set up the Mexican company of Realty Opportunities International S. de R.L. de C.V. that had no ties to Plaintiffs'

investments, and conceal money in the name of the Mexican company and/or Sanchez, thereby owning an asset that was shielded from the investors' interests.

285.    The Defendants benefitted from this conspiracy to commit fraud because they (a) have access to money or assets in Mexico; and/or (b) they have been paid money from Plaintiffs' investments by others involved in the scheme.

286.    To further this conspiracy, Defendants made false representations to Plaintiffs regarding their investments; lied about their securities; lied about the use of the investments; lied to Plaintiffs when Plaintiffs requested the return of their money; lied to Plaintiffs about the status of the shell companies; lied to Plaintiffs about the Mexican property; and continued to advise the Plaintiffs to hold off on demanding return of their money and lied that Plaintiffs would ultimately be repaid in multiples of their original investment as long as Plaintiffs didn't make legal claims against Defendants.

287.    Plaintiffs have been injured by the conspiracy of the Defendants in that none of the Investors has received the principal or interest owed by the IFC entities to Investors on the securities and Plaintiffs collectively lost in excess of eight million dollars ($8,000,000.00) as a direct and proximate result of the civil conspiracy by Defendants.

## COUNT VI – VIOLATION OF THE ILLINOIS UNIFORM FRAUDULENT TRANSFER ACT
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi)**

288. Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

289. This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; and Deana M. Guidi (collectively referred in this Count only as "these Defendants").

290. These Defendants have made several transfers of assets out of their own name and into the names of individuals so as to shield them from the claims of Plaintiffs / investors.

291. The property located at 185 Hilltop Lane, Lake in the Hills, Illinois ("Hilltop property") was purchased with investor funds as a rehab project by IFC Financial.

292. IFC Financial transferred the Hilltop property to Guidi individually so as to shield it from claims by Plaintiffs / investors. The proceeds of the sham sale did not go back to investors.

293. Guidi has since resold the Hilltop property but not repaid any of the proceeds to the IFC entities or investors.

294.    The property located at 254 Gregory M. Sears Drive, Gilberts, Illinois ("Gilberts property") was purchased with investor funds as a rehab project by IFC Financial.

295.    IFC Financial transferred the Gilberts property to Bourassa individually so as to shield it from claims by Plaintiffs / investors.  The proceeds of the sham sale did not go back to investors.

296.    The property located at 7310 Fordham Lane, Plainfield, Illinois ("Plainfield property") was purchased with investor funds as a rehab project by IFC Financial.

297.    IFC Financial transferred the Plainfield property to Bourassa individually so as to shield it from claims by Plaintiffs / investors.  The proceeds of the sham sale did not go back to investors.

298.    The land located in Cortland, Illinois ("Cortland property") was purchased with investor funds as a rehab project by IFC Financial.

299.    IFC Financial divided, developed, built houses and infrastructure, and sold the houses on the Cortland property to various third parties so as to shield it from claims by Plaintiffs / investors.  The proceeds of the sham sales did not go back to investors.

300.    The property located in Playa Ventura, Mexico ("Sands of Gold property") was purchased with investor funds as a resort development project by IFC Ventures, but purchased the property in Frank Sanchez's name individually.

301.    The Sands of Gold property was placed in Frank Sanchez's name individually so as to shield it from claims by Plaintiffs / investors.

302.   Substantial assets, including money, were transferred to banks in Mexico or elsewhere in the world and/or to Sanchez personally so as to shield it from claims by Plaintiffs / investors.

303.   By making such transfers, these Defendants have rendered the IFC entities insolvent in the United States or without sufficient assets to cover the claims of investors.

304.   These Defendants have made such transfers with the actual intent to hinder, delay, or defraud Plaintiffs, all of whom as investors are creditors of the IFC entities.

305.   These Defendants did not receive a reasonably equivalent value in exchange for these transfers of assets.

306.   As Plaintiffs' investments became due, the IFC entities were unable to pay the investments and interest due to Plaintiffs according to the terms of the investment certificates.

307.   Plaintiffs are creditors of the IFC entities and the IFC entities are debtors of Plaintiffs as those terms are defined by §2 of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/ *et seq.* (hereinafter "IUFTA").

308.   These Defendants have violated IUFTA and have made transfers that are fraudulent as to Plaintiffs.

309.   The transfer of the IFC entities' assets and money invested by Plaintiffs should be either avoided or should be attached to preserve the claims of Plaintiffs and a receiver or trustee should be appointed to take over the property.

310.   Further, Defendants should be enjoined from any further action, including without limitation sale, promotion, transfer, or dissipation, related to the assets of the IFC entities.

## COUNT VII – UNJUST ENRICHMENT
### (InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Darcey Martin)

311.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

312.   This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; and Darcey Martin (collectively referred in this Count only as "these Defendants").

313.   These Defendants have unjustly retained the money invested by Plaintiffs without repaying the investments or interest as required by the investment certificates and agreements given to Plaintiffs.

314.   These Defendants have taken Plaintiffs' money and benefitted by enriching themselves to the detriment of Plaintiffs.

315.   Darcey Martin's investment has been repaid in full by Sanchez and Bourassa out of Plaintiffs' money and in preference to other investors.

316.   By retaining the benefit of Plaintiffs' investments without paying them interest or repaying the principal as these Defendants agreed to do and represented

to Plaintiffs, these Defendants are thereby unjustly enriched violating fundamental

principles of equity and justice.

317.   The value of these Defendants' unjustly retained benefit is in excess of

million dollars ($8,000,000.00).

### COUNT VIII – CONSTRUCTIVE TRUST
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa)**

318.   Plaintiffs repeat and restate all of the allegations of the preceding

paragraphs of this Complaint and incorporates them herein by reference as if set

forth in full.

319.   This Count only applies to Defendants InvestForClosures Financial,

L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty

Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; and James D.

Bourassa (collectively referred in this Count only as "these Defendants").

320.   These Defendants have received money from Plaintiffs as investments

into a real estate rehabilitation business or to development of the Sands of Gold

Estates in Playa Ventura, Mexico.

321.   These Defendants have also received substantial confidential

information from Plaintiffs and in some cases powers of attorney from Plaintiffs.

322.   These Defendants have exerted control over the investment money

and the information provided by Plaintiffs, yet refuse and have failed to return any

of the investment money, interest or the assets, in which Plaintiffs have ownership

rights.

323.    These Defendants have committed numerous wrongful acts against Plaintiffs regarding the investment money and information, including without limitation providing false and misleading information about the investments, falsifying documents and making false representations on their website and marketing materials, lying to Plaintiffs about the investments, and allowing the companies in which Plaintiffs invested to be involuntarily dissolved by the Illinois government.

324.    These Defendants acts towards Plaintiffs have been intentional, willful, and in derogation of and a deprivation of Plaintiffs' lawful right and possession to their money or the assets in which their money was invested.  These Defendants, without legal right, withheld possession of the money and assets from Plaintiffs.

325.    It would be unjust and inequitable if these Defendants were allowed to retain control or custody over this ill-gotten money and assets.

326.    Plaintiffs reasonably fear that these Defendants will either transfer or otherwise interfere with Plaintiffs' rights to retrieve assets in Mexico and that Plaintiffs may be further harmed by these Defendants attracting new investors into their scheme.

327.    Plaintiffs are entitled to have the Court impose a constructive trust over all personal and business assets of Defendants to protect their rights and their investment money until such time as this matter is resolved.

## COUNT IX – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (All Defendants)

328.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

329.   Defendants have employed deceptive acts and practices, including without limitation false representations about investing in foreclosed or distressed properties to make a profit and misleading and false representations about the securities issued in exchange for money invested by Plaintiffs, in order to solicit investment of money by Plaintiffs.

330.   Defendants have otherwise employed deceptive acts and practices as those detailed earlier in this Complaint in the conduct of business so as to work a fraud against Plaintiffs and keep Plaintiffs' investment money.

331.   Defendants intended Plaintiffs to rely on these deceptive acts and practices so that Plaintiffs would invest money in Defendants' phony business of rehabilitating properties and developing a resort in Mexico.  Rather, Defendants intended to take Plaintiffs' money and conceal it in Mexico to be shielded from Plaintiffs' claims on their investments.

332.   Defendants' deceptions took place in the course of trade and commerce as Defendants had set up shell companies to appear legitimate to Plaintiffs and to attract investments into Defendants' phony business.

333.   Defendants' conduct constitutes an unfair or deceptive acts or practices as defined by §2 of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.* (hereinafter the "CFA").

334.    Defendants, by their conduct as detailed above, have violated the CFA and Plaintiffs have been harmed as a direct and proximate result of such violations.

335.    Plaintiffs are entitled to all remedies available under the CFA.

## COUNT X – PIERCING THE ORGANIZATIONAL VEIL
### (Francis X. Sanchez; James D. Bourassa)

336.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

337.    This Count only applies to Francis X. Sanchez; and James D. Bourassa (collectively referred in this Count only as "these Defendants").

338.    These Defendants set up various fake shell companies, including without limitation InvestForClosures Financial, L.L.C.; ROI Developers; InvestForClosures; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Sands of Gold Escrow; Sands of Gold; ROI Financial; Realty Opportunities International Escrow 23; ROI Escrow; Realty Opportunities International; ROI Mexico; and Sands of Gold Estates.

339.    Defendants disregarded the separate identity and entity of these named companies as follows:

        a.    Failing to establish and follow corporate procedures and make the required filings with the Illinois Secretary of State;

        b.    Allowing each entity they established to be involuntarily dissolved by the Illinois Secretary of State;

        c.    Using the bank accounts and funds received from investors in these entities as their own personal funds, such as using the money

for weddings, birthday parties, personal residences, personal vehicles, and other non-legal entity purposes; and

d.      Selling investments in entities that had no legal status;

e.      Failing to register securities before the offer and sale to the general public as is required by legal entities; and

f.      Committing fraud on investors and other ultra vires and illegal acts in the name of the legal entities, but for the personal benefit of these Defendants.

340.    Allowing these Defendants to avoid liabilities that they have created by acting with disregard to the formal entities of the named companies would create an inequitable result in this case.

341.    As such, this Court should pierce through those false company shells and impose any and all liabilities incurred on behalf of the IFC entities to these Defendants in their individual and personal capacities.  Plaintiffs should have recourse against these Defendants and their personal assets so as to enable a just and equitable result for the liabilities incurred.

## COUNT XI – CONVERSION
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa)**

342.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

343.    This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty

Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; and James D. Bourassa (collectively referred in this Count only as "these Defendants").

344.   Plaintiffs have a right in their investments and the interest earned on those investments according to the securities issued by the IFC entities.

345.   Plaintiffs' rights in such money is immediate, as all of the securities issued have come to term, and such rights are absolute, unconditional and not dependent on the performance of any act.  Plaintiffs' performance was complete upon payment of the money representing their investment.

346.   These Defendants have exercised wrongful dominion over Plaintiffs' money and have refused to return the investment or pay the interest as agreed to, despite numerous demands by Plaintiffs to do so.

347.   These Defendants have attempted to conceal Plaintiffs' money, deprive Plaintiffs of their rights to possession of their money, and have made unauthorized transactions using Plaintiff's money, including without limitation setting up the Mexican company ROI Mexico and purportedly development of the Sands of Gold Estates in Playa Ventura, Mexico.

348.   These Defendants have effectively converted Plaintiffs' money and their rights to their principal investment and interest earned into assets owned by these Defendants, including without limitation ROI Mexico and the property in Mexico, thereby attempting to permanently deprive Plaintiffs' of their rights.

### COUNT XII – VIOLATION OF THE ILLINOIS SECURITIES LAW
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle)**

349.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

350.    This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; and Scott Slagle (collectively referred in this Count only as "these Defendants").

351.    The activities described above constitute the offer and sale of a security as those terms are defined in Sections 2.1, 2.2, 2.5 and 2.5a of the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.* ("IL Securities Act").

352.    Each of these Defendants is a "Controlling person" as that term is defined by Section 2.4 of the IL Securities Act.

353.    These Defendants have violated the IL Securities Act in one or more of the following ways:

  a.    Offering to sell, the sale of and delivery after sale of unregistered securities;

  b.    Representing to investors that the securities were exempt from registration under the federal and state securities laws;

    c.      Transmitting prospecti to investors containing false and misleading statements and representations regarding the investments;

    d.      Otherwise making false and misleading statements to Plaintiffs in order to sell the investments in the IFC entities;

    e.      Intentionally or recklessly omitting material information required to be in offering materials for the investments;

    f.      Employing devices, schemes, or artifices to defraud Plaintiffs in connection with the sale of the IFC investments, directly and indirectly; and

    g.      Otherwise engaging in the fraudulent conduct described above.

354.   Plaintiffs have been injured in that to date Plaintiffs have not received the principal or interest on their investments.

355.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) with the IFC entities and have not received any of that investment back.

356.   Plaintiffs' injuries have been directly and proximately caused by Defendants' violations of the IL Securities Act.

## COUNT XIII – BREACH OF CONTRACT
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.)**

357.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

358.   This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; and Realty Opportunities International S. De R.L. De C.V. (collectively referred in this Count only as "these Defendants").

359.   These Defendants offered each of the Plaintiffs investment in either its purported businesses in exchange for money invested and Plaintiffs accepted by investing money, in differing amounts, with the IFC entities.

360.   The IFC entities issued investment notes and certificates to Plaintiffs as documentation of the agreement between the parties.  (See Group Exhibit A.)

361.   The terms of each agreement were definite and certain, providing a date of maturation of the note or certificate and an amount to be repaid representing return of principal plus interest.  (See Group Exhibit A.)

362.   At the end of each of the Plaintiffs' investment terms, each Plaintiff attempted to redeem his/her investment which included accrued interest as per the terms of the investment note or certificate.

363.   When the Plaintiffs attempted to collect the balance owed on their respective accounts, these Defendants refused to return the principal or interest owed on the notes and certificates, despite the Plaintiffs' repeated requests.

364.   Plaintiffs have performed their portion of the agreement by paying over the amounts of money agreed to be invested and leaving it invested with the IFC entities until the end of their respective terms.

365.    Some Plaintiffs have performed additional acts by rolling over or reinvesting their investments in other investment notes and certificates issued by IFC Ventures, which have also passed their termination dates.

366.    Despite the demands, these Defendants have refused and failed to pay Plaintiffs according to the agreements of the investment notes and certificates.

367.    These Defendants are in breach of their agreements with Plaintiffs.

368.    As a direct and proximate result of these Defendants' breaches, Plaintiffs have been injured in an amount in excess of excess of eight million dollars ($8,000,000.00), the exact amount shall be determined at trial of this matter.

### COUNT XIV – VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
### (InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle)

369.    Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

370.    This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; and Scott Slagle (collectively referred in this Count only as "these Defendants").

371.    At all relevant times, these Defendants acted as Investment Advisers to Plaintiffs as that term is defined in the Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.* (hereinafter the "IAA").

372.    These Defendants have violated the IAA in one or more of the following ways:

       a.     Failing to register as Investment Advisers as required by §3(a) of the IAA;

       b.     using the mails or any means or instrumentality of interstate commerce, directly or indirectly (1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction; and (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative;

       c.     Directly, indirectly, or through or by any other person, to do any act or thing which it would be unlawful for such person to do directly under the provisions of this subchapter or any rule or regulation thereunder; and

       d.     Otherwise engaging in the fraudulent conduct described above.

373.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) on the investment advice of IFC and its principals and have not received any of that investment back despite demand for same.

374.   Plaintiffs' injuries have been directly and proximately caused by IFC's violations of the IAA.

### COUNT XV – VIOLATION OF THE TRUST INDENTURE ACT OF 1939
**(InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; Scott Slagle)**

375.   Plaintiffs repeat and restate all of the allegations of the preceding paragraphs of this Complaint and incorporates them herein by reference as if set forth in full.

376.   This Count only applies to Defendants InvestForClosures Financial, L.L.C.; InvestForClosures.com, LLC; InvestForClosures Ventures, LLC; Realty Opportunities International S. De R.L. De C.V.; Francis X. Sanchez; James D. Bourassa; Deana M. Guidi; Daniel E. Fitzgerald; and Scott Slagle (collectively referred in this Count only as "these Defendants").

377.   These Defendants offered to sell, sold, and issued securities and/or indentures to Plaintiffs as those terms are defined in the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.* (hereinafter the "TIA").

378.   In connection with Defendants offer to sell securities and/or indentures, Defendants issued and made available to the public at large prospecti for purposes of soliciting investments and purchase of such securities and/or indentures within the meaning of the TIA.

379.    Securities or indentures that are required to be registered under the Securities Act of 1933 must also be registered under the TIA and such additional information must be provided in such registration and in any prospectus for such indentures relating to the TIA requirements.

380.    These Defendants have violated the TIA in one or more of the following ways:

a.    Failing to register the securities and/or indentures issued to Plaintiffs under the Securities Act of 1933;

b.    Making use of the means and instruments of transportation or communication in interstate commerce or of the mails to sell such unregistered security through the use or medium of any prospectus or otherwise;

c.    Carrying or causing to be carried through the mails or interstate commerce, by any means or instruments of transportation, any such unregistered security for the purpose of sale or for delivery after sale;

d.    Making use of the means and instruments of transportation or communication in interstate commerce or of the mails to carry or transmit the prospecti relating to the IFC entities' securities without meeting the rules and regulations of the TIA;

e.    Carrying or causing to be carried through the mails or interstate commerce, by any means or instruments of transportation, any such improper prospectus;

f.      Offer to sell the IFC entities' unregistered securities through a prospectus or otherwise without being issued under an indenture nor filing an application for qualification for such indenture and during periods when the securities were subject to cease and desist orders by state governments;

g.      Failing to file required information with the trustee and to allow the trustee to share information with other security holders, including the identity of such other security holders, and indeed these Defendants refusing to share such identities;

h.      Failing to provide periodic reports as required by the TIA;

i.      Failing to provide evidence that the IFC investments were in compliance with the indenture provisions of the TIA;

j.      Failing to provide proper notice of default of the investment notes and certificates as required by the TIA;

k.      Impairing the investors' rights to payment of principal and interest on or after the due dates of such security and interfering with the institution of suit for enforcement of such rights; and

l.      Otherwise engaging in the fraudulent conduct described above.

381.    These Defendants repeatedly refused to share information with other investors, refused to identify other investors despite requests to do so from Plaintiffs and discouraged security holders from trying to discover other security holders.

382.   These Defendants and, specifically, Sanchez threatened security holders that they would lose their investments if they contacted any of the authorities.

383.   Upon information and belief, Plaintiffs invested in excess of eight million dollars ($8,000,000.00) by purchasing securities and/or indentures issued by the IFC entities and IFC principals and have not received any of that investment back despite demand for same.

384.   Plaintiffs' injuries have been directly and proximately caused by Defendants' violations of the TIA.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.      That this Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certify the Class as all persons who invested money with Sanchez, Bourassa, IFC Financial, IFC.com, IFC Ventures or ROI Mexico during the period July 1, 1999 through December 31, 2008 (the "Class") excluding any manager, principal, agent, affiliate, employee, officer or director of Defendants;

B.      That this Court award compensatory damages in the amount of $8,000,000.00 and such other damages to be proven at trial plus interest, which amount to be shared by the Class in proportionate shares to their investments;

C.      That this Court grant any and all relief available, alternatively, under the Securities Act of 1933, 15 U.S.C. §77a *et seq.,* the Securities Exchange Act of 1934, 15 U.S.C. §78a *et seq.,* the Uniform Fraudulent Transfer Act, 740 ILCS 160/

*et seq.,* the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/ *et seq.*, the Illinois Securities Law of 1953, 815 ILCS 5/ *et seq.*, Investment Advisers Act of 1940, 15 U.S.C. §§80b-1 *et seq.*, the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa *et seq.*, and the other causes of action stated herein so as to provide justice to the Plaintiffs;

D.     That this Court impose a constructive trust and/or appoint a receiver for the assets of Defendants, including without limitation any and all property in Playa Ventura, Mexico in which Defendants have an interest and all personal and business accounts at any financial institution held by Defendants, and enjoin Defendants from any further activities related to the Sands of Gold Estates in Playa Ventura, Mexico;

E.     That this Court should void the transfer of Plaintiffs' investment money to any assets of Defendants as fraudulent transfers as to creditors Plaintiffs and require Defendants to restore the assets to Plaintiffs or to the companies in which Plaintiffs invested;

F.     That this Court award exemplary damages in the amount of $50,000,000.00 as penalty to Defendants and to assure that Defendants do not further their current fraudulent scheme or perpetuate another fraudulent scheme in the future;

G.     That this Court award reasonable attorneys' fees, costs and disbursements; and

H.     That this Court award such other and further relief as this honorable Court deems just and equitable.

## XIII. JURY DEMAND

Plaintiffs hereby demand trial by jury on all claims for damages at law.


PLAINTIFFS' CLASS



By:   /s/ Robert C. Thurston
          One of Their Attorneys


Thurston Law Offices, P.C.                    Law Offices of Joel M Weiner, LLC
Robert C. Thurston                             Joel M. Weiner
A.R.D.C. No. 6209353                       579 N 1st Bank Drive Suite 150
10469 Bethel Avenue                         Palatine, IL 60067-8102
Huntley, IL 60142                              Phone: 847-654-3105
Phone: 847-659-8613                        Fax: 847-358-7165
Fax: 847-628-0930                            Email: jweiner@jweinerlaw.com
Email: tj@thurstonlawpc.com