1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                    IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4    BRADLEY J. SCHAUFENBUEL, et al.,      )
                                           )
5                    Plaintiffs,           )
                                           )
6                    vs.                   )  No. 09 C 1221
                                           )
7    INVESTFORCLOSURES FINANCIAL, L.L.C., )
     et al.,                               )  Chicago, Illinois
8                                          )  August 13, 2009
                     Defendants.           )  10:26 A.M.
9
                     TRANSCRIPT OF PROCEEDINGS - Status
10        BEFORE THE HONORABLE NAN R. NOLAN, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiffs:       THURSTON LAW OFFICES, P.C.
                               10469 Bethel Avenue
13                             Huntley, Illinois  60142
                               BY:  MR. ROBERT CRAIG THURSTON
14
                               MR. JOEL MARTIN WEINER
15                             579 North 1st Bank Drive
                               Suite 150
16                             Palatine, Illinois  60067

17   For Defendants Guidi,     CAMPION, CURRAN, DUNLOP & LAMB, P.C.
     Martin, and Rodriguez:    8600 U.S. Highway 14
18                             Suite 201
                               Crystal Lake, Illinois  60012
19                             BY:  MR. RUSSELL WADE BAKER

20   ALSO PRESENT:             MR. ROBERT B. CHRISTIE
                               MR. FRANCIS X. SANCHEZ
21                             MR. JAMES D. BOURASSA

22                       PAMELA S. WARREN, CSR, RPR
                             Official Court Reporter
23               219 South Dearborn Street, Room 1928
                         Chicago, Illinois  60604
24                           (312) 294-8907

25   **NOTE:  Please notify of correct speaker identification.**

1    (Proceedings held in open court:)

2        THE CLERK:  09 C 1221, Schaufenbuel versus

3    InvestForClosures.

4        MR. THURSTON:  Good morning, your Honor.  Robert

5    Thurston here on behalf of the plaintiffs.

6        THE COURT:  Okay.

7        MR. WEINER:  Good morning, your Honor.  Joel Weiner on

8    behalf of the plaintiffs.

9        THE COURT:  Okay.

10       MR. BAKER:  Good morning, your Honor.  Russ Baker on

11   behalf of defendants Deana Guidi, Darcey Martin, and Tom

12   Rodriguez.

13       THE COURT:  Okay.

14       MR. CHRISTIE:  And Robert Christie as a friend of the

15   Court.

16       And with me are my former clients, Jim Bourassa and

17   Frank Sanchez.

18       MR. SANCHEZ:  Good morning, your Honor.

19       THE COURT:  Good morning.

20       Good morning.  Are you Mr. Sanchez?

21       MR. SANCHEZ:  Yes, ma'am.

22       THE COURT:  Okay.  And Mr. Bourassa.

23       MR. BOURASSA:  Correct.

24       THE COURT:  Okay.  So you just appeared before Judge

25   Leinenweber.

1    MR. CHRISTIE:  We did, Judge.  And he approved the

2 motion to withdraw as counsel for the defendant I represented.

3    THE COURT:  Okay.  So we didn't receive until

4 last -- I mean, until actually this morning, Mr. Christie, this

5 motion that you filed here.  We think -- we were confused.

6    MR. CHRISTIE:  Yes.

7    THE COURT:  We have a -- on the day we issued the

8 temporary restraining order with asset freeze, which is

9 Document 122-2, we also filed an order granting the TRO, which

10 is 121-2.

11    MR. CHRISTIE:  That, Judge, I couldn't get off the

12 system for some reason.  And I thought maybe you -- they had

13 refiled it, so that was --

14    THE COURT:  Because in here --

15    MR. CHRISTIE:  -- my mistake, your Honor.

16    THE COURT:  -- we have here a plethora of reasons.

17    MR. CHRISTIE:  Okay.

18    THE COURT:  We have discussed the bond.  We have -- I

19 think the -- I mean, I went over very carefully since this

20 morning here there -- the first thing that you think

21 procedurally was wrong is a verification.  But -- and I'm glad

22 your clients are here if they are going to be proceeding by

23 themself.

24    The TRO section, Rule 65(b)(1), if you proceed, you're

25 allowed to proceed -- a party is allowed to proceed without

1 notice on an emergency. And if you are proceeding without

2 notice under (b)(1), you have to have a verification because

3 the -- obviously the Judge wouldn't have the other side there

4 to sign anything. Okay?

5       We were not proceeding without verification here

6 because Mr. Thurston gave everybody plenty of notice.

7       But at least as far as we know, it is either a

8 verification in the complaint or, I suppose in some cases,

9 there could be a separate verification. But there is a

10 verification on the complaint, and that was what was filed back

11 on February 27th, '09.

12       So I certainly will hear from, you know, if you have

13 anything else you want to say about the verification here.

14 That's what our understanding of the law is.

15       MR. CHRISTIE: Was this the class representative's

16 affidavit, your Honor?

17       THE COURT: Yes.

18       MR. CHRISTIE: Again, I (unintelligible) not as a

19 verification, just to say that he read the complaint and that

20 he can be a class representative, not that he is verifying --

21       THE COURT: This is a different one.

22       MR. CHRISTIE: Oh, okay.

23       THE COURT: This is a different one in which he says

24 he -- he has reviewed the complaint in which I am named and

25 verified that the allegations contained therein are true and

 1  correct --

 2          MR. CHRISTIE:  Well, okay --

 3          THE COURT:  -- to the best of my knowledge.

 4          MR. CHRISTIE:  My apologies, Judge, because --

 5          THE COURT:  Okay.

 6          MR. CHRISTIE:  -- I was looking at the last

 7  complaint.  I didn't see that.  And I will say that I --

 8          THE COURT:  Now this is attached to the preliminary

 9  injunction.  Okay.

10          Okay.  This is attached to the motion for the

11  preliminary injunction that was February 27th.  I mean, if you

12  feel that -- I mean, if you -- if your clients feel like you

13  need another kind of verification or something or there is some

14  law for that, I'm certainly willing to -- we -- but -- but what

15  you are talking about on the TRO is an ex parte TRO where the

16  other side had no notice.

17          MR. CHRISTIE:  No, Judge, I don't disagree that the

18  Court can enter a TRO without affidavits or verification.  I

19  understand that.  It is preferred to have --

20          THE COURT:  Right.

21          MR. CHRISTIE:  -- evidentiary proof.

22          THE COURT:  Right.

23          MR. CHRISTIE:  And I apologize.  I was not able on my

24  Pacer to get off that one document, and I thought that the --

25          THE COURT:  Well, we thought of that.  See, we're

1  supposed to enter a separate order freeze so that this can

2  be --

3          MR. CHRISTIE:  Yeah.

4          THE COURT:  -- then sent to non-parties.  Okay?

5          MR. CHRISTIE:  Right.

6          THE COURT:  I mean, that's what this is where -- so --

7          MR. CHRISTIE:  Well, your Honor, I will -- I mean, I

8  don't have the right to withdraw that now, but I'm sure that my

9  clients will withdraw that motion.

10          THE COURT:  Right.

11          And in that -- okay.  No one -- all right.  Now this

12  is the other thing, just so the clients -- okay.

13          Let me ask Mr. Sanchez.

14          MR. SANCHEZ:  Yes, ma'am.

15          THE COURT:  Are you planning to get a lawyer?

16          MR. SANCHEZ:  Well, we'd like to try to -- you know,

17  try to get one, but, of course, you know, the reason that we

18  can't is because we just can't pay him any more.  I mean --

19          THE COURT:  So, Mr. Bourassa, you actually don't

20  -- you -- I have no authority over you at all because you're in

21  bankruptcy.

22          MR. THURSTON:  No, your Honor, the stay has been

23  lifted against Mr. Bourassa --

24          THE COURT:  Oh, it has?

25          MR. THURSTON:  -- in bankruptcy.

1          Yes.  So we're -- he's now before you properly.

2          THE COURT.  Oh.  Do you have a lawyer?

3          MR. BOURASSA:  I do not currently.

4          THE COURT:  Have you fellows taken a look at these two

5    opinions?

6          MR. SANCHEZ:  Never seen them.

7          THE COURT:  You need to see them.

8          MR. SANCHEZ:  Right.

9          THE COURT:  You need to see them because they have and

10   we have -- now here's the way -- this is what we think.  Okay?

11   So we have -- we entered this TRO on August 5th.  A TRO lasts

12   for ten days.  Okay?  We do not count the weekends or holidays.

13          So what's our day we're saying?

14          MR. THURSTON:  I think the order said April 19th.

15          THE COURT:  Wednesday.

16          MR. THURSTON:  Yes, your Honor.

17          THE COURT:  April 19th, okay.

18          Okay.  I am on -- August 19th, I'm sorry.

19          MR. THURSTON:  Oh, I am sorry.  August, yes, sorry.

20          THE COURT:  Okay.  So I'm -- and then under the rule

21   the Court on somebody's motion or the Court's own motion can

22   extend one time for ten more days.  Okay?  And I am on vacation

23   next week.

24          So I was assuming we would take care of this today

25   with adding another ten-day extension either on Mr. Thurston's

1    motion or the Court's own motion because physically I'm not

2    here.

3              MR. THURSTON:  Well, your Honor, that's what I was

4    prepared to say today --

5              THE COURT:  Right.

6              MR. THURSTON:  -- was to -- I didn't make a written

7    motion, but I was prepared to ask the Court to extend the TRO.

8              THE COURT:  For now.

9              MR. THURSTON:  Yes.

10             THE COURT:  Then I want to make sure -- okay.  That

11   takes us then to September 2nd at 3:00 o'clock, I think.  And

12   it actually runs on a time too.  Okay?

13             Our research shows that one of two things can happen.

14   Okay?  You do not extend a TRO further except with consent of

15   the parties or if the moving party wants the Court then to

16   convert it to a preliminary injunction so there is no gap in

17   the time, then we have to be prepared to proceed.

18             So sometimes defendants wish more time to get a

19   lawyer, to prepare, to see what's going on.  So they may be

20   willing to extend it.  Because otherwise the way I see the law

21   is I have to proceed with this hearing if there is not going to

22   be a gap.

23             So the next time, fellows, that Mr. Thurston is moving

24   to extend it, the one time that's allowed, which is from August

25   19th till September 2nd, on September 2nd you are going to have

1   to be back here, and you are going to either -- I would like to

2   know -- in fact, we're going to give you time today -- if we're

3   going to proceed, we need to know.  And I need to know if

4   you're going to have a lawyer or you're going to proceed on

5   papers or what you're going to proceed on.

6          You can individually, each of you, represent yourself

7   pro se for yourself.  Your companies cannot proceed pro say

8   though or your former companies.  Under our local rule you have

9   to have a lawyer.

10         So I don't know, Mr. Christie, before you leave, are

11  you willing to explain to them what some of this means?

12         MR. CHRISTIE:  Yes.

13         THE COURT:  I mean, as far as -- I mean, if they are

14  going to -- if they want a hearing, obviously, I think it is in

15  their best interests to agree to extend it so that we don't go

16  full fledge into a hearing without their lawyer not having any

17  time.

18         Don't you think?

19         MR. CHRISTIE:  Well, I -- well --

20         THE COURT:  Because it doesn't have --

21         MR. CHRISTIE:  -- I explained it --

22         THE COURT:  -- to be -- right now we have a

23  preliminary hearing set --

24         MR. THURSTON:  November 2, I believe.

25         THE COURT:  -- November.  But I'm not saying November

1  2, but just like enough time so somebody could be rationally

2  ready to do this.

3      MR. CHRISTIE:  Well, the next status -- so would we

4  have a status on September 2nd?

5      THE COURT:  Well, it is a status, but that's the day

6  the TRO --

7      MR. CHRISTIE:  Yeah.

8      THE COURT:  -- is going to -- is going to --

9      MR. CHRISTIE:  Yeah.

10     THE COURT:  And we need, if we're going to proceed, we

11  want by the Friday before that, which is -- oh.

12     That's true.  So this is -- we issue a show cause why

13  it should not be converted into a preliminary injunction.

14  That's -- this is all of the procedures under the statute.

15  Okay?

16     MR. CHRISTIE:  Uh-huh.

17     THE COURT:  And one of the reasons to do it is if you

18  voluntarily agree to extend the TRO until people are ready.  I

19  mean, we have -- I mean, if you knew you were -- if you were

20  staying in the case, then there would be enough time to get

21  ready.  I just don't know if these fellows are going to be able

22  to go get somebody at the end of summer and -- and I -- and if

23  this show cause happens, I either have to go ahead with the

24  injunction hearing or grant their -- grant their motion to

25  extend the TRO.  Now --

1          MR. THURSTON:  Or convert it to a preliminary

2     injunction.

3          THE COURT:  Right.

4          But if they agree to it, then we could have a longer

5     period of time is what I am saying.

6          Am I clear on this with everybody?  I mean, if they

7     come in and say, we're willing to extend it a month, and it is

8     in writing, then their lawyers would have enough time to be

9     able to figure out what the heck is going on.

10         Then you raised in your motion this issue on living

11    expenses.  But, I mean, fellows, I'm not -- I never do

12    the blame game here.  But nobody said one word to us about this

13    issue in any of the papers.  Okay?  Not that you are precluded

14    from ever -- but the reason we didn't address it is sua sponte

15    I do not have to be raising every TRO issue.  Okay?

16         So if somebody wants to raise that issue -- it wasn't

17    even said on Mr. Bourassa's part, it was said on --

18         MR. CHRISTIE:  Mr. Bourassa is not part of the

19    preliminary or --

20         THE COURT:  Right.

21         MR. CHRISTIE:  -- the temporary restraining order.

22         THE COURT:  So -- but, I mean, it was said on -- it

23    was said about Mr. Santiago --

24         MR. SANCHEZ:  Sanchez.

25         THE COURT:  -- Mr. Sanchez and his son.  But there is

1    a whole set of procedures that have to be done.

2         I mean, first of all, we don't even know if we have

3    got a listing of what the assets are.  You have to have a

4    listing of what the expenses are.  You have to have -- I mean,

5    all of that has to be presented, not just to the Court, but to

6    the other side.

7         Now have you started sending notices?  And the

8    defendants were -- the defendants had to post $1000 bond in our

9    opinion here.

10        Now what has happened in that?

11        MR. THURSTON:  We haven't posted a bond, but we intend

12   to do so.  And we have sent notices out to, well, all the

13   banking and financial institutions that we know of.

14        THE COURT:  All right.

15        MR. THURSTON:  And that has been done.  We intend to

16   post a bond very shortly here, your Honor.

17        THE COURT:  Okay.

18        MR. BAKER:  Your Honor, can I ask a clarification?

19        THE COURT:  Sure.

20        MR. BAKER:  You said the defendants had to post a bond

21   of $1000.

22        THE COURT:  No, no, no, the plaintiff does.

23        MR. BAKER:  Okay.

24        THE COURT:  No, you don't have to post anything.

25        MR. BAKER:  You said the defendants, so --

1      THE COURT:  I'm sorry.  I'm sorry, no.

2      MR. BAKER:  And then he spoke up, and I said, wait a

3  minute.

4      THE COURT:  No, the plaintiffs have to post a bond.

5  And they are going to do that within -- now, yeah.

6      Well, Mr. Sanchez, I have no -- in civil cases there

7  is no authority to appoint people lawyers either, so -- only in

8  criminal cases.  I can just encourage you.  I'm sure your life

9  -- both of your lives are probably falling apart, but this --

10      MR. SANCHEZ:  Your Honor, you haven't said the half of

11  it.

12      THE COURT:  Right.  But this is one time where I think

13  you really need a lawyer.

14      And Mr. Christie has done a wonderful job for you.

15      MR. SANCHEZ:  I appreciate it.

16      THE COURT:  I mean, that's really -- he really has.

17  He worked very -- he was protecting your interests all the way

18  along, and that happens because lawyers have to be paid just

19  like anybody else --

20      MR. SANCHEZ:  I understand.

21      THE COURT:  -- has to be paid.

22      So just let me check with Margaret here.

23    (Discussion off the record.)

24      THE COURT:  I mean do you want to talk and see if you

25  can agree to an extension or -- I mean, Mr. Christie ought to

1    read the order first.

2           MR. CHRISTIE:  Judge, I would like to have the

3    opportunity to have them come to my office after this and talk

4    to them and explain fully.  I don't think I can do it in 10 to

5    15 minutes.

6           MR. THURSTON:  And I will say, your Honor, I -- the

7    order that you are speaking of, I think -- I had the same

8    experience as Mr. Christie where you try to access it through

9    ECL, and it just came as a blank page.  The document is not in

10   there.

11          Now I don't know -- I haven't tried to go back in

12   through Pacer --

13          THE COURT:  Well, did you get it?

14          MR. THURSTON:  I got -- no, I got the other order; I

15   didn't get that order.

16          MR. WEINER:  I didn't get it as well, your Honor.

17          MR. CHRISTIE:  That's probably why I got no comments

18   about that.

19          MR. THURSTON:  And that's also why we didn't even know

20   about the posting of the bond.  I didn't know about that until

21   today.  So --

22       (Discussion off the record.)

23          MR. THURSTON:  Okay.  So if we go back in through

24   Pacer, we can pull it then?

25          It didn't come through in the regular, you know, email

1    process.

2         MR. CHRISTIE:  I actually get an error message when I

3    tried to get that order, so that's why I thought another one

4    was refiled.

5         THE COURT:  Well, we have a really long opinion here

6    that covers everything.

7         MR. THURSTON:  I'm clear I didn't get that.

8         THE COURT:  And the only thing -- and the only thing

9    that is in the order -- this is the order that if the

10   plaintiffs were going to send notice to anyone, this would be

11   the order directing people what to do.

12        MR. THURSTON:  Right.

13        THE COURT:  It doesn't give all the facts.

14        MR. THURSTON:  That's the one we -- I think we all

15   received, and that is the one I sent out with notice.

16        THE COURT:  Oh, no wonder --

17        MR. THURSTON:  -- to the institutions.

18        THE COURT:  -- no wonder -- no wonder you said --

19        MR. CHRISTIE:  Your Honor, as far as the carve out, I

20   have been in these situations before, and I believe that I can

21   work with counsel to create a carve out.  We have usually done

22   it by creating a -- if he needs a new checking account, get a

23   new checking account that, you know -- right now the cash in

24   his pocket is frozen, so --

25        MR. THURSTON:  Yeah.  My concern, and I'll be happy to

1  discuss this, but my only concern is the money he has been

2  living off of is my client's money, and that's my concern.  So

3  I would like to see if there are other assets or other forms of

4  income from which he can live off of.

5       THE COURT:  You guys really need to sit down and

6  talk.  And you need to sit down and talk when -- both

7  Mr. Bourassa -- do you have a bankruptcy lawyer?

8       MR. BOURASSA:  Yes.

9       THE COURT:  And, Mr. Sanchez, if they actually want to

10  proceed or if you aren't better off with -- legally with a TRO

11  than you are with a preliminary injunction is what I am

12  saying.  So, I mean, this is less -- you know, this is not a

13  hearing, but --

14       MR. THURSTON:  And perhaps, your Honor, maybe -- maybe

15  something I can discuss with counsel is a consent preliminary

16  injunction, and that consent preliminary injunction can

17  incorporate a carve out provision.  That's perhaps a way to do

18  that, to solve that problem.

19       THE COURT:  Well, you can do whatever.

20       Now, unfortunately, my time runs September 2nd.

21  Okay?  So we need to know by the Friday before.

22       MR. THURSTON:  That would be --

23       THE COURT:  Oh, well, no, but can --

24       MR. THURSTON:  August 28th?

25       THE COURT:  Are you moving -- are you moving on August

```
 1    19th?

 2         (Discussion off the record.)

 3         THE COURT:  But on the 19th -- both of us are gone

 4    next week.

 5         MR. THURSTON:  Okay.

 6         THE COURT:  We need it by Friday at noon if you are

 7    going to move -- if you are -- Mr. Thurston, if you are moving

 8    to extend it for the ten days.

 9         MR. THURSTON:  Yeah, I'm so moving now and if I can --

10    if I can do that.

11         THE COURT:  Okay.  Then we're going to enter it, but

12    we don't enter it until next Wednesday at 2:00 o'clock.

13         MR. THURSTON:  Right.  That's fine, your Honor.

14         THE COURT:  But here's what I need from you.

15         MR. THURSTON:  Okay.

16         THE COURT:  All of you, Mr. Sanchez, Mr. Bourassa, I

17    want on my desk by Friday, August 28th, at noontime either a

18    proposal on how we're going to proceed on September 2nd when it

19    runs out, who are your witnesses, what are your documents -- I

20    mean, I need to know if we're proceeding.  I want like a little

21    mini order telling me that.

22         If you have reached -- you're kind of jumping too on

23    this consent preliminary injunction.  These fellows don't even

24    have lawyers yet.

25         MR. THURSTON:  Yeah.
```

```
 1          THE COURT:  Okay?  So if they are willing to agree for
 2   another month or so on the TRO -- I know we're going to
 3   ultimately be back to it, but at least they'd have some time to
 4   get themselves ready.
 5          MR. THURSTON:  Right.
 6          THE COURT:  Do you understand what I am saying?
 7          MR. SANCHEZ:  I think I understand.
 8          THE COURT:  On September 2nd, on September 2nd the TRO
 9   runs out at 3:00 o'clock.  If at that time it -- a Court that
10   has issued the TRO there is basically a rule issues that says
11   why does this not convert into a preliminary injunction.
12   Okay?
13          Can somebody come forward basically and say, either,
14   you know, you were wrong, you got the facts wrong, you didn't
15   know this.  That's why you have a hearing.  Okay?  And at that
16   hearing you would be saying, no, Judge, you're completely wrong
17   about this.
18          So that could happen or it could be converted into a
19   preliminary injunction automatically.  Okay?  If nobody comes
20   forward, we would just convert it into the preliminary
21   injunction.
22          Because we have this unusual situation here where
23   counsel is dropping off, it is going to put you under the gun
24   on September 2nd because I can't do anything about the
25   September 2nd unless you, after you consult with Mr. Christie,
```

1    you call Mr. Thurston and say, I'll agree for 30 days, 45 days,

2    but I need some living expenses, something like that.  I mean,

3    that could be like a way you could go about that.

4           And then -- it is going to happen again though, when

5    the time is up, the same thing is going to happen, it is going

6    to be we -- I have to either convert it into a preliminary

7    injunction or it will get dissolved.

8           Is that --

9           MR. SANCHEZ:  Well, I guess my first question

10   is -- excuse me, pardon my ignorance, your Honor, what is a

11   preliminary injunction?  I mean, what does it --

12          THE COURT:  What's the difference between a TRO and a

13   preliminary injunction?

14          MR. SANCHEZ:  Because you just kind of said that

15   basically the same thing is going to happen again.

16          THE COURT:  Well, it could happen again.  But before a

17   Court enters a preliminary injunction -- this is not the trial.

18          MR. SANCHEZ:  I understand.

19          THE COURT:  This is -- again, when there is an

20   allegation that people have lost money or something else, it

21   could be a job, it is not just necessarily money, and you want

22   to freeze the conduct is basically what you are doing until you

23   can have a complete trial on the merits.

24          MR. SANCHEZ:  Okay.

25          THE COURT:  Because you need to do discovery.  You

1   need to get your witnesses.  You need to come up with your

2   defenses if you are going to -- whatever you're going to do so

3   in -- this is an interim step.  The first interim step is the

4   TRO.  That's like less -- we didn't have a hearing on the

5   TRO --

6           MR. SANCHEZ:  Okay.

7           THE COURT:  -- we did it on papers.

8           On the preliminary injunction you're entitled to a

9   hearing.  You could testify.  Mr. Bourassa could testify.

10          MR. SANCHEZ:  I understand.

11          THE COURT:  You could bring witnesses in.

12          And then -- that still is not the final injunction.

13  The final injunction doesn't happen until after the trial.  But

14  it does freeze everything till the trial.  And here we're

15  talking about basically freezing money so that if there are any

16  assets, and if you are found liable, two ifs, then those folks

17  have a way to get their money back.

18          MR. SANCHEZ:  Okay.  I think I understand.

19          THE COURT:  Okay?  So the effect of the TRO, we're

20  not -- we don't freeze any more -- nothing more happens to you,

21  it is more duration than scope is what I'd say.  The scope is

22  the same for the TRO as the preliminary injunction.  Only if a

23  preliminary injunction is issued, then it will last until the

24  time of the trial, whenever that is.

25          MR. SANCHEZ:  Okay.

1    THE COURT:  And then it gets -- if you are

2  convicted -- it is not convicted, but if you are found liable,

3  then after the trial, one of the remedies the Court can do is

4  make it a permanent injunction.  So you go from temporary,

5  preliminary --

6    MR. SANCHEZ:  I understand.

7    THE COURT:  -- permanent.

8    MR. SANCHEZ:  Very good explanation.  Thank you.

9  Thank you, your Honor.

10    THE COURT:  Do you agree, Mr. Christie?  I mean,

11  that's pretty --

12    MR. CHRISTIE:  You have done my work for me, Judge.

13    THE COURT:  Okay.

14    Well, and I think they need a lawyer, so -- but

15  I -- I'm not paying for it, so --

16    (Laughter.)

17    THE COURT:  What the heck.  Okay.

18    So on that Friday -- by that Friday at noon.

19    So now, Mr. Sanchez, Mr. Thurston could not contact

20  you when you had a lawyer.  Now he can contact you directly and

21  you can contact him directly.  You know Mr. Christie is going

22  to explain to you if you open your mouth and you say things

23  about admissions or any of that stuff, that's, you know,

24  between you and your maker.

25    But he has a right to now call you as he had a right

```
 1    to call Mr. Christie before.

 2           The minute you get a lawyer, there can be no contact

 3    between Mr. Thurston.  So one of the reasons for the lawyers

 4    are you are not having any direct communication with the

 5    lawyer.

 6           So Mr. Thurston has a right to -- have you done any

 7    deps in this case?  I wanted to know.

 8           MR. THURSTON:  No, your Honor.  And that's because we

 9    haven't even gotten the written discovery responses back, which

10    I believe are due tomorrow, your Honor.

11           THE COURT:  Well, are you going to talk to

12    Mr. Christie about that?

13           MR. THURSTON:  Yeah.  And --

14           THE COURT:  Okay.

15           MR. THURSTON:  -- we have at least discussed -- we

16    have had -- exchanged some communications regarding document

17    production, not necessarily the responses to discovery, but the

18    actual documents themselves.  And we're working that out, that

19    exchange out.

20           I'm going to be providing CDs, a couple CDs worth of

21    information to counsel.  Well, actually, I guess I'll be

22    providing them directly to Mr. Sanchez and Mr. Bourassa and to

23    Mr. Baker.

24           And you have their addresses or you have that --

25           MR. THURSTON:  Yeah, they are in Mr. Christie's
```

1    motion, so --

2            THE COURT:  Okay.

3            MR. THURSTON:  And I guess in the front of the Court I

4    should ask for -- to Mr. Bourassa and Mr. Sanchez both, your

5    emails were in there.  Is it acceptable to serve you

6    information and documents by email?

7            MR. SANCHEZ:  Yes.

8            MR. THURSTON:  Okay.  Thank you.

9            THE COURT:  Okay.

10           MR. CHRISTIE:  We have only had one kind of hiccup on

11   the document production is that plaintiffs are requesting $427

12   in cost for the documents.  And they also -- and represented

13   that all the documents are on a DVD or CD, but the copying

14   costs of that is over seven -- is only $7.

15           Obviously my clients would be willing to pay the $7,

16   but they just don't have the wherewithal to pay four hundred

17   and some dollars in this case.

18           MR. THURSTON:  And let me explain that, your Honor.

19   Those are not our photocopying or those charges, those are

20   charges that came from the banks who under administrative code

21   are entitled to charge a requesting party for documents to

22   produce -- to research and produce documents pursuant to

23   subpoena.  There is an administrative code that's directly on

24   point.

25           And so therefore we got charged a pretty

1  substantial -- we have thousands and thousands of pages, and

2  most of those are from banks, and we got charged costs.

3        And actually I'm trying to actually do a favor to the

4  defendants in the sense that, you know, they could certainly go

5  and subpoena those documents, but they would receive the same

6  charges as we did.

7        And I -- I would just request that if they want copies

8  of those documents, that at least defray some of those costs

9  that we have incurred that they would have to incur if they did

10 it themselves.

11       THE COURT:  Well --

12       MR. CHRISTIE:  I'm not sure those costs are

13 compensable at this time.  Maybe to the prevailing party they

14 are.

15       What is compensable is maybe the copying costs

16 providing documents.

17       THE COURT:  Right.

18       MR. BAKER:  But since they're all on DVDs or CDs, the

19 costs --

20       THE COURT:  So you have them on DVDs?

21       MR. THURSTON:  Well, your Honor, yeah, that's because

22 I scanned them in all by myself, by hand.

23       THE COURT:  And you're saying you're not going to give

24 them to them until they are paid the --

25       MR. THURSTON:  Well, your Honor, they can come and

1   look at the hard copies if they want.  I'm happy to do that to

2   them.

3           But I just figured as a courtesy, since I scanned them

4   all in --

5           THE COURT:  Mr. Thurston, I think you -- I don't know

6   under all these statutes if -- you know, what you are going to

7   be -- you as the moving party might be entitled to for costs at

8   the end of the case, but we're not going to be able to move

9   along unless you give them -- I'm not telling you to go xerox

10  the hard copies, I'm telling you I think you should give them

11  the CDs.

12          MR. THURSTON:  Okay, your Honor.  I mean --

13          THE COURT:  Keep those together.  This happens to

14  plaintiffs's counsels in class cases all the time.

15          MR. THURSTON:  Okay.

16          THE COURT:  You're going to have all these costs at

17  the end.

18          MR. THURSTON:  They will be in the bill of costs

19  then.  You know, I was trying to save them some money in the

20  meantime, but --

21          THE COURT:  Well, but I think right now you have got

22  it together much more than they have got it together.  And I'm

23  not going to be able to even do this hearing.

24          MR. THURSTON:  Okay.

25          THE COURT:  I mean, you're also doing it so that we

1  can proceed along here.

2       MR. THURSTON:  Okay.

3       THE COURT:  I want to tell you one more thing.  I just

4  want to explain one more thing to the both of you.

5       Your trial judge you just met is Harry Leinenweber.

6  Okay?

7       MR. SANCHEZ:  Yes, ma'am.

8       THE COURT:  So most of your case is going to be in

9  front of Harry Leinenweber.  He referred the injunction down to

10 us.  And under the statute, just so you know, under the

11 magistrate judge statute, any ruling I make you have ten days

12 to file objection to the district court.  Okay?  It is kind

13 of -- I want to just give you a warning on.  And if you want

14 to, you can file any objections.  And you can say we think no

15 one got this wrong, we think she got this wrong.  She used the

16 wrong standard.  Whatever you want to do.

17      And I just want you to know so either for the TRO or

18 for the preliminary injunction or basically -- you can

19 basically appeal anything I -- basically say to Judge

20 Leinenweber.  But he's doing all the discovery.  I don't think

21 we're doing discovery in this case either.

22      So I'm just telling you, Mr. Thurston, in order for my

23 preliminary injunction to work, I want you to give them the

24 disks.

25      MR. THURSTON:  Okay.  I will do so, your Honor.

1    THE COURT:  Do you have a discovery schedule or any

2  kind of more dates with Judge Leinenweber?

3    MR. BAKER:  The only date is September 10th he will be

4  ruling on a motion to dismiss.  And then there is a status some

5  time in October, but that might be changed.

6    THE COURT:  Okay.  All right.

7    MR. THURSTON:  No discovery has been opened up.

8  General discovery by Judge Leinenweber.

9    THE COURT:  Did we give Judge Leinenweber a copy of

10  our two opinions?

11    (Discussion off the record.)

12    THE COURT:  All right.  I want him to get those.

13  Okay.

14    MR. THURSTON:  And the next step, I think, your Honor,

15  if -- if Judge Leinenweber denies the motion to dismiss, the

16  next logical step, we -- or two steps, I guess would be.  One

17  is to do a general discovery process, but also a motion to

18  certify the class.

19    THE COURT:  Right.

20    MR. THURSTON:  I think those are the next steps that

21  will happen with Judge Leinenweber.

22    THE COURT:  Okay.

23    MR. CHRISTIE:  And (unintelligible) other

24  clarification, Judge, I -- Mr. Bourassa has not filed an answer

25  or otherwise plead --

1        THE COURT:  Right.

2        MR. CHRISTIE:  -- pleading with the Court.

3        THE COURT:  Because of the stay.

4        MR. CHRISTIE:  And I -- because of the stay.

5        And I mentioned that to Judge Leinenweber and told him

6    that either he'll join Mr. Sanchez with his motion to dismiss

7    or ask that his obligation be deferred until he rules on the

8    motion to dismiss.  He suggested just joining the motion to

9    dismiss, which is what Mr. Bourassa will do.

10        THE COURT:  Okay.  All right.  Well, that's good.

11   Okay.

12        MR. CHRISTIE:  As far as discovery, counsel had asked

13   me today or yesterday how much we -- we are ready to produce

14   documents, and we will give it to either a copying service of

15   counsel's choice or for them to -- but there is about 20, 25

16   banker boxes of documents, so -- and it is in the possession of

17   Mr. Sanchez.

18        THE COURT:  Do you want to go over first and see if

19   you want it all?

20        MR. THURSTON:  Yeah, I don't think I want to copy 25

21   boxes.

22        THE COURT:  Okay.

23        MR. THURSTON:  I want to see what's there.

24        THE COURT:  Okay.  So he may wish to come over.  And

25   then that would cut down the xeroxing.  Okay?

1    You need to keep -- I know this is -- this is just a

2    little free advice here.  You need to keep some kind of an

3    inventory of what you are turning over because if there is a

4    question down the road that you didn't turn them over -- most

5    people use a Bates stamp, some kind of a document -- I mean,

6    the lawyers use some way for you to be able to prove what

7    documents you had and what you turned over.

8    Our clerk's office has not a bad pro se manual for

9    helping people who -- is there one in the box there?

10    THE CLERK:  There may be one.

11    MR. THURSTON:  And I'll also offer with the document,

12    you know, we can make office space available.  If Mr. Sanchez

13    can bring the boxes to the location, he's welcome to stay and

14    monitor the review.  But that will just give us a little bit

15    more space rather than being -- invading his home to do that.

16    THE COURT:  So that might be a good thing to do.

17    All right.  So you guys have a homework assignment.  I

18    want by noon on Friday, August 28th, a notice to me on whether

19    we are going to proceed on the 2nd.  If you are proceeding, who

20    your witnesses are, give me a little idea on how long it would

21    take, if I have to get a court reporter -- I mean, if I have to

22    get a court reporter.

23    If you are going to agree for a short period of time,

24    I would like to see a draft agreement so that we know that --

25    if you are going to agree to the TRO for a limited period of

1   time to get counsel.

2           Mr. Sanchez, Mr. Bourassa, if you have lawyers, I

3   want -- I need their appearances on file or something in this

4   memo so that I have got a sense of September 2nd.

5           So let's make it, Lynette, September 2nd.  We'll make

6   it in the morning.  So 9:00 o'clock.

7           THE CLERK:  We have a 9:00 and a 8:30 and a 10:00

8   o'clock.

9           THE COURT:  Is the 10:00 o'clock a settlement?

10          THE CLERK:  One is a settlement.

11          THE COURT:  Okay.  And on then something --

12          THE CLERK:  Unless you want me to reschedule --

13          THE COURT:  No, no.

14          THE CLERK:  -- the 9:00 A.M.s

15          THE COURT:  The 9:30.  We'll just do 9:30 because it

16  doesn't run out until 3:00 o'clock.  I mean, I -- I'm hoping

17  you're going to figure something out.  But if you are not, then

18  we're just going to go ahead.

19          You're not going to reschedule it now.

20          THE CLERK:  8:00, 8:30.

21          THE COURT:  They live -- they all live really far.

22          MR. THURSTON:  Yeah.

23          THE COURT:  9:30.

24          THE CLERK:  Okay.

25          THE COURT:  9:30.

1    MR. CHRISTIE:  I left at 5:00 o'clock to get here

2  today.

3    THE COURT:  Yeah.  9:30.

4    MR. THURSTON:  9:30 would be fine.

5    THE COURT:  9:30.  Okay?

6    MR. WEINER:  Your Honor, if I may before we break, I

7  just want to confirm that the discovery we're talking about

8  here today is restricted to the parties to the preliminary

9  injunction.  Is that correct?

10    MR. BAKER:  There was a discovery deadline that --

11    MR. THURSTON:  No, your know.  I think that -- it was

12  discovery that was -- the scope is limited to issues in the

13  preliminary injunction.

14    THE COURT:  Right.

15    MR. THURSTON:  But I don't think they can limit it to

16  parties.

17    MR. BAKER:  My understanding of the stay that was

18  lifted had to do with the preliminary injunction.  We're not

19  parties to the preliminary junction.  We have nothing really to

20  do with it.  Any discovery that was -- when Mr. Thurston

21  asserted his discovery, we were parties to the preliminary

22  injunction.

23    Since -- realizing we have nothing to do with this, he

24  withdrew us with from the preliminary injunction.

25    THE COURT:  Okay.

1      MR. BAKER:  As such I don't --

2      THE COURT:  You know what, I'm going to punt this

3  question back to Judge Leinenweber.  I -- I mean, I have enough

4  to do with this injunction down here.  Okay?

5      MR. BAKER:  And we're not trying to be difficult.  We

6  just don't want to be in -- have to go through general

7  discovery ourselves prior to our motion to dismiss.

8      THE COURT:  Yeah.  Why don't you meet and confer and

9  see if there is anything Mr. Thurston needs for the preliminary

10 injunction because, believe me, you're going to have two very

11 annoyed judges if we go through the whole preliminary

12 injunction and find out you had some killer document that

13 wasn't turned over.

14     So I think you and Mr. Thurston ought to have a

15 meet -- a real meet and confer and tell him kind of what the

16 scope of your documents are.

17     MR. THURSTON:  And, your Honor, just to give you some

18 more information on that, I probably intend to take at least

19 two, if not three, of his clients's --

20     THE COURT:  Deps.

21     MR. THURSTON:  -- depositions, so they have --

22     THE COURT:  Well --

23     MR. THURSTON:  -- valuable information related to the

24 preliminary injunction.

25     THE COURT:  And it is -- you know, I'm not here next

1  week.  But I'm telling you we have to go ahead with the

2  preliminary injunction hearing unless we have got an agreement

3  here, so --

4         MR. THURSTON:  Yeah.  Okay.

5         THE COURT:  All right?

6         MR. THURSTON:  Thank you, your Honor.

7         THE COURT:  All right.  So I'll hear from you via

8  email on that Friday, and we'll see you back here on the 2nd.

9         MR. THURSTON:  Thank you very much, Judge.

10     (Which concluded the proceedings in the above-entitled

11  matter.)

12                        CERTIFICATE

13         I HEREBY CERTIFY that the foregoing is a true, correct

14  and complete transcript of the proceedings had at the hearing

15  of the aforementioned cause on the day and date hereof.

16

17  /s/Pamela S. Warren              August 24, 2009
    Official Court Reporter                  Date
18  United States District Court
    Northern District of Illinois
19  Eastern Division

20

21

22

23

24

25